**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF ARKANSAS**

**CENTRAL DIVISION**

| | |
|---|---|
| IBRAHIM E. SAFADI, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>UNITI GROUP INC. f/k/a COMMUNICATIONS SALES & LEASING, INC., MARK A. WALLACE and KENNETH A. GUNDERMAN,<br><br>    Defendants. | C.A. No. 4:19-cv-00756-BSM<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF BRADFORD MAUPIN AND IRA PENCE'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF SELECTION OF COUNSEL |
| MICHAEL AVERY, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>UNITI GROUP INC. f/k/a COMMUNICATIONS SALES & LEASING, INC., MARK A. WALLACE and KENNETH A. GUNDERMAN,<br><br>    Defendants. | C.A. No.   4:19-cv-00927-LPR<br><br>CLASS ACTION |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................................1

STATEMENT OF RELEVANT FACTS .........................................................................................2

ARGUMENT ...................................................................................................................................5

    I.      Consolidation of the Actions is Appropriate ....................................................................5

    II.     Movants' Appointment as Co-Lead Plaintiffs Is Appropriate ........................................6

        A.      The Procedures Required by the PSLRA ...................................................................6

            1.      Movants Are Willing to Serve As Class Representatives ................................7

            2.      Movants Have the Largest Financial Interest .........................................................7

        B.      Movants Satisfy the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure. ...............................................................................................................................8

            1.      Movants' Claims Are Typical of the Claims of All Class Members. ................9

            2.      Movants Will Adequately Represent the Class. ............................................10

            3.      Approving Movants' Choice of Counsel Is Appropriate. ...............................11

CONCLUSION................................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Averdick v. Hutchinson Tech., Inc.*,
No. 05-2095, 2006 U.S. Dist. LEXIS 47445 (D. Minn. Feb. 9, 2006) ................................... 8

*In re Drexel Burnham Lambert Group*,
960 F.2d 285 (2d Cir. 1992) ................................................................................................. 10

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................................ 8

*Francisco v. Abengoa, S.A.*,
No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145 (S.D.N.Y. May 24, 2016) ................. 12

*Gen. Tel. Co. of the Southwest v. Falcon*,
457 U.S. 147 (1982) ............................................................................................................. 10

*Haung v. Acterna Corp.*,
220 F.R.D. 255 (D. Md. 2004) ............................................................................................... 9

*Inchen Huang v. Depomed, Inc.*,
289 F. Supp. 3d 1050 (N.D. Cal. 2017) ............................................................................... 12

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................................................. 8

*Kinermon v. Cadogan*,
No. 03-1194, 2003 U.S. Dist. LEXIS 25861 (D. Minn. June 23, 2003) ............................... 10

*Levin v. Res. Capital Corp.*,
No. 15-cv-7081 (LLS), 2015 U.S. Dist. LEXIS 162377 (S.D.N.Y. Oct. 5, 2016) ................. 12

*In re Milestone Sci. Sec. Litig.*,
183 F.R.D. 404 (D.N.J. 1998) ........................................................................................... 9, 10

*Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*,
No. 4:08-CV-1411 (CEJ), 2008 U.S. Dist. LEXIS 104033 (E.D. Mo. Dec. 12, 2008) ............ 9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................. 9

*Polat v. Regulus Therapeutics, Inc.*,
No. 3:17-cv-00182-BTM-RBB, 2017 U.S. Dist. LEXIS 177872 (S.D. Cal. Oct. 26, 2017).. 12

*Pope v. Navient Corp.*,
No. 17-cv-8373 (RBK/AMD), 2018 U.S. Dist. LEXIS 17340 (D.N.J. Feb. 2, 2018) ............ 12

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001)................................................................................ 1

*Reese v. Bahash*,
    248 F.R.D. 58 (D.D.C. Feb. 11, 2008)............................................................................... 9

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)............................................................................................... 9

*Smith v. Suprema Specialties, Inc.*,
    206 F. Supp. 2d 627 (D.N.J. 2002) .................................................................................... 1

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ....................................................................................... 9

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1984)............................................................................................. 10

## Statutes

15 U.S.C. § 78u-4(a) ........................................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(A).............................................................................................. 6, 7

15 U.S.C. § 78u-4(a)(3)(A)(i)(II)........................................................................................ 6

