**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| IBRAHIM E. SAFADI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | **No. 4:19-cv-00756-BSM** |
| | ) | |
| Plaintiff, | ) | **CLASS ACTION** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| UNITI GROUP INC. f/k/a COMMUNICATIONS SALES & LEASING, INC., MARK A. WALLACE, and KENNETH A. GUNDERMAN | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| PHIL QUEDER, Individually and on Behalf of All Others Similarly Situated, | ) ) | |
| | ) | **No. 4:19-cv-00873-BSM** |
| Plaintiff, | ) | |
| | ) | **CLASS ACTION** |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| UNITI GROUP INC. f/k/a COMMUNICATIONS SALES & LEASING, INC., MARK A. WALLACE, and KENNETH A. GUNDERMAN, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

(additional case caption continued on following page)

MICHAEL AVERY, on behalf of himself      )
and all others similarly situated,       )
                                         )    **No. 4:19-cv-00927-LPR**
                 Plaintiff,              )
                                         )
v.                                       )
                                         )    **JURY TRIAL DEMANDED**
UNITI GROUP INC., KENNETH A.             )
GUNDERMAN, MARK A. WALLACE,              )
                                         )
                 Defendants.             )
                                         )
                                         )


**MEMORANDUM IN SUPPORT OF THE VON WALDS' MOTION FOR
CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF LEAD AND LIAISION COUNSEL**

## I.      PRELIMINARY STATEMENT

Conrad Von Wald and Criselda Von Wald ("the Von Walds") respectfully submit this memorandum of law in support of their motion pursuant to the Securities and Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act ("PSLRA") (15 U.S.C. § 78u-4(a)(3)(B)), for an order: (1) consolidating related securities class actions filed against Uniti Group Inc. f/k/a Communication Sales & Leasing, Inc. ("Uniti" or "the Company") and other Defendants;[1] (2) appointing the Von Walds as Lead Plaintiff pursuant to the PSLRA; (3) approving their selection of Kahn Swick & Foti, LLC as Lead Counsel, and McDaniel, Wolff & Benca, PLLC as liaison counsel; and (4) granting such other relief as the Court may deem just and proper.

The Von Walds fully understand their duties and responsibilities to the Class, and are willing and able to oversee the vigorous prosecution of this action. As described in the Certifications and Loss Chart attached to the Declaration of Rufus E. Wolff in Support of the Motion of the Von Walds to Consolidate Related Actions, to Be Appointed Lead Plaintiff, and to Approve Proposed Lead Plaintiff's Choice of Counsel ("Wolff Decl.") at Exhibits A through C, the Von Walds have suffered substantial losses because of their purchases of Uniti common stock from April 20, 2015 through June 24, 2019, inclusive (the "Class Period").[2] To the best of their

[1] The related securities class actions include: *Safadi v. Uniti Group Inc., et al.*, No. 4:19-cv-00756 (E.D. Ark.), filed on October 25, 2019 (the "*Safadi* Complaint"); *Queder v. Uniti Group Inc., et al.*, No. 4:19-cv-00873 (E.D. Ark.), filed on December 6, 2019 (the "*Queder* Complaint"); and *Avery v. Uniti Group Inc., et al.*, No. 4:19-cv-00927 (E.D. Ark.), filed on December 23, 2019 (the "*Avery* Complaint").

[2] The *Safadi* Complaint and the *Queder* Complaint allege a Class Period of April 20, 2015 through February 15, 2019 whereas the *Avery* Complaint alleges a Class Period of April 20, 2015 through June 24, 2019, all dates inclusive. For the purpose of this Motion, the Von Walds adopt the most expansive Class Period set forth in the *Avery* Complaint. *See, e.g.*, *Horowitz v. Sunedison, Inc.*, No. 15-cv-1769, 2016 U.S. Dist. LEXIS 34835, at *9-10 (E.D. Mo. Mar. 24, 2016) ("Courts should use the most inclusive class period and select as lead plaintiff the movant with the largest

1

knowledge, the Von Walds have sustained the largest loss of any investor seeking to be appointed Lead Plaintiff.

In addition to evidencing the largest financial interest in the outcome of this litigation, the Von Walds' Certifications demonstrate their intent to serve as Lead Plaintiff in this matter, including their cognizance of the duties of serving in that role. *See* Wolff Decl. at Exs. A-B. Moreover, the Von Walds satisfy both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and are presumptively the "most adequate plaintiff."

