# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| IBRAHIM E. SAFADI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITI GROUP INC. f/k/a COMMUNICATIONS SALES & LEASING, INC., MARK A. WALLACE, and KENNETH A. GUNDERMAN,<br><br>    Defendants. | Case No. 4:19-cv-00756-BSM |
| MICHAEL AVERY, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITI GROUP INC., KENNETH A. GUNDERMAN, and MARK A. WALLACE,<br><br>    Defendants. | Case No. 4:19-cv-00927-LPR |

**MEMORANDUM OF LAW IN SUPPORT OF TROY BOURQUE'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, <u>AND APPROVAL OF LEAD COUNSEL</u>**

Troy Bourque ("Movant") respectfully submits this memorandum of law in support of his motion pursuant to the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*. (the "PSLRA") for an Order: (1) consolidating the above-captioned actions; (2) appointing Movant as Lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(B); (3) approving Movant's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel and Eldridge Brooks, PLLC ("EB") as Liaison Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v); and (4) granting such other relief as the Court may deem to be just and proper (the "Motion").

## I. PRELIMINARY STATEMENT

This is a class action on behalf of persons and entities that acquired Uniti Group Inc. f/k/a Communications Sales & Leasing, Inc. ("Uniti" or the "Company") securities between April 20, 2015 and June 24, 2019, inclusive (the "Class Period").

This action is governed by the PSLRA, which calls for the Court to appoint a lead plaintiff and lead counsel to direct the litigation. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) and (v). When considering the appointment of a lead plaintiff under the PSLRA, the Court must presume that the movant or movants with the largest financial interest in the relief sought by the class action that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is the "most adequate plaintiff" – *i.e.*, the plaintiff most capable of adequately representing the interests of class members. The PSLRA provides that the Court shall appoint the most adequate plaintiff as lead plaintiff absent proof that rebuts the presumption of adequacy.

Movant believes that he is the "most adequate plaintiff" as defined by the PSLRA and should be appointed as lead plaintiff based on his financial losses suffered as a result of defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, Movant satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as

his claims are typical of other class members' claims, and he is committed to fairly and adequately representing the interests of the class. Thus, pursuant to the PSLRA's lead plaintiff provision, Movant respectfully submits that he is presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the class.

Additionally, Movant's selection of Glancy Prongay & Murray LLP as Lead Counsel and Eldridge Brooks, PLLC as Liaison Counsel for the Class should be approved because GPM has substantial expertise in securities class action litigation and the experience and resources to efficiently prosecute this action.

## II.   FACTUAL BACKGROUND[1]

Uniti purports to be real estate investment trust ("REIT") specialized in acquisition and construction of essential-to-survival infrastructure in the communications industry. In February 2014, Uniti was incorporated as a wholly-owned subsidiary of Windstream Holdings, Inc. ("Windstream") and spun-off from Windstream in 2015.

On September 21, 2017, hedge fund Aurelius Capital Master, Ltd. ("Aurelius"), which owned more than 25% of Windstream's unsecured notes due 2023, provided written notice to Windstream that the spin-off of Uniti constituted a sale and leaseback in breach of the notes' indenture.

On September 25, 2017, Windstream acknowledged receipt of the notice of default but denied that any prohibited sale-leaseback transaction occurred.

On this news, the Company's share price fell $1.71, or nearly 10%, to close at $15.65 per share on September 26, 2017, on unusually heavy trading volume. Over the next two trading

---

[1] This section is adapted from the allegations in the complaints filed in the above-captioned actions.

2

sessions, the stock price continued to decline by 7% to close at $14.66 per share on September 27, 2017.

On February 15, 2019, a district court declared that Windstream breached the indenture and awarded Aurelius over $310 million plus interest. The court also held that Windstream was "judicially estopped from denying that the [Windstream operating subsidiaries] 'lease' the Transferred Assets."

On this news, the Company's share price fell $7.47, or over 37%, to close at $12.51 per share on February 19, 2019, on unusually heavy trading volume. Over the next three trading sessions, the stock price continued to decline by $3.28, to close at $9.23 per share on February 22, 2019, on unusually heavy trading volume.

On June 24, 2019, Uniti announced a note offering of $300 million aggregate principal amount of exchangeable senior notes due 2024, with an option to purchase up to an additional $45 million aggregate principal amount under certain conditions.

On this news, the Company's share price fell $1.31, or approximately 12%, to close at $9.38 per share on June 25, 2019, on unusually heavy trading volume.

Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (i) that the sale-leaseback transaction between Windstream and Uniti was a highly risky attempt to make an end-run around the restrictive covenants in the Indenture; (ii) that Windstream was violating the restrictive covenants contained in the notes by entering into the sale-leaseback arrangement with Uniti and that this violation was going to lead to the noteholder accelerating the notes obligating Windstream to immediately repay hundreds of millions of dollars which would bankrupt

Windstream and have severe financial consequences for Uniti; (iii) that Uniti's financial results were not sustainable because its customer Windstream had defaulted on its unsecured notes; (iv) that Uniti was running out of sufficient liquidity and would soon need to issue additional debt if it was to continue operations; (v) that, as a result of the foregoing, Defendants' statements about Uniti's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

### III. PROCEDURAL BACKGROUND

On October 25, 2019, Ibrahim E. Safadi commenced the above-captioned case against Uniti in this District, *Safadi v. Uniti Group Inc. f/k/a Communications Sales & Leasing, Inc., et al.*, Case No. 4:19-cv-00756 (the "*Safadi* Action"). The class period defined in the *Safadi* Action is from April 20, 2015 to February 15, 2019, both dates inclusive.

