**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| IN RE UNITI GROUP INC. SECURITIES LITIGATION | No. 4:19-cv-00756-BSM <br><br> <u>CLASS ACTION</u> |

**DEFENDANTS' ANSWER TO PLAINTIFFS'**
**<u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

Defendants Uniti Group Inc. ("Uniti"), Kenneth A. Gunderman, and Mark A. Wallace (collectively, "Defendants"), for their Answer to the Consolidated Amended Class Action Complaint (the "Complaint") filed by Lead Plaintiffs Zhengxu He, Trustee for the He & Fang 2005 Revocable Living Trust, Steamfitters Local 449 Pension Plan, Wayne County Employees' Retirement System, and David McMurray, on behalf of himself and as sole beneficiary of the David McMurray R/O IRA, in Case No. 4:19-CV-00756-BSM (Doc. 62), state:

## GENERAL DENIAL

Except as otherwise expressly stated in this Answer, Defendants deny each and every claim, theory, and allegation contained in the Complaint and specifically deny any liability under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder. Any factual averment admitted herein is admitted only as to the specific facts and not as to any conclusions, characterizations, implications, innuendoes, or speculations. Pursuant to Fed. R. Civ. P. 8(b)(6), allegations to which no response is required are denied and deemed denied.

## RESPONSES TO HEADINGS AND TABLE OF CONTENTS

The Complaint contains headings, and a table of contents, which are not proper allegations that require a response. Defendants do not adopt the characterizations set forth in the headings and the table of contents. To the extent any heading or item in the table of contents contains allegations requiring a response, Defendants deny the allegations.

## RESPONSE TO INDIVIDUAL PARAGRAPHS

Except as expressly admitted in this Answer, Defendants deny all allegations contained in the Complaint. Capitalized terms in this Answer have the same definitions as in the Complaint unless otherwise stated.

1

1.      Paragraph 1 contains characterizations of Plaintiffs' claims in this action, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 1, except admit that Plaintiffs purport to bring a class action on behalf of all persons and entities who purchased or otherwise acquired the publicly traded securities of Uniti during the period from April 24, 2015 to June 24, 2019, inclusive, and who were allegedly damaged thereby, and that Plaintiffs have asserted claims against Uniti and certain of its officers and directors for violations of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

2.      Defendants deny the allegations in Paragraph 2, except admit that Uniti was formed on April 24, 2015 following the Spin-Off.

3.      Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and therefore deny them.

4.      Defendants deny the allegations in Paragraph 4, except admit that Stephens advised Windstream regarding the Spin-Off and that Kenny Gunderman was an investment banking professional at Stephens prior to joining Uniti.

5.      Defendants deny the allegations in Paragraph 5, except admit that (i) one transaction structure discussed by Kenny Gunderman with Windstream was the creation and spin-off of a REIT and (ii) the IRS issued a ruling regarding REITs, and respectfully refer the Court to that ruling for its full and accurate content.

6.      Defendants deny the allegations in Paragraph 6, except admit that Windstream structured the Spin-Off and Master Lease.

7.      Defendants deny the allegations in Paragraph 7, except admit that there were legal and regulatory requirements to effectuate the Spin-Off.

8.     Defendants deny the allegations in Paragraph 8, except admit that Notes were issued under the Indenture and respectfully refer the Court to the Indenture for its full and accurate contents.

9.     Defendants deny the allegations in Paragraph 9, except admit that the Master Lease was structured to be a true lease.

10.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and therefore deny them, except admit that the Spin-Off and Master Lease were structured to avoid any violation of the restrictions in Windstream's debt covenants.

11.     Defendants deny the allegations in Paragraph 11, except admit that Windstream Holdings was the lessee under the Master Lease and that Windstream Services and its operating subsidiaries were the only entities prohibited from engaging in a Sale and Leaseback Transaction under Windstream's debt covenants (as defined therein), and respectfully refer the Court to the April 2013 email for its full and accurate contents.

12.     Defendants deny the allegations in Paragraph 12 as to Defendants, except admit that Kenny Gunderman, as an investment banking professional at Stephens, advised Windstream on a variety of transactions, including the Spin-Off, and that for a period prior to the Spin-Off, John Fletcher served as the General Counsel of Windstream and also General Counsel of Communications Sales & Leasing, Inc. ("CS&L").  Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 and therefore deny them.

13.     Defendants deny the allegations in Paragraph 13, except admit that (i) the Master Lease was specifically structured with the restrictions of Windstream's debt covenants in mind

and to avoid any violation thereof, (ii) Anthony Thomas became the CEO of Windstream, (iii) Robert Gunderman and Kenny Gunderman are brothers, and (iv) Kenny Gunderman became CEO of Uniti.

14.     Defendants deny the allegations in Paragraph 14, except admit that the Spin-Off and Master Lease were completed on April 24, 2015 and Windstream Holdings has been Uniti's largest customer since the Spin-Off.

15.     Defendants deny the allegations in Paragraph 15.

16.     Defendants deny the allegations in Paragraph 16.

17.     Defendants deny the allegations in Paragraph 17.

18.     Defendants deny the allegations in Paragraph 18, except admit that Windstream filed a Form 8-K on September 25, 2017 and respectfully refer the Court to that Form 8-K for its full and accurate contents.

19.     Defendants deny the allegations in Paragraph 19, except admit that the price of Uniti's common stock closed at $22.57 per share on August 3, 2017 and closed at $7.76 per share on September 27, 2019.

20.     Defendants deny the allegations in Paragraph 20, except admit that U.S. Bank National Association, as indenture trustee, filed a complaint against Windstream Services on October 12, 2017 in a case captioned *U.S. Bank National Association v. Windstream Services, LLC*, No. 17-7857 (S.D.N.Y.).

21.     Defendants deny the allegations in the first two sentences of Paragraph 21. Defendants deny the allegations in the third sentence of Paragraph 21, except admit that Defendant Gunderman spoke at a November 7, 2017 investor conference and that the quoted language in the third sentence of Paragraph 21 appears in the transcript of that conference, and

4

respectfully refer the Court to the transcript for its complete contents.  Defendants deny the allegations in the fourth sentence of Paragraph 21, except admit that Defendant Wallace spoke during a November 29, 2017 investor presentation and that the quoted language in the fourth sentence of Paragraph 21 appears in the transcript for the presentation, and respectfully refer the Court to that transcript for its complete contents.

22.     Defendants deny the allegations in Paragraph 22, except admit that Defendant Wallace presented during a December 4, 2017 investor presentation and that the quoted language in Paragraph 22 appears in the transcript of that presentation, and respectfully refer the Court to that transcript for its complete contents.

23.     Defendants deny the allegations in Paragraph 23, except admit that the price of Uniti's common stock closed at $16.53 per share on November 7, 2017 and closed at $19.98 per share on February 15, 2019.

24.     Defendants deny the allegations in Paragraph 24, except admit that the U.S. District Court for the Southern District of New York issued an opinion in favor of Aurelius on February 15, 2019 and respectfully refer the Court to that opinion for its full and accurate contents.

25.     Defendants deny the allegations in Paragraph 25, except admit that the price of Uniti's common stock closed at $19.98 per share on February 15, 2019, closed at $12.51 per share on February 19, 2019, and closed at $9.23 per share on February 22, 2019.

26.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and therefore deny them, except admit that (i) Windstream Holdings and its subsidiaries filed for Bankruptcy on February 25, 2019 and (ii) the

price of Uniti's common stock closed at $10.26 per share on February 26, 2019, closed at $10.03 per share on February 27, 2019, and closed at $9.64 per share on February 28, 2019.

27.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 concerning parties other than Defendants and therefore deny them, and otherwise deny the allegations in Paragraph 27.

28.     Defendants deny the allegations in Paragraph 28, except admit that (i) Windstream continued to make all rent payments due under the Master Lease throughout the bankruptcy and (ii) Windstream filed an adversary proceeding against Uniti on July 25, 2019 and respectfully refer the Court to the Adversary Proceeding Complaint for its full and accurate contents.

29.     Defendants deny the allegations in Paragraph 29.

30.     Defendants deny the allegations in Paragraph 30, except admit that (i) the price of Uniti's common stock closed at $9.38 per share on June 25, 2019 and (ii) Uniti issued a press release regarding a notes offering on June 24, 2019 and respectfully refer the Court to that press release for its full and accurate contents.

31.     Defendants deny the allegations in Paragraph 31.

32.     Defendants deny the allegations in Paragraph 32.

33.     Paragraph 33 contains a characterization of Plaintiffs' claims in this action, to which no response is required.  To the extent a response is required, Defendants admit the allegations in Paragraph 33.

34.     Paragraph 34 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants admit that this Court has jurisdiction over this action and otherwise deny the allegations in Paragraph 34.

35.     Paragraph 35 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants admit that venue is proper in this Court in this action and that Uniti is headquartered in this District, and otherwise deny the allegations in Paragraph 35.

36.     Paragraph 36 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 36.

37.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 and therefore deny them.

38.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 and therefore deny them.

39.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 and therefore deny them.

40.     Paragraph 40 purports to state a legal conclusion, to which no response is required, to the extent that Paragraph 40 alleges that Lead Plaintiff McMurray suffered any cognizable damages.  To the extent a response to such allegations is required, Defendants deny them.  Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 40 and therefore deny them.

