**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| IN RE UNITI GROUP INC. SECURITIES LITIGATION | No. 4:19-cv-00756-BSM |

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
<u>CERTIFICATION FOR INTERLOCUTORY APPEAL</u>**

1

# **TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ........................................................................................................................... 1

LEGAL STANDARDS ................................................................................................................. 3

ARGUMENT ................................................................................................................................. 4

I. THE COURT SHOULD GRANT THE MOTION FOR RECONSIDERATION ............. 4

    A. Plaintiffs Fail to Plead Any Actionable Omission or Misstatement ....................... 4

    B. Plaintiffs Fail to Plead a Strong Inference of Scienter ............................................ 8

II. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL ...................................................................................... 13

    A. The Court's Order Involves Controlling Questions of Law ................................. 13

    B. There Is Substantial Ground for Difference of Opinion ....................................... 14

    C. Certification Will Materially Advance the Ultimate Termination of the Litigation ............................................................................................................... 15

CONCLUSION ............................................................................................................................ 15

# **TABLE OF AUTHORITIES**

PAGE(S)

CASES

*City of Hialeah Emps. Ret. Sys. v. Toll Bros.*,
    No. CV 07-1513, 2009 WL 10684918 (E.D. Pa. Sept. 21, 2009) ............................................... 14

*Curtis Lumber Co. v. La. Pac. Corp.*,
    618 F.3d 762 (8th Cir. 2010) ....................................................................................................... 13

*Day v. Celadon Trucking Servs., Inc.*,
    No. 4:09CV00031 SWW, 2012 WL 12792162 (E.D. Ark. Mar. 13, 2012) ........................... 4, 15

*Edwards v. Thomas*,
    No. 4:19-cv-4018, 2020 WL 888538 (W.D. Ark. Feb. 24, 2020) ............................................... 4

*Fallay v. S.F. City & Cnty.*,
    No. C 08-2261 CRB, 2016 WL 889152 (N.D. Cal. Mar. 8, 2016) ............................................... 9

*Keasler v. United States*,
    766 F.2d 1227 (8th Cir. 1985) ..................................................................................................... 8

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990) ........................................................................................................ 13

*Kushner v. Beverly Enters.*,
    317 F.3d 820 (8th Cir. 2003) ........................................................................................... 4, 5, 6, 8

*Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*,
    641 F.3d 1023 (8th Cir. 2011) ................................................................................................... 11

*Moore v. Apple Cent., LLC*,
    No. 5:16-CV-05069, 2017 WL 11195761 (W.D. Ark. Mar. 16, 2017) ..................................... 15

*In re Navarre Corp. Sec. Litig.*,
    299 F.3d 735 (8th Cir. 2002) ....................................................................................................... 6

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ..................................................................................................... 10

PAGE(S)

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
   552 U.S. 148 (2008) ............................................................................................................ 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................... 9, 10, 11

*Webb v. Exxon Mobil Corp.*,
   No. 4:13CV00232 BSM, 2015 WL 11090403 (E.D. Ark. Mar. 17, 2015) ................................ 3

*Whitley v. Baptist Health*,
   No. 4:16-CV-624-DPM, 2021 WL 307293 (E.D. Ark. Jan. 29, 2021) ...................................... 13

*Wright v. Gen. Dynamics Corp.*,
   No. LR-C-89-252, 1989 WL 297985 (E.D. Ark. Aug. 1, 1989) ............................................... 14

*Zaluski v. United Am. Healthcare Corp.*,
   527 F.3d 564 (6th Cir. 2008) ............................................................................................ 6, 7

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ............................................................................................... 10

STATUTES & RULES

15 U.S.C. § 78u-4 ....................................................................................................................... 4, 9
28 U.S.C. § 1292 ................................................................................................................... 1, 4, 15
Fed. R. Civ. P. 60 ......................................................................................................................... 3, 4
H.R. Rep. No. 104-369, at 31, reprinted in 1995 U.S.C.C.A.N. at 730 ........................................... 15

**PRELIMINARY STATEMENT**

In denying Defendants' motion to dismiss Plaintiffs' complaint, the Court's Order departed decisively from well-established and controlling Supreme Court and Eighth Circuit securities law. That departure is especially stark and prejudicial for Defendants because the Order reached exactly the opposite conclusion from the Chief Judge of the U.S. District Court for the District of Delaware in *SLF Holdings, LLC v. Uniti Fiber Holdings Inc., et al.*, No. 1:19-cv-01813-LPS (D. Del.). In that case—asserting the same claims, based on essentially identical allegations, against the same defendants—the court dismissed these claims with prejudice, only months ago. *See* Defs.' Notice of Supp. Authority (ECF No. 69). The *SLF* court's reasoning is fully in accord with binding Eighth Circuit law.

