UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| In re UNITI GROUP INC. SECURITIES LITIGATION | ) ) ) | Master File No. 4:19-cv-00756-BSM |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) ) | PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR |
| ALL ACTIONS. | ) ) | RECONSIDERATION OR, IN THE ALTERNATIVE, CERTIFICATION FOR |
| | ) | INTERLOCUTORY APPEAL |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  RELEVANT BACKGROUND .......................................................................... 2

III. DEFENDANTS FAIL TO SET FORTH A LEGITIMATE BASIS FOR
     RECONSIDERATION OF THE DENIAL OF THEIR MOTION TO
     DISMISS ........................................................................................................... 5

     A.   Legal Standard ...................................................................................... 6

     B.   The Court Correctly Held that Plaintiffs Adequately Alleged an
          Actionable Omission or Misstatement .................................................. 7

     C.   The Court Correctly Held that Plaintiffs Adequately Alleged an
          Actionable Misstatement .................................................................... 12

     D.   The Court Did Not Commit a Manifest Error of Law When It Found
          that Plaintiffs Had Adequately Alleged Scienter ............................... 14

IV.  THE COURT SHOULD NOT CERTIFY ITS ORDER FOR
     INTERLOCUTORY APPEAL .......................................................................... 18

     A.   The Court's Order Does Not Involve a Controlling Question of Law ........ 19

     B.   There Are No Grounds for a Difference of Opinion on the
          Controlling Question of Law ............................................................... 21

     C.   Certification Would Delay, Not Advance, the Ultimate Termination
          of the Litigation ................................................................................... 24

V.   CONCLUSION ................................................................................................. 26

# TABLE OF AUTHORITIES

**Page**

## CASES

*Activision TV, Inc. v. Bruning*,
No. 8:13CV215, 2014 WL 1350278
(D. Neb. Apr. 4, 2014) ................................................................................... 6

*Arnold v. ADT Sec. Servs., Inc.*,
627 F.3d 716 (8th Cir. 2010) ........................................................................ 6

*Bartle v. TD Ameritrade Holding Corp.*,
No. 20-cv-00166-SRB, 2020 WL 7034570
(W.D. Mo. Nov. 30, 2020) ........................................................................... 11

*Camreta v. Greene*,
563 U.S. 692 (2011) ..................................................................................... 11

*City of Hialeah Emps.' Ret. Sys. v. Toll Bros., Inc.*,
No. 07–1513, 2009 WL 10684918
(E.D. Pa. Sept. 21, 2009) .............................................................................. 24

*Cossey v. Assocs.' Health & Welfare Plan*,
No. 4:02CV661 WKU, 2005 WL 3133500
(E.D. Ark. Nov. 21, 2005) ............................................................................ 19

*Curtis Lumber Co. v. Louisiana Pac. Corp.*,
618 F.3d 762 (8th Cir. 2010) ........................................................................ 21

*Day v. Celadon Trucking Servs., Inc.*,
No. 4:09CV00031 SWW, 2012 WL 12792162
(E.D. Ark. Mar. 13, 2012) ............................................................................ 24

*Devinsky v. Kingsford*,
No. 05 Civ.2064(PAC), 2008 WL 2704338
(S.D.N.Y. July 10, 2008) .............................................................................. 15

*Fallay v. San Francisco City & Cnty.*,
No. C 08-2261 CRB, 2016 WL 889152
(N.D. Cal. Mar. 8, 2016) ............................................................................... 15

*Fenton v. Farmers Ins. Exch.*,
No. 07-4864, 2010 WL 1006523
(D. Minn. Mar. 16, 2010) .......................................................................... 20, 22

**Page**

*Floyd Cnty. Mut. Ins. Ass'n v. CNH Indus. Am. LLC*,
No. 19-CV-2012-CJW-KEM, 2019 WL 4007215
(N.D. Iowa Aug. 23, 2019) ...................................................................... 21, 23

*Fox v. Brewer*,
620 F.2d 177 (8th Cir. 1980) ...................................................................... 6, 7

*Frazier v. Bickford*,
No. 14-cv-3843, 2015 WL 8779872
(D. Minn. Dec. 15, 2015)....................................................................... 19, 25

*Gebhardt v. ConAgra Foods, Inc.*,
335 F.3d 824 (8th Cir. 2003) ...................................................................... 8, 20

*Graham v. Hubbs Mach. & Mfg., Inc.*,
49 F. Supp. 3d 600 (E.D. Mo. 2014)........................................................ 20, 21, 22

*Hartley v. Suburban Radiologic Consultants, Ltd.*,
No. 11-2664(JRT/JJG), 2013 WL 6511847
(D. Minn. Dec. 12, 2013)............................................................................ 25

*Hinds v. United States Government*,
No. 4:17-CV-750 AGF, 2017 WL 11471048
(E.D. Mo. Aug. 18, 2017) ............................................................................ 7

*Hodge v. Burlington N. & Santa Fe Ry. Co.*,
461 F. Supp. 2d 1044 (E.D. Mo. 2006)......................................................... 12

*Hormel Foods Corp. v. Cereol, S.A.*,
No. 01-2243(JRT/FLN), 2002 WL 31553544
(D. Minn. Nov. 7, 2002).............................................................................. 12

*In re Avon Sec. Litig.*,
No. 19CIV01420 (CM), 2019 WL 6115349
(S.D.N.Y. Nov. 18, 2019) ........................................................................... 13

*In re Ceridian Corp. Sec. Litig.*,
542 F.3d 240 (8th Cir. 2008) ...................................................................... 14

*In re Guidant Corp. Implantable Defibrillators
Prods. Liab. Litig.*,
496 F.3d 863 (8th Cir. 2007) ......................................................................... 6

**Page**

*In re Navarre Corp. Sec. Litig.*,
   299 F.3d 735 (8th Cir. 2002) ................................................................. 8, 14

*In re Nevel Props. Corp.*,
   765 F.3d 846 (8th Cir. 2014) ..................................................................... 17

*Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs.*,
   141 F.3d 1284 (8th Cir. 1998) ..................................................................... 5

*Johnson v. Jones*,
   515 U.S. 304 (1995) ..................................................................................... 19

*Keasler v. United States*,
   766 F.2d 1227 (8th Cir. 1985) ............................................................. 11, 12

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*
   *Motonave Achille Lauri in Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990) ........................................................................ 21

*Kushner v. Beverly Enters., Inc.*,
   317 F.3d 820 (8th Cir. 2003) .......................................................... 7, 8, 13

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ................................................................................ 8, 20

*Moore v. Apple Cent., LLC*,
   No. 5:16-CV-05069, 2017 WL 11195761
   (W.D. Ark. Mar. 16, 2017) ......................................................................... 24

*Nat. Res. Def. Council v. Cnty. of Los Angeles*,
   No. CV 08-1467 AHM, 2011 WL 318543
   (C.D. Cal. Jan. 27, 2011) ............................................................................ 22

*Nichols v. United States*,
   No. 4:00CR00022-03-WRW, 2006 WL 3420303
   (E.D. Ark. Nov. 28, 2006) ............................................................................. 9

