**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| IN RE UNITI GROUP INC. SECURITIES LITIGATION | No. 4:19-cv-00756-BSM |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE,**
**CERTIFICATION FOR INTERLOCUTORY APPEAL**

1

## **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 1

I. THE COURT SHOULD GRANT THE MOTION FOR RECONSIDERATION ............. 1

II. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL ....................................................................................... 5

    A. The Court's Order Involves Controlling Questions of Law ................................... 5

    B. There Are Substantial Grounds for Differences of Opinion .................................. 6

    C. Certification Will Materially Advance the Ultimate Termination of the Litigation ................................................................................................................ 7

CONCLUSION ........................................................................................................................ 8

## **TABLE OF AUTHORITIES**

PAGE(S)

CASES

*City of Hialeah Emps. Ret. Sys. v. Toll Bros., Inc.*,
   No. 07-1513, 2009 WL 10684918 (E.D. Pa. Sept. 21, 2009) ....................................................... 7

*Johnson v. Dayton Elec. Mfg. Co.*,
   140 F.3d 781 (8th Cir. 1998) ...................................................................................................... 6

*Kushner v. Beverly Enterprises, Inc.*,
   317 F.3d 820 (8th Cir. 2003) ...................................................................................................... 2

*Moore v. Apple Cent., L.L.C.*,
   No. 5:16-CV-05069, 2017 WL 11195761 (W.D. Ark. Mar. 16, 2017) ....................................... 8

*Strathclyde Pension Fund v. Bank OZK*,
   No. 4:18-CV-793-DPM, 2020 WL 4580430 (E.D. Ark. Aug. 6, 2020) ....................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .................................................................................................................... 6

*In re Text Messaging Antitrust Litig.*,
   630 F.3d 622 (7th Cir. 2010) ...................................................................................................... 6

*Webb v. Exxon Mobil Corp.*,
   No. 4:13CV00232 BSM, 2015 WL 11090403 (E.D. Ark. Mar. 17, 2015) ............................. 1, 2

STATUTES & RULES

28 U.S.C. § 1292(b) ............................................................................................................... 5, 6, 8

**PRELIMINARY STATEMENT**

In opposing Defendants' motion for reconsideration or, in the alternative, certification for interlocutory appeal (the "Motion"), Plaintiffs do not seriously dispute that this case concerns the same claims—over the same disclosures by the same defendants—as the SLF Action.[1] Although Plaintiffs try to identify purported differences between their Complaint and the SLF complaint, none are relevant to Chief Judge Stark's analysis, and none support the diametrically different outcome he reached on a near-identical motion to dismiss. Not surprisingly, therefore, Plaintiffs resort to asking this Court simply to disregard Chief Judge Stark's 34-page opinion as mere "persuasive" authority. Remarkably, however, Plaintiffs do not offer a single principled reason why the Court should not follow it. They make no attempt to argue that Chief Judge Stark's opinion is not completely correct on the law, and they offer no basis to conclude that the SLF opinion is not entirely consistent with controlling Eighth Circuit precedent.

For those reasons, among others, Defendants respectfully submit that reconsideration of the Order is appropriate. But if the Court were not inclined to grant reconsideration, this circumstance calls out for an interlocutory appeal, in light of the irreconcilable conflict between two respected courts on the exact same controlling legal issues.

**ARGUMENT**

**I.     THE COURT SHOULD GRANT THE MOTION FOR RECONSIDERATION**

As explained in the Motion, the Court should reconsider its March 31, 2021 order denying Defendants' motion to dismiss (the "Order") because the Order departs from controlling Supreme Court and Eighth Circuit securities law, such that reconsideration is necessary to "correct manifest errors of law." *Webb v. Exxon Mobil Corp.*, No. 4:13CV00232 BSM, 2015

---

[1] Capitalized terms not defined in this reply have the same meaning as in the Motion.

WL 11090403, at *2 (E.D. Ark. Mar. 17, 2015).  In particular, the Order (1) did not correctly apply controlling Eighth Circuit precedent in concluding that Plaintiffs adequately allege any actionable omission or misstatement, and (2) did not correctly apply the heightened standard for pleading scienter under the PSLRA, and controlling Supreme Court and Eighth Circuit precedent applying that heightened standard.  Mot. at 4-12.

