**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

|  |  |
|---|---|
| IN RE UNITI GROUP INC. SECURITIES LITIGATION | No. 4:19-cv-00756-BSM |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
<u>PLAINTIFFS TO PRODUCE CERTAIN DISCOVERY</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND .................................................................................................................. 3

      A.     Plaintiffs Refuse to Provide Information on When Certain Allegations
            Were First Discovered (Interrogatory No. 11)......................................................... 4

      B.     Plaintiffs Refuse to Produce Their Testimony from Prior Securities
            Lawsuits (RFP No. 39) ........................................................................................... 5

      C.     Plaintiffs Refuse to Produce Documents Relating to Prior Civil or
            Criminal Proceedings or Securities Investigations Brought Against Them
            (RFP No. 40)........................................................................................................... 6

      D.     Plaintiffs Refuse to Run Relevant Fund Names as Search Terms ......................... 7

LEGAL STANDARD............................................................................................................ 8

ARGUMENT ........................................................................................................................ 9

I.      PLAINTIFFS SHOULD BE COMPELLED TO IDENTIFY WHEN THEIR
       COUNSEL FIRST DISCOVERED CERTAIN ALLEGATIONS IN THE
       COMPLAINT (INTERROGATORY NO. 11)................................................... 9

II.     PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE THEIR
       TESTIMONY IN PRIOR SECURITIES LAWSUITS (RFP NO. 39)............................. 13

III.   PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE DOCUMENTS
       RELATING TO PRIOR CIVIL OR CRIMINAL PROCEEDINGS OR
       SECURITIES INVESTIGATIONS BROUGHT AGAINST THEM (RFP NO. 40) ....... 15

IV.   PLAINTIFFS SHOULD BE COMPELLED TO RUN RELEVANT FUND
       NAMES AS SEARCH TERMS ...................................................................... 17

CONCLUSION..................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Abstrax, Inc. v. Hewlett-Packard Co.*,
   2015 WL 11197823 (E.D. Tex. Jan. 29, 2015) ........................................................14

*In re Allergan, Inc. Sec. Litig.*,
   2016 WL 5929250 (C.D. Cal. Oct. 5, 2016) ............................................................18

*Aloe Vera of Am., Inc. v. United States*,
   2003 WL 22429082 (D. Ariz. Sept. 23, 2003)........................................................12

*Apple, Inc. v. Samsung Elecs. Co.*,
   2012 WL 1232267 (N.D. Cal. Apr. 12, 2012) ........................................................14

*Axler v. Sci. Ecology Grp., Inc.*,
   196 F.R.D. 210 (D. Mass. 2000)......................................................................11, 12

*Baker v. Gen. Motors Corp.*,
   209 F.3d 1051 (8th Cir. 2000) ...............................................................................12

*Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports & Recreation*,
   165 F.R.D. 108 (M.D. Fla. 1996)......................................................................13, 14

*In re Bieter Co.*,
   16 F.3d 929 (8th Cir. 1994) ...................................................................................11

*Brown v. Nationwide Affinity Ins. Co. of Am.*,
   2018 WL 3222511 (D.S.D. June 29, 2018) ......................................................11, 18

*Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc.*,
   92 F.R.D. 67 (S.D.N.Y. 1981) ...............................................................................15

*Cave v. Thurston*,
   2021 WL 4936185 (E.D. Ark. Oct. 22, 2021) ..........................................................9

*Davis v. Union Pac. R.R. Co.*,
   2008 WL 3992761 (E.D. Ark. Aug. 26, 2008) .........................................................9

*Diversified Indus. v. Meredith*,
   572 F.2d 596 (8th Cir. 1977) .................................................................................12

*In re Gibson Greetings Sec. Litig.*,
   159 F.R.D. 499 (S.D. Ohio 1994) ..........................................................................14

*In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*,
   838 F. Supp. 109 (S.D.N.Y. 1993) .........................................................................14

*Hoexter v. Simmons*,
    140 F.R.D. 416 (D. Ariz. 1991) ...........................................................................14

*Hofer v. Mack Trucks, Inc.*,
    981 F.2d 377 (8th Cir. 1992) ...............................................................................9

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
    2006 WL 1520227 (S.D.N.Y. June 1, 2006) .........................................................18

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2008 WL 2941215 (S.D.N.Y. July 30, 2008) ........................................................17

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)..............................................................................................9

*Mission Nat'l Ins. Co. v. Lily*,
    112 F.R.D. 160 (D. Minn. 1986)..........................................................................12

*N.J. Carpenters Health Fund v. Residential Cap., LLC*,
    272 F.R.D. 160 (S.D.N.Y. 2011) .........................................................................18

*Newman v. Eagle Bldg. Techs.*,
    209 F.R.D. 499 (S.D. Fla. 2002) .........................................................................16

*Noller v. Grubs*,
    2006 WL 8448107 (S.D. Ind. Feb. 24, 2006) ......................................................13

*Ret. Sys. v. Wal-Mart, Inc.*,
    2018 WL 1558572 (W.D. Ark. Mar. 29, 2018) ....................................................11