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................ passim

15 U.S.C. § 78u-4(a)(3)(B)(i) ............................................................................................. 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)................................................................................... 6, 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)...................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ............................................................................. 11

15 U.S.C. § 78u-4(a)(3)(B)(v) .......................................................................................... 11

## Rules

Fed. R. Civ. P. 23 ........................................................................................................ *passim*

Fed. R. Civ. P. 42 ................................................................................................................ 5

## PRELIMINARY STATEMENT

Movants Bradford Maupin and Ira Pence ("Movants"), respectfully submit this Memorandum of Law in support of their motion seeking an order: (1) consolidating the above-captioned related actions (the "Actions"); (2) appointing Movants as Co-Lead Plaintiffs; (3) approving Movants' selection of the law firm of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel and Carney Bates & Pulliam, PLLC ("Carney Bates & Pulliam") as Liaison Counsel; and (4) granting such other and further relief as the Court may deem just and proper.

Presently pending before the Court are the above-captioned securities class Actions[1] brought on behalf of all persons who acquired the securities of Uniti Group Inc. f/k/a Communications Sales & Leasing, Inc. ("Uniti" or the "Company") securities between April 20, 2015, and February 15, 2019, inclusive (the "Class Period"). The Actions allege claims under Sections 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants Uniti, Mark A. Wallace ("Wallace"), and Kenneth Gunderman ("Gunderman") (collectively, "Defendants").

The Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant, or group of movants, that has the largest financial interest in the litigation and has also made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002). Movants lost approximately $245,358.98 as a result of the alleged fraud during the Class Period. Moreover,

---

[1] The Actions are entitled *Ibrahim E. Safadi v. Uniti Group Inc. et al.,* No. 4:19-cv-00756-BSM (E.D. Ark. Oct. 29, 2019) (the "*Safadi* Action"), and *Michael Avery v. Uniti Group Inc. et al.,* No. 4:19-cv-00927-LPR (E.D. Ark. Dec. 23, 2019) (the "*Avery* Action").

Movants satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure in that their claims are typical of the claims of the Class, and they will fairly and adequately represent the interests of the Class.[2] As such, Movants meet the requirements of the PSLRA for appointment as Co-Lead Plaintiffs.

Accordingly, Movants respectfully request that (1) the Actions be consolidated, (2) they be appointed Co-Lead Plaintiffs and (3) Levi & Korsinsky be appointed as Lead Counsel, and Carney Bates & Pulliam be appointed as Liaison Counsel.

## STATEMENT OF RELEVANT FACTS

The Class Period begins on April 20, 2015, when Uniti began trading on the NasdaqGS. ¶ 17.[3] On February 27, 2017, the Company changed its name from Communications Sales & Leasing, Inc. to Uniti Group Inc. The Company's common stock traded on the NasdaqGS under the ticker symbol "CSAL" from the beginning of the Class Period to February 24, 2017, and under the ticker symbol "UNIT" from February 27, 2017, to the end of the Class Period. ¶ 6.

Prior to the beginning of the Class Period, Uniti filed a Form 8-K with the SEC disclosing approval of its spin-off from Windstream Holdings, Inc. ("Windstream"). ¶ 15. Simultaneously, Windstream became Uniti's main customer and Uniti began to identify itself as a real estate investment trust ("REIT") specialized in acquisition and construction of essential-to-survival infrastructure in the communications industry. ¶¶ 15, 16.

---

[2] The "Class" is comprised consisting of all persons and entities that acquired Uniti securities between April 20, 2015, and February 15, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint for Violation of the Federal Securities Laws filed in the *Safadi* Action (the "*Safadi* Complaint"), Dkt. No. 1. The facts set forth in the *Safadi* Complaint are incorporated herein by reference.