Accordingly, the Von Walds respectfully submit this Memorandum of Law in Support of their Motion, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for an Order: (1) consolidating all related actions; (2) appointing the Von Walds as Lead Plaintiff in this action pursuant to Section 21D(a)(3)(B) of the Exchange Act; and (3) approving their selection of Kahn Swick & Foti, LLC as Lead Counsel for the Class, and McDaniel, Wolff & Benca, PLLC as liaison counsel.

## II.    PROCEDURAL BACKGROUND

The first lawsuit against Defendants, *Safadi v. Uniti Group Inc., et al.*, No. 4:19-cv-00756, was filed in the Eastern District of Arkansas on October 25, 2019. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on October 29, 2019, the first Notice that a class action had been initiated against Defendants was published on *Globe Newswire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than December 30, 2019.  *See* Wolff Decl. Ex. D; 15 U.S.C. § 78u-4(a)(3)(A)(i).

financial interest under that period because the "class" should be defined as the broadest, most inclusive potential class to view the facts in the light most favorable to the plaintiffs.").

2

The Von Walds are Class Members who have timely filed this motion within the 60-day period following publication of the October 29, 2019 Notice. *See* Wolff Decl. at Exs. A-B.

## III.   STATEMENT OF FACTS

Uniti3 is a Maryland corporation and real estate investment trust with its principle executive offices located in Little Rock, Arkansas.4 Uniti's main focus is acquiring and constructing fiber optic broadband networks, wireless communications towers, copper and coaxial broadband networks, and data centers.5 The Company's common stock traded on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "CSAL" from the beginning of the Class Period to February 24, 2017, and under the ticker symbol "UNIT" from February 27, 2017 to the end of the Class Period.6 At all relevant times, Defendant Kenneth A. Gunderman ("Gunderman") was the Company's Chief Executive Officer ("CEO") and President, while Defendant Mark A. Wallace ("Wallace") was the Company's Chief Financial Officer ("CFO"), Treasurer, and Executive Vice President.7

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants failed to disclose that: (i) the sale-leaseback transaction between Windstream Holdings, Inc. ("Windsteam") and Uniti was a highly risky attempt to make an end-run around the restrictive covenants in the indenture; (ii) Windstream was violating the restrictive covenants contained in its notes by entering into the sale-leaseback arrangement with Uniti; (iii) Uniti's financial results were not sustainable because its customer Windstream had defaulted on its unsecured notes; and (iv) as a result of the

---

3 Prior to February 27, 2017, the Company was known as Communications Sales & Leasing, Inc.
4 *Safadi* Complaint at ¶ 6; *Queder* Complaint at ¶ 6.
5 *Avery* Complaint at ¶ 18.
6 *Safadi* Complaint at ¶ 6; *Queder* Complaint at ¶ 6.
7 *Safadi* Complaint at ¶¶ 7-8; *Queder* Complaint at ¶¶ 7-8.

foregoing, Defendants' statements about Uniti's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.[8]

Prior to the Class Period, Uniti was incorporated as a wholly-owned subsidiary of telecommunications company Windstream.[9] On March 26, 2015, Uniti filed a Form 8-K with the SEC disclosing approval of its spin-off from Windstream ("Uniti Spin-Off"); simultaneously, Windstream became Uniti's largest customer.[10] In connection with the spin-off and in exchange for Uniti issuing common stock, indebtedness, and cash obtained from borrowings under its senior credit facilities, Windstream sold Uniti some of its telecommunication network assets, including fiber and copper networks.[11] Uniti would then lease those assets back to Windstream via a "Master Lease" Agreement.[12] Although Uniti derived a substantial portion of its leasing revenue from the Master Lease with Windstream, the direct beneficiaries were the Windstream operating subsidiaries, who in effect were the *de facto* lessees of the fiber and copper network assets.[13]

This Master Lease Agreement allowed Windstream to circumvent restrictive covenants included in an indenture that Windstream entered into in January of 2013 when it issued senior unsecured notes, which were guaranteed by some of Windstream's subsidiaries in an aggregate principal amount of $700 million.[14] One of those restrictive covenants prohibited Windstream's operating subsidiaries from selling Windstream's fiber and copper network assets to a third party and then leasing those assets back.[15] Not only was the investing public unaware of the restrictive