On December 23, 2019, another action was filed making similar allegations against the same defendants, captioned *Avery v. Uniti Group Inc., et al.*, Case No. 4:19-cv-00927 (the "*Avery* Action," and together with the *Safadi* Action, the "Related Actions"). The class period defined in the *Avery* Action is from April 20, 2015 to June 24, 2019, both dates inclusive.

### IV. ARGUMENT

#### A. The Related Actions Should Be Consolidated

Consolidation pursuant to Federal Rule of Civil Procedure Rule 42(a) is proper when actions involve common questions of law and fact.

Each of the Related Actions presents similar factual and legal issues, as they all involve the same subject matter and present the same legal issues. Each action alleges violations of the Exchange Act, each presents the same or similar theories for recovery, and each is based on the same allegedly wrongful course of conduct. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal

Rule of Civil Procedure 42(a) is appropriate. *See Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (Consolidation is appropriate "if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

> B.     **Movant Should be Appointed Lead Plaintiff**

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"—*i.e.*, the plaintiff most capable of adequately representing the interests of the Class—is the class member that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies all of the PSLRA criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff. Movant has, to the best of his knowledge, the largest financial interest in this litigation and meets the relevant requirements of Federal Rule of Civil Procedure 23. In addition, Movant is not aware of any unique defenses Defendants could raise against him that would render him inadequate to represent the Class. Accordingly, Movant respectfully submits that he should be appointed lead plaintiff.

### 1. Movant Filed a Timely Motion

Movant has made a timely motion in response to a PSLRA early notice. Safadi commenced the above-captioned action against Uniti on October 25, 2019. Then, on October 29, 2019, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel for Safadi published a notice of the pendency of Plaintiff's case on *Globe Newswire*, announcing that a securities class action had been filed against Defendants herein. *See* Declaration of Conner Eldridge ("Eldridge Decl."), Exhibit ("Ex.") A. Therefore, Movant had sixty days or until December 30, 2019, to file a motion to be appointed as Lead Plaintiff. Additionally, as set forth in his PSLRA certification, Movant attests that he has reviewed the complaint, adopts the allegations therein, and is willing to serve as representative of the class. *See* Eldridge Decl., Ex. B. Accordingly, Movant satisfies the first PSLRA requirement to be appointed lead plaintiff.

### 2. Movant Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, Movant believes that he has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and are presumed to be the "most adequate plaintiff."

Movant purchased Uniti securities during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered a substantial financial loss. *See* Eldridge Decl., Ex. B. Accordingly, Movant believes he has the "largest financial interest in the relief sought by the Class." Thus, Movant satisfies the second PSLRA requirement—the largest financial interest—to be appointed as lead plaintiff for the Class. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 396 (S.D.N.Y. 2008).

### 3. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "the presumptive lead plaintiff 'need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.'" *Minn. Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 2008 WL 5233106, at *1 (E.D. Mo. Dec. 12, 2008) (citation omitted).

### a) Movant's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when "each class member makes similar legal arguments to prove the defendants' liability." *Id.* at *2. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Kuriakose v. Federal Home Loan Mortg. Co.*, No. 1:08–cv–7281 (JFK), 2008 WL 4974839, at *4 (S.D.N.Y. Nov. 24, 2008).

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants' material misstatements and omissions concerning Uniti's business, operations, and financial prospects violated the federal securities laws. Movant, like all of the members of the Class, purchased Uniti securities in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Accordingly, Movant's interests and claims are "typical" of the interests and claims of the Class.

### b) Movant Is an Adequate Representative

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) here is no antagonism between the interests of the proposed lead plaintiff and the other members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *MEMC Elec. Materials*, 2008 WL 5233106, at *2. Movant has demonstrated his adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and his financial losses ensure that he has sufficient incentive to provide vigorous advocacy. *See* Eldridge Decl., Ex. B. Movant is not aware of any conflict between his claims and those asserted on behalf of the Class.

### C. The Court Should Approve Lead Plaintiff's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, the Court should not disturb

the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has retained GPM as Lead Counsel and EB as Liaison Counsel. GPM possesses extensive experience in securities litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Eldridge Decl., Ex. C. GPM will consult with Conner Eldridge regarding compliance with local rules. *See* Eldridge Decl., Ex. D. Thus, the Court may be assured that, by granting Movant's Motion, the Class will receive the highest caliber of legal representation.

## V.  CONCLUSION

For the foregoing reasons, Movant respectfully request that the Court grant his Motion and enter an Order: (1) consolidating the related actions; (2) appointing Movant as lead plaintiff; (3) approving Movant's selection of Glancy Prongay & Murray LLP as lead counsel and Eldridge Brooks, PLLC as Liaison Counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: December 30, 2019

**ELDRIDGE BROOKS, PLLC**

By: _/s/ Conner Eldridge_
Conner Eldridge, AR2003155
Emily A. Neal, AR2003087
Morgan R. Johnson AR2018173
5100 West JB Hunt Dr., Ste. 840
Rogers, Arkansas 72758
Telephone: (479) 553-7678
Facsimile: (479) 553-7553
conner@eldridgebrooks.com

*Liaison Counsel for Movant*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Movant and Proposed Lead Counsel for the Class*

*Pro Hac Vice Motions to follow*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On December 30, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of Arkansas, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 30, 2019, at Rogers, Arkansas.

_____
Conner Eldridge