41.     Defendants deny the allegations in Paragraph 41, except admit that (i) Uniti (f/k/a Communications Sales & Leasing, Inc.) is a corporation organized under the laws of the State of Maryland with its headquarters in the State of Arkansas, (ii) Uniti was initially incorporated in the State of Delaware before being reorganized under the laws of the State of Maryland in February 2014, (iii) Uniti is a REIT engaged in the acquisition and construction of mission critical infrastructure in the communications industry, (iv) CS&L's common stock traded under

the ticker "CSAL" on the NASDAQ, and (v) CS&L changed its name to Uniti and began trading its common stock under the ticker "UNIT" on the NASDAQ on February 27, 2017.

42.     Defendants deny the allegations in Paragraph 42, except admit that Kenny Gunderman (i) has been Uniti's CEO and President and a member of its Board of Directors since March 2, 2015, (ii) advised Windstream on the Spin-Off as an investment banking professional at Stephens, (iii) left Stephens before the Spin-Off was completed to become CEO and President of Uniti, and (iv) has been awarded compensation, as the CEO and President of Uniti, in excess of $5 million every year since the Spin-Off and respectfully refer the Court to Uniti's annual proxy filings for their full and accurate contents.

43.     Defendants deny the allegations in Paragraph 43, except admit that Mark Wallace (i) has served as Uniti's CFO and Treasurer since April 1, 2015, (ii) is currently an Executive Vice President, and (iii) is a Certified Public Accountant licensed in Texas.

44.     Paragraph 44 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 44.

45.     Paragraph 45 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 45.

46.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 and therefore deny them, except admit the allegations in the third sentence of Paragraph 46.

47.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 and therefore deny them.

48.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and therefore deny them, except admit that (i) Tony

8

Thomas was Windstream's CFO from August 2009 until September 2014; (ii) Thomas was President and CEO of CS&L from September 2014 to December 2014; and (iii) Thomas was appointed to the position of President and CEO of Windstream in December 2014 and has served in that role since.

49.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 and therefore deny them, except admit that (i) Robert Gunderman and Kenny Gunderman are brothers and (ii) Robert Gunderman has been Windstream's CFO since December 2014 and, before that, served as Windstream's Senior Vice President, Financial Planning and Treasurer.

50.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 and therefore deny them, except admit that for a period prior to the Spin-Off, John Fletcher served as General Counsel for Windstream and also served as Executive Vice President, Secretary, and General Counsel of CS&L, and that Fletcher was General Counsel of CS&L on February 10, 2015.

51.     Defendants deny the allegations in Paragraph 51.

52.     Defendants admit the allegations in Paragraph 52.

53.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 and therefore deny them, except admit that Uniti was formed on April 24, 2015 following the Spin-Off.

54.     Defendants deny the allegations in Paragraph 54 and respectfully refer the Court to the Master Lease for its full and accurate contents.

9

55.     Defendants deny the allegations in Paragraph 55, except admit that (i) Uniti's largest customer is Windstream and (ii) 87.9%, 74.8%, and 68.2% of Uniti's revenues came from Windstream Holdings in 2016, 2017, and 2018, respectively.

56.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 and therefore deny them.

57.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 and therefore deny them.

58.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58 and therefore deny them, except admit that (i) in or around 2013, Kenny Gunderman was employed by Stephens and advised Windstream from time to time, including with respect to its strategic options and (ii) Kenny Gunderman and Robert Gunderman are brothers.

59.     Defendants deny the allegations in Paragraph 59, except admit that the transaction was structured such that (i) certain of Windstream Operating Subsidiaries' property, including certain copper wires and fiber optic cables and real estate, would be transferred to Uniti, which was a wholly owned subsidiary of Windstream Holdings, (ii) Uniti would be spun off as an independent, publically-traded REIT, and (iii) Uniti would lease the property to Windstream Holdings under the Master Lease.  Defendants respectfully refer the Court to Uniti's March 26, 2015 Information Statement for its full and accurate contents.

60.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60 and therefore deny them.

61.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 and therefore deny them.

10

62. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 and therefore deny them.

63. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 and therefore deny them, except admit that there were legal and regulatory requirements to effectuate the Spin-Off and Kenny Gunderman was one of Windstream's advisors on the Spin-Off as an investment banking professional at Stephens.

64. Defendants deny the allegations in Paragraph 64, except admit that there were legal and regulatory requirements to effectuate the Spin-Off.

65. Defendants deny the allegations in Paragraph 65, except admit that the Master Lease was structured to be a true lease and respectfully refer the Court to the Master Lease for its full and accurate contents.

66. Defendants deny the allegations in Paragraph 66, except admit that the Spin-Off and Master Lease were structured to avoid any violation of the restrictive covenants in the agreements governing Windstream's long-term debt and respectfully refer the Court to the Master Lease and Indenture for their full and accurate contents.

67. Defendants deny the allegations in Paragraph 67, except admit that there were certain issues that were required to be addressed in order to execute the Spin-Off.

68. Defendants deny the allegations in Paragraph 68, except admit that the Master Lease was structured to be a true lease and respectfully refer the Court to the Master Lease and Indenture for their full and accurate contents.

69. Defendants deny the allegations in Paragraph 69, except admit that the Indenture contains a number of restrictive covenants and respectfully refer the Court to the Indenture for its full and accurate contents.

70.     Defendants deny the allegations in Paragraph 70, except admit that the quoted language in Paragraph 70 appears in the Indenture and respectfully refer the Court to the Indenture for its full and accurate contents.

71.     Defendants deny the allegations in Paragraph 71, except admit that the quoted language in Paragraph 71 appears in the Indenture and respectfully refer the Court to the Indenture for its full and accurate contents.

72.     Defendants deny the allegations in Paragraph 72 and respectfully refer the Court to the Indenture for its full and accurate contents.

73.     Defendants deny the allegations in Paragraph 73, except admit that the quoted language in Paragraph 73 appears in the Indenture and respectfully refer the Court to the Indenture for its full and accurate contents.

74.     Defendants deny the allegations in Paragraph 74 and respectfully refer the Court to the Indenture for its full and accurate contents.

75.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 and therefore deny them, except admit that (i) the Spin-Off and Master Lease were structured to avoid any violation of the restrictions in Windstream's debt covenants and (ii) the quoted language in Paragraph 75 appears in the April 15, 2013 email and respectfully refer the Court to that email for its full and accurate contents.

76.     Defendants deny the allegations in Paragraph 76, except admit that the Spin-Off and Master Lease were structured to avoid the restrictions in Windstream's debt covenants.

77.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77 and therefore deny them.

78.     Defendants admit the allegations in the first sentence of Paragraph 78. Defendants deny the allegations in the second sentence of Paragraph 78.

79.     Defendants deny the allegations in Paragraph 79, except admit that (i) the Windstream Board held a meeting on February 12, 2014; (ii) Tony Thomas, John Fletcher, and Kenny Gunderman attended the meeting; (iii) the group discussed aspects of the Spin-Off, including financial information and execution risks; and (iv) the minutes of the meeting were prepared by John Fletcher as Secretary.  Defendants respectfully refer the Court to the February 12, 2014 Windstream Board minutes for their full and accurate contents.

80.     Defendants deny the allegations in Paragraph 80, except admit that (i) on February 12, 2014, the Windstream Board held a meeting during which the Board reviewed a presentation that was prepared, in part, by Stephens; (ii) the presentation included a slide titled, "Historical Board & Management Review of Strategic Alternatives"; (iii) the presentation included a slide titled, "Illustrative Preliminary Has/Gets Analysis & Key Considerations," which included the quoted language in the fourth sentence of Paragraph 80; and (iv) the presentation included certain preliminary valuation data.  Defendants respectfully refer the Court to the February 12, 2014 Windstream Board presentation for its full and accurate contents.

81.     Defendants deny the allegations in Paragraph 81, except admit that (i) the Windstream Board met on May 6-7, 2014 to discuss Project RITE; (ii) the referenced individuals in the third sentence of Paragraph 81, including Kenny Gunderman, were present for the meeting; (iii) the quoted language in the fourth and fifth sentences of Paragraph 81 appears in the minutes of the meeting; and (iv) the minutes of the meeting were prepared by John Fletcher as Secretary.  Defendants respectfully refer the Court to the minutes of the Windstream Board's May 6-7, 2014 meeting for their full and accurate contents.

82.     Defendants deny the allegations in Paragraph 82, except admit that, in connection with the Windstream Board's May 6-7, 2014 meeting, an approximately 300-page board package was prepared, which included, among other information, valuation information related to a potential spin-off transaction, a slide titled "Structure & Relationship Between OpCo & PropCo," and two slides regarding certain terms of the proposed Master Lease.  Defendants respectfully refer the Court to the May 6-7, 2014 Windstream Board package for its full and accurate contents.

83.     Defendants deny the allegations in Paragraph 83, except admit that the board package for the May 6-7, 2014 Windstream Board meeting included information about a potential spin-off, including the pros and cons of such a transaction for Windstream, and the independent valuation prepared by Ernst & Young regarding the assets to be transferred to "PropCo" as part of a spin-off transaction.  Defendants respectfully refer the Court to the May 6-7, 2014 Windstream Board package for its full and accurate contents.