For these reasons and others, the Order's conclusions that Plaintiffs here alleged an actionable misstatement or omission and a "strong" inference of scienter constitute manifest errors that Defendants respectfully submit warrant reconsideration. In the alternative, if the Court declines to grant reconsideration, this would be a textbook example of an issue appropriate for interlocutory appeal. Two respected courts would have reached irreconcilable conclusions on the same claims, applied to substantially identical allegations, on important issues of federal securities law. There is no way to uphold the Order without concluding that Chief Judge Stark's 34-page opinion in *SLF* was wrong on dispositive issues of law. If the Court declines to grant reconsideration, appellate review is the only way to resolve the "controlling question[s] of law as to which there [are] substantial ground[s] for difference of opinion." 28 U.S.C. § 1292(b).

**BACKGROUND**

This action arises out of the spinoff of Defendant Uniti as an independent company from its former corporate parent, Windstream Holdings, Inc. ("Windstream Holdings"). ECF No. 62 (the "Complaint" or "CAC") ¶¶ 52-53. As part of the transaction, Windstream Services, LLC (together

1

with Windstream Holdings, "Windstream"), a subsidiary of Windstream Holdings, caused its operating subsidiaries to convey fiber and copper fiber network assets to Uniti. *Id.* ¶¶ 53-54, 59. At the same time, a Uniti affiliate entered into a master lease with Windstream Holdings (the "Master Lease"), pursuant to which Windstream Holdings leased those assets from Uniti. *Id.* ¶¶ 54, 59.

In their Complaint, Plaintiffs alleged that Defendants made false and misleading statements regarding the spinoff and Master Lease, and asserted claims for securities fraud under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder, and control person liability under § 20(a) of the Exchange Act. *Id.* ¶¶ 280-303. Defendants moved to dismiss the Complaint on July 10, 2020. ECF Nos. 63, 64.[1]

Much of Plaintiffs' Complaint was copied nearly verbatim from a lawsuit filed by SLF Holdings, LLC ("SLF") against Uniti, Defendant Kenneth A. Gunderman, Uniti's CEO and President, and certain other defendants in the United States District Court for the District of Delaware. *See SLF Holdings, LLC v. Uniti Fiber Holdings Inc., et al.*, No. 1:19-cv-01813-LPS (D. Del.) (the "SLF Action"). That action arose out of a corporate transaction but, as here, the plaintiff asserted claims for fraud under the Exchange Act against Uniti and Mr. Gunderman, based on the same basic allegations alleged here, in connection with purported risks related to Uniti's spinoff from Windstream. Defendants in the SLF Action moved to dismiss the complaint, and Chief Judge Leonard P. Stark dismissed the action in its entirety, with prejudice, on November 4, 2020. *See* Ex. A.[2]

In his 34-page opinion, Chief Judge Stark concluded that SLF failed to plead any actionable misstatement or omission. *Id.* at 16-21. Analyzing the same alleged omissions at issue here, Chief Judge Stark held that "Uniti had no duty to disclose the alleged, unmaterialized risks"

---

[1] Plaintiffs' opposition brief and Defendants' reply are filed as ECF Nos. 66 and 68.

[2] "Ex. A" refers to the Exhibit attached to Defendants' Motion for Reconsideration or, in the Alternative, Certification for Interlocutory Appeal, filed herewith.

2

to investors, and "Defendants sufficiently disclosed the risks regarding the spinoff and REIT in their public filings." *Id.* at 16, 18.

Chief Judge Stark further concluded that SLF failed to plead a strong inference of scienter. *Id.* at 22-25. He considered and rejected the same scienter arguments proffered by Plaintiffs here, holding that the complaint "does not allege that Defendants believed, or had reason to believe (at any point prior to August 2017, upon hearing rumors that [hedge fund] Aurelius was preparing a lawsuit), that the Master Lease violated Windstream's indentures." *Id.* at 24. He likewise rejected the contention that the complaint's "allegations about what Defendants knew about the useful life of the copper wiring lead to a conclusion that scienter is adequately pled." *Id.* at 24-25. Finally, he rejected the argument, also advanced by Plaintiffs in this action, that Windstream's alleged scienter can be attributed to Defendants. *Id.* at 23.