*Omnicare, Inc. v. Laborers Dist. Council Constr.*
   *Indus. Pension Fund*,
   575 U.S. 175 (2015) ..................................................................................... 12

*Ray v. Union Pac. R.R. Co.*,
   971 F. Supp. 2d 869 (S.D. Iowa 2013) ...................................................... 25

**Page**

*Rita v. United States*,
    551 U.S. 338 (2007) .................................................................................. 16

*Same Day Surgery Ctrs., L.L.C. v. Montana Reg'l*
    *Orthopedics, L.L.C.*,
    No. 021811(JRT/FLN), 2003 WL 1565942
    (D. Minn. Mar. 4, 2003) ............................................................................ 23

*Spears v. Washington Mut. Bank FA*,
    No. C-08-00868 RMW, 2010 WL 54755
    (N.D. Cal. Jan. 8, 2010) ............................................................................ 22

*Spectra Commc'ns Grp., LLC v. City of Cameron*,
    No. 13-CV-6008-DW, 2013 WL 12177499
    (W.D. Mo. Aug. 13, 2013) .......................................................................... 15

*Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*,
    No. 2:15-cv-12695, 2018 WL 11199011
    (E.D. Mich. Jan. 12, 2008) .................................................................. 11, 17

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ........................................................................ 14, 16, 17

*Union Cnty. v. Piper Jaffray & Co.*,
    525 F.3d 643 (8th Cir. 2008) .............................................................. 18, 19

*United States v. Articles of Drug Consisting of 203 Paper Bags*,
    818 F.2d 569 (7th Cir. 1987) .................................................................... 11

*United States v. Dace*,
    660 F.3d 1011 (8th Cir. 2011) .................................................................. 15

*White v. Nat'l Football League*,
    756 F.3d 585 (8th Cir. 2014) ...................................................................... 6

*White v. Nix*,
    43 F.3d 374 (8th Cir. 1994) ........................................................ 2, 18, 19, 20

*Whitley v. Baptist Health*,
    No. 4:16-cv-624-DPM, 2021 WL 307293
    (E.D. Ark. Jan. 29, 2021) .......................................................................... 21

**Page**

*Wright v. Gen. Dynamics Corp.*,
  No. LR-C-89-252, 1989 WL 297985
  (E.D. Ark. Sept. 1, 1989) .................................................................................... 22

*Zaluski v. United Am. Healthcare Corp.*,
  527 F.3d 564 (6th Cir. 2008) ................................................................................. 8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78 ............................................................................................................................ 2

28 U.S.C.
  §1292(b) ............................................................................................................. *passim*

Federal Rules of Civil Procedure
  Rule 15(a)(2) ......................................................................................................... 24
  Rule 60(b) ................................................................................................. 6, 7, 9, 15

Alabama Securities Act
  §8-6-17(a)(1) ........................................................................................................... 4
  §8-6-17(a)(2) ........................................................................................................... 4
  §8-6-19 (c) ............................................................................................................... 4

17 C.F.R.
  §240.10b-5 ............................................................................................................... 2

**LEGISLATIVE HISTORY**

Private Securities Litigation Reform Act of 1995 ("PSLRA")
  Pub. L. No. 104-67, 109 Stat. 737 (1995) ............................................................. 5

Lead Plaintiffs Zhengxu He, Trustee for the He & Fang 2005 Revocable Living Trust, Steamfitters Local 449 Pension Plan, Wayne County Employees' Retirement System, and David McMurray, on behalf of himself and as sole beneficiary of the David McMurray R/O IRA (collectively, "Plaintiffs") hereby submit this opposition to Defendants' Motion for Reconsideration or, in the Alternative, Certification for Interlocutory Appeal ("Mot." or the "Motion") (ECF No. 76).[1]

## I.    INTRODUCTION

Defendants have asked this Court to reconsider its denial of their Motion to Dismiss the Consolidated Amended Complaint ("Motion to Dismiss") (ECF No. 63),[2] or alternatively allow an interlocutory appeal of the Court's March 31, 2021 Order Denying their Motion to Dismiss (the "Order") (ECF No. 74) for one simple reason – they disagree with it.  Their disagreement, however, is not a legitimate basis for the relief they request.

Defendants are not entitled to reconsideration of the Court's Order.  Defendants do not contend that some intervening change of facts or evidence has occurred.  Defendants do not point to any change in law.  Defendants also fail to demonstrate that the Court's decision is a substantial injustice.  In fact, Defendants' reconsideration arguments are little more than a repeat of the *same arguments* made in their Motion to Dismiss, supported by the *same*

---

[1]    References to "Mot." and "Motion" also refer to the brief submitted in support thereof.  ECF No. 77.  Defendants are Uniti Group Inc. ("Uniti" or the "Company"), Kenneth A. Gunderman, and Mark A. Wallace. Gunderman and Wallace are referred to collectively as the "Individual Defendants."  All "¶__" and "¶¶__" references throughout are to the Consolidated Amended Class Action Complaint (the "Complaint") (ECF No. 62) unless otherwise noted.  All capitalized terms shall be ascribed the same meaning as in the Complaint. Unless otherwise noted, all internal citations have been omitted and emphasis added.

[2]    References to the "Motion to Dismiss" also refer to the brief submitted in support thereof. ECF No. 64.

*authority* already considered by the Court. Indeed, there is no dispute that the Court applied the correct controlling authority here. Defendants simply take issue with the Court's application of that authority to the allegations, and the conclusion the Court reached. Thus, absent a showing that the Order was palpably incorrect or made irrationally, overturning the Order is untenable. Defendants offer no such showing.

Defendants' request for interlocutory review of the Order is likewise grounded in their disagreement with the Court's application of the controlling authority the parties agree applies to the facts of the case. Defendants' arguments come nowhere close to establishing any element of 28 U.S.C. §1292(b), let alone meeting their "heavy burden" to show that this is one of the "'exceptional cases'" in which an immediate appeal is appropriate. *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994).

Defendants' Motion should be denied.

## II.  RELEVANT BACKGROUND

On May 11, 2020, Plaintiffs filed their Complaint for violations of the Securities Exchange Act of 1934 (15 U.S.C. §78) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5). ECF No. 62. On July 10, 2020, Defendants moved to dismiss the Complaint. ECF No. 63. On September 8, 2020, Plaintiffs opposed Defendants' Motion to Dismiss ("Opp." or the "Opposition") (ECF No. 66) and on October 23, 2020, Defendants filed their reply brief (ECF No. 68).

Subsequently, on November 9, 2020, Defendants filed a Notice of Supplemental Authority in Support of their Motion to Dismiss (the "Notice"). ECF No. 69. Defendants claimed that "Plaintiffs' complaint in this case was copied in large part nearly verbatim" from the complaint in *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, No. 1:19-cv-01813-

LPS (the "SLF Action").  Notice at 1.  Defendants then went on to explain that on November 4, 2020, Chief Judge Leonard P. Stark of the United States District Court for the District of Delaware dismissed the SLF Action in its entirety, with prejudice (the "Delaware Order").  *Id.*  Thus, Defendants submitted that each of the grounds for dismissal set forth in the Delaware Order served as "an independent basis" to dismiss the Complaint.  *Id.* at 2.