      Plaintiffs' responses make little sense.  Plaintiffs' fundamental theory of liability is that Defendants failed to disclose "hard facts" because they did not disclose that the structure of the Spin-Off and the Master Lease "violated the Indenture from inception."  Pls.' Opp. at 8.  But Plaintiffs acknowledge that the Spin-Off was "specifically structured to *evade* the restrictions in the Indenture," *not* to violate them.  *Id.* at 9 (emphasis added).  And Plaintiffs do not plead that any Defendant knew or even believed that the Spin-Off failed to meet that goal.[2]  Plaintiffs' scienter allegations fail for the same reason.  Plaintiffs contend that they sufficiently pleaded scienter because the April 2013 email—sent two years before the Spin-Off was consummated—shows that Defendants understood that the Indenture would be a "limiting factor" in any spin-off transaction.  *Id.* at 17.  But that inference does not demonstrate that any Defendant believed that the Spin-Off executed two years later failed to meet that goal.  To the contrary, the most "cogent" and "compelling" inference—and, indeed, the only plausible inference—to draw from the April 2013 email is that Defendants understood that the Indenture imposed certain limitations on the Spin-Off and specifically structured the transaction in an attempt ***not to violate those***

---

[2] Issuers have no legal obligation (and Plaintiffs identify none) to disclose that they took actions or structured transactions in a manner that they believed *complied* with their legal obligations—a rule that would make little sense and simply inundate shareholders with useless information.  It follows that what Plaintiffs are really complaining about is the failure to disclose the *risk* that the spin-off failed to meet that goal.  But that is precisely the sort of "soft" information that is not required to be disclosed under *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831 (8th Cir. 2003); *see also* Mot. at 4-8.

*limitations*. Mot. at 10. In the face of this inference, the Order committed manifest legal error in concluding that Plaintiffs could survive a motion to dismiss merely by raising a "competing" inference.

In concluding that Plaintiffs had satisfied their burden under the PSLRA, the Order arrived at the exact opposite conclusions from the Delaware district court in the SLF Action, which applied Third Circuit law that is entirely consistent with controlling Eighth Circuit law. There is no dispute that the Order is irreconcilable with Chief Judge Stark's opinion. Plaintiffs contend, nevertheless, that the Court should ignore that opinion because there are supposedly "fundamental and important differences" between the allegations in the two cases. Pls.' Opp. at 3. But Plaintiffs' supposed distinctions between the allegations in this case and those in the SLF Action are illusory and immaterial:

- Plaintiffs argue that "unlike the plaintiff in the SLF Action, Plaintiffs here allege that Defendants' 'public disclosures' were also materially misleading." Pls.' Opp. at 10. But SLF *did* challenge Defendants' public disclosures. *See* ECF No. 71, Ex. A (SLF Complaint ¶ 92 (alleging that Uniti committed securities fraud based on "a series of public false and misleading statements about Windstream, the spinoff, and the sale-leaseback in its *public* disclosures" (emphasis added))).

- Plaintiffs argue that they made additional allegations based on Defendants' "post-Spin-Off" statements that Chief Judge Stark did not analyze. Pls.' Opp. at 3-4. But substantially all of the statements on which Plaintiffs seek to recover here were considered and decisively rejected by Chief Judge Stark. Plaintiffs state that they challenge statements by Uniti "aimed at assuring investors and the public that the lease payment from Windstream was 'very safe,'" statements understating the risk that Aurelius would prevail in the litigation, and statements indicating "the probability of Windstream rejecting the Master Lease in bankruptcy to be remote." *Id.* at 3 n.3. But SLF challenged virtually identical statements in its complaint. *See* ECF No. 71, Ex. A (SLF Complaint) ¶¶ 92, 105-08, 145-46.[3]

---

[3] Plaintiffs also fail to explain how or why a statement that the lease payments were "very safe" was in any way false or misleading, and the Order never addressed the issue. Indeed, Plaintiffs concede that, *despite Windstream's bankruptcy*, at no time did Windstream ever fail to make a required lease payment (*see* CAC ¶ 28)—which only demonstrates the accuracy of the challenged statement. Moreover, although SLF did not assert, and Chief Judge Stark did not address, alleged misstatements concerning Uniti's belief that it could navigate the Windstream bankruptcy without raising external capital (Pls.' Opp. at 12-13), (….continued)

3

- Plaintiffs contend that they alleged that Defendants' additional risk disclosures "failed to provide the full picture about the 'risks' discussed." Pls.' Opp. at 4, 10. But again SLF made the same allegation, and Chief Judge Stark rejected it, concluding that SLF failed to state a claim for securities fraud because, among other reasons, "Defendants sufficiently disclosed the risks regarding the spinoff and REIT in their public filings." *See* ECF No. 76-1, Ex. A at 18. Plaintiffs do not identify any risk disclosures that were not addressed in Chief Judge Stark's opinion.