*Savino v. Comput. Credit, Inc.*,
    164 F.3d 81 (2d Cir. 1998).............................................................................2, 16

*SLF Holdings, LLC v. Uniti Fiber Holdings Inc.*,
    499 F. Supp. 3d 49 (D. Del. 2020) .......................................................................1

*In re Surebeam Corp. Sec. Litig.*,
    2004 WL 5159061 (S.D. Cal. Jan. 5, 2004).........................................................16

*Thomas v. Cate*,
    715 F. Supp. 2d 1012 (E.D. Cal. 2010)..................................................................9

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    2018 WL 2958361 (S.D.N.Y. June 13, 2018) ......................................................18

*Weisman v. Darneille*,
    78 F.R.D. 669 (S.D.N.Y. 1978) ...........................................................................16

*Xianglin Shi v. Sina Corp.*,
    2005 WL 1561438 (S.D.N.Y. July 1, 2005) ........................................................16

*Zemel Fam. Tr. v. Philips Int'l Realty Corp.*,
    205 F.R.D. 434 (S.D.N.Y. 2002) ........................................................................16

**Statutes and Rules**

28 U.S.C. § 1658 ..............................................................................................................9

E.D. Ark. Local Rule 7.2(g) ............................................................................................4

Fed. R. Civ. P. 26 ................................................................................................8, 9, 12

Defendants Uniti Group Inc. ("Uniti"), Kenneth A. Gunderman, and Mark A. Wallace (collectively, "Defendants") respectfully move to compel Steamfitters Local 449 Pension Plan, Wayne County Employees' Retirement System, and David McMurray, on behalf of himself and as sole beneficiary of the David McMurray R/O IRA ("Plaintiffs" or "Lead Plaintiffs") to produce certain relevant documents and information pursuant to Defendants' discovery requests.

## PRELIMINARY STATEMENT

Defendants have worked diligently and expeditiously to respond to Plaintiffs' discovery requests, make discovery requests of their own, and meet the recently amended schedule for pre-trial proceedings entered by the Court.  Defendants have expended significant time and resources meeting and conferring in good faith with Plaintiffs to resolve disputes and have produced to Plaintiffs nearly one million pages of documents to date.  Yet Plaintiffs have failed to meet their own obligations in response to Defendants' discovery requests.  Putting aside that Defendants still await Plaintiffs' production of *any* documents in this action (which Plaintiffs have promised to produce well in advance of the November 25 deadline), Plaintiffs have flatly refused several categories of discovery that are plainly relevant to this action and to Defendants' defenses. Plaintiffs should be compelled to produce this discovery.

*First*, Lead Plaintiffs have refused to produce core relevant discovery that goes to the heart of one of the principal weaknesses of their claims—that they are untimely.[1]  Plaintiffs brought their claims over two years after a reasonable investor would have discovered the alleged omissions that are central to the Complaint, as a result of which the applicable two-year

---

[1] As set forth in their pending Motion for Reconsideration, or in the Alternative, Certification for Interlocutory Appeal (ECF No. 76), Defendants respectfully submit that the Complaint should be dismissed in its entirety for the same reasons that Chief Judge Stark of the United States District Court for the District of Delaware dismissed near-identical claims in *SLF Holdings, LLC v. Uniti Fiber Holdings Inc.*, 499 F. Supp. 3d 49 (D. Del. 2020).

Should the Court grant Defendants' pending motion for reconsideration, this motion would be moot.

statute of limitations has run on those claims.  The Lead Plaintiffs, for their part, admit that they did not conduct *any* investigation into the allegations in their Complaint, and instead relied entirely on counsel to conduct that investigation.  Accordingly, the Lead Plaintiffs admit that they did not even know of the allegedly false or misleading statements until their counsel brought them to their attention in connection with filing this lawsuit.  In those circumstances, Defendants are entitled to know when Plaintiffs' *counsel* discovered the allegations in order to test their statute of limitations defense.  Plaintiffs, however, have refused discovery into that issue, on the grounds that the information sought is protected by the attorney-client privilege and the work product doctrine, even though neither attaches here.  And even if they did, various exceptions to those doctrines would apply.

*Second*, Plaintiffs have also refused to produce discovery that is highly relevant to their adequacy as Lead Plaintiffs and, thus, directly relevant to Defendants' opposition to Plaintiffs' recently filed class certification motion.  For example, even though Lead Plaintiffs have acted, or sought to act, as lead plaintiff in nearly 40 securities cases over the past 10 years, they have refused to produce (or even search for) testimony from actions over four years old, even though any such testimony is likely to bear on their adequacy as class representatives, their sophistication, and matters relevant to their reliance on the allegedly false statements at issue in this case.  Likewise, Plaintiffs have refused to produce documents regarding prior civil or criminal proceedings or prior securities investigations brought against them, even though such documents are plainly discoverable given that a lead plaintiff's "honesty and trustworthiness" is highly relevant to its adequacy as a class representative.  *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

*Finally*, Plaintiffs have made clear that they intend to conduct their search for documents in a manner that is guaranteed to exclude relevant documents.  In particular, they are proposing to review only emails that include certain key words, while excluding from the list of key words the names of the very funds that invested in Uniti stock.  Notably, Plaintiffs have not even attempted to argue that reviewing documents containing those fund names would be unduly burdensome or disproportionate to the needs of the case.  Nor could they, as they have refused even to search their email files to determine how many results such terms would yield—as they would be *required* to do under the ESI Protocol entered by the Court in this case.