In their Information Statement, the Company stated, in pertinent part:

It is our pleasure to welcome you as a shareholder of our company, Communications Sales & Leasing, Inc. ("CS&L"). Following the distribution of no less than 80.1 percent of the outstanding shares of CS&L common stock by Windstream Holdings, Inc. to its shareholders, *CS&L will be an independent, publicly traded real estate investment trust that will own, acquire and lease distribution systems serving the communications infrastructure industry and potentially other industries. We will strive to be a significant provider of capital and financing to the communication industry.*

Our initial properties will include, among other things, an extensive communications distribution system, comprised of approximately 66,000 route miles of fiber optic cable lines, 235,000 route miles of copper cable lines, and central office land and buildings across 3 7 states that are currently owned by Windstream. This distribution system will be leased to Windstream Holdings on a long-term, triple-net basis. We expect to diversify our tenant base in the future by acquiring additional properties and leasing them to other local, regional and national telecommunications providers. We also expect to grow and diversify our portfolio through the acquisition of properties in different geographic markets, and in different asset classes.

Our goal at CS&L is to create value for our shareholders and we plan to accomplish this by growing our dividend distributions over time. CS&L initially expects to pay an annual dividend of $2.40 per share.

Emphasis added. ¶ 17.

Throughout the Class Period, Defendants issued statements that were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. ¶ 18. Specifically, Defendants failed to disclose that: (i) Uniti's financial results were not sustainable because its customer Windstream had defaulted on its unsecured notes; and (ii) as a result of the foregoing, Defendants' statements about Uniti's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis. *Id.*

The truth began to emerge on September 21, 2017 when hedge fund Aurelius Capital Master, Ltd. ("Aurelius"), the owner of more than 25% of Windstream's unsecured notes due 2023,

3

provided written notice to Windstream that the spin-off of Uniti constituted a sale and leaseback in breach of the notes' indenture. ¶ 19.

Ultimately, on February 15, 2019, United States District Judge Jesse M. Furman released its Findings of Facts and Conclusions of Law declaring that Windstream breached the indenture and awarding Aurelius a monetary judgement in the amount of $310,459,959.10 plus interest. ¶ 20.

On this news, the price of the Uniti's common stock declined $7.47 from a close of $19.98 per share of Uniti common stock on February 15, 2019, to a close of $12.51 per share of Uniti common stock on February 19, 2019, *a drop of approximately 37.39 percent.* ¶ 21. Over the course of the next three trading days, the price of the Uniti's common stock continued to plummet to close at $9.23 on February 22, 2019, *an overall decline of 53.80 percent,* further harming investors. ¶ 22.

On March 18, 2019, Uniti filed its Form 10-K for Fiscal Year 2018, with the SEC which was signed by Defendants Gunderman and Wallace (the "2018 Form 10-K"). *Avery* ¶ 62[4]. In the 2018 Form 10-K, Uniti stated that its auditors, PricewaterhouseCoopers LLP, have "substantial doubt as to whether [Uniti] could continue as a going concern within one year after the date the financial statements are issued as a result of Windstream's bankruptcy petition and its potential uncertain effects on the Master Lease." *Id.* In the 2018 Form 10-K, Uniti further downplayed the concerns stating that it was their expectation "that any disruption in payments by Windstream would be limited" because Uniti's Master Lease is essential to Windstream's operations and based

---

[4] Citations to "*Avery* ¶ __" are to paragraphs of the Class Action Complaint for Violation of the Federal Securities Laws filed in the *Avery* Action (the "*Avery* Complaint"), Dkt. No. 1. The facts set forth in the *Avery* Complaint are incorporated herein by reference.

on this, Uniti "would have enough liquidity to fund our cash needs within one year after the date the financial statements are issued." *Avery* ¶ 63.

Then, on June 24, 2019, Uniti announced a note offering of $300 million aggregate principal amount of exchangeable senior notes due 2024, with an option to purchase up to an additional $45 million aggregate principal amount of the Exchangeable Notes during a 13-day period beginning on, and including, the first day on which the Exchangeable Notes are issued. Avery ¶ 67. On this news, Uniti securities fell another 12%, or $1.31 per share, to close on June 25, 2019 at $9.38 per share. Avery ¶ 68.

**<u>ARGUMENT</u>**

## I.    Consolidation of the Actions is Appropriate

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter have been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered. 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions."  Id.

Under the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact.  See Fed. R. Civ. P. 42(a).  The Actions present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct.  The Actions name the same parties as defendants.  Because they arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions.  Accordingly, consolidation under Rule 42(a) is appropriate.