[8] *Safadi* Complaint at ¶ 18; *Queder* Complaint at ¶ 18; *Avery* Complaint at ¶ 16.
[9] *Avery* Complaint at ¶ 17.
[10] *Safadi* Complaint at ¶ 15; *Queder* Complaint at ¶ 15; *Avery* Complaint at ¶ 21.
[11] *Avery* Complaint at ¶¶ 19-20.
[12] *Avery* Complaint at ¶ 20.
[13] *Id*.
[14] *Avery* Complaint at ¶ 22.
[15] *Id*.

covenants, but they also did not know that a violation of these restrictive covenants could result in the noteholders taking actions to accelerate the notes, thus obligating Windstream to immediately repay hundreds of millions of dollars.[16] The results of such violation could bankrupt Windstream and subject Uniti to severe financial consequences to its operating results, liquidity, access to credit, and ability to satisfy existing debts.[17] Windstream and Defendants knew that the Master Lease was a violation of the indenture but repeatedly withheld the information from investors throughout the Class Period.[18]

On April 20, 2015, the same day that the Class Period begins, Uniti commenced trading on the NASDAQ.[19] The Company had previously filed an Information Statement whereby it made the following representations:

> It is our pleasure to welcome you as a shareholder of our company, Communications Sales & Leasing, Inc. ("CS&L"). Following the distribution of no less than 80.1 percent of the outstanding shares of CS&L common stock by Windstream Holdings, Inc. to its shareholders, ***CS&L will be an independent, publicly traded real estate investment trust that will own, acquire and lease distribution systems serving the communications infrastructure industry and potentially other industries. We will strive to be a significant provider of capital and financing to the communication industry.***
>
> Our initial properties will include, among other things, an extensive communications distribution system, comprised of approximately 66,000 route miles of fiber optic cable lines, 235,000 route miles of copper cable lines, and central office land and buildings across 3 7 states that are currently owned by Windstream. This distribution system will be leased to Windstream Holdings on a long-term, triple-net basis. We expect to diversify our tenant base in the future by acquiring additional properties and leasing them to other local, regional and national telecommunications providers. We also expect to grow and diversify our portfolio through the acquisition of properties in different geographic markets, and in different asset classes.

---

[16] *Avery* Complaint at ¶¶ 22-23.
[17] *Avery* Complaint at ¶ 23.
[18] *Avery* Complaint at ¶ 33.
[19] *Safadi* Complaint at ¶ 17; *Queder* Complaint at ¶ 17.

> Our goal at CS&L is to create value for our shareholders and we plan to accomplish this by growing our dividend distributions over time. CS&L initially expects to pay an annual dividend of $2.40 per share.[20]

That same day, Defendant Gunderman informed Windstream shareholders in a letter, filed in a Form 8-K, that Uniti would "lease the assets of Windstream Holdings through an exclusive long-term triple-net lease."[21] Gunderman further highlighted the financial stability of Windstream and its ability to pay the lease obligation for the foreseeable future.[22]

On February 23, 2017, Uniti filed its Form 10-K for Fiscal Year 2016 ("2016 Form 10-K") with the SEC, in which the Company indicated that Windstream was the "lessee of the Distribution Systems pursuant to the Master Lease" and highlighted the risk that Windstream represented a significant portion of its business.[23] Uniti, however, did not disclose that the Windstream operating subsidies were the *de facto* lessees, that there was risk associated with the sale-leasebacks, or that there was a risk of violating the restrictive covenants in the indenture.[24] Uniti similarly failed to mention the risk relating to violations of the restrictive covenants in its August 3, 2017 Form 10-Q.[25] What's more, in Uniti's August 3, 2017 earnings call, Defendant Gunderman characterized the lease payments to Uniti from Windstream as "very, very safe and a very high-priority payment from their perspective," and they "remain highly confident in the lease payment" in response to a question about Windstream's decision to cut its dividend.[26]

Despite these representations, on September 21, 2017, Aurelius Capital Master, Ltd. ("Aurelius"), a hedge fund and owner of more than 25 percent of Windstream's unsecured notes

---

[20] *Safadi* Complaint at ¶ 17; *Queder* Complaint at ¶ 17; *Avery* Complaint at ¶ 34.
[21] *Avery* Complaint at ¶ 35.
[22] *Id.*
[23] *Avery* Complaint at ¶¶ 39-41.
[24] *Id*.
[25] *Avery* Complaint at ¶ 43.
[26] *Avery* Complaint at ¶ 44.