84.     Defendants deny the allegations in Paragraph 84, except admit that (i) the board package for the May 6-7, 2014 Windstream Board meeting included slides regarding a potential communications strategy that Windstream was "developing" and (ii) the meeting materials included a draft investor presentation titled, "WIN to Pursue Separation of its Real-Estate Assets From its Operating Assets."  Defendants respectfully refer the Court to the May 6-7, 2014 Windstream Board package for its full and accurate contents.

85.     Defendants deny the allegations in Paragraph 85, except admit that (i) on May 22, 2014, the Windstream Board convened a meeting, (ii) attendees included Windstream Board members, Tony Thomas, John Fletcher, and Kenny Gunderman, (iii) a board package was prepared for the board in connection with this meeting, and (iv) the minutes and board package

include a discussion of the Spin-Off and E&Y's valuation analysis.  Defendants respectfully refer the Court to the May 22, 2014 Windstream Board minutes and board packet for their full and accurate contents.

86.     Defendants deny the allegations in Paragraph 86, except admit that the Spin-Off and Master Lease were structured to avoid any violation of Windstream's debt covenants and respectfully refer the Court to the cited testimony for its full and accurate contents.

87.     Defendants deny the allegations in Paragraph 87, except admit that there were legal and regulatory requirements to effectuate the Spin-Off.

88.     Defendants deny the allegations in Paragraph 88, except admit that (i) on July 29, 2014, Windstream publicly announced the Spin-Off and issued a press release titled "Windstream to Spin Off Assets Into Publicly Traded REIT" and (ii) the IRS issued a Private Letter Ruling to Windstream on July 17, 2014 and respectfully refer the Court to the Private Letter Ruling for its full and accurate contents.

89.     Defendants deny the allegations in Paragraph 89, except admit that (i) Windstream, as a telecommunications provider, is governed by state regulations that required approval for certain types of asset transfers and (ii) Windstream worked to obtain the necessary approvals.

90.     Defendants deny the allegations in Paragraph 90, except admit that the quoted language in the second sentence of Paragraph 90 appears in the Aurelius Litigation Trial Transcript, and respectfully refer the Court to that transcript for its complete contents.

91.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91 and therefore deny them, except admit that (i) for a period prior to the Spin-Off, John Fletcher served as General Counsel of Windstream and also as

15

Executive Vice President, Secretary, and General Counsel of CS&L and (ii) in connection with seeking regulatory approval for the Spin-Off, Fletcher signed various regulatory filings on behalf of Windstream, and respectfully refer the Court to the referenced regulatory filings for their full and accurate contents.

92. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 and therefore deny them, except admit that (i) Mary Michaels sent an email, including a "Master Question & Answer Document" attached, to Tony Thomas, Robert Gunderman, and John Fletcher on August 6, 2014 and (ii) the quoted language in the fifth sentence of Paragraph 92 appears in the "Master Question & Answer Document" attached to the August 6, 2014 email, and respectfully refer the Court to that email and attachment for their full and accurate contents.

93. Defendants deny the allegations in Paragraph 93, except admit that the quoted language in Paragraph 93 appears in the "Master Question & Answer Document," attached to the August 6, 2014 email, and respectfully refer the Court to that email and attachment for their full and accurate contents.

94. Defendants deny the allegations in Paragraph 94, except admit that the quoted language in Paragraph 94 appears in the "Master Question & Answer Document," attached to the August 6, 2014 email, and respectfully refer the Court to that email and attachment for their full and accurate contents.

95. Defendants deny the allegations in Paragraph 95, except admit that Windstream Holdings executed the Master Lease and that the quoted phrases in Paragraph 95 appear in various regulatory filings filed by Windstream in connection with the Spin-Off, and respectfully

16

refer the Court to Windstream's regulatory filings and related testimony to regulators for their full and accurate contents.

96.     Defendants deny the allegations in the main body of Paragraph 96, except admit that the quoted language in Paragraph 96 appears in the Aurelius Litigation Trial Transcript and respectfully refer the Court to that transcript for its complete contents.

Defendants deny the allegations in Sub-Paragraph 96(a), except admit that (i) on July 31, 2014, certain Windstream entities filed an Application of Windstream Subsidiaries for Approval, which was signed by John Fletcher, with the Alabama Public Service Commission and (ii) the quoted language in the second and third sentences of Paragraph Sub-Paragraph 96(a) appears in the application, and respectfully refer the Court to that application for its full and accurate contents.

Defendants deny the allegations in Sub-Paragraph 96(b), except admit that Robert Gunderman provided testimony to the Kentucky PSC during a November 13, 2014 hearing and that the quoted language in Sub-Paragraph 96(b) appears in the KY Transcript, and respectfully refer the Court to that transcript for its complete contents.

Defendants deny the allegations in Sub-Paragraph 96(c), except admit that the quoted language in Paragraph Sub-96(c) appears in an October 13, 2014 Declaratory Ruling by the North Carolina Utilities Commission, and respectfully refer the Court to that ruling for its full and accurate contents.

Defendants deny the allegations in Sub-Paragraph 96(d), except admit that the quoted language in Sub-Paragraph 96(d) appears in the August 12, 2014 Application for Declaratory Ruling filed by Windstream with the Georgia Public Service Commission, and respectfully refer the Court to that application for its full and accurate contents.

Defendants deny the allegations in Sub-Paragraph 96(e), except admit that (i) certain Windstream entities submitted a Telecommunications Filing Form, signed by John Fletcher, to the Public Utilities Commission of Ohio on August 19, 2014 and (ii) the quoted language in Sub-Paragraph 96(e) appears in that form, and respectfully refer the Court to that form for its full and accurate contents.

Defendants deny the allegations in Sub-Paragraph 96(f), except admit that (i) certain Windstream entities filed a Joint General Rule Application with the Pennsylvania Public Utilities Commission, including a verified statement from Robert Gunderman, on August 29, 2014 and (ii) the quoted language in Sub-Paragraph 96(f) appears in that application, and respectfully refer the Court to that application for its full and accurate contents.

Defendants deny the allegations in Sub-Paragraph 96(g), except admit that the quoted language in Paragraph Sub-Paragraph 96(g) appears in the Petition for Approval of Transfer filed with the Public Service Commission of West Virginia on August 29, 2014, and respectfully refer the Court to that petition for its full and accurate contents.

97.     Defendants deny the allegations in Paragraph 97.

98.     Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 and therefore deny them, except admit that the quoted language in the second sentence of Paragraph 98 appears in the Aurelius Litigation Trial Transcript and respectfully refer the Court to that transcript for its complete contents.

99.     Defendants deny the allegations in Paragraph 99, except admit that the quoted language in Paragraph 99 appears in the KY Transcript and respectfully refer the Court to that transcript for its complete contents.

100.    Defendants deny the allegations in Paragraph 100, except admit that Windstream represented to regulators that the Master Lease did not violate any of Windstream's debt covenants.

101.    Defendants deny the allegations in the first sentence of Paragraph 101. Defendants admit the allegations in the second sentence of Paragraph 101.  Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 101 and therefore deny them, and respectfully refer the Court to the August 13, 2014 Covenant Review report for its full and accurate contents.

102.    Defendants deny the allegations in Paragraph 102.

103.    Defendants deny the allegations in Paragraph 103, except admit that (i) the Spin-Off and Master Lease were structured to avoid any violation of the restrictions in Windstream's debt covenants, (ii) certain officers of Windstream were also officers of Uniti in the period prior to the Spin-Off, and (iii) the testimony identified in Paragraph 103 appears in the Aurelius Litigation Trial Transcript, and respectfully refer the Court to that transcript for its complete contents.

104.    Defendants deny the allegations in Paragraph 104, except admit that (i) for a period prior to the Spin-Off, John Fletcher served as General Counsel of Windstream and also as General Counsel of CS&L and (ii) Skadden advised Windstream on the Master Lease.

105.    Defendants deny the allegations in Paragraph 105 as it relates to Defendants, except admit that Jeff Small joined Uniti for a period following the Spin-Off, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 105 and therefore deny them.

106.    Defendants deny the allegations in Paragraph 106, except admit that (i) Kenny Gunderman was hired as Uniti's CEO and President on March 2, 2015 and (ii) prior to the Spin-Off, he was employed by Stephens where he, among other things, provided advice to Windstream regarding strategic alternatives, including the Spin-Off.

107.    Defendants deny the allegations in Paragraph 107, except admit that (i) Francis Frantz served on the Windstream Board until 2014 (including as its Chair from 2006 to 2007), (ii) he serves as the Chairman of Uniti's Board of Directors, and (iii) the minutes of the board meetings described in Paragraphs 79-85, 109-110 reflect Frantz's attendance at those meetings.

108.    Defendants deny the allegations in Paragraph 108.

109.    Defendants admit the allegations in the first, second, and third sentences of Paragraph 109.  Defendants deny the remaining allegations in Paragraph 109, except admit that Kenny Gunderman gave a presentation on "CS&L Readiness" during the March 17, 2015 meeting of the Windstream Board of Directors, and respectfully refer the Court to the minutes of that meeting for their full and accurate contents.