On November 9, 2020, Defendants filed a Notice of Supplemental Authority to bring the District of Delaware opinion to this Court's attention. ECF No. 69. Nearly five months later, on March 31, 2021, this Court issued its order denying Defendants' motion to dismiss (the "Order"). ECF No. 74. Contrary to the rulings of the Delaware district court, this Court found, among other things, that Plaintiffs had sufficiently alleged actionable misstatements and omissions and had adequately pleaded scienter. In reaching those conclusions, the Order did not appear to address the Delaware court's contrary decision.

## **LEGAL STANDARDS**

"A motion for reconsideration is appropriate: (1) to correct manifest errors of law or fact, or (2) to present newly discovered evidence." *Webb v. Exxon Mobil Corp.*, No. 4:13CV00232 BSM, 2015 WL 11090403, at *2 (E.D. Ark. Mar. 17, 2015). Under Rule 60(b), a party can be relieved from an order of the Court on one of several grounds, including "mistake, inadvertence,

3

surprise, or excusable neglect." Fed. R. Civ. P. 60(b).[3]

Under 28 U.S.C. § 1292(b), the Court may "certify an order for determination on interlocutory appeal if it finds that the order from which an appeal is sought involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation." *Day v. Celadon Trucking Servs., Inc.*, No. 4:09CV00031 SWW, 2012 WL 12792162, at *1 (E.D. Ark. Mar. 13, 2012).

## ARGUMENT

### I. THE COURT SHOULD GRANT THE MOTION FOR RECONSIDERATION

Defendants respectfully submit that in denying Defendants' motion to dismiss, the Court's Order made two critical and manifest errors. First, the Order erred in concluding that Plaintiffs adequately alleged an actionable omission or misstatement, by misapplying controlling Eighth Circuit precedent. Second, the Order misapplied the heightened standard for pleading scienter under the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4(b)(2)(A), and controlling Supreme Court and Eighth Circuit precedent applying that heightened standard. Defendants therefore request that the Court reconsider its Order and conclude that Plaintiffs have failed to state a claim under the Exchange Act.

#### A. Plaintiffs Fail to Plead Any Actionable Omission or Misstatement

*Omissions Theory*. The Order erred in holding that Plaintiffs sufficiently pleaded that Defendants "failed to disclose the prohibited structure of the spin-off transaction and Master Lease." Order at 4. As the Eighth Circuit has explained, "there is no duty to disclose 'soft information,' such as a matter of opinion, predictions, or a belief as to the legality of the

---

[3] "The Federal Rules of Civil Procedure do not account for motions to reconsider," and "[t]he Eighth Circuit instructs that motions to reconsider are nothing more than Rule 60(b) motions when directed at non-final orders." *Edwards v. Thomas*, No. 4:19-CV-4018, 2020 WL 888538, at *1 (W.D. Ark. Feb. 24, 2020) (citations and internal quotation marks omitted).

4

company's own actions." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003). Rather, "[s]oft information must be disclosed only if *virtually as certain* as hard facts." *Id.* (emphasis added) (citation and internal quotation marks omitted).

Although the Order purported to recognize *Kushner*'s relevance to this action, acknowledging that "defendants did not have a duty to 'publicly opine' on the legality of their actions, *see Kushner*," the Order held that Defendants nonetheless "had the duty to disclose what their actions were." Order at 6. But Defendants *did* disclose "what their actions were." Among other things, Uniti and Windstream disclosed the terms of the spinoff, the Master Lease, and Windstream's indentures *in their entirety*. Defs.' Br. at 7. Plaintiffs never claimed otherwise, and the Order did not identify what other relevant "actions" could have been disclosed. Uniti also disclosed various risks associated with the spinoff and Master Lease, including that "[d]isputes with third parties could also arise out of" the spinoff, that Uniti "could experience unfavorable reactions to the Spin-Off," that the Master Lease might "not [be] respected as a true lease for U.S. federal income tax purposes," and that the useful life of the leased copper assets could be as little as seven years. *Id.* at 8, 21. Uniti's shareholders were thus aware of the risks and had access to the underlying facts so that they could make their own judgments as to whether there was any violation of Windstream's indentures.[4]  Defendants had no duty to disclose anything further.