The next day, Plaintiffs filed a response.  ECF No. 70.  In great detail, Plaintiffs outlined the fundamental and important differences between the allegations in the SLF Action and this case.  For example, the present case involves additional and distinct false and misleading statements.  Most notably, Plaintiffs challenge as materially misleading not only Defendants' statements made at the ***time of the Spin-Off***, but also statements ***made post-Spin-Off***.  ¶¶169, 255.  Thus, the false and misleading statements in this action begin on March 26, 2015 and end on June 24, 2019.  ¶¶140-228.  In contrast, the false and misleading statements in the SLF Action begin on March 26, 2015, but end on May 24, 2017.  Amended Complaint, *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, No. 1:19-cv-01813-LPS (Nov. 18, 2019) ("SLF Action Compl.") (ECF No. 71), ¶¶92-113.  Accordingly, Plaintiffs highlighted that Chief Judge Stark ***did not*** analyze or come to a conclusion concerning the false or misleading nature of over two years' worth of statements that are included in Plaintiffs' Complaint.[3]

---

[3]  These false and misleading statements include: (1) Defendants' statements aimed at assuring investors and the public that the lease payment from Windstream was "very safe"; (2) Defendants' statements that repeatedly disclaimed the possibility of a ruling in favor of Aurelius stating that "Windstream [would] ultimately have a favorable outcome" or that the claims were "manufactured"; and (3) Defendants' post-March 18, 2019 statements that "the probability of Windstream rejecting the Master Lease in bankruptcy to be remote . . . ."  ¶¶169, 255.

In addition to the foregoing, Plaintiffs identified several other significant and material differences including:[4]

- In contrast to the SLF Action, a number of the false and misleading statements in this case concern Defendants' attempts to reassure investors and the public that Uniti's business from its largest customer was not in jeopardy from an adverse ruling in the Aurelius Litigation, by actively working to undercut and downplay the market's appreciation of the risk associated with the Spin-Off and Master Lease transaction.

- Unlike the plaintiffs in the SLF Action, Plaintiffs in this case allege that the additional risk disclosures regarding disputes with third parties and risks associated with Windstream's dispute with Aurelius were *also* materially misleading because they failed to provide the full picture about the "risks" discussed.

- Plaintiffs opposed Defendants' truth-on-the market defense at the pleading stage – an issue not addressed by the parties in the SLF Action or analyzed in the Delaware Order.[5]

- Plaintiffs' Complaint presents additional and specific factual allegations concerning Defendants' scienter.

- Plaintiffs' theory of loss causation relies on a materialization of the risk theory whereas the SLF Action exclusively alleges a corrective disclosure theory of loss causation.

ECF No. 70 at 1-5.

---

[4]   Other dissimilarities include: (1) the SLF Action is pending in the Third Circuit; (2) the SLF Action alleges causes of action against Defendants Uniti Group, Inc., Uniti Fiber Holdings, Inc., Kenneth Gunderman, and John P. Fletcher, whereas this action alleges causes of action against Defendants Uniti, Kenneth A. Gunderman, and Mark A. Wallace; and (3) the SLF Action alleges additional causes of action including: (a) Fraud in the Inducement; (b) Conspiracy; (c) Violations of the Alabama Securities Act (Ala. Code §8-6-17(a)(1)); (d) Violations of the Alabama Securities Act (Ala. Code §8-6-17(a)(2)); and (e) Violations of the Alabama Securities Act (Ala. Code §8-6-19 (c)).

[5]   Defendants concede that Chief Judge Stark did not rely on a truth-on-the-market defense in dismissing the SLF Action. ECF No. 73 at 3 n.3. This disparity is not irrelevant. In direct contrast, this fact only continues to highlight the dissimilarities between the two actions and supports the conclusion that the Delaware Order is unpersuasive and does not support dismissal of Plaintiffs' Complaint.

On December 18, 2020, after receiving leave to do so, Defendants filed their reply in support of their Notice. ECF Nos. 71, 73. Remarkably, Defendants did not inform the Court that two weeks prior, on December 1, 2020, the plaintiffs in the SLF Action appealed the Delaware Order to the Third Circuit Court of Appeals. Notice of Appeal, *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, No. 1:19-cv-01813-LPS (ECF No. 101). As of the date of this brief, the appeal is still pending.

On March 31, 2020, the Court denied Defendants' Motion to Dismiss in its entirety. ECF No. 74. Thereafter, on April 15, 2021, Defendants filed their Answer to the Complaint and the current Motion. ECF Nos. 75-77.

### III. DEFENDANTS FAIL TO SET FORTH A LEGITIMATE BASIS FOR RECONSIDERATION OF THE DENIAL OF THEIR MOTION TO DISMISS

Defendants rely on the phantom notion that the Court "misappl[ied] controlling Eighth Circuit precedent" and "the heightened standard for pleading scienter under the Private Securities Litigation Reform Act," to support their argument that reconsideration of the Order is necessary. Mot. at 4. However, in presenting this erroneous claim, Defendants rely on the ***very same authority*** they presented to the Court in their initial Motion to Dismiss and reply brief. This alone warrants denial of their Motion. *See Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs.*, 141 F.3d 1284, 1286 (8th Cir. 1998).

Furthermore, Defendants mistakenly place great emphasis on the Delaware Order. However, not only is this opinion currently on appeal, but Defendants' attempt to fold the allegations of this case into the SLF Action is just as flawed now as it was when Defendants filed their Notice. ECF No. 69.

The real basis of Defendants' Motion is that they disagree with the Court's conclusions. This is not a valid footing for reconsideration, and thus Defendants' Motion should be denied.

### A.    Legal Standard

Defendants' Motion is premised on Federal Rule of Civil Procedure ("Rule") 60(b) which allows a district court to relieve a party from a judgment on the narrow grounds of mistake, inadvertence, surprise, excusable neglect, newly discoverable evidence, voidness, or any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b). The purpose of Rule 60(b) relief is not to give parties an opportunity to reargue their case, and it should not be used as a substitute for a timely appeal. *See Fox v. Brewer*, 620 F.2d 177, 180 (8th Cir. 1980).

Instead, "'[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'" *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010). They are not to be used to "'introduce new evidence that could have been adduced during pendency'" of the motion at issue. *Id.* In other words, a motion for reconsideration should be denied absent "'(1) a showing of manifest error in the prior ruling; or (2) a showing of new facts or legal authority, neither of which could have been brought to the court's attention earlier with reasonable diligence.'" *Activision TV, Inc. v. Bruning*, No. 8:13CV215, 2014 WL 1350278, at *1 (D. Neb. Apr. 4, 2014). Thus, "'Rule 60(b) authorizes relief in only the most exceptional of cases.'" *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir. 2007); *see also White v. Nat'l Football League*, 756 F.3d 585, 596 (8th Cir. 2014) ("'Rule 60(b) authorizes

relief in only the most exceptional of cases, and the [movant] bears a heavy burden in attempting to convince the district court'" that reconsideration is proper.).