- Plaintiffs assert that they made additional allegations regarding scienter not present in the SLF Action. Pls.' Opp at 4, 17-18. But they fail to identify any relevant difference between the scienter allegations in the two actions. Just as in this action (*id.* at 14-15), SLF alleged (1) that the Spin-Off was designed with Windstream's Indentures in mind to avoid any violation thereof and not at arm's length (*see, e.g.,* ECF No. 71, Ex. A. ¶¶ 188-89); (2) that internal April 2015 talking points allegedly sent to Windstream and Uniti executives provided prepared responses to questions, including that "[t]his is a complex transaction and after considering many factors we concluded that the lease at WIN Holdings was the best structure" (*id.* ¶ 111); (3) that a "true lease" opinion prepared by Skadden Arps supposedly cautioned that the Master Lease could be deemed a "sale-leaseback" transaction (*id.* ¶ 86); (4) and that Uniti executives disclosed in the wake of the Aurelius litigation that they had "very, very closely" analyzed Aurelius' claims and were confident that Windstream had the better side of the argument (*e.g.*, *id.* ¶ 146).[4]

- Plaintiffs also note several additional "dissimilarities" between this action and the SLF Action (Pls.' Opp. at 4 & n.4), but they never explain why any of these dissimilarities are relevant to the Motion or would warrant a different result with respect to the particular errors identified in the Order. Nor could they. For example, Plaintiffs argue that they relied on a different loss causation theory than SLF (*id.* at 4), but Defendants do not seek reconsideration on the Court's loss causation ruling.[5] And Plaintiffs contend that they

---

(continued….)

for the reasons in Defendants' Motion, those allegations fail to state a claim as inactionable opinion (Mot. at 8). Plaintiffs allege no facts showing that Uniti did not in fact believe, at the time of the statements, that it could navigate the bankruptcy without raising additional capital or, indeed, that Uniti's subsequent decision to raise capital was at all related to the bankruptcy—an inference that, again, is belied by the fact that Windstream continued to make all rent payments throughout its bankruptcy.

[4] In their opposition to the Motion, Plaintiffs also refer to allegations regarding "internal documents" that supposedly "demonstrate that Defendants were aware that the Master Lease violated the terms of the Indenture" but tellingly do not cite any particular allegation. Pls.' Opp. at 14-15. In any event, SLF's complaint included substantially the same allegations regarding internal documents as in Plaintiffs' complaint (*compare* CAC ¶¶ 92-94, 112, 118-21 *with* ECF No. 71, Ex. A. ¶¶ 65, 111-12), including the same April 2013 email on which this Court relied in finding that Plaintiffs had adequately alleged scienter (*compare* CAC ¶¶ 75-76, *with* ECF No. 71, Ex. A. ¶¶ 47, 50).

[5] In any event, the SLF Opinion concluded that there were no concealed risks in Defendants' disclosures. *See* ECF No. 76-1, Ex. A at 27-28.

4

"opposed Defendants' truth-on-the-market defense at the pleading stage," which was not addressed in the SLF Action (*id.*), but Defendants did not make a truth-on-the-market defense in the SLF Action or this action, and certainly do not rely on such a defense in seeking reconsideration.

At bottom, Plaintiffs ask that this Court simply disregard Chief Judge Stark's well-reasoned opinion—addressing not only the same legal issues but also virtually identical factual allegations. Yet Plaintiffs do not even attempt to argue that the SLF Action was incorrectly decided. For the reasons given in the Motion, it was not. Nor do Plaintiffs identify any material difference between Third Circuit and Eighth Circuit law that would merit a different result here. Accordingly, Defendants respectfully request that the Court reconsider its Order.

## II. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL

Even if the Court does not grant the motion for reconsideration, the Order is appropriate for interlocutory review. Both issues raised by Defendants present "controlling question[s] of law as to which there [are] substantial ground[s] for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

### A. The Court's Order Involves Controlling Questions of Law

Whether Defendants had a duty to disclose the type of "risks" Plaintiffs allege were concealed and whether Plaintiffs' allegations were sufficient to give rise to a strong inference of scienter are both "controlling questions of law." Mot. at 13. Plaintiffs do not (and could not) dispute that these two questions are controlling: If the Eighth Circuit were to reverse the Order on either, this action would be dismissed. Instead, Plaintiffs argue that the questions are not ones "of law" because Defendants are disputing only "the Court's application of the law to the facts here." Pls.' Opp. at 19. But that is a mischaracterization of the Motion. For example, Defendants argue that the Order erroneously required Plaintiffs to plead only a "competing"

5

inference of scienter rather than an inference that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Mot. at 9 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). That is a controlling issue of law that does not require a review of the facts alleged in the Complaint.