For these reasons, and as set forth in more detail below, Plaintiffs should be compelled to produce the foregoing discovery.

## BACKGROUND

Over the last several months, the parties have engaged in substantial discovery.  Plaintiffs have served an initial set of requests for the production of documents ("RFPs") on Defendants, who have already produced over 80,000 documents, totaling nearly one million pages, and plan to make an additional production later this month.

Defendants, for their part, have served Plaintiffs with initial sets of RFPs and interrogatories.  (Ex. A (Defs.' First Set of RFPs); Ex. B (Defs.' First Set of Interrogatories).)  Consistent with their obligations under the local rules, the parties have met and conferred several times over Plaintiffs' responses and objections to those discovery requests.

To identify documents responsive to the RFPs, both parties have identified custodians who are likely to possess potentially responsive emails and other documents.  In order to narrow the scope of review, the parties have also negotiated search terms—i.e., key works likely to hit on responsive documents—to apply over the custodians' documents.  Moreover, pursuant to the Stipulation and Order Establishing a Protocol for the Production of Electronically Stored

Information entered in this case on August 16, 2021 (ECF No. 88) (the "ESI Protocol"), the parties have agreed to a set of procedures for negotiating search terms, including the requirement to provide "hit reports" for any search terms a party objects to on undue burden grounds (*id.* at 4-5).

Notwithstanding their attempts to meet and confer to resolve the disputes over Plaintiffs' responses and objections, the parties have reached an impasse on several issues and are not able to resolve their disagreements without the Court's assistance.  *See* Local Rule 7.2(g).  Resolution of these discovery disputes is critical to various issues in the case, including Defendants' statute of limitations defense and its opposition to Plaintiffs' motion for class certification, which, by recent order of the Court, is due on December 23, 2021.  (ECF No. 93.)

> **A.**     **Plaintiffs Refuse to Provide Information on When Certain Allegations Were First Discovered (Interrogatory No. 11)**

Defendants' Interrogatory No. 11 asked Plaintiffs to identify, for each allegedly false or misleading statement in the Complaint, "the date on which you or your counsel first discovered that the statement was false or misleading."  (Ex. B (Defs.' First Set of Interrogatories) at 8.)  In response, Plaintiffs responded that "[e]ach of the Plaintiffs were independently made aware of the alleged false and misleading statements and omissions by Plaintiffs' counsel at or around the time of the signing of their Reform Act Certifications and/or retention agreement, whichever was executed earlier."  (Ex. C (Pls.' R&Os to First Set of Interrogatories) at 12.)  That was consistent with Plaintiffs' response to Defendants' Interrogatory No. 12, which asked Plaintiffs to "Describe any investigation you performed to discover the facts alleged in the Complaint."  (Ex. B (Defs.' First Set of Interrogatories) at 9.)  In response to that interrogatory, Plaintiffs stated that "they relied upon the investigation undertaken by Plaintiffs' Counsel," implicitly conceding

that they did not undertake any independent investigation of their own.  (Ex. C (Pls.' R&Os to First Set of Interrogatories) at 12–13.)

Despite conceding that they relied entirely on counsel's investigation, and without challenging the relevance of the information to Defendants' statute of limitations defense, Plaintiffs refused to provide the dates on which their counsel first discovered that the statements were allegedly false or misleading on the grounds that the information sought was protected by the attorney-client privilege and the work product doctrine.  (*Id.*)  The parties subsequently met and conferred about Plaintiffs' responses, and agree they are at an impasse.  (Ex. D (Oct. 26, 2021 Letter from N. Williams to C. Fox) at 3.)

### B. Plaintiffs Refuse to Produce Their Testimony from Prior Securities Lawsuits (RFP No. 39)

The Lead Plaintiffs appointed in this case consist of two pension funds—Steamfitters Local 449 Pension Plan and Wayne County Employees' Retirement System (the "Pension Funds")—and one individual investor.[2]  Discovery has made clear that the two Pension Funds are, in effect, "professional" securities class action plaintiffs, having acted as, or sought to be, a lead plaintiff in over 20 federal securities actions in just the past four years (Ex. E (Nov. 1, 2021 Letter from C. Fox to N. Williams)) and in approximately 40 lawsuits in the past 10 years.

Defendants' RFP No. 39 asked Plaintiffs to produce "transcripts of all testimony offered by You or Your representative in a securities lawsuit and accompanying exhibits."  (Ex. A (Defs.' First Set of RFPs) at 14.)  In their response to this request, Plaintiffs refused to produce any

---

[2] Plaintiffs have represented that a fourth Lead Plaintiff, Zhengxu He, Trustee for the He & Fang 2005 Revocable Living Trust, intends to withdraw as a Lead Plaintiff.  However, as of the date of this motion, Mr. He has not yet withdrawn.  Accordingly, Defendants do not move to compel any information from Mr. He at this time, but request that the relief sought herein apply equally to Mr. He if he does not ultimately withdraw.

responsive documents, including on the grounds that the information sought was not relevant and may be protected by a protective order.  (Ex. F (Pls.' R&Os to First Set of RFPs) at 48.)