5

## II.   Movants' Appointment as Co-Lead Plaintiffs Is Appropriate

### A.   The Procedures Required by the PSLRA

The PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)   has either filed the complaint or made a motion in response to a notice;

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the

6

interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movants satisfy the foregoing criteria and are not aware of any unique defenses that the Defendants could raise against them. Therefore, Movants are entitled to the presumption that they are the most adequate plaintiffs to represent the Class and, as a result, should be appointed Co-Lead Plaintiffs in the consolidated action.

### 1.    Movants Are Willing to Serve As Class Representatives.

On October 29, 2019, Levi & Korsinsky, counsel for plaintiff Safadi caused a notice (the "Notice") to be published pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A), which announced that a securities class action had been filed against Defendants, and which advised putative class members that they had 60 days to file a motion to seek appointment as lead plaintiff in the Action.[5] Movants have reviewed the complaint in the Action and timely filed their motion indicating their willingness to serve as a class representatives. Accordingly, Movants satisfy the first requirement to serve as Co-Lead Plaintiffs for the Class.

### 2.    Movants Have the Largest Financial Interest

The Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action. As demonstrated herein, Movants have, to their knowledge, the largest financial interest in the relief sought by the Class. *See* Nespole Decl., Ex. B. The movant who has the largest financial interest in this litigation and also meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See Averdick v. Hutchinson Tech., Inc.,* No. 05-2095, 2006 U.S. Dist. LEXIS 47445, *8-9 (D. Minn. Feb. 9, 2006); *see also Weltz v. Lee,*

---

[5] The Notice was published over *Globe Newswire*, a widely-circulated national business-oriented wire service. A copy of the Notice is attached as Exhibit C to the Declaration of Gregory M. Nespole ("Nespole Decl.").

199 F.R.D. 129,132 (S.D.N.Y. 2001); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127–28 (S.D.N.Y. 2011); *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007).

Within the Class Period, Movants transacted in Uniti securities in reliance upon the materially false and misleading statements issued by the Defendants and was injured thereby. Movants suffered substantial losses of approximately $245,358.98 during the Class Period as a result of the Defendants' alleged fraudulent statements. *See* Nespole Decl., Ex. B. Movants thus have a significant financial interest in the outcome of these cases. To the best of Movants' knowledge, there is no other applicant who has sought, or is seeking, appointment as lead plaintiff that has a larger financial interest in the relief sought by the Class.

    **B.**    **Movants Satisfy the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure.**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Rule 23, only two—typicality and adequacy—are recognized as appropriate for consideration at this stage. *See Minneapolis*

*Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.,* No. 4:08-CV-1411 (CEJ), 2008 U.S. Dist. LEXIS 104033, *4-5 (E.D. Mo. Dec. 12, 2008) (citing *Reese v. Bahash*, 248 F.R.D. 58, 61-62 (D.D.C. Feb. 11, 2008)); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Weltz*, 199 F.R.D. at 133 (considering only typicality and adequacy on a motion for lead plaintiff). Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *See MEMC,* 2008 U.S. Dist. LEXIS 104033 at*4-5. Consequently, in deciding a motion to serve as Co-Lead Plaintiffs, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Weltz*, 199 F.R.D. at 133; *Huang v. Acterna Corp.,* 220 F.R.D. 255, 259 (D. Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998). As detailed below, Movants satisfy both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying their appointment as Co-Lead Plaintiffs.

**1.   Movants' Claims Are Typical of the Claims of All Class Members.**

Under Rule 23(a), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Movants plainly meet the typicality requirement of Rule 23 because they: (i) suffered the same injuries as the absent class members; (ii) suffered as a result of the same course of conduct by Defendants; and (iii) possessed claims based on the same legal issues. *See Averdick*, 2006 U.S. Dist. LEXIS 47445 at *10-11; *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which the other class members' claims and injuries arise"); *see also Milestone Scientific*, 183 F.R.D. at 414–15. Rule 23 does not require that the named plaintiff be identically situated with all

9

class members. It is enough if their situations share a common issue of law or fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808–09 (3d Cir. 1984). Further, a finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movants' claims are identical to, and neither compete nor conflict with, the claims of the other Class members. Movants, like the other members of the Class, transacted in Uniti securities during the Class Period and based upon their reliance on Defendants' materially false and misleading statements, was damaged thereby. Thus, Movants' claims are typical, if not identical, to those of the other members of the Class because Movants suffered losses similar to those of other Class members and their losses result from the Defendants' common course of wrongful conduct. Accordingly, Movants satisfy the typicality requirement of Rule 23(a)(3). *See Kinermon v. Cadogan,* No. 03-1194, 2003 U.S. Dist. LEXIS 25861, *5 (D. Minn. June 23, 2003); Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### 2. Movants Will Adequately Represent the Class.