6

due 2023, provided written notice to Windstream that the Uniti Spin-Off constituted a sale-leaseback transaction in breach of the notes' indenture.27 In response, Windstream filed a Form 8-K on September 25, 2017, acknowledging that it received the Notice of Default but denying that any prohibited sale-leaseback transaction occurred.28 The market, however, was unconvinced. In response to the disclosure, the price of common stock declined nearly ten percent, from $17.36 per share on September 25, 2017 to $15.65 per share on September 26, 2017.29 The price of Uniti stock continued to decline on September 27, 2017, and by September 29, 2017, with no other material company-specific information disclosed, the price fell another seven percent to $14.66 per share.30

Just a few days later, on October 4, 2017, Defendant Wallace participated in the Deutsche Bank Leveraged Finance Conference wherein he made no mention of the Windstream default allegation, choosing instead to tout the structure of the Windstream lease.31 Moreover, Defendant Wallace asserted that Windstream's decision to cut the dividend was actually "credit enhancing" and that Uniti had no concerns about Windstream's financial condition.32 Regardless of Defendant Wallace's representations, about a week later, U.S. Bank filed the indenture litigation, alleging that the 2015 Uniti Spin-Off and sale-leaseback transaction violated the indenture.33

On November 2, 2017, Uniti acknowledged in its Form 10-Q that it received the Notice of Default. The Company, however, failed to disclose that it was aware of this risk or that it had downplayed the magnitude of risk.34 In an earnings call that same day, Defendant Gunderman

---

27 *Safadi* Complaint at ¶ 19; *Queder* Complaint at ¶ 19; *Avery* Complaint at ¶45.
28 *Avery* Complaint at ¶ 46.
29 *Avery* Complaint at ¶ 47.
30 *Id*.
31 *Avery* Complaint at ¶ 48.
32 *Avery* Complaint at ¶ 49.
33 *Avery* Complaint at ¶ 50.
34 *Avery* Complaint at ¶ 51.

informed participants that the Company would not respond to questions about the Windstream litigation, but "remind[ed]" everyone that Windstream had "very competent counsel and advisors involved in the initial spin-off."[35] Just five days later, during a Wells Fargo Media & Telecom Conference, Defendant Gunderman voiced his frustration that the validity of the sale-leaseback transaction was being questioned and emphasized his confidence in the lease payments.[36] In response to Defendant Gunderman's positive remarks, the price of Uniti stock reversed its decline and rose more than 14 percent from November 7, 2017 through February 15, 2017. [37]

Regardless of Defendant Gunderman's representations, on February 15, 2019, United States District Judge Jesse M. Furman released Findings of Facts and Conclusions of Law declaring that Windstream breached the indenture and awarding Aurelius a monetary judgment in excess of $300 million.[38] In response to this news, the price of Uniti's common stock declined $7.47 per share, or more than 37 percent, from a close of $19.98 per share on February 15, 2019 to a close of $12.51 per share on February 19, 2019.[39] The price of Uniti's common stock continued to plummet over the course of the next three trading days, closing at $9.23 per share on February 22, 2019, an overall decline of more than 53 percent.[40] Windstream filed for Chapter 11 bankruptcy on February 25, 2019 as a result of the decision in the indenture litigation.[41]

On March 18, 2019, Uniti filed its Form 10-K for Fiscal Year 2018, stating that its auditors had "substantial doubt as to whether [Uniti] could continue as a going concern within one year after the date the financial statements [were] issued as a result of Windstream's bankruptcy petition

---

[35] *Avery* Complaint at ¶ 52.
[36] *Avery* Complaint at ¶ 53.
[37] *Avery* Complaint at ¶ 54.
[38] *Safadi* Complaint at ¶ 20; *Queder* Complaint at ¶ 20; *Avery* Complaint at ¶ 55.
[39] *Safadi* Complaint at ¶ 21; *Queder* Complaint at ¶ 21.
[40] *Safadi* Complaint at ¶ 22; *Queder* Complaint at ¶ 22; *Avery* Complaint at ¶ 59.
[41] *Avery* Complaint at ¶ 60.

and its potential uncertain effects on the Master Lease."[42] A going concern opinion letter was also included in Uniti's 2018 audited financial statements because not doing so would have been a breach of the covenants in their credit agreement.[43] Nevertheless, Uniti "expect[ed] Windstream [would] continue to perform on the Master Lease and believe[d] it [was] unlikely that Windstream [would] reject the Master Lease because the Master Lease [was] central to Windstream's operations."[44] In an attempt to downplay concerns, Uniti expressed "that any disruption in payments by Windstream would be limited," and as a result, Uniti "would have enough liquidity to fund [its] cash needs within one year after the date the financial statements [were] issued."[45]