110.    Defendants admit the allegations in Paragraph 110.

111.    Defendants deny the allegations in Paragraph 111, except admit that Windstream Holdings, Inc., Windstream Services, LLC, and Communications Sales & Leasing, Inc. executed the Separation and Distribution Agreement on March 26, 2015, and respectfully refer the Court to the Separation and Distribution Agreement for its full and accurate contents.

112.    Defendants deny the allegations in Paragraph 112, except admit that (i) the transferred assets included assets in thirty-seven states and the District of Columbia and (ii) on April 12, 2015, Kenny Gunderman and Mark Wallace received an email, which attached talking

points containing the quoted language in the second sentence of Paragraph 112, and respectfully refer the Court to that email and its attachment for their full and accurate contents.

113. Defendants deny the allegations in Paragraph 113, except admit that (i) Windstream Services received from Uniti approximately $1.035 billion in cash and $2.5 billion of Uniti debt, (ii) Windstream Services distributed approximately 80.4% of the equity in Uniti to Windstream Holdings, and (iii) on April 27, 2015, Uniti's stock became a separate publicly traded stock listed on the NASDAQ.

114. Defendants admit the allegations in Paragraph 114 and respectfully refer the Court to the Separation and Distribution Agreement and the Master Lease for their full and accurate contents.

115. Defendants admit the allegations in Paragraph 115 and respectfully refer the Court to the Separation and Distribution Agreement and the Master Lease for their full and accurate contents.

116. Defendants admit the allegations in Paragraph 116 and respectfully refer the Court to the Separation and Distribution Agreement and the Master Lease for their full and accurate contents.

117. Defendants deny the allegations in Paragraph 117.

118. Defendants deny the allegations in Paragraph 118, except admit that (i) on April 12, 2015, a messaging call was held with JPMorgan and Bank of America and (ii) prior to that call, various individuals, including Kenny Gunderman and Mark Wallace, received materials for that call, and respectfully refer the Court to the April 12, 2015 email and its attachment for their full and accurate contents.

21

119.    Defendants deny the allegations in Paragraph 119, except admit that the quoted language in Paragraph 119 appears in the attachment to the April 12, 2015 email and respectfully refer the Court to that email and attachment for their full and accurate contents.

120.    Defendants deny the allegations in Paragraph 120, except admit that the quoted language in Paragraph 120 appears in the attachment to the April 12, 2015 email and respectfully refer the Court to that email and attachment for their full and accurate contents.

121.    Defendants deny the allegations in Paragraph 121, except admit that the quoted language in the second sentence of Paragraph 121 appears in the April 12, 2015 email and respectfully refer the Court to that email for its full and accurate content.

122.    Defendants deny the allegations in Paragraph 122.

123.    Defendants deny the allegations in Paragraph 123.

124.    Defendants deny the allegations in Paragraph 124, except admit that Windstream filed an Adversary Proceeding, which alleged that the Master Lease is not a true lease, and aver that the Adversary Proceeding has since been settled.  Defendants respectfully refer the Court to the Adversary Proceeding Complaint for its full and accurate contents.

125.    Defendants deny the allegations in Paragraph 125, except admit that (i) Windstream sought in the Adversary Proceeding to recharacterize the Master Lease as a financing transaction and (ii) the allegations of Windstream summarized in Sub-Paragraphs 125(a)-(d) generally appeared in the Adversary Proceeding Complaint, and respectfully refer the Court to that complaint for its full and accurate contents.

126.    Defendants deny the allegations in Paragraph 126 and respectfully refer the Court to the Adversary Proceeding Complaint for its full and accurate contents.

127.    Defendants deny the allegations in Paragraph 127.

22

128.    Defendants deny the allegations in Paragraph 128 and respectfully refer the Court to the Adversary Proceeding Complaint for its full and accurate contents.

129.    Defendants deny the allegations in Paragraph 129 and respectfully refer the Court to the Adversary Proceeding Complaint for its full and accurate contents.

130.    Defendants deny the allegations in Paragraph 130.

131.    Defendants deny the allegations in Paragraph 131 and respectfully refer the Court to the Adversary Proceeding Complaint for its full and accurate contents.

132.    Defendants deny the allegations in Paragraph 132.

133.    Defendants deny the allegations in Paragraph 133 and respectfully refer the Court to Uniti's March 26, 2015 Information Statement for its full and accurate contents.

134.    Defendants deny the allegations in Paragraph 134.

135.    Defendants deny the allegations in Paragraph 135, except admit that (i) Skadden provided an opinion that the Master Lease was a "true lease" and (ii) Skadden relied on, among other things, the independent valuation prepared by E&Y, and respectfully refer the Court to the Skadden opinion for its full and accurate contents.

136.    Defendants deny the allegations in Paragraph 136, except admit that the quoted language in Paragraph 136 appears in the SLF Complaint and respectfully refer the Court to that complaint for its full and accurate contents.

137.    Defendants deny the allegations in Paragraph 137, except admit that the quoted language in Paragraph 137 appears in the SLF Complaint and respectfully refer the Court to that complaint for its full and accurate contents.

138.    Defendants deny the allegations in Paragraph 138.

139.    Paragraph 139 purports to state legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 139.

140.    Defendants deny the allegations in Paragraph 140, except admit that (i) Uniti announced on March 26, 2015 that the Spin-Off would be expected to occur on April 24, 2015 and (ii) Windstream Holdings was the lessee under the Master Lease, and Defendants respectfully refer the Court to Uniti's March 26, 2015 Form 8-K for its full and accurate contents.

141.    Defendants admit the allegations in the first sentence of Paragraph 141. Defendants deny the allegations in the second sentence of Paragraph 141, except admit that the quoted language in the second sentence of Paragraph 141 appears in Uniti's March 26, 2015 Form 8-K and respectfully refer the Court to that Form 8-K for its full and accurate contents.

142.    Defendants admit the allegations in Paragraph 142.

143.    Defendants deny the allegations in Paragraph 143, except admit that the quoted language in Paragraph 143 appears in Uniti's March 26, 2015 Information Statement and respectfully refer the Court to that Information Statement for its full and accurate contents.

144.    Defendants deny the allegations in Paragraph 144, except admit that the quoted language in the third sentence of Paragraph 144 appears in Uniti's March 26, 2015 Information Statement and respectfully refer the Court to that Information Statement for its full and accurate contents.

145.    Defendants admit the allegations in the first sentence of Paragraph 145. Defendants deny the remaining allegations in Paragraph 145 and respectfully refer the Court to Uniti's March 26, 2015 Information Statement for its full and accurate contents.

146.    Defendants deny the allegations in Paragraph 146, except admit that the quoted language in Paragraph 146 appears in Uniti's March 26, 2015 Information Statement and respectfully refer the Court to that Information Statement for its full and accurate contents.

147.    Defendants deny the allegations in Paragraph 147, except admit that the quoted language in Paragraph 147 appears in Uniti's March 26, 2015 Information Statement and respectfully refer the Court to that Information Statement for its full and accurate contents.

148.    Defendants deny the allegations in Paragraph 148, except admit that the quoted language in Paragraph 148 appears in Uniti's March 26, 2015 Information Statement and respectfully refer the Court to that Information Statement for its full and accurate contents.

149.    Defendants deny the allegations in Paragraph 149.

150.    Defendants deny the allegations in Paragraph 150, except admit that (i) Kenny Gunderman signed the Separation and Distribution Agreement and (ii) the quoted language in Paragraph 150 appears in the Separation and Distribution Agreement as a representation and warranty by Windstream.

151.    Defendants deny the allegations in Paragraph 151.

152.    Defendants deny the allegations in Paragraph 152, except admit that Windstream Holdings was the lessee under the Master Lease.

153.    Defendants deny the allegations in the first sentence of Paragraph 153. Defendants admit the allegations in the second sentence of Paragraph 153 and respectfully refer the Court to the June 22, 2015 JPMorgan analyst report for its full and accurate contents.

154.    The first sentence of Paragraph 154 contains a characterization of Plaintiffs' claims, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 154, except admit that Plaintiffs' purported class period begins on

25

April 24, 2015 and that Windstream completed its Spin-Off of Uniti on the same day. Defendants deny the remaining allegations in Paragraph 154, except admit that on April 24, 2015, Windstream distributed over 120 million shares of Uniti common stock to Windstream stockholders on a pro rata basis, as described in Uniti's March 26, 2015 Information Statement, and that Uniti's stock began trading on the NASDAQ on April 27, 2015, and Defendants respectfully refer the Court to Uniti's March 26, 2015 Information Statement for its full and accurate contents.

155. Defendants admit the allegations in Paragraph 155.

156. Defendants deny the allegations in Paragraph 156, except admit that (i) Kenny Gunderman and Mark Wallace gave a presentation during NAREIT's REITWeek 2015 and (ii) the quoted language in the third sentence of Paragraph 156 appears in Uniti's investor presentation for REITWeek 2015, and respectfully refer the Court to that presentation for its full and accurate contents.

157. Defendants deny the allegations in Paragraph 157, except admit that (i) on July 2, 2015 Uniti filed a Form S-4 to register $1.1 billion of 8.25% Senior Notes due in 2023 and (ii) the SEC declared the S-4 effective on July 31, 2015, and respectfully refer the Court to the July 2, 2015 S-4 for its full and accurate contents.