To the extent the Order rested on the conclusion that Defendants should have disclosed the alleged "fact" that the spinoff violated Windstream's debt indentures or that the Master Lease was not a "true lease"—years before any such claims were even alleged, much less adjudicated as fact—such a rule would have enormous, and unworkable, implications for public companies' disclosure obligations. For example, as applied to the indenture claim, such a rule would

---

[4] Indeed, that is precisely what one hedge fund (Aurelius Capital Master, Ltd.) did when it filed suit against Windstream in October 2017 (years after the spinoff), alleging a violation of Windstream's debt indentures—based only on information in Windstream's and Uniti's public disclosures. Defs.' Br. at 9.

5

effectively require a company to review its contracts for provisions that a counterparty may someday claim were breached and predict which of those claims *will* ultimately succeed. If that were not enough, the implications of the Order would be even more problematic: As Uniti itself was not a party to the relevant debt indentures, the Order would effectively require a company to review not only its *own* contracts, but also those of its most significant customers or other third parties with whom the company has a material financial relationship. And a company would be required to disclose as a *fact* the *possibility* that the third party had breached its own contracts even before any such claim had been adjudicated, *notwithstanding that the third party itself disputed the breach claim* (just as Windstream vigorously opposed the claims of Aurelius).[5]

Such a disclosure regime cannot be the law. Nor is it. As the Eighth Circuit has explained, "[c]orporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonabl[y] available to them." *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 743 (8th Cir. 2002) (citation and internal quotation marks omitted). Plaintiffs have alleged no facts suggesting that whether the spinoff violated Windstream's indentures or the Master Lease was a "true lease" were "virtually as certain as hard facts."[6] There was, therefore, no duty to disclose them as such. *See Kushner*, 317 F.3d at 831 ("Absent a clear allegation that the defendants knew of the scheme and its illegal nature at the time they stated the belief that the company was in compliance with the law, there is nothing further to disclose."); *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 575-76 (6th Cir. 2008) (company had no duty to disclose that it may have breached a customer contract, because it was "soft information" and there was no allegation that

---

[5] Similarly, as applied to the "true lease" claim, the Order's holding would have required Uniti to disclose that, if it ever entered into bankruptcy, Windstream might *allege* that the Master Lease was *not* a "true lease," despite Windstream having expressly represented in the agreement that it *was* a true lease and that it would not claim otherwise. Notably, that claim (unlike the indenture claim) has never been adjudicated, even to this day, and it never will, as the adversary proceeding has since been settled.

[6] Indeed, the Complaint's allegations were framed expressly and entirely in terms of the future litigation "risks" that Defendants allegedly failed to disclose—precisely the type of "soft information" that *Kushner* holds is not actionable. *See* CAC ¶¶ 16-17, 31, 87, 242.

6

defendants believed they had breached the contract or anticipated that the contract was in danger).[7]

The SLF Action only confirms the manifest error in concluding that Plaintiffs adequately alleged an actionable omission. In that case, the court reached the opposite conclusion on materially indistinguishable allegations. After considering essentially identical claims against Uniti and Mr. Gunderman as Plaintiffs assert here, the court expressly rejected any assertion that the plaintiff in that case alleged hard facts rather than nonactionable litigation risks, explaining:

> The undisclosed information identified by SLF consists of potential "risks" of future adverse legal rulings: for example, that the spinoff and Master Lease violated Windstream's debt indentures and that the Master Lease was not a "true lease." . . . Uniti's statements – which confirmed that Windstream retained ownership of certain assets after the spinoff (Cmplt. ¶ 95), that Uniti depended on Windstream (*id.* ¶ 98), and that Windstream should be able to meet its annual lease obligations for the foreseeable future (*id.* ¶ 100) – were not rendered misleading due to litigation that was not substantially certain to occur. Uniti had no duty to disclose a risk that had not "actually materialized" at the time of the allegedly misleading prior disclosure.

Ex. A at 16-17. The court also held that Uniti's public disclosures were sufficient:

> The spinoff documents, the Master Lease, the indentures, and Windstream's statements to regulators were all publicly available . . . . The information disclosed in these materials identified the risks pertaining to the Master Lease, including that it "could be recharacterized as something other than a true lease." (Cmplt. ¶ 70) It also disclosed that Uniti's "copper wiring had a useful life of 7-40 years." (*Id.* ¶ 78) These disclosures put Uniti's shareholders and SLF on notice that the useful life of the copper assets could be shorter than the 15-year term of the Master Lease. Having made these public disclosures, which SLF admits it reviewed (*Id.* ¶ 130), Defendants were not obligated to disclose the specific risks identified in the assessments of Skadden and E&Y.