B.   **The Court Correctly Held that Plaintiffs Adequately Alleged an Actionable Omission or Misstatement**

Defendants first attempt to reargue that *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003), supports the conclusion that Uniti had "'no duty to disclose "soft information."'" Mot. at 4-5. However, Defendants already made this argument in their Motion to Dismiss. *Compare* Mot. at 4-5 *with* Motion to Dismiss at 15-17. Thus, rather than identifying a clear error of law or fact or any newly discovered evidence entitling them to relief under Rule 60(b), Defendants resort to asking the Court to reassess its application of *Kushner* to the Complaint's allegations, hoping for a different result. But a motion for reconsideration is not an opportunity for a party to reargue its case, or to raise arguments it could have made previously. *Fox*, 620 F.2d at 180; *see also Hinds v. United States Government*, No. 4:17-CV-750 AGF, 2017 WL 11471048, at *1 (E.D. Mo. Aug. 18, 2017) (denying Rule 60(b) relief as the plaintiff "raise[d] the same arguments that he ha[d] advanced in various pleadings throughout this litigation").

In any event, the Court properly applied *Kushner* to the Complaint's allegations and found that Plaintiffs had sufficiently alleged material misrepresentations. Order at 4-6. For example, the Court's Order credited Plaintiffs' assertion that the false and misleading statements are not "'soft information' because [Plaintiffs] do not allege that defendants failed to predict future litigation." *Id.* at 5. "Rather, plaintiffs argue, they have alleged that defendants failed to disclose that the structure of the spin-off transaction violated the indenture from the inception." *Id.* Indeed, the Complaint alleges in great detail that

Defendants failed to disclose "***hard facts***"[6] about the nature of the Spin-Off and Master Lease: (1) that the structure of the transaction that brought Uniti into existence violated the Indenture from inception; (2) that the Master Lease also violated the Indenture and offered no protection to Uniti should its legitimacy as a "true lease" be challenged; and (3) Defendants drafted and received internal documents, and attended meetings, revealing their awareness of the issues Plaintiffs allege were not disclosed.[7] *See generally* Complaint, §V. Plaintiffs do not, as Defendants contend, allege that Defendants failed to disclose their "'predictions'" or "'beliefs as to the legality'" of their own actions.[8]   Mot. at 4-5. Accordingly, taking Plaintiffs' allegations as true, the Court correctly held that though "defendants did not have a duty to 'publicly opine' on the legality of their actions" pursuant to *Kushner,* "they had the duty to disclose what their actions were."  Order at 6.

---

[6]   Defendants attempt to rehash their assertion that the Complaint's allegations were framed expressly and entirely in terms of future litigation "risks."  Mot. at 6.  Not so.  As explained in Plaintiffs' Opposition to the Motion to Dismiss, Plaintiffs allege that Defendants failed to disclose ***facts*** – that the foundation of Uniti was fundamentally flawed because it was dependent on a transaction that violated the Indenture and could trigger a Windstream bankruptcy if ever exposed, threatening the majority of the Company's annual revenue, and Uniti's viability.  Opp. at 24-26; ¶¶79-86, 127-134.

[7]   For these reasons, Defendants' cited cases (Mot. at 6) are inapposite as Plaintiffs plainly allege that Defendants knew and had access to information that contradicted their public statements. ¶¶58-86, 118-120; *see In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 743 (8th Cir. 2002) (noting that corporate officials need to reveal "'those material facts reasonabl[y] available to them'"); *Kushner,* 317 F.3d at 831 (holding that defendants have a duty to disclose if there are clear allegations that the "defendants knew of the scheme and its illegal nature at the time they stated the belief that the company was in compliance with the law"); *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 575-76 (6th Cir. 2008) (discussing that a company is under no duty to disclose ***soft information***).

[8]   As emphasized by Plaintiffs in their Opposition, at bottom, Defendants claim that they were under no duty to disclose "soft information" – in other words, Defendants assert that the fact that the Spin-Off and Master Lease violated the indenture is immaterial.  Opp. at 24.  But this is a jury question that "'"requires delicate assessments of the inferences 'a reasonable shareholder' would draw from a given set of facts"'" and is "rarely" decided at the pleading stage.  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 36 (2011); *Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 830 (8th Cir. 2003).

To argue that reconsideration is warranted, Defendants attempt to relitigate their contention that "Uniti and Windstream disclosed the terms of the spinoff, the Master Lease, and Windstream's indentures *in their entirety*." Mot. at 5. But, as Plaintiffs argue in their Opposition, Plaintiffs allege that the Master Lease and Indenture documents *omitted* that the Spin-Off was specifically structured to evade the restrictions in the Indenture. Indeed, regulators were explicitly told that the Spin-Off did not violate the Indenture and Defendants actively avoided discussing or providing detailed information about the structure of the Spin-Off to investors in keeping with talking points provided to them just prior to the Spin-Off's consummation. *See* Complaint, §V.

Similarly, Defendants attempt to rehash their argument that Uniti "disclosed various risks associated with the spinoff and Master Lease" and thus "Defendants had no duty to disclose anything further." Mot. at 5. But again, these arguments were raised in their Motion to Dismiss (*id.* at 7-8), and Defendants cannot satisfy their heavy burden under Rule 60(b) by raising the same losing arguments that they advanced in prior filings. *See Nichols v. United States*, No. 4:00CR00022-03-WRW, 2006 WL 3420303, at *2 (E.D. Ark. Nov. 28, 2006) ("The purpose of Rule 60(b) relief is not to give parties an opportunity to re-argue their case."). Nevertheless, the Complaint goes to great lengths to detail how the Defendants' risk disclosures regarding disputes with third parties were *also* materially misleading because they failed to provide the full picture about the "risks." ¶¶146-147, 160-162, 166. Moreover, Defendants' disclosure that the Master Lease might not be viewed as a "true lease" for tax purposes did not inform investors that defining the Master Lease as a "true lease" in the first place depended on inflated projections of the useful life of the copper

- 9 -

wire assets being leased to Windstream. ¶¶127-134. Neither did Defendants' disclosure that the useful life of the leased copper assets could be as little as seven years inform investors about the true range of the life of this asset, and that its real useful life would not last the term of the Master Lease. ¶¶127-133. In light of these detailed factual allegations, among many others, this Court properly found that Plaintiffs adequately pled an actionable omission or misstatement.

With nothing more, other than parroting arguments already made in their Motion to Dismiss, Defendants attempt to misdirect the Court's attention to the Delaware Order. Mot. at 7. According to Defendants, the SLF Action confirms the Court's "manifest error" in concluding that Plaintiffs adequately alleged an actionable omission as the court in the SLF Action reached the opposite conclusion on "materially indistinguishable allegations." *Id.* This is false.

First, as discussed in §II., *supra*, the SLF Action is not identical to this action. Critically, unlike the plaintiff in the SLF Action, Plaintiffs here allege that Defendants' "public disclosures" were ***also*** materially misleading. For example, though Uniti warned that "[d]isputes with third parties could arise" out of the Spin-Off transaction (¶162), Defendants did not disclose the actual risk: that the Spin-Off violated the Indenture and if challenged, Uniti's largest customer could file for bankruptcy, jeopardizing the majority of Uniti's annual revenue, and potentially sending Uniti into bankruptcy. Opp. at 23.