In any event, Plaintiffs are incorrect that the application of law to the facts alleged in a complaint can never present a "question of law" under Section 1292(b). Indeed, as the Seventh Circuit has explained, "[d]ecisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010) (citing cases, including the Eighth Circuit's decision in *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783-84 (8th Cir. 1998)). Thus, the application of "a legal standard . . . to a set of factual allegations taken as true for purposes of the appeal" (such as on a motion to dismiss) presents a legal question under Section 1292(b). *Id.* at 625; *see also Strathclyde Pension Fund v. Bank OZK*, No. 4:18-CV-793-DPM, 2020 WL 4580430, at *1 (E.D. Ark. Aug. 6, 2020) (holding that the "adequacy of [the plaintiff's] pleading of [the defendant's] scienter is a controlling question of law"). The Court should therefore conclude that Defendants have raised controlling questions of law.[6]

### B. There Are Substantial Grounds for Differences of Opinion

There are also substantial grounds for differences of opinion on these questions, as shown by the Delaware district court's wholly irreconcilable decision on both issues in an action with

---

[6] Plaintiffs also incorrectly contend that the questions presented are not "difficult" or "novel." Pls.' Opp. at 21. To the contrary, these questions raise important issues regarding a public company's purported obligation to review and make legal judgments about its major customers' alleged breaches of their own contracts and to make disclosures around such potential breaches, even where the party to the contract itself does not believe there has been any breach. *See* Mot. at 14. Indeed, as explained in the Motion, such an obligation would raise difficult and novel burdens that the Eighth Circuit should have an opportunity to address. *Id.*

6

the same facts and overlapping claims and defendants. Plaintiffs argue that a "difference of opinion . . . between two federal district courts sitting in different circuits" cannot establish a substantial ground for difference of opinion because that is a "routine occurrence in our legal system." Pls.' Opp. at 22. But this is not a mere difference of opinion. Unlike in the cases Plaintiffs cite, two different courts here reached the opposite conclusion on the *same* issues in a case presenting the *same* facts and the *same* defendants. Moreover, Plaintiffs do not dispute that immediate resolution of these issues would both advance the policy goals of the PSLRA and provide necessary certainty to Defendants (and similarly situated companies) on their disclosure obligations. *See* Mot. at 14-15. Plaintiffs assert that these considerations are "irrelevant to the test for certifying a case for appeal" (Pls.' Opp. at 24), but that is incorrect. *See City of Hialeah Employees' Ret. Sys. v. Toll Bros., Inc.*, No. CV 07-1513, 2009 WL 10684918, at *2 (E.D. Pa. Sept. 21, 2009) (certifying interlocutory appeal where the case involved "important legal standards that affect a wide swath of civil litigation").

### C. Certification Will Materially Advance the Ultimate Termination of the Litigation

Finally, an interlocutory appeal from the Order would materially advance the ultimate termination of this litigation: If Defendants are successful on appeal, the Complaint would be dismissed, preventing years of protracted and expensive discovery and litigation before this Court. In response, Plaintiffs speculate that the Eighth Circuit's reversal of the Order would actually *delay* resolution of this action because the Court could give Plaintiffs an opportunity for leave to amend. Pls.' Opp. at 24-25. But Plaintiffs fail to identify any additional fact that they could allege in an amended pleading that would address the fundamental defects in their Complaint, and Plaintiffs ignore that Chief Judge Stark not only dismissed the SLF Action but did so with prejudice. In any event, Defendants need only show that an interlocutory appeal

7

"*may* materially advance the ultimate termination of the litigation," 28 U.S.C. 1292(b) (emphasis added), and Plaintiffs do not dispute that if Defendants are successful before the Eighth Circuit, "years of potential litigation *can* be avoided." *Moore v. Apple Cent., LLC*, No. 5:16-CV-05069, 2017 WL 11195761, at *2 (W.D. Ark. Mar. 16, 2017) (emphasis added).

## CONCLUSION

Defendants respectfully request that the Court reconsider and vacate its Order denying Defendants' motion to dismiss, and enter judgment in favor of Defendants, or, in the alternative, certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated: August 2, 2021

OF COUNSEL:

Edmund Polubinski III *
Brian M. Burnovski *
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
edmund.polubinski@davispolk.com
brian.burnovski@davispolk.com

Jess Askew III, Ark. Bar No. 86005
Andrew King, Ark. Bar No. 2007176
Frederick H. Davis, Ark. Bar No. 2012271
KUTAK ROCK LLP
124 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3706
(501) 975-3000
jess.askew@kutakrock.com
andrew.king@kutakrock.com
frederick.davis@kutakrock.com

*Counsel for Defendants Uniti Group Inc., Kenneth A. Gunderman, and Mark A. Wallace*

* *admitted pro hac vice*