The parties subsequently met and conferred.  While not agreeing to produce responsive documents, Plaintiffs agreed to investigate whether any such transcripts exist.  (Ex. G (Oct. 1, 2021 Letter from N. Williams to C. Fox) at 5–6.)  Although Plaintiffs have since represented that they have not identified any deposition transcripts of the Lead Plaintiffs in any federal securities action arising under the PSLRA from November 1, 2016, until August 31, 2021, they have refused to search for any documents prior to November 1, 2016, or to search for transcripts in cases not arising under the PSLRA.  (Ex. H (Oct. 13, 2021 Letter from C. Fox to N. Williams) at 4; Ex. I (Oct. 28, 2021 Letter from N. Williams to C. Fox) at 2.)[3]

### C.     Plaintiffs Refuse to Produce Documents Relating to Prior Civil or Criminal Proceedings or Securities Investigations Brought Against Them (RFP No. 40)

Defendants' RFP No. 40 seeks the production of all documents "relating to (a) any civil or criminal charges, sanctions, complaints, proceedings, fines, disciplinary actions, decisions, or judgments filed, issued, or entered" against Plaintiffs or "(b) any investigations of [Plaintiffs] by any governmental agency, stock exchange, self-regulatory organization, or securities industry association."  (Ex. A (Defs.' First Set of RFPs) at 14–15.)  Notwithstanding that Plaintiffs asked Defendants to provide similar documents (which Defendants have done), Plaintiffs refused to produce responsive documents on various grounds, including that the request sought irrelevant information.  (Ex. F (Pls.' R&Os to First Set of RFPs) at 49.)

---

[3] During their meet and confer, Defendants also asked whether Plaintiffs had identified any prior testimony of David McMurray.  Plaintiffs stated that they would investigate, but only for the period from November 1, 2016 until August 31, 2021.  (Ex. I (Oct. 28, 2021 Letter from N. Williams to C. Fox) at 1–2.)  The parties' disagreement, therefore, applies equally to any prior testimony by Mr. McMurray prior to November 2, 2016.

During the meet and confer process, Defendants proposed to limit the request to a 10-year period and further agreed, at Plaintiffs' counsel's suggestion, to exclude arbitration matters brought against the Pension Funds by their members that are unrelated to securities issues or fraud.  (Ex. G (Oct. 1, 2021 Letter from N. Williams to C. Fox) at 6.)  However, in a subsequent letter, dated October 13, 2021, and then again during further discussions on October 26, 2021, Plaintiffs refused that proposal without any explanation.  (Ex. H (Oct. 13, 2021 Letter from C. Fox to N. Williams) at 4; Ex. I (Oct. 28, 2021 Letter from N. Williams to C. Fox) at 2.) Accordingly, the parties are at an impasse.

### D.    Plaintiffs Refuse to Run Relevant Fund Names as Search Terms

During the course of discovery, Plaintiffs disclosed that the Pension Funds engaged outside investment managers to make all investment decisions on their behalf, including the decision to invest in Uniti securities.  (*See, e.g.*, Ex. F (Pls.' R&Os to First Set of RFPs) at 10; Ex. J (Oct. 14, 2021 Email from C. Fox to N. Williams) at 2 ("[T]he Pension Funds used outside IMs to make all investment decisions. . . .  As all investment decisions are left to the IMs, there are no individuals/custodians at the Pension Funds who make or oversee investment decisions."); Ex. K (Nov. 1, 2021 Letter from C. Fox to N. Williams) at 1 ("[I]t is counsel's understanding that neither Local 449 nor WCERS participated in any discussions internally or with their investment managers before the managers transacted in Uniti Securities . . . .").)

Plaintiffs' counsel also represented during meet and confers that the Pension Funds are unlikely to have many, if any, documents in their possession regarding their transactions in Uniti securities because the decisions to buy and sell Uniti securities were made by the Pension Funds' outside investment managers.  Moreover, based on discussions with those investment managers, whom Defendants are in the process of subpoenaing, Defendants understand that the Pension Funds likely would not have directly invested in Uniti securities, but instead would have invested

in funds or investment vehicles that hold or allocate a certain percentage of their holdings to various securities, which may have included Uniti securities.  For example, Lead Plaintiff Wayne County Employees' Retirement System ("Wayne County ERS") identified NorthPointe Capital LLC ("NorthPointe") as its investment manager.  NorthPointe, in turn, managed a fund named "NorthPointe Small Cap Value Fund," which allocated a certain percentage of its holdings to Uniti securities (or securities in Communications Sales & Leasing REIT, as Uniti was formerly known).  (Ex. L (Form N-Q for The Advisors' Inner Circle Fund III, NorthPointe Small Cap Value Fund, dated Sept. 29, 2016) at 3.)  Thus, Defendants' understanding is that Wayne County ERS only invested indirectly in Uniti securities through the NorthPointe Small Cap Value Fund. In that case, Wayne County ERS's decision whether to invest in that fund would clearly be relevant to a number of issues in this case, including reasonable reliance, statute of limitations, knowledge of the falsity of the alleged misstatements, and class certification.