Moreover, Movants are adequate representatives of the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative class and whether there is evidence of any antagonism between the interests of the movants and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B); *see Drexel Burnham*, 960 F.2d at 291; *Weltz*, 199 F.R.D. at 133.

Movants' interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Movants' interests and those of the Class, but

10

Movants have a compelling interest in prosecuting the Actions based on the financial losses they have suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with Movants' identical interests with the members of the Class, demonstrates that they will vigorously pursue the interests of the Class. In addition, Movants have retained counsel highly experienced in prosecuting securities class actions and has submitted their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

Accordingly, at this stage of the proceedings, Movants have made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and , therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In addition, because Movants have the largest financial interest at stake from the Defendants' alleged wrongdoing, they are, therefore, the presumptive lead plaintiffs in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead the Actions.

### 3.  Approving Movants' Choice of Counsel Is Appropriate.

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

As noted above, Movants have selected and retained Levi & Korsinsky as the proposed Lead Counsel and Carney Bates & Pulliam as Liaison Counsel. Levi & Korsinsky attorneys have extensive experience in successfully prosecuting complex securities class actions such as these Actions and are well-qualified to represent the Class. *See* Nespole Decl., Exs. D, E (the firm résumés of Levi & Korsinsky and Carney Bates & Pulliam, respectively); *see also Francisco v. Abengoa, S.A.*, No. 15-cv-6279 (ER), 2016 U.S. Dist. LEXIS 68145, at *21 (S.D.N.Y. May 24,

11

2016) (noting that given "Levi & Korsinsky's track record, the Court, like many others in this Circuit before it, concludes that the firm is qualified to serve as lead counsel of the class"); *Levin v. Res. Capital Corp.*, No. 15-cv-7081 (LLS), 2015 U.S. Dist. LEXIS 162377, at *4 (S.D.N.Y. Oct. 5, 2016) (appointing Levi Korsinsky as lead counsel and noting that it is "a firm which is well qualified and has successfully served as lead counsel or co-lead counsel in numerous complex securities class actions"); *Pope v. Navient Corp.*, No. 17-cv-8373 (RBK/AMD), 2018 U.S. Dist. LEXIS 17340, at *13–14 (D.N.J. Feb. 2, 2018) (appointing Levi & Korsinsky as lead counsel as it "is clearly capable of handling this matter—the firm has extensive experience in private securities litigation and has received numerous favorable judgments in its past representations."); *Inchen Huang v. Depomed, Inc.,* 289 F. Supp. 3d 1050, 1055 (N.D. Cal. 2017) (appointing Levi Korsinsky as lead counsel); *Polat v. Regulus Therapeutics, Inc.*, No. 3:17-cv-00182-BTM-RBB, 2017 U.S. Dist. LEXIS 177872, at *3 (S.D. Cal. Oct. 26, 2017) (same).

### CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court: (1) consolidate the Actions; (2) appoint them as Co-Lead Plaintiffs on behalf of the Class; (3) approve their selection of Levi & Korsinsky, LLP as Lead Counsel and Carney Bates & Pulliam as Liaison Counsel; and (4) grant such other and further relief as the Court may deem just and proper.

*[Signatures On Following Page]*

12

Dated: December 30, 2019

Respectfully Submitted,

Randall K. Pulliam
**CARNEY BATES & PULLIAM, PLLC**
Randall K. Pulliam (ABN 98105)
519 W. 7th Street
Little Rock, Arkansas 72201
Tel: (501) 312-8500
Fax: (501) 312-8505
Email: rpulliam@cbplaw.com

*Attorneys for Movant and Proposed Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP (Trial Counsel)**
Gregory M. Nespole (*pro hac vice forthcoming*)
55 Broadway, 10th Floor
New York, NY I 0006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: gnespole@zlk.com

*Attorneys for Movant and Proposed Lead Counsel for the Class*

13