Despite Uniti's repeated assertions that they did not have liquidity concerns, on June 24 2019, Uniti announced a note offering of $300 million aggregate principal amount of exchangeable senior notes due 2024, with an option to purchase up to an additional $45 million aggregate principal amount of the Exchangeable Notes during a 13-day period beginning on, and including the first day on which the Exchangeable Notes were issued.[46] In response, Uniti common stock fell from $10.69 per share on June 24, 2019, to $9.38 per share on June 25, 2019.[47]

During the Class Period, Defendants materially misled the investing public, thereby inflating the value of the stock. The material misstatements resulted in the Von Walds and other members of the Class purchasing Uniti securities for inflated values, thus causing damages to the Class when the truth was revealed and the price of the stock plummeted in value.

---

[42] *Avery* Complaint at ¶ 62.
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Avery* Complaint at ¶ 67.
[47] *Avery* Complaint at ¶ 68.

## IV.        ARGUMENT

### A.        THE COURT SHOULD CONSOLIDATE THE ABOVE-CAPTIONED CASES

Consolidation of securities class actions is appropriate where, as here, the actions involve common questions of law and fact. *See Chung v. Tyson Foods, Inc.*, No. 5:16-cv-5354, 2017 U.S. Dist. LEXIS 10212, at *11 (W.D. Ark. Jan. 25, 2017). Courts recognize that securities class actions, in particular, are ideally suited to consolidation pursuant to Fed. R. Civ. P. 42(a). *Id*; *Kinermon v. Cadogan*, No. 03-cv-1194, 2003 U.S. Dist. LEXIS 25861, at *2-3 (D. Minn. June 23, 2003) ("[T]he PSLRA contemplates consolidation when multiple class actions have been filed and the suits involve substantially similar claims."). Here, the above-captioned cases (the "Related Actions") are ideally suited for consolidation.

The Related Actions name the same Defendants and involve similar allegations that Defendants made false and misleading statements concerning the Company's business operations. The above-captioned cases also involve common legal issues by asserting claims under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Accordingly, this Court should consolidate the Related Actions.

### B.        THE VON WALDS SHOULD BE APPOINTED LEAD PLAINTIFF

#### 1.        The PSLRA's Procedural Requirements

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B)(i). First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, notice was published notice on *Globe Newswire* on October 29, 2019, indicating that applications for

10

appointment as Lead Plaintiff must be made no later than December 30, 2019. *See* Wolff Decl. Ex. D. Within 60 days after publication of the required notice(s), any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. *See* 15 U.S.C. §§ 78u-4(a)(3)(A-B).

Next, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of class members. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who the "most adequate plaintiff" is, the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> > (aa) has either filed the complaint or made a motion in response to a notice…
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii); *see Chung*, 2017 U.S. Dist. LEXIS 10212, at *9-10; *see also Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 4:08-CV-1411, 2008 U.S. Dist. LEXIS 104033, *4 (E.D. Mo. Dec. 12, 2008). Only by a showing of proof that a lead plaintiff will not fairly and adequately represent the Class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the putative class, will this presumption be overcome. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### 2. The Von Walds are the "Most Adequate Plaintiff"

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §§ 783)(A-B) expires on December 30, 2019. Pursuant to the provisions of the

11

PSLRA and within the requisite time frame after publication of the required notice (timely published on October 29, 2019), the Von Walds timely move this Court for appointment as Lead Plaintiff on behalf of all members of the class.

Moreover, the Von Walds have sustained a substantial loss from their investment in Uniti common stock and have shown their willingness to represent the class by signing Certifications detailing their transactions in Uniti common stock during the Class Period. *See* Wolff Decl. Exs. A-B. As demonstrated by their certifications, the Von Walds are prepared to consult with counsel on a regular basis, prior to every major litigation event, and direct the course of litigation, with the benefit of counsel's advice. In addition, the Von Walds have selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed Lead Counsel, Kahn Swick & Foti, LLC, is attached as Exhibit E to the Wolff Declaration.