158. Defendants deny the allegations in Paragraph 158, except admit that Uniti filed a Form S-4 on July 2, 2015, a Prospectus on August 5, 2015, and a Prospectus Supplement on August 13, 2015 setting forth a deadline of September 2, 2015 for the exchange offer, and respectfully refer the Court to the Form S-4, Prospectus, and Prospectus Supplement for their full and accurate contents.

26

159. Defendants admit the allegations in Paragraph 159 and respectfully refer the Court to Uniti's August 13, 2015 press release for its full and accurate contents.

160. Defendants admit the allegations in Paragraph 160 and respectfully refer the Court to Uniti's August 13, 2015 press release for its full and accurate contents.

161. Defendants admit the allegations in Paragraph 161 and respectfully refer the Court to Uniti's August 13, 2015 Form 10-Q for its full and accurate contents.

162. Defendants deny the allegations in Paragraph 162, except admit that the quoted language in Paragraph 162 appears in Uniti's August 13, 2015 Form 10-Q and respectfully refer the Court to that Form 10-Q for its full and accurate contents.

163. Defendants admit the allegations in the first, second, and third sentences of Paragraph 163. Defendants deny the remaining allegations in Paragraph 163, except admit that the quoted language in the fourth sentence of Paragraph 163 appears in the transcript for Uniti's August 13, 2015 earnings call and respectfully refer the Court to that transcript for its complete contents.

164. Defendants deny the allegations in Paragraph 164, except admit that the price of Uniti's common stock closed at $22.21 per share on August 13, 2015.

165. Defendants deny the allegations in Paragraph 165, except admit that the quoted language in Paragraph 165 appears in the transcript of Uniti's November 14, 2016 earnings call and respectfully refer the Court to that transcript for its complete contents.

166. Defendants deny the allegations in Paragraph 166 and respectfully refer the Court to Uniti's press releases and Forms 10-K and 10-Q relating to its 3Q15-3Q17 financial reports for their full and accurate contents.

167. Defendants deny the allegations in Paragraph 167, except admit that Windstream Holdings was the only Windstream entity to sign the Master Lease and that the Master Lease was structured to avoid any violation of the restrictions in Windstream's debt indentures.

168. Defendants deny the allegations in Paragraph 168, except admit that on August 3, 2017, Windstream issued a press release entitled "Windstream board of directors revises capital allocation strategy: Eliminates quarterly dividend," and respectfully refer the Court to that press release for its full and accurate contents.

169. Defendants admit the allegations in the first sentence of Paragraph 169. Defendants deny the remaining allegations in Paragraph 169, except admit that the quoted language in the second sentence of Paragraph 169 appears in the transcript of Uniti's August 3, 2017 earnings call and respectfully refer the Court to that transcript for its complete contents.

170. Defendants deny the allegations in Paragraph 170, except admit that (i) the price of Uniti's common stock closed at $22.57 per share on August 3, 2017 and closed at $21.84 per share on August 4, 2017 and (ii) the trading volume for Uniti common stock on August 4, 2017 exceeded 7 million shares.

171. Defendants deny the allegations in Paragraph 171, except admit that (i) Kenny Gunderman gave a presentation on August 8, 2017 at the Cowen Communications Infrastructure Summit and (ii) the quoted language in the second sentence of Paragraph 171 appears in the transcript of Uniti's August 8, 2017 Cowen Communications Infrastructure Summit presentation and respectfully refer the Court to that transcript for its complete contents.

172. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 172 and therefore deny them. Defendants deny the allegations in the second and third sentences of Paragraph 172, except

28

admit that the price of Uniti's stock reached $26.31 per share on July 31, 2017 and closed at $19.26 per share on August 31, 2017.  Defendants deny the fourth sentence of Paragraph 172, except admit that the quoted language in the fourth sentence of Paragraph 172 appears in the Covenant Review report and respectfully refer the Court to the Covenant Review report for its full and accurate contents.

173.    Defendants deny the allegations in Paragraph 173, except admit that (i) Mark Wallace presented on behalf of Uniti on September 8, 2017 at the Bank of America Merrill Lynch Media, Communications & Entertainment Conference and (ii) the quoted language in the second sentence of Paragraph 173 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

174.    Defendants deny the allegations in Paragraph 174, except admit that (i) Mark Wallace presented on behalf of Uniti on September 13, 2017 at the Goldman Sachs Communacopia Conference and (ii) the quoted language in the second and third sentences in Paragraph 174 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

175.    Defendants deny the allegations in Paragraph 175, except admit that (i) Mark Wallace presented on behalf of Uniti on September 13, 2017 at the Goldman Sachs Communacopia Conference and (ii) the quoted language in Paragraph 175 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

176.    Defendants deny the allegations in Paragraph 176.

177.    Defendants admit the allegations in Paragraph 177.

29

178.    Defendants deny the allegations in Paragraph 178, except admit that (i) the price of Uniti's common stock closed at $15.66 per share on September 26, 2017 and closed at $14.73 per share on September 27, 2017 and (ii) the trading volume of Uniti's common stock exceeded 11 million shares traded on September 26, 2017.

179.    Defendants deny the allegations in Paragraph 179, except admit that (i) Mark Wallace presented on behalf of Uniti on October 4, 2017 at the Deutsche Bank Leveraged Finance Conference and (ii) the quoted language in the fourth sentence of Paragraph 179 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

180.    Defendants deny the allegations in Paragraph 180, except admit that (i) Mark Wallace presented on behalf of Uniti on October 4, 2017 at the Deutsche Bank Leveraged Finance Conference and (ii) the quoted language in Paragraph 180 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its contents.

181.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181 and therefore deny them, except admit that U.S. National Bank Association, as indenture trustee, filed a complaint against Windstream Services on October 12, 2017 in a case captioned *U.S. Bank National Association v. Windstream Services, LLC*, No. 17-7857 (S.D.N.Y.), and respectfully refer the Court to the complaint in that case for its full and accurate contents.

182.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182 and therefore deny them, except admit that (i) U.S. National Bank Association, as indenture trustee, filed a complaint against Windstream Services on October 12, 2017 in a case captioned *U.S. Bank National Association v. Windstream Services,*

*LLC*, No. 17-7857 (S.D.N.Y.), and respectfully refer the Court to the complaint in that case for its full and accurate contents; and (ii) Aurelius asserted counterclaims on November 21, 2017, and respectfully refer the Court to the amended answer in that case for its full and accurate contents.

183.    Defendants admit the allegations in the first sentence of Paragraph 183. Defendants deny the remaining allegations in Paragraph 183, except admit that (i) the November 2, 2017 Form 10-Q acknowledged that Windstream received a Notice of Default and (ii) the quoted language in the second sentence of Paragraph 183 appears in Uniti's November 2, 2017 Form 10-Q and respectfully refer the Court to that Form 10-Q for its full and accurate contents.

184.    Defendants admit the first, second, and third sentences of Paragraph 184. Defendants deny the remaining allegations in Paragraph 184, except admit that the quoted language in the fourth sentence of Paragraph 184 appears in the transcript of Uniti's November 2, 2017 earnings call and respectfully refer the Court to that transcript for its complete contents.

185.    Defendants deny the allegations in Paragraph 185, except admit that the quoted language in Paragraph 185 appears in the transcript of Uniti's November 2, 2017 earnings call and respectfully refer the Court to that transcript for its complete contents.

186.    Defendants deny the allegations in Paragraph 186, except admit that (i) Kenny Gunderman and Mark Wallace presented on behalf of Uniti on November 7, 2017 at the Wells Fargo Media & Telecom Conference and (ii) the quoted language in the third sentence of Paragraph 186 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

187.    Defendants deny the allegations in Paragraph 187, except admit that (i) Kenny Gunderman and Mark Wallace presented on behalf of Uniti on November 7, 2017 at the Wells

31

Fargo Media & Telecom Conference and (ii) the quoted language in Paragraph 187 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

188.    Defendants deny the allegations in Paragraph 188, except admit that (i) Mark Wallace presented on behalf of Uniti on November 29, 2017 at the Bank of America Merrill Lynch Leveraged Finance Conference and (ii) the quoted language in the second sentence of Paragraph 188 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

189.    Defendants deny the allegations in Paragraph 189, except admit that (i) Mark Wallace presented on behalf of Uniti on December 4, 2017 at the UBS Global Media and Communications Conference and (ii) the quoted language in Paragraph 189 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

190.    Defendants admit the allegations in the first sentence of Paragraph 190. Defendants deny the allegations in the second sentence of Paragraph 190, except admit that the quoted language in the second sentence of Paragraph 190 appears in Uniti's March 1, 2018 press release and respectfully refer the Court to that press release for its full and accurate contents.

191.    Defendants admit the allegations in Paragraph 191 and respectfully refer the Court to Uniti's March 1, 2018 Form 10-K for its full and accurate contents.

192.    Defendants deny the allegations in Paragraph 192 and respectfully refer the Court to Uniti's March 1, 2018 Form 10-K for its full and accurate contents.

193.    Defendants deny the allegations in Paragraph 193, except admit that Defendants appeared at an investor conference in the Spring of 2018.