*Id.* at 19. The Order did not address or attempt to distinguish the Delaware district court's opinion, notwithstanding that the reasoning in that opinion applies foursquare to the claims here.

---

[7] In concluding that Plaintiffs had alleged an actionable omission, the Order noted that "plaintiffs allege that defendants affirmatively represented in SEC filings that the spin-off and Master Lease did not violate the indenture." Order at 5-6 (citing CAC ¶¶ 99, 150). But the Complaint's own allegations do not support any such assertion. Accordingly, to the extent the Order relied on that mistaken premise in reaching its conclusion, that would likewise constitute manifest error. The supposed affirmative representations by "defendants" consisted of oral statements by *Robert* Gunderman, who is Defendant Kenneth Gunderman's brother but who is not and has never had any role at Uniti (CAC ¶ 99), and a representation that *Windstream* made to Uniti in the Separation and Distribution Agreement (*id.* ¶ 150). Because neither statement was a statement made by *Defendants*, neither statement can give rise to liability against Defendants under the federal securities laws. Defs.' Br. at 30.

7

In light of the errors identified above and in the interest of avoiding inconsistent outcomes in different federal courts involving the exact same claims, Defendants respectfully request that the Court reconsider its decision regarding the actionability of Plaintiffs' alleged omissions. *See Keasler v. United States*, 766 F.2d 1227, 1233 (8th Cir. 1985) (explaining the importance of "maintain[ing] uniformity in the law among our circuits, wherever reasoned analysis will allow" and noting that "[t]his duty" also "applies to the district courts in this circuit" (citation and internal quotation marks omitted)).

*Misstatement Theory*.  The Order likewise erred in holding that Plaintiffs alleged any actionable misstatement, in connection with Defendants' statements of *belief* that Uniti could "navigate the Windstream bankruptcy proceedings without having to raise external capital." Order at 6.  The Order appeared to base its holding entirely on the conclusion that the PSLRA's safe harbor did not apply to the alleged statements.  But that did not absolve Plaintiffs of their obligation to allege that the statements themselves were materially false or misleading.  As Defendants explained in their motion, Plaintiffs failed to do so:  The alleged representations were statements of opinion, not objective fact, and Plaintiffs alleged no facts to show that Defendants did not honestly hold those opinions at the time of the statements.  Defs.' Br. at 22-23.  As the Eighth Circuit has explained, "[t]he fact that a defendant's belief or opinion later prove[s] to be wrong in hindsight does not render the statements untrue when made." *Kushner*, 317 F.3d at 831 (citation and internal quotation marks omitted).  The Order did not consider that independent, dispositive argument, which provides an additional basis for reconsideration.

### B.     Plaintiffs Fail to Plead a Strong Inference of Scienter

Aside from whether Plaintiffs adequately alleged any actionable misstatement or omission, the Order's application of the PSLRA's heightened standard for pleading scienter was also a manifest error of law that independently warrants reconsideration.

8

First, the Order does not address whether Plaintiffs alleged scienter with respect to their claim that Defendants failed to disclose that the Master Lease was not a "true lease." That alone supplies grounds for reconsideration. *See Fallay v. S.F. City & Cnty.*, No. C 08-2261 CRB, 2016 WL 889152, at *3 (N.D. Cal. Mar. 8, 2016) (granting motion for reconsideration "because the Court failed to consider dispositive legal arguments").[8]

Second, the Order's conclusion that Plaintiffs adequately alleged scienter with respect to the claim that the spinoff violated the indentures rests on a manifest error of law. In order to satisfy the PSLRA's heightened pleading, the Complaint must "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). A "strong" inference must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged" after "consider[ing] plausible, nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). "It does not suffice that a reasonable factfinder plausibly could infer from the complaint's allegations the requisite state of mind." *Id.* at 314. Rather, a court "must engage in a comparative evaluation" and "must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Id.* "[O]missions and ambiguities count against inferring scienter." *Id.* at 326.

While the Order appears to have recognized the heightened pleading standard, it erred in its application. The Order's finding appears to rely primarily on an internal Windstream email, sent in April 2013, which the Court found "indicates that Windstream and defendants specifically

---

[8] As explained in Defendants' motion to dismiss, there is no basis to conclude that Plaintiffs adequately alleged scienter as to the "true lease" claim, as Windstream itself expressly agreed in the Master Lease that the "*Master Lease is a 'true lease,'* is not a financing lease . . . or other financing or trust arrangement," and further promised "not to challenge the validity, enforceability or characterization of the lease of the Leased Property as a true lease." Defs.' Br. at 32 (emphasis added). There is no allegation that Windstream ever claimed otherwise at any time before filing the adversary proceeding against Uniti. *Id.* Windstream merely made an allegation in a lawsuit that was never adjudicated and never will be, as the claims were subsequently settled as part of Windstream's bankruptcy.