Second, Defendants' heavy reliance on the SLF Action generates more heat than light. Indeed, Defendants attempt to impress upon the Court that the Delaware Order is binding precedent. *See* Mot. at 3 ("Contrary to the rulings of the Delaware district court, this Court

- 10 -

found, among other things, that Plaintiffs had sufficiently alleged actionable misstatements and omissions and had adequately pleaded scienter.  In reaching those conclusions, ***the Order did not appear to address the Delaware court's contrary decision***.”); *see also id.* at 7 (“The Order did not address or attempt to **distinguish the Delaware district court's opinion** . . . .”).  But this is not the law.  Instead, the Delaware Order is “merely persuasive.” *Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-cv-12695, 2018 WL 11199011, at *2 (E.D. Mich. Jan. 12, 2008).  Indeed, “‘[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case.’”  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *see also United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) (noting that while the opinion of one district judge may be found to be persuasive, it is not binding on another district judge (even if that judge happens to sit in the same district)); *Bartle v. TD Ameritrade Holding Corp.*, No. 20-cv-00166-SRB, 2020 WL 7034570, at *3 (W.D. Mo. Nov. 30, 2020) (denying the defendant's request for reconsideration and to “delve into a line-by-line comparison” of two cases as “[e]ven if the two cases are identical” the similar case “would be persuasive but not binding”).

Finally, the Delaware Order is currently on appeal.  Accordingly, if the plaintiff in the SLF Action prevails on appeal, the entire foundation of Defendants' Motion would collapse and most critically, the Delaware Order will be completely irrelevant to this action.  Defendants' cited case does not alter this conclusion.  In *Keasler v. United States*, the Eighth Circuit plainly stated that “‘[t]his court has long taken the position that uniformity of

- 11 -

decision among the circuits is vitally important on issues concerning *the administration of the tax laws*.'"  766 F.2d 1227, 1233 (8th Cir. 1985).  And to the extent there is an "interest of avoiding inconsistent outcomes in different federal courts involving the exact same claims" (Mot. at 8), there is no need for such deference here where the SLF Action and this case are based on fundamentally different allegations, filed in two different circuits, and where the opinion upon which Defendants rely is on appeal.

As the Court has already assessed Defendants' reiterated arguments when it evaluated the Complaint the first time, Defendants' Motion "appear[s] to seek nothing more than 'a second bite at the apple,' something the rules prohibit." *Hormel Foods Corp. v. Cereol, S.A.*, No. 01-2243(JRT/FLN), 2002 WL 31553544, at *1 (D. Minn. Nov. 7, 2002); *see also Hodge v. Burlington N. & Santa Fe Ry. Co.*, 461 F. Supp. 2d 1044, 1054 (E.D. Mo. 2006).

### C.     The Court Correctly Held that Plaintiffs Adequately Alleged an Actionable Misstatement

According to Defendants, reconsideration is also warranted because Plaintiffs did not allege that the statement that Uniti could "'navigate the Windstream bankruptcy proceedings without having to raise external capital'" was materially false or misleading.  Mot. at 8. Instead, Defendants contend that Plaintiffs are really taking issue with a non-actionable opinion. *Id.*  However, even a cursory reading of Plaintiffs' Complaint and Opposition to the Motion to Dismiss establishes, once again, that this argument is meritless.

In determining whether an alleged misstatement is a non-actionable opinion, courts analyze whether the defendant either: (i) did not genuinely hold the expressed opinion; or (ii) omitted material facts about the basis for the opinion, which rendered the statements misleading in context.  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension*

*Fund*, 575 U.S. 175, 194 (2015).  In fact, "[t]hat [Defendants] may have believed [their statements] to be accurate is irrelevant, even when read as an opinion statement.  The core inquiry when determining whether an omission renders an opinion misleading is whether the omitted facts 'conflict with what a reasonable investor would take from the statement itself.'"  *In re Avon Sec. Litig.*, No. 19CIV01420 (CM), 2019 WL 6115349, at *17 (S.D.N.Y. Nov. 18, 2019).

In accordance with these standards, Plaintiffs allege that following the judgment in the Aurelius Litigation, while Defendants assured investors that they "believed" Uniti would be able "to navigate the Windstream bankruptcy proceedings without having to raise external capital" (¶¶214, 217), Defendants failed to disclose the true extent of the risk that the Master Lease could be recharacterized as a financing arrangement, threatening the majority of Uniti's revenues, and making it nearly impossible for Uniti to continue without seeking external capital to remain afloat.  Among other things, the Complaint also clearly lays out how Defendants knew that the assumptions provided to accountants and lawyers evaluating the Master Lease to render an opinion on it were grossly inflated (¶¶79-86), that had the accurate information been provided, the "true lease" opinion would not have been received, and because of the debt level restrictions in the Indenture, the Spin-Off could not have been consummated.  ¶¶122-123, 127-130.  Defendants' omission of this material information is not a "'belief or opinion'" that later proves to be wrong in hindsight (*Kushner*, 317 F.3d at 831; Mot. at 8), but is material information that renders the statements misleading and actionable.  Defendants' assertion that the Court did not consider that the statements were opinion and not objective facts is groundless and should be rejected.

**D.     The Court Did Not Commit a Manifest Error of Law When It Found that Plaintiffs Had Adequately Alleged Scienter**

The Court correctly stated and applied the analysis for scienter, as set out by the Eighth Circuit, and the Supreme Court in *Tellabs*, *Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).  These cases, among others, hold that "'[t]he required state of mind'" for private securities fraud actions is scienter, i.e., the "'defendant's intention to "deceive, manipulate, or defraud,"'" or the defendant's "severe recklessness." *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 244 (8th Cir. 2008).

As just one example of the Court's properly reasoned Order, the Court acknowledged that Plaintiffs had pled specific facts giving rise to a strong inference of scienter, including that Defendants "had information indicating that their public statements were materially misleading." Order at 7.  Taking Plaintiffs' allegations as true, as the Court must, this is a "cogent" and "strong" inference of scienter. *Navarre Corp.*, 299 F.3d at 746 ("One 'classic' fact pattern giving rise to a strong inference of scienter" is where "defendants made statements when they knew or had access to information suggesting these public statements to be materially inaccurate.").  As laid out with great specificity in the Complaint, Defendants knew or had access to information that: (1) the Spin-Off transaction was designed specifically with the Indenture's sale-leaseback restrictions in mind and was not an arm's-length negotiation; (2) internal documents that reflect Defendants' intentional efforts to conceal the truth, such as the April 2015 talking points sent to Windstream and Uniti executives, that provided prepared responses to questions including: "this is a complex transaction and after considering many factors we concluded that the lease at WIN Holdings was the best structure" (¶120); (3) internal documents that demonstrate that Defendants were

- 14 -

aware that the Master Lease violated the terms of the Indenture; (4) the "true lease" opinion prepared by the law firm Skadden Arps Slate Meagher & Flom and delivered to Uniti management that expressly cautioned Defendants that, as structured, the Master Lease could be deemed a "sale-leaseback transaction" (¶137); and (5) Defendants' representation to investors after the Aurelius Litigation that they had looked "very, very closely" (¶186) at the legal claim and did a "deep dive" (¶188) on the Master Lease.  Opp. at 42-46.