Accordingly, while negotiating search terms, Defendants asked Plaintiffs to run the names of any such funds as search terms.  (Ex. J (Oct. 14, 2021 Email from N. Williams to C. Fox) at 1.)  Notwithstanding the relevance of the funds' names, Plaintiffs summarily refused to do so.  Plaintiffs failed to provide a hit report for the proposed search terms (*id.*), as required under the ESI Protocol if Plaintiffs were objecting on burden grounds (ECF No. 88 at 4).  Nor did Plaintiffs provide any other basis for their refusal or even offer to meet and confer on the issue in good faith.  (*Id.*)  Instead, they simply stated that they were willing to certify to the Court that the parties were at an impasse so that Defendants could move to compel.  (*Id.*)

## LEGAL STANDARD

Parties are entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1). Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant and

reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "[A] request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Davis v. Union Pac. R.R. Co.*, 2008 WL 3992761, at *2 (E.D. Ark. Aug. 26, 2008).

"On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). "A party claiming requests are unduly burdensome cannot make conclusory allegations, but the party must provide some evidence regarding the time or expense required." *Cave v. Thurston*, 2021 WL 4936185, at *8 (E.D. Ark. Oct. 22, 2021); *see also Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010) ("[A]n objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence.").

## ARGUMENT

### I.   PLAINTIFFS SHOULD BE COMPELLED TO IDENTIFY WHEN THEIR COUNSEL FIRST DISCOVERED CERTAIN ALLEGATIONS IN THE COMPLAINT (INTERROGATORY NO. 11)

Plaintiffs should be ordered to identify the dates on which their counsel first discovered that the statements identified in the Complaint were allegedly false or misleading.

As a preliminary matter, there can be no dispute that the date on which *Plaintiffs* discovered the alleged misstatements is critical to Defendants' statute of limitations defense. A Section 10(b) claim, like Plaintiffs assert here, must be brought within "2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b)(1). The statute of limitations begins to run either "(1) when the plaintiff *did in fact discover*, or (2) when a reasonably diligent plaintiff would have discovered, the facts constituting the violation." *Merck*

*& Co. v. Reynolds*, 559 U.S. 633, 637 (2010) (internal quotation marks omitted) (emphasis added).

Here, however, Plaintiffs have stated in their interrogatory responses that they did not independently discover the falsity of the alleged statements because they relied entirely on their counsel to investigate the allegations in the Complaint; as a result, they only learned of the allegedly false or misleading statements when counsel brought them to Plaintiffs' attention in connection with filing this lawsuit. (Ex. C (Pls.' R&Os to First Set of Interrogatories) at 12–13.)

In those circumstance, what Plaintiffs' *counsel* knew, and when, is highly relevant to Defendants' statute of limitations defense. That is especially true because Plaintiffs had a monitoring agreement with counsel to monitor Uniti's stock for potential securities claims against Uniti. (Ex. F (Pls.' R&Os to First Set of RFPs) at 43; Ex. G (Oct. 1, 2021 Letter from N. Williams to C. Fox) at 4–5.) Given that Plaintiffs' counsel was charged with monitoring Uniti's stock for potential misstatements pursuant to the monitoring agreement, what it knew is relevant to what a "reasonably diligent" investor would have discovered (even if the actual Plaintiffs here knew nothing). Moreover, depending on the nature and terms of the monitoring agreements, which Plaintiffs have not yet produced, counsel's knowledge could be imputed to Plaintiffs. Finally, it would be grossly inequitable to find that counsel could discover a claim, sit on it for two years, and nevertheless evade the statute of limitations merely because the figurehead Lead Plaintiffs here were completely ignorant of their own claims. Accordingly, as one case found in a similar securities class action context, "the efforts undertaken by plaintiffs' counsel[,] the information they obtained, and the timing of its receipt are critical to the questions of whether plaintiffs, through their agents, exercised due diligence and when they should have discovered

the alleged fraud of which they now complain." *Axler v. Sci. Ecology Grp., Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000).  The same is true here.

That conclusion is consistent with the fact that Plaintiffs do not even object to the information sought on relevance grounds.  (Ex. C (Pls.' R&Os to First Set of Interrogatories) at 12).[4]  Instead, Plaintiffs argue that the date their counsel first discovered the falsity of the alleged misstatements is protected by the attorney-client privilege and work product doctrine.  (Ex. C (Pls.' R&Os to First Set of Interrogatories) at 12.)  Those arguments are unavailing.