### a.   The Von Walds Have the "Largest Financial Interest" in the Relief Sought by the Class

During the Class Period, as evidenced by the accompanying signed certifications, the Von Walds purchased Uniti common stock in reliance upon the materially false and misleading statements issued by the Defendants and were injured thereby. *See* Wolff Decl. Exs. A-B. In addition, the Von Walds incurred a substantial loss on their transactions in Uniti common stock as detailed in their loss chart. *See* Wolff Decl. Ex. C. To the best of their knowledge, the Von Walds thus have the largest financial interest in the relief sought. Therefore, the Von Walds satisfy all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

12

**b.    The Von Walds Satisfy the Requirements of Rule 23**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a)  provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Chung*, 2017 U.S. Dist. LEXIS 10212, at *13 citing Fed. R. Civ. P. 23(a)(23)(3)-(4); *Reese v. Bahash*, 248 F.R.D. 58, 62 (D.D.C. 2008) ("Significantly, although Rule 23(a) includes four requirements…the presumptive lead plaintiff need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." (quotation omitted)). As detailed below, the Von Walds satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiff.

**i.    The Von Walds' Claims are Typical of the Claims of All the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise

13

to claims of other class members, and when the claims are based on the same legal theory. *See Chung*, 2017 U.S. Dist. LEXIS 10212, at \*14 ("The typicality requirement is satisfied 'when each class member makes similar legal arguments to prove the defendant's liability.'"); *see also Minneapolis Firefighters' Relief Ass'n,* 2008 U.S. Dist. LEXIS 104033, \*6 (same).

In this case, the typicality requirement is met because the Von Wands' claims are identical, non-competing, and non-conflicting with the claims of the other Class Members. The Von Walds and all the other Class Members: (1) purchased Uniti common stock during the Class Period; (2) purchased Uniti common stock in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (3) suffered damages by purchasing artificially inflated common stock and then suffered harm when the truth was revealed and the inflation was removed from the stock price. Thus, the Von Walds' claims are typical of those of other class members since their claims and the claims of other class members resulted from the same illegal practices.

### ii.    The Von Walds Will Adequately Represent the Class

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of the Movant to the existence of any conflicts between the interests of the Movant, on the one hand, and the members of the class, on the other hand. The standard for adequacy of representation under Rule 23(a)(4) is met: (1) by the absence of potential conflicts between the named plaintiff and the other class members; and (2) if the proposed class representative's choice of counsel can prosecute vigorously on behalf of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Here, the Von Walds are adequate representatives of the Class. As evidenced by the injuries suffered by the Von Walds, who purchased Uniti common stock at prices that were artificially inflated by Defendants' materially false and misleading statements, the interests of the Von Walds

14

are clearly aligned with the members of the class, and there is no evidence of any antagonism between the Von Walds' interests and those of the other members of the class. Furthermore, the Von Walds have retained competent and experienced counsel to prosecute these claims. The Von Walds' proposed Lead Counsel is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, the Von Walds *prima facie* satisfy the commonality, typicality, and adequacy requirements of Rule 23 for the purposes of this motion.

> **C.     THE COURT SHOULD APPROVE THE VON WALDS' SELECTION OF LEAD COUNSEL**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. The Von Walds have selected Kahn Swick & Foti, LLC as Lead Counsel, a firm that has substantial expertise and experience in the prosecution of shareholder and securities class actions in federal and state courts across the country. *See* Wolff Decl. Ex. E. Thus, the Court may be assured that in granting this motion, the class will continue to receive legal representation of the highest caliber.

## V.     CONCLUSION

For all of the foregoing reasons, the Von Walds respectfully request that this Court: (1) consolidate the Related Actions, (2) appoint them to serve as lead plaintiffs in the consolidated action; (3) approve their selection of Kahn Swick & Foti, LLC as Lead Counsel for the putative Class and McDaniel, Wolff & Benca, PLLC as liaison counsel; and (4) grant such other and further relief as the Court may deem just and proper.

15

Dated: December 30, 2019

Respectfully submitted,

**The Von Walds**

*/s/ Scott Richardson*
Dustin B. McDaniel (AR 99011)
Rufus E. Wolff (AR 85175)
Scott Richardson (AR 2001208)
McDaniel, Wolff & Benca, PLLC
1307 West Fourth Street
Little Rock, AR 72201
Telephone: (501) 954-8000 Ext. 112
Facsimile: (866) 419-1601
dmcdaniel@mrcfirm.com
rwolff@wolfflawfirm.net
scott@mrcfirm.com

*Local Counsel for Movants Conrad and Criselda Von Wald and Proposed Liaison Counsel for the Class*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller
250 Park Avenue, Suite 2040
New York, New York 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
1100 Poydras St., Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com

*Counsel for Movants Conrad and Criselda Von Wald and Proposed Lead Counsel for the Class*

16

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 30, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing via U.S. first-class mail to any non-CM/ECF participants.

*/s/ Scott Richardson*

17