194.    Defendants deny the allegations in Paragraph 194, except admit that (i) Lawrence Gleason and Mark Wallace presented on behalf of Uniti on May 16, 2018 to the JPMorgan Global Technology, Media and Communications Conference and (ii) the quoted language in Paragraph 194 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

195.    Defendants deny the allegations in Paragraph 195, except admit that (i) Mark Wallace and Lawrence Gleason presented on behalf of Uniti on September 6, 2018 at the Bank of America Merrill Lynch Media, Communications & Entertainment Conference and (ii) the quoted language in the third sentence of Paragraph 195 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

196.    Defendants deny the allegations in Paragraph 196, except admit that (i) Mark Wallace and Lawrence Gleason presented on behalf of Uniti on September 6, 2018 to the Bank of America Merrill Lynch Media, Communications & Entertainment Conference and (ii) the quoted language in Paragraph 196 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

197.    Defendants deny the allegations in Paragraph 197, except admit that (i) Mark Wallace presented on behalf of Uniti on October 3, 2018 at the Deutsche Bank Leveraged Finance Conference and (ii) the quoted language in Paragraph 197 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

198.    Defendants deny the allegations in Paragraph 198, except admit that (i) Defendants held a conference call on November 1, 2018 with analysts and investors to discuss Uniti's 3Q2018 financial results, (ii) the call was held after the market closed and was webcast live on Uniti's website, (iii) Kenny Gunderman and Mark Wallace spoke on the call, and (iv) the

33

quoted language in the fourth and fifth sentences of Paragraph 198 appears in the transcript for Uniti's November 1, 2018 earnings call and respectfully refer the Court to that transcript for its complete contents.

199.    Defendants deny the allegations in Paragraph 199.

200.    Defendants deny the allegations in Paragraph 200, except admit that the price of Uniti's common stock closed at $15.56 per share on October 4, 2017 and closed at $19.98 per share on February 15, 2019.

201.    Defendants admit the allegations in Paragraph 201 and respectfully refer the Court to the Aurelius Litigation Order for its full and accurate contents.

202.    Defendants admit the allegations in Paragraph 202 and respectfully refer the Court to the Aurelius Litigation Order for its full and accurate contents.

203.    Defendants deny the allegations in Paragraph 203, except admit that the U.S. District Court for the Southern District of New York issued an opinion in favor of Aurelius on February 15, 2019 and respectfully refer the Court to the Aurelius Litigation Order for its full and accurate contents.

204.    Defendants admit the allegations in Paragraph 204 and respectfully refer the Court to the Aurelius Litigation Order for its full and accurate contents.

205.    Defendants deny the allegations in Paragraph 205, except admit that the quoted language in the second sentence of Paragraph 205 appears in Uniti's February 19, 2019 press release and respectfully refer the Court to that press release for its full and accurate contents.

206.    Defendants deny the allegations in Paragraph 206, except admit that the price of Uniti's common stock closed at $12.51 per share on February 19, 2019 and the trading volume of Uniti common stock exceeded 48 million shares traded on February 19, 2019.

207.   Defendants deny the allegations in Paragraph 207, except admit that on February 21, 2019, Fitch Ratings and Standard & Poor's Global Ratings downgraded Uniti's credit ratings.

208.   Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 208 and therefore deny them. Defendants admit the allegations in the second sentence of Paragraph 208.  Defendants deny the allegations in the third sentence of Paragraph 208, except admit that the price of Uniti's common stock closed at $10.60 per share on February 25, 2019 and closed at $9.64 per share on February 28, 2019.

209.   Defendants admit the allegations in Paragraph 209.

210.   Defendants admit the allegations in Paragraph 210.

211.   Defendants deny the allegations in Paragraph 211.

212.   Defendants admit the allegations in the first and second sentences of Paragraph 212.  Defendants deny the remaining allegations in Paragraph 212 and respectfully refer the Court to Uniti's March 18, 2019 Form 10-K for its full and accurate contents.

213.   Defendants admit the allegations in Paragraph 213 and respectfully refer the Court to Uniti's March 18, 2019 Form 10-K for its full and accurate contents.

214.   Defendants admit the first, second, and third sentences of Paragraph 214. Defendants deny the remaining allegations of Paragraph 214, except admit that the quoted language in the fifth sentence of Paragraph 214 appears in the transcript of Uniti's March 20, 2019 earnings call and respectfully refer the Court to that transcript for its complete contents.

215.   Defendants admit the allegations in Paragraph 215 and respectfully refer the Court to the transcript of Uniti's March 20, 2019 earnings call for its complete contents.

35

216.    Defendants deny the allegations in Paragraph 216, except admit that the quoted language in Paragraph 216 appears in the transcript of Uniti's March 20, 2019 earnings call and respectfully refer the Court to that transcript for its complete contents.

217.    Defendants deny the allegations in Paragraph 217, except admit that (i) Uniti issued a press release on May 9, 2019 titled, "Uniti Group Inc. Reports First Quarter 2019 Results" and (ii) the quoted language in the third sentence of Paragraph 217 appears in the transcript of Uniti's May 9, 2019 earnings call and respectfully refer the Court to that transcript for its complete contents.

218.    Defendants admit the allegations in the first sentence of Paragraph 218. Defendants deny the remaining allegations in Paragraph 218, except admit that the quoted language in the second sentence of Paragraph 218 appears in Uniti's May 9, 2019 Form 10-Q and respectfully refer the Court to that Form 10-Q for its full and accurate contents.

219.    Defendants deny the allegations in Paragraph 219, except admit that (i) Bill DiTullio and Mark Wallace presented on behalf of Uniti on May 14, 2019 at the JPMorgan Global Technology, Media and Communications Conference and (ii) the quoted language in the second sentence of Paragraph 219 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

220.    Defendants deny the allegations in Paragraph 220, except admit that (i) Bill DiTullio and Mark Wallace presented on behalf of Uniti on May 14, 2019 at the JPMorgan Global Technology, Media and Communications Conference and (ii) the quoted language in Paragraph 220 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

36

221. Defendants deny the allegations in Paragraph 221, except admit that (i) Bill DiTullio and Mark Wallace presented on behalf of Uniti on May 29, 2019 at the Cowen Technology, Media & Telecom Conference and (ii) the quoted language in Paragraph 221 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

222. Defendants deny the allegations in Paragraph 222, except admit that (i) Kenny Gunderman presented on behalf of Uniti on June 5, 2019 at NAREIT's REITWeek and (ii) the quoted language in the second sentence of Paragraph 222 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

223. Defendants deny the allegations in Paragraph 223, except admit that (i) Kenny Gunderman presented on behalf of Uniti on June 5, 2019 at NAREIT's REITWeek and (ii) the quoted language in Paragraph 223 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

224. Defendants deny the allegations in Paragraph 224, except admit that (i) Kenny Gunderman presented on behalf of Uniti on June 5, 2019 at NAREIT's REITWeek and (ii) the quoted language in Paragraph 224 appears in the transcript of the presentation and respectfully refer the Court to that transcript for its complete contents.

225. Defendants deny the allegations in Paragraph 225, except admit that (i) Uniti filed a Form 8-K, including an attached investor presentation, on June 20, 2019 and (ii) the quoted language in the third sentence of Paragraph 225 appears in the attachment to Uniti's June 20, 2019 Form 8-K and respectfully refer the Court to that Form 8-K and its attachment for their full and accurate contents.

226. Defendants deny the allegations in Paragraph 226.

227.    Defendants deny the allegations in Paragraph 227, except admit that Uniti issued a press release on June 24, 2019 announcing the planned offering by Uniti Fiber Holdings Inc. of $300 million aggregate principal amount of exchangeable senior notes due in 2024 and respectfully refer the Court to that press release for its full and accurate contents.

228.    Defendants deny the allegations in Paragraph 228, except admit that the price of Uniti's common stock closed at $9.38 per share and had more than 10 million shares traded on June 25, 2019.

229.    Defendants deny the allegations in Paragraph 229, except admit that on June 28, 2019, U.S. Bank and UMB Bank, as indenture trustees of Windstream notes, filed a motion in bankruptcy court to strike the Master Lease from Windstream's Schedule G and modify the bankruptcy court's cash management order and respectfully refer the Court to that motion for its full and accurate contents.

230.    Defendants deny the allegations in Paragraph 230, except admit that the quoted language in Paragraph 230 appears in a July 1, 2019 *Wall Street Journal* article titled, "Windstream Creditors Want Uniti Rent Stopped," and respectfully refer the Court to that article for its full and accurate contents.

231.    Defendants deny the allegations in Paragraph 231 and respectfully refer the Court to the Adversary Proceeding Complaint for its full and accurate contents.

232.    Defendants deny the allegations in Paragraph 232 and respectfully refer the Court to the Adversary Proceeding Complaint for its full and accurate contents.

233.    Defendants deny the allegations in Paragraph 233 and respectfully refer the Court to the Adversary Proceeding Complaint for its full and accurate contents.

38

234.    Defendants admit the allegations in the first sentence of Paragraph 234. Defendants deny the allegations in the second sentence of Paragraph 234.

235.    Paragraph 235 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 235.

236.    Paragraph 236 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 236.

237.    Paragraph 237 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 237.

238.    Defendants deny the allegations in the main body of Paragraph 238, except admit that the Master Lease provides that Windstream would pay $650 million per year (and increased to $653.5 million during the first year of the lease), with the annual increases of 0.5% per year beginning with the fourth year of the term, for a 15-year term.