9

structured the spin-off transaction in order to *evade* the restrictions of the indenture." Order at 7 (citing CAC ¶¶ 75-76, 104-10) (emphasis added); *see also* CAC ¶ 86 (conceding that spinoff and Master Lease were structured "to *avoid* 'a clear violation' of the Indenture"). The Order noted that "Defendants argue . . . that the April 2013 email indicates they believed the spin-off transaction complied with the indenture," but found that, "[t]o the extent that defendants have created a competing inference at this stage, . . . plaintiffs' claims survive," citing *Tellabs*. Order at 7.

The Court's ruling should be reconsidered for several reasons. To begin, the Order did not make any findings to support a conclusion that an inference of scienter was "strong," as required under the Supreme Court's decision in *Tellabs*. At most, the Order appears to have found that there were *competing* inferences that could be drawn from the email. *Id.* But competing inferences are insufficient, absent a finding that the inferences that support scienter are "cogent" and "strong"—i.e., *at least* as compelling as any opposing inference. *Tellabs*, 551 U.S. at 324. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1006 (9th Cir. 2009) ("Even if a set of allegations may create an inference of scienter greater than the sum of its parts, it must still be at least as compelling as an alternative innocent explanation."). That the Order did not attempt to weigh the competing inferences alone warrants reconsideration.

The absence of any findings weighing the competing inferences is particularly important because the purported inference that Plaintiffs seek to draw from the April 2013 email (i.e., that Defendants *knew* that the spinoff and Master Lease violated Windstream's debt indentures) is simply not plausible—and, thus, cannot satisfy even ordinary notice pleading, let alone the PSLRA's heightened pleading standard. *See Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020) ("Allegations that are implausible do not create a strong inference of scienter."). Nothing in the email, which was written by a Windstream executive *two years before* Uniti's spinoff, remotely suggests that its author or any Defendant believed at that time, much less two years later, that the

10

transaction violated, or would later be deemed to violate, Windstream's debt covenants.[9] Indeed, the Complaint concedes that Windstream structured the spinoff in 2015 "*to avoid* 'a clear violation' of the Indenture" and "settled on a structure for the transaction *that appeared to comply with the restrictive covenants in the Indenture*." CAC ¶¶ 10, 86 (emphasis added).

The inferences that can—and cannot—be drawn from the April 2013 email are critical in light of Plaintiffs' argument that the supposedly actionable omission is the *fact* that the spinoff *violated* the indentures "*from inception*," rather than the mere *risk* that it did. *See* Point I.A., *supra*. Even if one could draw an inference from the April 2013 email that Defendants knew there was a *risk* that the spinoff violated the covenants, that would not be sufficient to establish an inference—much less a *strong* one—that Defendants *knew* that the spinoff, *in fact*, violated the indentures from inception. In short, Plaintiffs cannot have it both ways: Either they are alleging that Defendants knew all along that the indentures were, *in fact*, violated, of which there is simply no factual allegation in support; or, they are alleging that Defendants knew there was a *risk* of as much, which Defendants had no duty to disclose under *Kushner*. *See id.*

Finally, the Order did not follow controlling Supreme Court and Eighth Circuit precedent requiring that a court consider "*whether **all** of the facts alleged, taken collectively*, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1029 (8th Cir. 2011) (quoting *Tellabs*, 551 U.S. at 323). The Order, which rested entirely on the April 2013 email, did not consider numerous other facts alleged in the complaint—and raised in Defendants' motion to dismiss—which affirmatively undermine any inference of

---

[9] In relevant part, the email noted that the "Indenture can be a limiting factor" in any proposed transaction but made clear that Windstream "need[ed] a capital structure *that works with* [Windstream's] Indenture"—i.e., that did *not* violate the Indenture—and noted that "we may be able to use the HoldCo strategy" to achieve that objective. CAC ¶ 75 (emphasis added).