Talking past the salient issues, Defendants challenge the way in which the Order is written and the Court's reasoning and logic (Mot. at 8-12), which are entirely immaterial to a Rule 60(b) analysis.

As an initial matter, Defendants claim that reconsideration is warranted because the Court did not address whether "Plaintiffs alleged scienter with respect to their claim that Defendants failed to disclose that the Master Lease was not a 'true lease'" and because the Order "did not consider numerous other facts alleged in the complaint – and raised in Defendants' motion to dismiss . . . ."  Mot. at 9, 11.  This, of course, is not the law.  The Court "generally ha[s] discretion to decide whether to respond to every argument" brought by a party. *United States v. Dace*, 660 F.3d 1011, 1014 (8th Cir. 2011); *see also Spectra Commc'ns Grp., LLC v. City of Cameron*, No. 13-CV-6008-DW, 2013 WL 12177499, at *1 n.1 (W.D. Mo. Aug. 13, 2013).  Indeed, "[t]he Court is not required to delineate every reason for the decisions it makes; it is in the Court's discretion to respond specifically-or not-to arguments made by the parties."[9]  *Devinsky v. Kingsford*, No. 05 Civ.2064(PAC), 2008 WL

---

[9]  Defendants' one cited case is thus off base as it dealt with the situation where the court failed to "rule on" a cause of action – "whether Plaintiff's section 52.1 claim as to the remaining City Defendants was also time-barred." *Fallay v. San Francisco City & Cnty.*, No. C 08-2261 CRB, 2016 WL 889152, at *2-*3 (N.D. Cal. Mar. 8, 2016).

2704338, at *3 (S.D.N.Y. July 10, 2008) (citing *Rita v. United States*, 551 U.S. 338, 358 (2007)).   And, importantly, *Tellabs* requires the Court to consider the Complaint's allegations of scienter "holistically," and not in the piecemeal fashion Defendants prefer. *Tellabs*, 551 U.S. at 310-11.   This is precisely what the Court did in rendering its decision.

Next, Defendants take issue with the Court's application of the PSLRA's heightened pleading standard.   According to Defendants, the Court did not make any findings to support that the inference of scienter is "strong" and "cogent," and the Court failed to make any findings weighing the competing inferences.   Mot. at 9-10.   But Defendants' dissatisfaction with the Court's analysis and the Court's formulation of the Order is not a recognized basis for reconsideration in this Circuit.   And in any event, the Court did not do what Defendants suggest.   Instead, the Court cited Eighth Circuit case law setting out the applicable standards for scienter, including "the heightened pleading requirements on securities actions," recognized that "competing inferences are drawn in plaintiffs' favor," outlined several of the parties' arguments collectively, and cited to Supreme Court authority in coming to its conclusion.[10]   Order at 3, 6-7.   Nothing in the Court's Order could reasonably be read to suggest that the Court disregarded or misapplied the standards set forth in the Supreme Court's decision in *Tellabs*.

Third, Defendants assert that the inference the Court drew from the April 2013 email is "simply not plausible."   Mot. at 10-11.   However, that Defendants disagree with the Court's conclusion does not demonstrate a manifest error of material fact.   """To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . .

---

[10]   Defendants' assertion that the Order "rested entirely on the April 2013 email" is demonstrably false.   Mot. at 11.

strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.'"" *In re Nevel Props. Corp.*, 765 F.3d 846, 850 (8th Cir. 2014). Defendants have failed to satisfy this high burden.

Further, the inferences Plaintiffs and the Court drew from the April 2013 email are compelling. As detailed in the Complaint, Windstream and Defendants specifically structured the transaction and the Master Lease to evade the restrictions of the Indenture. Opp. at 41. Specifically, Plaintiffs allege that the April 15, 2013 email, where Individual Defendants discussed creating Windstream Holdings and having it (rather than the Windstream Operating Subsidiaries) sign the Master Lease, demonstrates that even in 2013, Defendants were aware that the Indenture would be a "limiting factor" in executing the transaction. ¶¶75-76. In other words, Plaintiffs allege that the email demonstrates Defendants' understanding and acknowledgment that the Indenture's sale-leaseback covenant prohibited the actual owner and operation of the assets from signing the lease. As a direct result, Defendants and Windstream designed the "Hold Co" structure to get around this provision. ¶76.

Finally, in a last-ditch effort, Defendants resort to arguing that the Delaware Order "confirm[s] that the Order's application of *Tellabs* was incorrect." Mot. at 12. As discussed in §§II. and III.B., *supra*, this is disingenuous. The Delaware Order is currently on appeal and if the Third Circuit reverses the order, Defendants' Motion would be completely undermined. And even if it were not on appeal, one district court's order is not binding on another district court. *Strategic Mktg.*, 2018 WL 11199011, at *2. Furthermore, as discussed in Plaintiffs' response to Defendants' Notice, here, Plaintiffs allege additional and

- 17 -

distinct factual allegations concerning Defendants' scienter and a more detailed analysis of the inferences arising from those facts than the plaintiffs in the SLF Action. *See* ECF No. 70 at 4. Indeed, Plaintiffs' false and misleading statements extend two years past the false and misleading statements in the SLF Action. This alone demonstrates the dissimilarities between the two cases. *Compare* ¶¶140-228 *with* SLF Action Compl., ¶¶92-113.

The Court's valuation of the allegations in this case was proper and consistent with the law. While Defendants may disagree with the inferences the Court has logically drawn and the Court's application of those facts to the law, this is simply ***not*** a basis for reconsideration.

*     *     *

Defendants have failed entirely to set forth a valid basis for their Motion urging the Court to reconsider its well-reasoned Order. Having failed to meet their "heavy burden" to do so, their Motion should be denied.

## IV.  THE COURT SHOULD NOT CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL

Defendants have also failed to establish that the Court's Order is appropriate for interlocutory review. It is well established that interlocutory appeals are only appropriate if a movant can demonstrate ***all three*** elements of 28 U.S.C. §1292(b), which require a finding that: "'(1) the order [at issue] involves a controlling question of law; (2) there is substantial ground for difference of opinion; ***and*** (3) certification will materially advance the ultimate termination of the litigation.'" *Union Cnty. v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) (quoting *White*, 43 F.3d at 377).

Meeting this standard is no easy feat. Indeed, courts are clear that the "'***movant*** bears the ***heavy burden*** of demonstrating that the case is an exceptional one in which immediate appeal is warranted'" (*Cossey v. Assocs.' Health & Welfare Plan*, No. 4:02CV661 WKU, 2005 WL 3133500, at *7 (E.D. Ark. Nov. 21, 2005) (quoting *White*, 43 F.3d at 376)), and that "[i]nterlocutory appeals are only appropriate in 'extraordinary cases.'" *Frazier v. Bickford*, No. 14-cv-3843 (SRN/JJK), 2015 WL 8779872, at *2 (D. Minn. Dec. 15, 2015) (quoting *Piper Jaffray*, 525 F.3d at 646). In fact, "interlocutory appeals . . . are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995).[11]

Defendants completely fail to meet their burden, unable to establish a single element of §1292(b), let alone all three, which they must. Defendants are simply unhappy with this Court's decision. But their disagreement with the Court's Order does not warrant interlocutory review.