The information sought is not protected by attorney-client privilege because that "privilege only protects disclosure of *communications*; it does not protect disclosure of the underlying facts by those who communicated with the attorney."  *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart, Inc.*, 2018 WL 1558572, at *3 (W.D. Ark. Mar. 29, 2018) (quoting *In re Bieter Co.*, 16 F.3d 929, 940–41 (8th Cir. 1994)).  Here, the information Defendants seek—the date on which counsel first discovered that certain statements are allegedly false—is not a communication between attorney and client but rather an underlying *fact*.

In any event, Plaintiffs have not established that any attorney-client relationship even existed when their counsel first discovered the allegedly false statements.  Indeed, Plaintiffs' counsel apparently discovered the allegations *prior* to bringing them to Plaintiffs' attention for purposes of filing this lawsuit (Ex. C (Pls.' R&Os to First Set of Interrogatories) at 12)—and therefore presumably prior to the existence of any attorney-client relationship.

The information sought is also not protected by the work product doctrine.  That doctrine only protects discovery of "documents and tangible things that are prepared in anticipation of

---

[4] Even if Plaintiffs attempted to object on relevance grounds at this point, it is too late to do so, as their failure to timely raise such an objection constitutes a waiver of their right to do so.  *See Brown v. Nationwide Affinity Ins. Co. of Am.*, 2018 WL 3222511, at *4 (D.S.D. June 29, 2018) ("Discovery objections are waived if they are not first asserted in the responses to the opposing party's discovery requests.").

litigation."  Fed. R. Civ. P. 26(b)(3)(A).  However, "the work product rule does not come into play merely because there is a remote prospect of future litigation," *Diversified Indus. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977), and "even the likely chance of litigation" does not give rise to work product immunity, *Mission Nat'l Ins. Co. v. Lily*, 112 F.R.D. 160, 163 (D. Minn. 1986).  Here, as noted above, Plaintiffs' counsel apparently discovered the allegations *before* they ever discussed with Plaintiffs the possibility of bringing a lawsuit (Ex. C (Pls.' R&Os to First Set of Interrogatories) at 12–13), and therefore before Plaintiffs anticipated litigation.

In any event, even assuming for the sake of argument that the information sought was work product—which it is not—work product that consists of "raw factual information," as opposed to "counsel's mental impression, conclusions, opinion or legal theories," is discoverable upon a showing of substantial need and an inability to acquire the substantial equivalent of the information sought by other means without undue hardship.  *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000).  That is the case here:  The date on which Plaintiffs' counsel discovered the alleged misstatements is "raw factual information."  And for the reasons set forth above, Defendants have a substantial need to know it, because such information is critical to Defendants' statute of limitations defense, and Defendants are unable to obtain the relevant information otherwise.  Indeed, other courts have ordered the production of similar information on similar grounds.  *See, e.g.*, *Axler*, 196 F.R.D. at 212 (ordering production of "discovery from plaintiffs' counsel concerning what investigation they conducted, what information they received, and when they received it" given that "plaintiffs relied completely on their counsel"); *Aloe Vera of Am., Inc. v. United States*, 2003 WL 22429082, at *5 (D. Ariz. Sept. 23, 2003) (ordering production of documents concerning the investigation conducted by plaintiffs' counsel, the information counsel received during that investigation, and when counsel received that

information, because such information was "vital to Defendant's statute of limitations defense and is not obtainable from any other source").

## II.     PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE THEIR TESTIMONY IN PRIOR SECURITIES LAWSUITS (RFP NO. 39)

Plaintiffs should be ordered to produce Plaintiffs' testimony in other securities lawsuits and accompanying exhibits for a period of 10 years from the present.

While Plaintiffs have represented that Lead Plaintiffs have not been deposed in any federal securities class actions brought under the PSLRA in which they were, or sought to be, a lead plaintiff or class representative from November 1, 2016 to August 31, 2021 (Ex. H (Oct. 13, 2021 Letter from C. Fox to N. Williams) at 4), that does not fully respond to Defendants' request, which seeks testimony from *any* securities action (not just federal actions arising under the PSLRA) for a *10-year* period.  Yet Plaintiffs have refused to even investigate whether such testimony exists.

Such testimony is clearly relevant, especially given the two Pension Funds' extensive involvement in prior securities cases.  First, a named plaintiff's involvement in prior securities litigation is relevant to, among other things, reliance, whether that plaintiff will be an adequate representative in a class action, and whether they will have typical claims of the class.  *See, e.g.*, *Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108, 111 (M.D. Fla. 1996) ("The plaintiffs' involvement in prior securities litigation is relevant to whether the named representatives can adequately represent the class. For example, a plaintiff's extensive experience and involvement in similar lawsuits may result in unique defenses rendering the plaintiff unable to adequately represent the class." (collecting cases)).[5]

---

[5] *See also Noller v. Grubs*, 2006 WL 8448107, at *4 (S.D. Ind. Feb. 24, 2006) ("Information related to [a named plaintiff's] involvement in other litigation or administrative proceedings is clearly relevant, in that one factor in
(….continued)

Indeed, numerous courts have compelled named plaintiffs to produce deposition transcripts from prior litigation on that basis. *See, e.g.*, *Abstrax, Inc. v. Hewlett-Packard Co.*, 2015 WL 11197823, at *4 (E.D. Tex. Jan. 29, 2015) (ordering plaintiff to produce documents from prior related litigation including deposition exhibits, transcripts, and pleadings); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 1232267, at *5 (N.D. Cal. Apr. 12, 2012) (ordering plaintiff to produce transcripts from prior litigation); *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. at 111, 114 (ordering production of "documents concerning any other securities law, class action, derivative, breach of fiduciary duty, or waste of corporate assets litigation to which the named plaintiffs were or had been a party"); *Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan*, 165 F.R.D. at 110–11 (ordering plaintiff to produce "transcript(s) of any other deposition(s) that you have given in any other securities, breach of fiduciary duty, shareholder derivative, waste of corporate asset litigation, or class action to which you have been a party").