Defendants deny the allegations in Sub-Paragraph 238(a), except admit that prior to joining Uniti as its CEO, Kenny Gunderman, while at Stephens, was a long-term advisor to Windstream on various transactions, including the Spin-Off.

Defendants deny the allegations in Sub-Paragraph 238(b).

Defendants deny the allegations in Sub-Paragraph 238(c), except admit that Kenny Gunderman and Mark Wallace were copied on an April 12, 2015 email and respectfully refer the Court to that email for its full and accurate contents.

Defendants deny the allegations in Sub-Paragraph 238(d), except admit that Kenny Gunderman, as the CEO and President of Uniti, has been awarded annual compensation in excess of $5 million since the Spin-Off.

Defendants admit the first and second sentences of Sub-Paragraph 238(e).  Defendants deny the remaining allegations in Paragraph Sub-Paragraph 238(e).

Defendants deny the allegations in Sub-Paragraph 238(f), except admit that Windstream divested its 19.6% equity interest in Uniti stock after the Spin-Off to pay down $672 million of its debt.

239.   Defendants deny the allegations in Paragraph 239.

240.   Defendants deny the allegations in Paragraph 240.

241.   Paragraph 241 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 241.

242.   Defendants deny the allegations in Paragraph 242.

243.   Paragraph 243 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 243.

244.   Defendants deny the allegations in Paragraph 244, except admit that (i) the price of Uniti's common stock closed at $24.69 per share on August 2, 2017 and closed at $9.38 per share on June 25, 2019 and (ii) the price of Uniti's 8.25% bond closed at $103.84 per unit at the end of trading on August 2, 2017 and closed at $93.39 per unit at the end of trading on June 25, 2019.

245.   Defendants deny the allegations in Paragraph 245.

246.   Defendants deny the allegations in Paragraph 246.

247.   Defendants deny the allegations in Paragraph 247, except admit that (i) on August 3, 2017, Windstream announced that it was eliminating its dividend payment to its investors and (ii) the price of Uniti's common stock closed at $22.57 per share, with a trading volume

exceeding 4 million shares, on August 3, 2017, and closed at $21.84 per share on August 4, 2017.

248.    Defendants deny the allegations in Paragraph 248, except admit that the price of Uniti's common stock closed at $19.37 per share on August 11, 2017.

249.    Defendants deny the allegations in Paragraph 249.

250.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 250 and therefore deny them. Defendants admit the allegations in the second sentence of Paragraph 250 and respectfully refer the Court to the September 19, 2017 Wells Fargo Securities analyst report for its full and accurate contents.

251.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 251 and therefore deny them, except admit that the quoted language in Paragraph 251 appears in Windstream's September 25, 2017 Form 8-K and respectfully refer the Court to that Form 8-K for its full and accurate contents.

252.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 252 and therefore deny them. Defendants admit the allegations in the second sentence of Paragraph 252 and respectfully refer the Court to the October 2, 2017 JPMorgan analyst report for its full and accurate contents.

253.    Defendants admit the allegations in Paragraph 253 and respectfully refer the Court to the October 3, 2017 SunTrust Robinson Humphrey's analyst report for its full and accurate contents.

41

254. Defendants deny the allegations in Paragraph 254, except admit that the price of Uniti's common stock closed at $15.66 per share, with trading volume exceeding 11 million shares, on September 26, 2017 and closed at $14.73 per share on September 27, 2017.

255. Defendants deny the allegations in Paragraph 255 and Paragraphs 201-204 as if fully set forth herein, except admit that (i) Judge Furman presided over a trial between Windstream and Aurelius and (ii) on February 15, 2019, Judge Furman issued a ruling determining that the Spin-Off violated Windstream's Indenture and finding that a $300 million judgment should be entered against Windstream.

256. Defendants deny the allegations in Paragraph 256, except admit that the price of Uniti's common stock closed at $12.51 per share, with trading volume exceeding 48 million shares, on February 19, 2019.

257. Defendants deny the allegations in Paragraph 257, except admit that the quoted language in Paragraph 257 appears in the February 19, 2018 JPMorgan analyst report and respectfully refer the Court to that report for its full and accurate contents.

258. Defendants deny the allegations in Paragraph 258, except admit that the quoted language in Paragraph 258 appears in the February 2, 2019 RBC Capital Markets analyst report and respectfully refer the Court to that analyst report for its full and accurate contents.

259. Defendants deny the allegations in Paragraph 259, except admit that (i) the price of Uniti's common stock closed at $9.99 per share, with trading volume exceeding 24 million shares, on February 21, 2019 and closed at $9.23 per share on February 22, 2019 and (ii) S&P and Fitch downgraded Uniti's credit rating on February 21, 2019.

260.    Defendants deny the allegations in Paragraph 260, except admit that the quoted language in Paragraph 260 appears in Morgan Stanley's February 25, 2019 analyst report and respectfully refer the Court to that analyst report for its full and accurate contents.

261.    Defendants deny the allegations in Paragraph 261.

262.    Defendants deny the allegations in Paragraph 262, except admit that on June 24, 2019, Uniti announced the planned offering by Uniti Fiber Holdings Inc. of $300 million aggregate principal amount, with an option to purchase up to an additional $45 million aggregate principal amount, of exchangeable senior notes due in 2024 and respectfully refer the Court to Uniti's June 24, 2019 press release for its full and accurate contents.

263.    Defendants deny the allegations in Paragraph 263, except admit that the price of Uniti's common stock closed at $9.38 on June 25, 2019.

264.    Defendants deny the allegations in Paragraph 264, except admit that the chart in Paragraph 264 appears to reflect the price of Uniti's common stock and the prices of the S&P 400 index and the MSCI US REIT index during the period of July 3, 2017 to June 3, 2019.

265.    Defendants deny the allegations in Paragraph 265, except admit that the chart in Paragraph 265 appears to reflect the price of Uniti's debt securities and the Bloomberg Barclays US Corp index during the period of July 3, 2017 to June 3, 2019.

266.    Defendants deny the allegations in Paragraph 266.

267.    The first sentence of Paragraph 267 contains a characterization of the claims in this action, to which no response is required.  To the extent a response is required, Defendants deny the allegations in the first sentence of Paragraph 267, except admit that Plaintiffs allege that Defendants omitted to disclose certain information during the Class Period.  The remaining

43

allegations in Paragraph 267 purport to state legal conclusions, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 267.

268. Defendants deny the allegations in Paragraph 268.

269. Defendants deny the allegations in Paragraph 269, except admit that (i) Uniti's securities are listed and traded on the NASDAQ; (ii) as a regulated issuer, Uniti filed public reports with the SEC; (iii) according to the Company's 2019 Form 10-K, as of March 4, 2020, there were 193,263,981 shares of Uniti stock outstanding; and (iv) Uniti's stock was followed by several securities analysts.

270. Paragraph 270 purports to state legal conclusions, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 270.

271. Paragraph 271 purports to state a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 271.

272. Paragraph 272 purports to state a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 272.

273. Paragraph 273 purports to state a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 273.

274. Paragraph 274 contains characterizations of the claims in this action and purports to state legal conclusions, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 274, except admit that Plaintiffs purport to bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and that the referenced individuals and entities are excluded from Plaintiffs' definition of the purported class.

275. Paragraph 275 purports to state legal conclusions, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 275, except admit that there were 193,263,981 shares of Uniti common stock outstanding as of March 4, 2020.

276. Paragraph 276 purports to state legal conclusions, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 276.

277. Paragraph 277 purports to state legal conclusions, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 277.

278. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 278 and therefore deny them.

279. Paragraph 279 purports to state a legal conclusion, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 279.

280. Defendants incorporate their responses to the foregoing paragraphs as if fully set forth herein.

281. Paragraph 281 contains a characterization of the claims in this action, to which no response is required. To the extent a response is required, Defendants admit the allegations in Paragraph 281.

282. Defendants deny the allegations in Paragraph 282.

283. Defendants deny the allegations in Paragraph 283.

284. Defendants deny the allegations in Paragraph 284.

285. Paragraph 285 contains a characterization of the claims in this action, to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 285.

45

286.    Defendants deny the allegations in Paragraph 286.

287.    Paragraph 287 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 287.

288.    Defendants deny the allegations in Paragraph 288.

289.    The first sentence of Paragraph 289 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in the first sentence of Paragraph 289.  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 289 and therefore deny them.

290.    Paragraph 290 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 290.

291.    Defendants incorporate their responses to the foregoing paragraphs as if fully set forth herein.

292.    Paragraph 292 contains a characterization of the claims in this action and purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 292.

293.    Defendants deny the allegations in Paragraph 293.

294.    Defendants deny the allegations in Paragraph 294.

295.    Defendants deny the allegations in Paragraph 295.

296.    Defendants deny the allegations in Paragraph 296.

297.    Paragraph 297 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 297.

298.    Paragraph 298 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 298.

299.    Defendants incorporate their responses to the foregoing paragraphs as if fully set forth herein.

300.    Paragraph 300 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 300.

301.    Defendants deny the allegations in Paragraph 301.

302.    Defendants deny the allegations in Paragraph 302.

303.    Paragraph 303 purports to state a legal conclusion, to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 303.

304.    Answering the "WHEREFORE" clauses following Paragraph 303, Defendants deny that Plaintiffs are entitled to any judgement, damages, recovery, or relief whatsoever.