11

scienter. That provides further grounds for reconsideration.[10]

Further confirming that the Order's application of *Tellabs* was incorrect, the Delaware district court held in the SLF Action that allegations largely identical to those here were insufficient to support a "strong inference" of scienter. That court held that the allegation that Windstream and Uniti "structur[ed] the 2015 Uniti Spinoff in a way designed to avoid the Indenture's restrictive covenants" *negated* an inference of scienter—the exact opposite of the conclusion reached in the Order. Ex. A at 24. The Delaware court also concluded that SLF's complaint, like Plaintiffs' Complaint here, "does not allege that Defendants believed, or had reason to believe (at any point prior to August 2017, upon hearing rumors that Aurelius was preparing a lawsuit), that the Master Lease violated Windstream's indentures." *Id.*[11] Finally, the Delaware court rejected the argument, also advanced by Plaintiffs in this action, that Windstream's alleged scienter could be attributed to Defendants. *Id.* at 23.

Accordingly, the Court should reconsider its Order and conclude that Plaintiffs failed to plead facts giving rise to a strong inference of scienter.[12]

---

[10] The Order noted the allegation that Defendants "were 'intimately involved' in conceiving and negotiating" the spinoff and Master Lease (Order at 7), but that says nothing about whether Defendants believed, or had reason to believe, that the transaction violated Windstream's indentures. The Complaint's other allegations make clear that no one had any such belief. For example, a presentation made during a May 2014 Windstream board meeting included a slide addressing the implications of a potential spinoff on Windstream's bond indentures. CAC ¶ 82; Defs.' Br. at 30. The slide concluded, "*Given that lease obligation will be at OpCo/HoldCo, sale-leaseback covenant **not** implicated at Windstream.*" Defs.' Br. at 30 (emphasis added). Similarly, an August 6, 2014 email between Windstream executives stated, "*Given that the lease is being implemented at Windstream Holdings, it does **not** impact any covenants in the Windstream indentures, including the sale-leaseback provisions*." CAC ¶ 93 (emphasis added). And, as part of a hearing in front of regulators regarding the spinoff, a Windstream executive testified that Windstream "*ha[d] no concerns with any covenants within [its] indentures or [its] existing credit agreement*." *Id.* ¶ 99. Although these allegations are fatal to Plaintiffs' theory of scienter, the Order did not address them.

[11] With respect to the "true lease" claim, the Delaware district court concluded that "allegations about what Defendants knew about the useful life of the copper wiring" were inadequate to plead scienter, as "Uniti's disclosure put its shareholders and SLF on notice that the useful life of the copper assets could be shorter than the Master Lease's initial 15-year term," and "Windstream itself assured Uniti that the Master Lease was a 'true lease.'" *Id.* at *13. As noted above, the Order did not address Defendants' scienter with respect to that claim.

[12] The PSLRA's heightened pleading standard requiring a "strong" inference of scienter applies equally to Plaintiffs' "scheme liability" claim under Rules 10b-5(a) and (c). Thus, the grounds for reconsideration stated above in Point I.B. also apply to the scheme liability claim.

## II. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL

If the Court does not grant a motion for reconsideration, Defendants respectfully submit that the two issues raised above—(1) whether Defendants had a duty to disclose the type of "risks" Plaintiffs allege were concealed, and (2) whether the parties' competing inferences of scienter are sufficient to satisfy the PSLRA—are appropriate for interlocutory review. Both issues involve controlling questions of law as to which there is substantial ground for difference of opinion (as evidenced by the *SLF* opinion, which reached the opposite conclusion on both), and an immediate appeal from the Court's Order would materially advance the ultimate termination of this litigation.

### A. The Court's Order Involves Controlling Questions of Law

The question of whether Defendants had a duty to disclose the type of "facts" that Plaintiff allege they failed to disclose is a central, dispositive legal issue in this action and is therefore a controlling question of law. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauri in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action."); *Whitley v. Baptist Health*, No. 4:16-CV-624-DPM, 2021 WL 307293, at *3 (E.D. Ark. Jan. 29, 2021) (holding that the issue the parties sought to certify for interlocutory appeal was "the deep legal issue in this case" and therefore "controlling" because the answer determines whether plaintiffs have claims, "drives the recoverable damages," and "is not a matter committed to this Court's discretion"). Likewise, the question of whether the parties' competing inferences of scienter are sufficient to satisfy the PSLRA standard under *Tellabs* is a dispositive and controlling legal issue in this action. *See Curtis Lumber Co. v. Louisiana Pac. Corp.*, 618 F.3d 762, 776 (8th Cir. 2010) ("Although the district court did not reach this issue, we must address the state-of-mind element because it is a dispositive issue.").