## A.    The Court's Order Does Not Involve a Controlling Question of Law

Defendants fail to meet the first prong, which requires demonstrating that the Order involves a controlling question of law. Defendants merely assert that the "question of whether Defendants had a duty to disclose the type of 'facts' that Plaintiff[s] allege they failed to disclose is a central, dispositive legal issue in this action and is therefore a controlling question of law." Mot. at 13. But what Defendants dispute is the Court's application of the law to the facts here – and that dispute is not a proper basis for interlocutory review.

---

[11]   Defendants' Motion conveniently ignores their burden to establish each element of §1292(b) as well as the Eighth Circuit's instruction that a "motion for certification [for an interlocutory appeal] must be granted sparingly." *White*, 43 F.3d at 376.

While a question is "'controlling'" if the "'resolution of the issue on appeal could materially affect the outcome of the litigation in the district court'" (*Graham v. Hubbs Mach. & Mfg., Inc.*, 49 F. Supp. 3d 600, 611 (E.D. Mo. 2014)), the question must be a question of law, "not merely a question of fact" or one that is "fact-intensive." *Fenton v. Farmers Ins. Exch.*, No. 07-4864 (JRT/FLN), 2010 WL 1006523, at *2 (D. Minn. Mar. 16, 2010) (finding that the "determination of eligibility for the administrative exemption" was "fact-intensive" because the "Court applied the relevant factors to determine whether the special investigators qualify for the exemption and it determined that they did not qualify"). Defendants do not accuse the Court of applying the wrong law, but rather dispute the Court's application of the controlling law to the facts alleged, a matter falling within the Court's discretion. *See White*, 43 F.3d at 377 ("§1292(b) contrasts with a 'matter for the discretion of the trial court.'").[12] For example, the parties do not dispute that a company has no duty to disclose "soft" information (i.e., the question of law) – but, on Defendants' Motion to Dismiss, the parties disagreed about whether the facts that Plaintiffs allege were concealed qualify as "soft" information (i.e., the application of the alleged facts to the law), with the Court agreeing with Plaintiffs that Defendants here failed to disclose hard (material) facts – an indisputable violation of the securities laws. Thus, Defendants do not take issue with the controlling law the Court applied – but instead with how the Court applied the undisputed controlling law to

---

[12]   Here, for instance, the question of whether certain facts should have been disclosed is a question of materiality, which ""requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts"" and is "rarely" decided at the pleading stage. *Siracusano*, 563 U.S. at 36; *ConAgra Foods*, 335 F.3d at 829 (materiality is normally a "question of fact for the jury").

the facts alleged.[13]  This is not a valid basis for interlocutory review, and Defendants fail to satisfy the first element of §1292(b).

> **B.     There Are No Grounds for a Difference of Opinion on the Controlling Question of Law**

Even assuming the Order does involve a controlling question of law (and it does not), Defendants' Motion fails because they cannot satisfy the second §1292(b) prong, which requires a showing that there are substantial grounds for difference of opinion on the purportedly controlling question of law.  Courts assess the following factors to determine whether "[s]ubstantial grounds exist":

> "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is one of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question."

*Graham*, 49 F. Supp. 3d at 612; *Floyd Cnty. Mut. Ins. Ass'n v. CNH Indus. Am. LLC*, No. 19-CV-2012-CJW-KEM, 2019 WL 4007215, at *3 (N.D. Iowa Aug. 23, 2019) ("Substantial grounds for a difference of opinion exist when 'the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions [or] the question is one of first impression.'").

None of these circumstances exists here. Indeed, an assessment of whether a defendant in a securities class action has a duty to disclose, or whether a plaintiff has adequately alleged scienter, is not "'difficult'" or "'novel,'" nor is it one for which there is

---

[13]    Further, Defendants' cited cases are wholly inapplicable: *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauri in Amministrazione Straordinaria*, 921 F.2d 21 (2d Cir. 1990), is out-of-circuit and pre-PSLRA; *Whitley v. Baptist Health*, No. 4:16-cv-624-DPM, 2021 WL 307293 (E.D. Ark. Jan. 29, 2021), concerned a quintessential question of law – the interpretation of statutory text; and *Curtis Lumber Co. v. Louisiana Pac. Corp.*, 618 F.3d 762 (8th Cir. 2010) does not even involve an interlocutory appeal.  Mot. at 13.

little precedent. *Graham*, 49 F. Supp. 3d at 612. Instead, the legal standards at issue here are "well established," governed by controlling precedent from the Supreme Court and Eighth Circuit, and briefed and ruled upon regularly, with hundreds of decisions issued each year by courts throughout the country. *See Fenton*, 2010 WL 1006523, at *2 (no substantial grounds for difference of opinion when "[t]he legal standards are well-established"). The issues Defendants raise are indisputably not novel questions nor ones of first impression.

Defendants also cannot point to a "'difference of opinion . . . within the controlling circuit'" or that "'circuits are split on the question.'" *Graham*, 49 F. Supp. 3d at 612. The only identified "difference of opinion" is between two federal district courts sitting in different circuits – a routine occurrence in our legal system.[14] *See Nat. Res. Def. Council v. Cnty. of Los Angeles*, No. CV 08-1467 AHM (PLAx), 2011 WL 318543, at *1 (C.D. Cal. Jan. 27, 2011) ("[A] single conflicting district court opinion from a different circuit is not sufficient to establish a substantial ground for difference of opinion. If it were, interlocutory appeals likely would be justified on any number of issues in routine cases, rather than 'only in exceptional situations . . . .'"); *Spears v. Washington Mut. Bank FA,* No. C-08-00868 RMW, 2010 WL 54755, at *3 (N.D. Cal. Jan. 8, 2010) ("[T]he mere fact that one district court [sitting in a different circuit] came to a different conclusion on the same issue is insufficient to establish a substantial ground for difference of opinion."). But more importantly, Defendants do not (and cannot) argue that there is even a difference of opinion on the controlling *law* (i.e., the appropriate standard for determining whether a defendant has

---

[14] The cases Defendants cite do not help them. For instance, *Wright v. Gen. Dynamics Corp.*, No. LR-C-89-252, 1989 WL 297985, at *1 (E.D. Ark. Sept. 1, 1989) – from the late 80s – certified an issue for appeal because "every court across the nation" reached a different conclusion on the applicable issue than the district court did – which is not remotely the case here. *Id.*

a duty to disclose under the securities laws, or for determining whether scienter exists), because it is established by the Supreme Court and Eighth Circuit precedent Defendants concede apply; instead, Defendants take issue with this Court's ***application of the controlling law to the facts alleged here***.  But this is simply not an appropriate basis to establish the "substantial grounds" prong: "[t]he fact that another court might decide the issue differently, or that the litigant disagrees with the Court's decision, however, does not satisfy the statutory requirement for a substantial ground for difference of opinion."  *Same Day Surgery Ctrs., L.L.C. v. Montana Reg'l Orthopedics, L.L.C.*, No. 021811(JRT/FLN), 2003 WL 1565942, at *3 (D. Minn. Mar. 4, 2003); *Floyd*, 2019 WL 4007215, at *3 ("'[A] party's strong disagreement with the Court's ruling is not sufficient for there to be a substantial ground for difference.'").