Second, a plaintiff's testimony in other securities actions will likely concern subjects such as the plaintiff's reliance on market prices and the integrity of the market, the plaintiff's sophistication, and the plaintiff's processes for making investment decisions—all issues relevant in this action. That supplies independent grounds for the transcripts' relevance.

Apart from relevance, Plaintiffs object that they cannot produce transcripts of prior testimony because any such testimony would potentially be subject to a protective order. (Ex. F

---

(continued….)

denying class certification is whether the proposed class representative is found to be a 'professional plaintiff' and, therefore, atypical."); *In re Gibson Greetings Sec. Litig.*, 159 F.R.D. 499, 501 (S.D. Ohio 1994) (finding "a 'professional class action plaintiff' should not be permitted to represent a class of individuals who are not similarly situated"); *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 114 (S.D.N.Y. 1993) (A "named plaintiff's involvement in other securities and class action litigation is also relevant to the issue of reliance."); *Hoexter v. Simmons*, 140 F.R.D. 416, 422–23 (D. Ariz. 1991) (finding lead plaintiffs atypical because "[t]he prior litigation in which [plaintiffs] have served as named plaintiffs is so extensive . . . that they will inevitably be subject to unique defenses concerning their reliance on the market's integrity in purchasing stock").

(Pls.' R&Os to First Set of RFPs) at 48.)  That objection is meritless.  To begin, it is premature, given that Plaintiffs do not even know if such protective orders exist.  It also rings hollow, since it would likely be *Plaintiffs* that designated the testimony as confidential, in which case a protective order should not supply any obstacle to Plaintiffs producing the testimony in this action.  *See, e.g.*, *Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc.*, 92 F.R.D. 67, 70 (S.D.N.Y. 1981) (compelling discovery of prior testimony despite existence of protective order because the protective order prevented only the "receiving party" of any documents and information from using or disclosing that evidence for any other purpose and the request was not directed at the "receiving party").  Moreover, most protective orders have some exception for disclosing documents pursuant to a litigation document request, such as those Defendants served here. Indeed, in response to Plaintiffs' own document requests seeking deposition transcripts and exhibits from prior actions, which were subject to a protective order, Defendants produced such documents (including, where necessary, after seeking permission from third parties who had designated the materials confidential under the terms of the protective order).

Accordingly, Plaintiffs should be compelled to produce their testimony in other securities lawsuits and accompanying exhibits.  To the extent the Court has any concern about the burdens of searching for such materials (notwithstanding that Plaintiffs have failed to substantiate any such burden), Defendants are willing to limit the request to a period of 10 years from the present.

## III.  PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RELATING TO PRIOR CIVIL OR CRIMINAL PROCEEDINGS OR SECURITIES INVESTIGATIONS BROUGHT AGAINST THEM (RFP NO. 40)

Plaintiffs should be ordered to produce documents relating to any (1) civil or criminal charges, sanctions, complaints, proceedings, fines, disciplinary actions, decisions, or judgments filed, issued, or entered against Plaintiffs or (2) any investigations of Plaintiffs by any

governmental agency, stock exchange, self-regulatory organization, or securities industry association, in both cases for a period of 10 years from the present.[6]

Such documents are highly relevant to the claims and defenses in this action, including issues relevant to class certification.  As the Second Circuit has explained, the "honesty and trustworthiness of the named plaintiff" is an important consideration in judging the "adequacy of representation" by a named plaintiff.  *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).  Likewise, "convictions of fraud or other forms of dishonesty undermine the qualifications of a potential class representative."  *Xianglin Shi v. Sina Corp.*, 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005).

Accordingly, courts have routinely found a lead plaintiff to be inadequate to serve as a class representative based on their prior involvement in civil and criminal matters.  *See, e.g.*, *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (finding individual was inadequate representative where he was the subject of numerous complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments); *Zemel Fam. Tr. v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002) (finding individual was not adequate representative where he had been involved in entities that had been subject to SEC sanctions); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (finding individual was not adequate representative where he had been sanctioned for violating SEC and NASD rules); *Weisman v. Darneille*, 78 F.R.D. 669, 670–71 (S.D.N.Y. 1978) (rejecting lead plaintiff who was a convicted felon who lied and evaded during

---

[6] Although this RFP originally requested documents without regard to time period, Defendants subsequently stated that they were willing to limit their request to a 10-year period.  Moreover, based on concerns raised by Plaintiffs during their meet and confer, Defendants are willing to exclude from this request documents regarding arbitration matters brought by the Pension Funds' members against the Pension Funds that are unrelated to securities issues or fraud.  (Ex. G (Oct. 1, 2021 Letter from N. Williams to C. Fox) at 6.)

deposition as to previous litigation involvements, including SEC litigation, and was unfamiliar with the pending suit).