## DEFENSES

Without admitting any wrongful conduct, and without assuming any burden that they would not otherwise bear, Defendants assert the following defenses to Plaintiffs' Amended Class Action Complaint.

### FIRST DEFENSE
### (Failure to State a Claim)

Plaintiffs fail to state a claim upon which relief can be granted.

### SECOND DEFENSE
### (Failure to Plead Misstatements or Omissions)

Plaintiffs fail to plead specific misstatements or omissions, why any misstatement or omission is misleading, or particular facts sufficient to support the allegations asserted on information and belief.  15 U.S.C. § 78u-4(b)(1).

## THIRD DEFENSE
### (Failure to Plead Scienter with Particularity)

Plaintiffs fail to plead fraud or scienter with the particularity required by Fed. R. Civ. P.

9(b) and the Private Securities Litigation Reform Act of 1995.  15 U.S.C. § 78u-4(b)(2).

## FOURTH DEFENSE
### (No False Statements)

Plaintiffs' claims fail, in whole or in part, because Defendants did not make any untrue

statement of material fact.

## FIFTH DEFENSE
### (Statements of Opinion Not Actionable)

Plaintiffs' claims are barred, in whole or in part, because certain of the alleged

misstatements are non-actionable statements of opinion that were genuinely held when made,

and Plaintiffs have not pleaded, and cannot prove, otherwise.

## SIXTH DEFENSE
### (No Omissions)

Plaintiffs' claims fail, in whole or in part, because Defendants made full and accurate

disclosures of all information required to be disclosed by law and did not omit to disclose any

statement of fact necessary in order to make the statements made by Defendants not misleading.

## SEVENTH DEFENSE
### (No Duty)

Plaintiffs' claims are barred, in whole or in part, because Defendants had no duty to

disclose, or cause the disclosure of, the allegedly omitted material information.

## EIGHTH DEFENSE
### (Allegedly Undisclosed Information Was Public)

Plaintiffs' claims are barred, in whole or in part, because some or all of the matters now

claimed by Plaintiffs to have been omitted from Uniti's public disclosures (which Defendants

deny) were fully disclosed by Defendants or were otherwise known to and entered the securities

market through credible sources.

### NINTH DEFENSE
### (No Materiality)

Plaintiffs' claims fail, in whole or in part, because any allegedly false or misleading

statements or omissions that Plaintiffs seek to attribute to Defendants are immaterial.

### TENTH DEFENSE
### (Puffery)

Plaintiffs' claims are barred, in whole or in part, because certain of the alleged

misstatements are non-actionable statements of puffery.

### ELEVENTH DEFENSE
### (Safe Harbor for Forward-Looking Statements)

Plaintiffs' claims fail to the extent that they are based on forward-looking statements that

were either accompanied by meaningful cautionary language or made without actual knowledge

that those statements were false or misleading.  15 U.S.C. § 78u-5(c).

### TWELFTH DEFENSE
### ("Bespeaks Caution" Doctrine)

Plaintiffs' claims are barred, in whole or in part, under the "bespeaks caution" doctrine.

### THIRTEENTH DEFENSE
### (No Scienter)

Plaintiffs' claims fail, in whole or in part, because Defendants lacked the required

fraudulent intent or scienter necessary to establish violations of the securities laws.

### FOURTEENTH DEFENSE
### (No Reliance)

Plaintiffs are not entitled to a presumption of reliance and did not reasonably rely on any

allegedly misleading statement of material fact when purchasing Uniti's securities.

**FIFTEENTH DEFENSE**
**(Plaintiff's Knowledge of Allegedly Undisclosed Facts)**

Plaintiffs' claims are barred, in whole or in part, because Defendants are not liable to Plaintiffs for any claims based on alleged misrepresentations or omissions for which Plaintiffs and/or their agents, financial representatives, and/or broker-dealers had, in whole or part, actual or constructive knowledge.

**SIXTEENTH DEFENSE**
**(No Loss Causation)**

Plaintiffs' claims fail, in whole or in part, because no alleged act or omission of Defendants was the cause-in-fact or proximate cause of any losses for which Plaintiffs seek to recover damages.

**SEVENTEENTH DEFENSE**
**(No Impact on Market Price)**

Plaintiffs' claims are barred, in whole or in part, because the alleged misstatements or omissions did not affect the market price of Uniti's common stock.

**EIGHTEENTH DEFENSE**
**(Assumption of Risk)**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs purchased Uniti's common stock with actual or constructive knowledge of the risks involved in an investment in Uniti's common stock, and thus assumed the risk that the value of the common stock would decline if such risks materialized.

**NINETEENTH DEFENSE**
**(No Damages)**

Plaintiffs' claims for damages are barred, in whole or in part, because Plaintiffs did not suffer any legally cognizable injury or damages as a result of the Defendants' conduct.

50

## TWENTIETH DEFENSE
### (Damages Are Speculative)

Plaintiffs' claims for damages are barred, in whole or in part, because any alleged damages, which the Defendants deny, are speculative.

## TWENTY-FIRST DEFENSE
### (Damages Due to Other Causes)

To the extent that any Plaintiff or member of the alleged class incurred any injury or damage as alleged in the Complaint, which is denied, any such injury or damage was caused and brought about by other factors, including, but not limited to, market-wide phenomena, economic factors, and/or the acts, conduct, or omissions of individuals and/or entities other than the Defendants that intervened between the Defendants' alleged actions and the alleged harm. Accordingly, any recovery should be precluded or diminished in proportion to the amount of fault attributable to other factors.

## TWENTY-SECOND DEFENSE
### (Limitation on Damages)

Plaintiffs are not entitled to any recovery from the Defendants in excess of the amounts allowed under applicable law.

## TWENTY-THIRD DEFENSE
### (Proportionate Liability)

Plaintiff's claims against each Defendant fail to the extent that they seek damages exceeding each Defendant's proportionate liability.

## TWENTY-FOURTH DEFENSE
### (Pre- and Post-Class Period Conduct)

Plaintiffs' claims are barred, in whole or in part, insofar as they are based on alleged conduct that concluded before, or began after, Plaintiffs' purchases of Uniti's common stock.

51

## TWENTY-FIFTH DEFENSE
### (Statute of Limitations)

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

## TWENTY-SIXTH DEFENSE
### (Estoppel, Waiver, Unclean Hands)

Plaintiffs' claims are barred, in whole or in part, under the doctrines of estoppel, waiver,

unclean hands, laches, and/or other related doctrines and principles.

## TWENTY-SEVENTH DEFENSE
### (Good Faith and No Inducement of Fraud)

Plaintiffs' claims under Section 20(a) of the Exchange Act are barred because the

Individual Defendants at all times acted in good faith, and did not directly or indirectly induce

the alleged acts underlying Plaintiffs' fraud claims.

## TWENTY-EIGHTH DEFENSE
### (Standing)

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs and members of the

alleged class, including those who did not purchase Uniti common stock, lack standing to assert

federal securities fraud claims against Defendants.

## TWENTY-NINTH DEFENSE
### (Failure to Meet Requirements of Rule 23)

Plaintiffs cannot satisfy the prerequisites set forth in Rule 23 of the Federal Rules of Civil

Procedure to maintain this action as a class action.

## THIRTIETH DEFENSE
### (No Device, Scheme, or Artifice)

Plaintiffs' claims are barred, in whole or in part, because Defendants did not employ any

device, scheme, or artifice to defraud.

52

### THIRTY-FIRST DEFENSE
### (No Fraud or Deceit)

Plaintiffs' claims are barred, in whole or in part, because Defendants did not engage in any act, practice, or course of business which operated or would operate as a fraud or deceit.

### THIRTY-SECOND DEFENSE
### (Additional Defenses)

Defendants have not knowingly and intentionally waived any applicable additional defenses, and reserve the right to raise any additional defenses not asserted herein of which they become aware at any subsequent stage of this action.  Defendants further reserve the right to amend their Answer and Defenses accordingly and to delete defenses that they determine are not applicable during the course of discovery.

### PRAYER

WHEREFORE, Defendants respectfully request that the Court:

A.     Deny class certification and strike all class allegations from the Complaint;

B.     Render judgment that Plaintiffs take nothing by this suit;

C.     Dismiss Plaintiffs' Complaint with prejudice;

D.     Award Defendants their costs of court and other fees; and

E.     Grant any other just and proper relief to which Defendants may be entitled.

Dated: April 15, 2021


OF COUNSEL:

Edmund Polubinski III *
Brian M. Burnovski *
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
edmund.polubinski@davispolk.com
brian.burnovski@davispolk.com



*admitted pro hac vice*

Jess Askew III, Ark. Bar No. 86005
Andrew King, Ark. Bar No. 2007176
Frederick H. Davis, Ark. Bar No. 2012271
KUTAK ROCK LLP
124 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3706
(501) 975-3000
jess.askew@kutakrock.com
andrew.king@kutakrock.com
frederick.davis@kutakrock.com


*Counsel for Defendants Uniti Group Inc.,
Kenneth A. Gunderman, and Mark A. Wallace*

54