13

### B. There Is Substantial Ground for Difference of Opinion

There is substantial ground for difference of opinion on these two controlling questions of law, as demonstrated by the Delaware district court's recent conflicting opinion based on the same set of allegations asserted against the same Defendants.  Chief Judge Stark rejected any assertion that there was a duty to disclose the allegedly omitted information.  He also held that allegations essentially identical to those here were insufficient to support a strong inference of scienter.  *See Wright v. Gen. Dynamics Corp.*, No. LR-C-89-252, 1989 WL 297985, at *1 (E.D. Ark. Aug. 1, 1989) (certifying issue for appeal because "apparently every court across the nation which has considered the issue has adopted" an interpretation different from the court's, and "there are no decisions from the Eighth Circuit" on the issue).

The Court's Order raises significant questions about the interpretation of the PSLRA's pleading standards and important policy implications regarding the breadth of public companies' disclosure obligations concerning legal risks and related information.  Moreover, given the conflicting opinions by two federal courts addressing virtually identical claims, Defendants and other public companies now face significant uncertainty with respect to such obligations.  Immediate certification would provide necessary certainty to Defendants (and similarly situated companies), who cannot reasonably or confidently make decisions about disclosure obligations where an omission is considered a violation of the securities laws in one federal jurisdiction, but not another.  *See City of Hialeah Employees' Ret. Sys. v. Toll Bros., Inc.*, No. CV 07-1513, 2009 WL 10684918, at *2 (E.D. Pa. Sept. 21, 2009) (certifying order regarding PSLRA's pleading requirements for immediate interlocutory appeal because "the Court recognizes that securities law is a fast-evolving creature, and understands that interpretation of the PSLRA's requirements is an ongoing process involving important legal standards that affect a wide swath of civil litigation").

Immediate resolution of these issues would also advance the policy goals of the PSLRA,

14

which imposed heightened pleading requirements for federal securities claims to cull out baseless class action lawsuits *before* they impose significant discovery costs on defendants and, through mere *in terrorem* effect, put significant pressure on defendants to settle.[13]

### C. Certification Will Materially Advance the Ultimate Termination of the Litigation

An interlocutory appeal would materially advance the ultimate termination of this case. If the Eighth Circuit determines that Defendants had no duty to disclose the risks that Plaintiffs allege were omitted, or that Plaintiffs' allegations do not give rise to a strong inference of scienter, the Complaint would be dismissed and the action terminated, preventing years of protracted and expensive discovery and litigation before this Court. *See Moore v. Apple Cent., LLC*, No. 5:16-CV-05069, 2017 WL 11195761, at *2 (W.D. Ark. Mar. 16, 2017) (finding that "immediate appeal may materially advance the ultimate termination of this litigation" because if the court is incorrect, "years of potential litigation can be avoided by an interlocutory appeal of this controlling issue," and if the court is correct, "interlocutory appeal now reduces the scope of any later appeal"); *Day v. Celadon Trucking Servs., Inc.*, No. 4:09CV00031 SWW, 2012 WL 12792162, at *4 (E.D. Ark. Mar. 13, 2012) (finding that "decision on interlocutory appeal will materially advance the ultimate termination of this litigation" where "resolution of issues pertaining to damages will involve protracted and expensive litigation").

## CONCLUSION

For the reasons above, Defendants respectfully request that this Court reconsider and vacate its Order denying Defendants' motion to dismiss, and enter judgment in favor of

---

[13] *See, e.g.*, H.R. Rep. No. 104-369, at 31, reprinted in 1995 U.S.C.C.A.N. at 730 (PSLRA enacted to curb "the routine filing of lawsuits against issuers of securities and others whenever there is a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer," and "the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle"); *see also Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 163 (2008) ("[E]xtensive discovery and the potential for uncertainty and disruption in a lawsuit allow plaintiffs with weak claims to extort settlements from innocent companies.").

15

Defendants, or, in the alternative, certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: April 15, 2021

OF COUNSEL:

Edmund Polubinski III *
Brian M. Burnovski *
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
edmund.polubinski@davispolk.com
brian.burnovski@davispolk.com

* *admitted pro hac vice*

Jess Askew III, Ark. Bar No. 86005
Andrew King, Ark. Bar No. 2007176
Frederick H. Davis, Ark. Bar No. 2012271
KUTAK ROCK LLP
124 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3706
(501) 975-3000
jess.askew@kutakrock.com
andrew.king@kutakrock.com
frederick.davis@kutakrock.com

*Counsel for Defendants Uniti Group Inc., Kenneth A. Gunderman, and Mark A. Wallace*