Defendants' sole argument is that a court in a different district, sitting in a different circuit, reached a different conclusion based on different alleged facts.  Indeed, as already discussed in great detail above and in Plaintiffs' response to Defendants' Notice, this case involves additional and distinct false and misleading statements, different scienter allegations, and a different theory of loss causation, among other differences.  *See* §II.; ECF No. 70.  Defendants have therefore failed to establish "substantial grounds" and their Motion can be dismissed on this basis alone.  *See Cossey*, 2005 WL 3133500, at *9 ("[I]n the absence of substantial ground for difference of opinion, an interlocutory appeal would only serve to delay the progress of this litigation.").

In addition to wrongly claiming a difference of opinion, Defendants attempt to distract the Court by asserting that they (and similarly situated companies) cannot reasonably know

- 23 -

what disclosure obligations are necessary to avoid liability, given the apparent differences between the opinions of this Court and the District of Delaware. But, (1) that argument is irrelevant to the test for certifying a case for appeal, (2) would effectively turn decisions by district courts in separate jurisdictions into binding authority, and (3) as discussed herein, there is no substantial grounds for difference of opinion on the purportedly controlling question of law.[15]

### C.  Certification Would Delay, Not Advance, the Ultimate Termination of the Litigation

Defendants also fail to meet the third §1292(b) prong, which requires a showing that certification will materially advance the ultimate termination of the litigation. Defendants' claim that certifying this case for appeal would materially advance the ultimate termination of this case is wrong for several reasons.[16]

***First***, even assuming Defendants have met their burden of establishing the other elements of §1292(b) – which for the above reasons, they have not – and assuming the Eighth Circuit reverses this Court's decision, Plaintiffs will still have the opportunity to replead and file a second amended complaint. *See* Fed. R. Civ. P. 15(a)(2) ("The court

---

[15]  *City of Hialeah Emps.' Ret. Sys. v. Toll Bros., Inc.*, No. 07–1513, 2009 WL 10684918, at *1 (E.D. Pa. Sept. 21, 2009) does nothing to support Defendants' policy argument as it involved a conflict between two decisions in the same district – which is not the case here. Mot. at 14.

[16]  In addition, Defendants' cited cases offer them no support. *Moore v. Apple Cent., LLC*, No. 5:16-CV-05069, 2017 WL 11195761, at *2 (W.D. Ark. Mar. 16, 2017), involved a plaintiff moving for interlocutory appeal of the decision that plaintiff's state law claims were preempted by ERISA. Under those facts, if the trial court was affirmed, it would "reduce[] the scope of any later appeal seeking to reverse the preemption decision." *Id.* Here, in stark contrast, Defendants are moving for interlocutory appeal, and if the Court's opinion is affirmed, no time will have been saved as Defendants can appeal the same issues at a later stage where the issues are viewed under a different standard. *Day v. Celadon Trucking Servs., Inc.*, No. 4:09CV00031 SWW, 2012 WL 12792162, at *4 (E.D. Ark. Mar. 13, 2012) is inapplicable on its face as the issues raised by Defendants are not "pertaining to damages." Mot. at 15.

- 24 -

should freely give leave when justice so requires."). Thus, even if Defendants get what they want, a ruling in Defendants' favor on appeal would not materially advance the ultimate termination of the litigation, because it will instead result in a protracted pleading and briefing schedule, and require time for the Court to rule on Defendants' second motion to dismiss, just to get back to the same stage of the litigation the parties are at today.

***Second***, Defendants point to no reason beyond the Delaware Order (which again involved different false and misleading statements, as well as different and less specific scienter allegations, *see supra* §II., in a different jurisdiction), for why the Court's well-reasoned opinion will be reversed and the case terminated. But the possibility that the Eighth Circuit will affirm the Court's Order is highly relevant to the Court's inquiry on this element of the §1292(b) analysis. Indeed,

> [t]he Court cannot, however, ignore the reasonable likelihood of an alternate outcome, namely that the Court of Appeals would affirm this Court's ruling . . . . Indeed, if this latter scenario comes to fruition, the litigation in this matter will have been dramatically and unnecessarily prolonged, at significant expense to both parties, by an interlocutory appeal.

*Ray v. Union Pac. R.R. Co.*, 971 F. Supp. 2d 869, 896 (S.D. Iowa 2013); *see also Frazier*, 2015 WL 8779872, at *5 ("The potentially deleterious impact, both in delay and expense, if the district court's ruling is upheld on interlocutory appeal cannot be ignored."); *Hartley v. Suburban Radiologic Consultants, Ltd.*, No. 11-2664(JRT/JJG), 2013 WL 6511847, at *3 (D. Minn. Dec. 12, 2013) (same). Because Defendants do not dispute that the Court applied the ***correct*** legal standard in evaluating the Complaint here, there is an overwhelming likelihood that the Court's Order would be affirmed if the case is certified. As a result, certifying this case for appeal may just as easily result in a ***delay*** of the ultimate termination.

## V.     CONCLUSION

For the reasons set forth herein, Defendants' Motion should be denied in its entirety.

DATED:  April 29, 2021                                 Respectfully submitted,

                                                      DEBRA J. WYMAN
                                                      ROBBINS GELLER RUDMAN
                                                        & DOWD LLP
                                                      TING H. LIU
                                                      655 West Broadway, Suite 1900
                                                      San Diego, CA  92101-8498
                                                      Telephone:  619/231-1058
                                                      619/231-7423 (fax)
                                                      E-mail:  debraw@rgrdlaw.com
                                                               tliu@rgrdlaw.com

                                                      LABATON SUCHAROW LLP
                                                      CAROL C. VILLEGAS
                                                      CHRISTINE M. FOX
                                                      ROSS M. KAMHI
                                                      140 Broadway, 34th Floor
                                                      New York, NY  10005
                                                      Telephone:  212/907-0700
                                                      212/818-0477 (fax)
                                                      E-mail:  cvillegas@labaton.com
                                                               cfox@labaton.com
                                                               rkamhi@labaton.com

                                                      Lead Counsel for Lead Plaintiffs

                                                      GEOFFREY P. CULBERTSON
                                                      Arkansas Bar No. 2014011
                                                      PATTON TIDWELL & CULBERTSON, LLP
                                                      2800 Texas Boulevard
                                                      Texarkana,  TX  75503
                                                      Telephone:  903/792-7080
                                                      903/792-8233 (fax)
                                                      E-mail:  gpc@texarkanalaw.com

                                                      Liaison Counsel for the Class

- 26 -

SCHALL LAW FIRM
BRIAN SCHALL
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: 424/303-1964
877/590-0483 (fax)
Email: brian@schallfirm.com

THORNTON LAW FIRM LLP
GUILLAUME BUELL
1 Lincoln Street, 25th Floor
Boston, MA 02111
Telephone: 617/720-1333
617/720-2445 (fax)
Email: gbuell@tenlaw.com

Additional Plaintiffs' Counsel