Here, the documents sought—documents regarding prior civil or criminal proceedings or securities investigations brought against them—go directly to the Lead Plaintiffs' "honesty and trustworthiness," and should therefore be produced.  *See, e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2008 WL 2941215, at *5 (S.D.N.Y. July 30, 2008) (compelling pension fund plaintiff to produce documents concerning investigations by the SEC and DOJ "on the ground that such information could bear on [the pension fund's] adequacy as a class representative").

## IV.    PLAINTIFFS SHOULD BE COMPELLED TO RUN RELEVANT FUND NAMES AS SEARCH TERMS

Plaintiffs should be ordered to run as search terms the names of any funds through which they or their investment managers invested in Uniti securities.

Although Plaintiffs have agreed to search for terms related to Uniti securities, such terms are unlikely to capture all of the documents relevant to Plaintiffs' investment decisions because the Pension Funds did not purchase Uniti stock directly.  Instead, Defendants understand that the Pension Funds and their investment managers invested in funds that held or allocated a certain percentage of their holdings to Uniti securities—a common practice among pension funds.  In that case, relevant documents concerning the decision to invest in the funds holding Uniti securities would likely not contain Uniti-specific search terms.  Running searches for the names of the funds, however, would capture the relevant documents related to the decision to invest in the funds holding Uniti securities.  Plaintiffs cannot contend otherwise.

There can be no question that documents regarding the Pension Funds' (and their investment managers') decision to invest in Uniti securities—or to invest in the funds that held the Uniti securities—are highly relevant to a number of issues in this case, including reasonable

reliance, statute of limitations, knowledge of the falsity of the alleged misstatements, and class certification. *See, e.g.*, *In re Allergan, Inc. Sec. Litig.*, 2016 WL 5929250, at *4 (C.D. Cal. Oct. 5, 2016) (compelling lead plaintiff to produce documents related to investment history in defendant's securities, and non-defendant securities, "for purposes of rebutting the presumption of reliance"); *N.J. Carpenters Health Fund v. Residential Cap., LLC*, 272 F.R.D. 160, 168 (S.D.N.Y. 2011) (denying class certification in part because "different putative class members have different levels of knowledge regarding the underwriting guidelines and practices based on their respective levels of sophistication and time of purchase"); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, 2006 WL 1520227, at *3 (S.D.N.Y. June 1, 2006) ("Plaintiff's investment sophistication . . . is clearly relevant and its investment history is, therefore, an appropriate area for exploration."); *see also Villella v. Chem. & Mining Co. of Chile Inc.*, 2018 WL 2958361, at *5 (S.D.N.Y. June 13, 2018) ("Where, as here, a plaintiff wholly outsources their decision making to an investment adviser who acts as their agent, that agent's decision-making calculus is relevant to the reliance inquiry.").

Nor can Plaintiffs argue that running the fund names as search terms would be unduly burdensome. Plaintiffs bear the burden to raise any such objection in their initial responses to Defendants' discovery requests. *Brown*, 2018 WL 3222511, at *4 ("Discovery objections are waived if they are not first asserted in the responses to the opposing party's discovery requests."). But Plaintiffs made no effort to do so here: They did not produce a hit report for the proposed search terms, or otherwise even attempt to substantiate a burden objection—notwithstanding their obligation to do so under the parties' ESI Protocol. (ECF No. 88 at 4 ("If the producing Party objects to the inclusion of certain search terms on the basis of burden, it will provide a search term hit list or hit report that includes: (i) for the search terms to which it objects, the

number of documents that hit on each term . . . .").)  Having failed to raise any burden objection during the meet and confer process, any such objection is now waived.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion to Compel.


Dated: November 12, 2021

OF COUNSEL:

| | |
|---|---|
| Edmund Polubinski III* | Jess Askew III, Ark. Bar No. 86005 |
| Brian M. Burnovski* | Andrew King, Ark. Bar No. 2007176 |
| Nikolaus J. Williams* | Frederick H. Davis, Ark. Bar No. 2012271 |
| DAVIS POLK & WARDWELL LLP | KUTAK ROCK LLP |
| 450 Lexington Avenue | 124 West Capitol Avenue, Suite 2000 |
| New York, New York 10017 | Little Rock, Arkansas 72201-3706 |
| Telephone: (212) 450-4000 | (501) 975-3000 |
| edmund.polubinski@davispolk.com | jess.askew@kutakrock.com |
| brian.burnovski@davispolk.com | andrew.king@kutakrock.com |
| nikolaus.williams@davispolk.com | frederick.davis@kutakrock.com |

* *admitted pro hac vice*

*Counsel for Defendants Uniti Group Inc., Kenneth A. Gunderman, and Mark A. Wallace*