UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| In re UNITI GROUP INC. SECURITIES LITIGATION | ) ) ) | Master File No. 4:19-cv-00756-BSM |
| | ) ) | CLASS ACTION |
| This Document Relates To: | ) ) ) | PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL |
| ALL ACTIONS. | ) ) ) | PLAINTIFFS TO PRODUCE CERTAIN DISCOVERY |
| | ) | |

4894-7058-1764.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................... 1

II.   BACKGROUND .................................................................................... 4

      A.    Facts Relevant to the Present Motion ........................................ 4

            1.    Defendants' First Request for Production of Documents ................. 4

            2.    Defendants' First Set of Interrogatories to Plaintiffs ........................ 7

      B.    The Parties' Ongoing Discovery Efforts ........................................ 8

III.  DEFENDANTS' MOTION TO COMPEL SHOULD BE DENIED ...................... 9

      A.    Legal Standard ................................................................................ 9

      B.    Plaintiffs Have Provided the Information Requested by Interrogatory
            No. 11 and Defendants Cannot Establish that They Are Entitled to
            Additional Information Concerning When Certain Allegations Were
            First Discovered by Counsel ........................................................ 10

      C.    Testimony from Unrelated Lawsuits Filed More than Five Years
            Ago Are Not Relevant .................................................................. 19

      D.    Plaintiffs Should Not Be Compelled to Produce Documents Relating
            to Prior Civil or Criminal Proceedings or Securities Investigations
            Brought Against Them .................................................................. 26

      E.    Plaintiffs Should Not Be Compelled to Run Relevant Fund Names as
            Search Terms ................................................................................ 28

IV.   CONCLUSION .................................................................................... 31

4894-7058-1764.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abstrax, Inc. v. Hewlett-Packard Co.*,
    No. 2:14-cv-158-JRG, 2015 WL 11197823
    (E.D. Tex. Jan. 29, 2015) ...................................................................................... 25

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972) ............................................................................................... 20

*Aloe Vera of Am., Inc. v. United States*,
    No. CV 99-1794-PHX-JAT, 2003 WL 22429082
    (D. Ariz. Sept. 23, 2003) ................................................................................. 17, 18

*Apple Inc. v. Samsung Elecs. Co.*,
    No. C 11-1846 LHK (PSG), 2012 WL 1232267
    (N.D. Cal. Apr. 12, 2012) .................................................................................... 25

*Axler v. Sci. Ecology Grp., Inc.*,
    196 F.R.D. 210 (D. Mass 2000) ........................................................................... 17

*Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports &
    Recreation*,
    165 F.R.D. 108 (M.D. Fla. 1996) .................................................................. 22, 25

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ............................................................................................... 20

*Cervantes v. Time, Inc.*,
    464 F.2d 986 (8th Cir. 1972) .......................................................................... 13, 14

*Cook v. Katridg Pak Co.*,
    840 F.2d 602 (8th Cir. 1988) ................................................................................. 9

*E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*,
    No. 8:03CV165, 2007 WL 1217919
    (D. Neb. Mar. 15, 2007) ................................................................................ 10, 13

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
    No. 08-4168(MLC), 2012 WL 628320
    (D.N.J. Feb. 27, 2012) .......................................................................................... 25

*Endress v. Gentiva Health Servs., Inc.*,
    278 F.R.D. 78 (E.D.N.Y. 2011) ........................................................................... 22

4894-7058-1764.v1

**Page**

*Fed. Deposit Ins. Corp. v. Credit Suisse First Bos. Mortg. Sec. Corp.*,
414 F. Supp. 3d 407 (S.D.N.Y. 2019)........................................................ 1, 12, 20, 27

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
873 F.3d 85 (2d Cir. 2017)........................................................................ 12

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
858 F. Supp. 2d 306 (S.D.N.Y. 2012),
*aff'd*, 712 F.3d 136 (2d Cir. 2013) ............................................................ 14

*Finkel v. Zizza & Assocs. Corp.*,
No. 12-CV-4108(JS)(ARL), 2021 WL 1375655
(E.D.N.Y. Apr. 12, 2021)........................................................................... 18

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) ................................................................... 26

*Garcia v. Hetong Guo*,
No. CV-15-1862-MWF-MRWx, 2016 WL 102213
(C.D. Cal. Jan. 7, 2016)............................................................................. 17

*Gargiulo v. Isolagen, Inc.*,
527 F. Supp. 2d 384 (E.D. Pa. 2007) ......................................................... 14

*Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ................................................................... 17

*Guisasola v. Crossmark, Inc.*,
No. C13-1337-MJP, 2014 WL 4187127
(W.D. Wash. Aug. 25, 2014) ...................................................................... 26

*Haddley v. Next Chapter Tech., Inc.*,
No. 16-cv-1960, 2018 WL 2180253
(D. Minn. Mar. 23, 2018)........................................................................... 18

*Hegarty v. Transamerica Life Ins. Co.*,
No. 19-cv-06006-MMC (RMI), 2021 WL 4899482
(N.D. Cal. Oct. 21, 2021)........................................................................... 24

*Hoexter v. Simmons*,
140 F.R.D. 416 (D. Ariz. 1991) ................................................................. 22

*Hofer v. Mack Trucks, Inc.*,
981 F.2d 377 (8th Cir. 1992) .......................................................... 9, 13, 24, 27

- iii -

**Page**

*In re Allergan, Inc. Sec. Litig.*,
No. 14-cv-02004-DOC (KES), 2016 WL 5929250
(C.D. Cal. Oct. 5, 2016) ................................................................................... 30

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
693 F. Supp. 2d 241 (S.D.N.Y. 2010) .............................................................. 16

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
No. 11 Civ. 9175 LAK JLC, 2013 WL 5769915
(S.D.N.Y. Oct. 24, 2013) ................................................................................. 22

*In re Comput. Scis. Corp. Sec. Litig.*,
288 F.R.D. 112 (E.D. Va. 2012) ....................................................................... 29

*In re Connetics Corp. Sec. Litig.*,
257 F.R.D. 572 (N.D. Cal. 2009) ...................................................................... 29

*In re Diamond Foods, Inc., Sec. Litig.*,
281 F.R.D. 405 (N.D. Cal. 2012) ...................................................................... 23

*In re E.I. du Pont de Nemours*,
No. 2:13-md-2433, 2015 U.S. Dist. LEXIS 178306
(S.D. Ohio May 20, 2015) ................................................................................ 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02 Civ. 3400(WCC), 2006 WL 8429110
(S.D.N.Y. June 21, 2006) ................................................................................. 21

*In re Gibson Greetings Sec. Litig.*,
159 F.R.D. 499 (S.D. Ohio 1994) ..................................................................... 22

*In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*,
838 F. Supp. 109 (S.D.N.Y. 1993) ............................................................... 22, 25

*In re Leapfrog Enters., Inc. Sec. Litig.*,
No. C-03-05421 RMW, 2005 WL 3801587
(N.D. Cal. Nov. 23, 2005) ................................................................................ 27

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
MDL No. 1744, 2008 WL 2941215
(S.D.N.Y. July 30, 2008) ............................................................................. 27, 28

**Page**

*In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*,
543 F.3d 150 (3d Cir. 2008),
*aff'd sub nom. Merck & Co., Inc. v. Reynolds*,
559 U.S. 633 (2010)......................................................................................... 16

*In re Mun. Mortg. & Equity LLC*, *Sec. & Derivative Litig.*,
876 F. Supp. 2d 616 (D. Md. 2012),
*aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014) ........................................................................... 16

*In re New Century*,
No. CV 07-0931 DDP, 2009 WL 10691336
(C.D. Cal. Dec. 7, 2009) .................................................................................. 22

*In re NYSE Specialists Sec. Litig.*,
260 F.R.D. 55 (S.D.N.Y. 2009) ....................................................................... 29

*In re Pfizer Inc. Sec. Litig.*,
233 F.R.D. 334 (S.D.N.Y. 2005) ..................................................................... 23

*In re Select Comfort Corp. Sec. Litig.*,
202 F.R.D. 598 (D. Minn. 2001)...................................................................... 21

*In re Waste Mgmt., Sec. Litig.*,
128 F. Supp. 2d 401 (S.D. Tex. 2000) ............................................................. 27

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ..................................................................... 31

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
No. 03 Civ. 5560 RMB HBP, 2006 WL 1520227
(S.D.N.Y. June 1, 2006)................................................................................... 30

*McGowan v. Gen. Dynamics Corp.*,
794 F.2d 361 (8th Cir. 1986) ........................................................................... 10

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010)......................................................................................... 11

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
278 F.R.D. 454 (D. Minn. 2011)...................................................................... 24

*Moskowitz v. Lopp*,
128 F.R.D. 624 (E.D. Pa. 1989)....................................................................... 30

- v -

**Page**

*N.J. Carpenters Health Fund v. Residential Cap., LLC*,
    272 F.R.D. 160 (S.D.N.Y. 2011)
    *aff'd*, *N.J. Carpenters Health Fund v. Rali Series 2006-QO1*,
    477 F. App'x 809 (2d Cir. 2012) ...............................................................31

*Noller v. Grubs*,
    No. 1:04-CV-1818-DFH-WTL, 2006 WL 8448107
    (S.D. Ind. Feb. 24, 2006).......................................................................... 22

*PerkinElmer Health Scis., Inc. v. Agilent Techs., Inc.*,
    No. 12-10562-NMG, 2014 WL 12791251
    (D. Mass. Aug. 22, 2014)........................................................................... 24

*Ret. Sys. v. MBIA, Inc.*,
    637 F.3d 169 (2d Cir. 2011)...................................................................... 11

*Schmidt v. United States*,
    933 F.2d 639 (8th Cir. 1991) .................................................................... 12

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
    No. 18-CV-12084 (VSB), 2021 WL 2659797
    (S.D.N.Y. June 28, 2021)..................................................................... 16, 17

*Villella v. Chem. & Mining Co. of Chile Inc.* ,
    No. 15 Civ. 2106 (ER), 2018 WL 2958361
    (S.D.N.Y. June 13, 2018)........................................................................... 30

*Wiley v. Equifax Info. Servs., LLC*,
    No. 19-cv-1075, 2020 WL 7626599
    (D. Minn. Oct. 23, 2020)............................................................................ 28

*Windstream Holdings, Inc., et al. v. Uniti Grp., Inc., et al.*,
    No. 19-08279 (Bankr. S.D.N.Y. July 25, 2019) ........................................ 8

*Zarecor v. Morgan Keegan & Co.*,
    801 F.3d 882 (8th Cir. 2015) .................................................................... 11

## STATUTES, RULES AND REGULATIONS

26 U.S.C.A.
    §7431................................................................................................... 18

15 U.S.C.
    §78u-4 ................................................................................................ 22
    §78u-4(a)(2)(v)................................................................................ 19, 23

**Page**

28 U.S.C.
  §1658(b) ................................................................................................................ 11

Reform Act ..................................................................................................... 8, 10

Federal Rule of Civil Procedure
  Rule 12(b)(6) ....................................................................................................... 17
  Rule 23(a) ...................................................................................................... 21, 30
  Rule 26 ........................................................................................................ 2, 4, 24
  Rule 26(b) ............................................................................................................. 9
  Rule 26(b)(1) ......................................................................................................... 9

## SECONDARY AUTHORITIES

Private Securities Litigation Reform Act of 1995 ("PSLRA")
  Pub. L. No. 104-67, 109 Stat. 737 (1995) ........................................................... *passim*

4894-7058-1764.v1

Lead Plaintiffs Steamfitters Local 449 Pension Plan, Wayne County Employees' Retirement System (collectively, the "Pension Funds"), and David McMurray, on behalf of himself and as sole beneficiary of the David McMurray R/O IRA (together with the Pension Funds, "Plaintiffs") hereby submit this opposition to Defendants' Motion to Compel Plaintiffs to Produce Certain Discovery ("Mot." or the "Motion") (ECF No. 95).[1]

## I.    INTRODUCTION

Defendants fail to make a threshold showing of relevance as to the categories of discovery their Motion seeks.  Instead, Defendants mischaracterize applicable law and the discovery exchanged to date, and largely speculate that the information they are requesting will contain any relevant information.  As detailed below, Defendants' Motion should be denied in its entirety.

***First***, Defendants seek information concerning when Plaintiffs first discovered that the certain challenged statements were false and misleading – information that they claim is "highly relevant" to their statute of limitations defense.  But Plaintiffs ***did*** provide information about when they learned this information.  Unsatisfied with the response, Defendants now seek attorney work product concerning when Plaintiffs' ***counsel*** learned this information, which is not appropriate.  But even more fundamentally, Defendants' relevancy

---

[1]    References to "Mot." and "Motion" also refer to the brief submitted in support thereof.  ECF No. 96.  Defendants are Uniti Group Inc. ("Uniti" or the "Company"), Kenneth A. Gunderman ("Gunderman"), and Mark A. Wallace ("Wallace").  Gunderman and Wallace are referred to collectively as the "Individual Defendants."  All "¶" and "¶¶" references throughout are to the Consolidated Amended Class Action Complaint (the "Complaint") (ECF No. 62) unless otherwise noted.  All capitalized terms shall be ascribed the same meaning as in the Complaint.  Unless otherwise noted, all citations and footnotes have been omitted and emphasis added.

4894-7058-1764.v1

argument mischaracterizes the law governing the statute of limitations applicable to the claims at issue.

*Second*, Defendants seek Plaintiffs' testimony from depositions (and related documents) in securities lawsuits filed prior to November 2016, which Defendants suggest are relevant to class certification issues such as reliance, adequacy, and typicality. As an initial matter, there is no dispute that these more-than-five-year-old cases are unrelated to the facts at issue here, and do not involve Uniti or the Individual Defendants. In addition, courts are clear that a plaintiffs' investments in other securities have no bearing on these class certification issues, especially considering that – because Plaintiffs do not even need to establish actual reliance on any specific representation Uniti made to investors or on market prices generally – their testimony on these issues in other cases is irrelevant here. Defendants only speculate that this testimony will include any relevant information and thus have simply failed to make a threshold showing of relevance. And in any event, the requested materials are subject to confidentiality orders in other litigations.

*Third*, Defendants seek information dating back ten years relating to prior civil or criminal proceedings or investigations brought against Plaintiffs. But Rule 26 does not sanction such overtly speculative fishing expeditions. Indeed, Defendants rely solely on the possibility that their request could yield documents purportedly relevant to the adequacy of Plaintiffs as proposed class representatives. In addition, there are more appropriate means of obtaining this information in a less expansive way, such as questioning during depositions in this litigation.

4894-7058-1764.v1

***Fourth***, Defendants seek to compel Plaintiffs to run the names of the funds in which the Pension Funds' Investment Managers bought Uniti stock as additional search terms beyond the terms the parties agreed to. ECF 95-10 at 3-4 (list of agreed-upon terms). But Plaintiffs have already agreed to run extremely broad search terms governing an expansive universe of documents – including but not limited to multiple permutations of:

- Uniti and Communications Sales & Leasing (Uniti's former name) and the stock symbols of both companies;

- Windstream (the company from which Uniti spun-off prior to the Class Period) and its stock symbol;

- Aurelius (the hedge fund and Windstream noteholder that sued Windstream in 2017);

- the names of the Individual Defendants;

- the names of the Pension Funds' current and former investment managers; and

- counsel's personal and firm names.

Notwithstanding these broad terms, Defendants claim Plaintiffs have refused to run "key search terms" – *i.e.*, the fund names (such as "Small Cap Core" fund). But, on this request, Defendants have utterly failed to make a threshold showing of relevance or demonstrate why these terms would yield non-duplicative and relevant results. Indeed, it is unimaginable that the Pension Funds' discussions concerning their decision to invest in a particular fund (managed by a particular investment manager) would be captured by the name of the fund(s) and yet not by running Uniti or the name of the specific investment manager(s). And in any event, even if running the fund names as separate search terms would yield additional non-duplicative documents, the Pension Funds' decision to invest in

- 3 -

small cap (or even large cap) funds is irrelevant to any issue in this case including the decision to buy and sell Uniti stock.

## II.    BACKGROUND

### A.    Facts Relevant to the Present Motion

#### 1.    Defendants' First Request for Production of Documents

On August 16, 2021, Defendants served their First Set of Requests for Production of Documents ("Defendants' RFPs" or "Requests" (ECF No. 95-1)), which contained 43 requests, some that contained multiple subparts (*e.g.*, RFP Nos. 7 and 11) and some that requested documents without regard to the Relevant Time Period – an agreed-upon time frame for discovery longer than the Class Period (*e.g.*, RFP Nos. 1, 3, 18, and 24). *See* Defendants' RFPs. On September 15, 2021, Plaintiffs timely served their Responses and Objections to Defendants' RFPs. *See* "Plaintiffs' RFP Objections" (ECF No. 95-6). In response to the majority of Defendants' RFPs, Plaintiffs stated that they would be willing to "meet and confer . . . and within 30 days following the conclusion of the meet and confer process . . . will produce responsive, non-privileged documents." *Id.*

Over two days, on September 24 and 29, 2021,[2] the parties met and conferred regarding Plaintiffs' RFP Objections. On October 1, 2021, Defendants sent a letter to Plaintiffs purportedly outlining the parties' positions. *See* ECF No. 95-7. Plaintiffs responded via letter on October 13, 2021. ECF No. 95-8. Thereafter, on October 26, 2021, the parties met and conferred a third time, and on October 28, 2021, Defendants sent a letter

---

[2]    The parties' letters mistakenly state that the parties met and conferred on June 24 and 29, 2021. *See* ECF Nos. 95-7, 95-8.

4894-7058-1764.v1

to summarize the parties' new positions. *See* ECF No. 95-9. During this process, the parties articulated the following positions, as relevant to this Motion:

Responses to Request No. 39: This Request seeks transcripts (and exhibits) of all testimony offered by Plaintiffs or Plaintiffs' representative(s) in a securities lawsuit and accompanying exhibits. Defendants' RFPs at 14. Plaintiffs objected to this Request as not relevant to any party's claim or defense. Plaintiffs also objected on the grounds that responsive documents likely would be subject to confidentiality orders in unrelated litigation. Plaintiffs' RFP Objections at 48. During the parties' telephonic meet-and-confers, Plaintiffs agreed to investigate whether responsive documents existed for the period November 2016 – August 31, 2021 (a period of time that started with the time frame covered by the earliest-signed Lead Plaintiff certification and ending as close to the present as possible at the time of the meet and confer). ECF No 95-7 at 5. By letter dated two weeks later, Plaintiffs informed Defendants that they did not identify any depositions taken of Steamfitters Local 449 Pension Plan or Wayne County Employees' Retirement System in any federal securities class actions brought under the Private Securities Litigation Reform Act ("PSLRA") in which the Pension Funds were, or sought to be, a lead plaintiff or class representative from November 1, 2016 to August 31, 2021. ECF 95-8 at 4.[3] Thus, Plaintiffs represented that "to the best we can ascertain, there are no documents responsive to this Request." *Id.*

---

[3]    During the meet-and-confer process, Plaintiffs explained that the start date of November 1, 2016 was appropriate as that date is three years before the first Plaintiff Certification was executed in this case (November 7, 2019) and encompasses the three-year period of disclosure required by the PSLRA. ECF No. 95-8 at 4; ECF No. 30-1 at 2, 5, and 8 (Lead Plaintiff Certifications).

During the parties' third meet and confer on October 26, 2021, Defendants asked if Plaintiffs would be willing to investigate whether any depositions had been taken of the Pension Funds in: (i) securities cases covering an additional five-year period preceding November 1, 2016; and (ii) other cases not arising under the PSLRA.  ECF No. 95-9 at 1. Based on the irrelevance of such information to the claims and defenses in this action, Plaintiffs declined to provide this information.  *Id.* at 2.

However, Plaintiffs did agree to investigate whether any depositions were taken of Lead Plaintiff David McMurray in any federal securities class actions brought under the PSLRA from November 1, 2016 to August 31, 2021.  *Id.*  On November 1, 2021, via letter, Plaintiffs provided a list identifying all federal securities class actions brought under the PSLRA from November 1, 2016 to August 31, 2021 in which Lead Plaintiffs Steamfitters Local 449 Pension Plan and Wayne County Employees' Retirement System were, or sought to be, a lead plaintiff or class representative.  *See* ECF No. 95-5.  Additionally, Plaintiffs also confirmed that this action is the only federal securities class action brought under the PSLRA from November 1, 2016 to August 31, 2021 in which Lead Plaintiff David McMurray was, or sought to be, a lead plaintiff or class representative.  *Id.* at 2.

Responses to Request No. 40: This Request seeks all documents relating to (a) any civil or criminal charges filed, issued, or entered against Plaintiffs or (b) any investigations of Plaintiffs by any governmental agency.  Defendants' RFPs at 14-15.  Plaintiffs objected to this Request as not relevant to any party's claim or defense.  Plaintiffs also objected on the grounds that: (i) responsive documents likely would be subject to confidentiality orders in unrelated litigation; (ii) it was overly broad and unduly burdensome, and (iii) sought

- 6 -

documents or information protected by the attorney-client privilege or work product doctrine. Plaintiffs' RFP Objections at 48-49. The parties met and conferred in good faith on this Request, but could not reach agreement.

### 2. Defendants' First Set of Interrogatories to Plaintiffs

On September 8, 2021, Defendants served their First Set of Interrogatories ("Defendants' Interrogatories" (ECF No. 95-2)) on Plaintiffs. Among other things, some of Defendants' Interrogatories are impermissible contention interrogatories – asking that Plaintiffs identify "***all facts, Documents, and witness[es] in support of th[e] contention*** that Uniti's stock price fell in response to information revealing the truth of any alleged misstatement or omission or the materialization of any undisclosed risk" (*id.* at No. 6), and some that sought information protected by the attorney-client privilege or the work product doctrine (*e.g.*, Nos. 4, 5, 6, and 11). Plaintiffs timely served Responses and Objections to Defendants' Interrogatories ("Plaintiffs' ROG Objections" (ECF No. 95-3)) on October 8, 2021.

On October 19, 2021, the parties met and conferred. Thereafter, on October 26, 2021, Defendants sent a letter to Plaintiffs to summarize the parties' positions. ECF No. 95-4. Plaintiffs responded via letter on November 1, 2021. ECF No. 95-11. During this process, the parties articulated the following positions, as relevant to this Motion:

Response to Interrogatory No. 11: This Interrogatory asks Plaintiffs to identify the date on which they or their counsel first discovered that the statements referenced in paragraphs 139-228 of the Complaint were false and misleading. Defendants' Interrogatories at 8. In response, Plaintiffs stated that they were "independently made aware

4894-7058-1764.v1

of the alleged false and misleading statements and omissions by Plaintiffs' counsel at or around the time of the signing of their Reform Act Certifications and/or retention agreements, whichever was executed earlier." Plaintiffs' ROG Objections at 12. During the meet-and-confer process, Plaintiffs explained that their investigation of the facts alleged in the Complaint, including the dates on which counsel first discovered that the statements were allegedly false and misleading is protected by the work product doctrine and attorney-client privilege. ECF No. 95-4 at 3.

### B.    The Parties' Ongoing Discovery Efforts

While not directly relevant to the present motion, Defendants open their brief with an incomplete and inaccurate description of discovery to date in this Action. Mot. at 3-4.

As discussed in the Complaint, on July 25, 2019, Windstream initiated the Adversary Proceeding against Uniti in connection with its bankruptcy action (*Windstream Holdings, Inc., et al. v. Uniti Grp., Inc., et al.*, No. 19-08279 (Bankr. S.D.N.Y. July 25, 2019), ECF No. 1 ("Adversary Proceeding Complaint")). ¶231. In the Adversary Proceeding, Windstream argued that the Master Lease was not a true lease at all – but was instead a disguised financing. *Id.* Prior to Defendants filing their motion to compel, Defendants had only ***reproduced*** to Plaintiffs documents that were already provided to them in the Adversary Proceeding. In other words, more than 70,000 of the 80,000 documents produced to Plaintiffs to date in this case are not the result of the parties' negotiated search terms and custodians – they are copies of documents produced in a related matter. It was not until November 11, 2021, that Defendants first produced approximately 10,000 documents that

- 8 -

are the result of the parties' negotiations over the proper parameters of Defendants' document production.

Moreover, Plaintiffs' document production – the result of the parties' extensive meet and confer process including agreement on custodians, search terms and a Relevant Time Period – timely occurred on November 23, 2021 – at least two weeks before the Lead Plaintiffs' depositions are scheduled to begin. Any insinuation that Plaintiffs have been dilatory in their document production or have otherwise acted in bad faith is completely unwarranted.

## III. DEFENDANTS' MOTION TO COMPEL SHOULD BE DENIED

### A. Legal Standard

"A district court is afforded wide discretion in its handling of discovery matters . . . ." *Cook v. Katridg Pak Co.*, 840 F.2d 602, 604 (8th Cir. 1988). Courts recognize Federal Rule of Civil Procedure 26(b) "as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). However, though the relevance standard as set forth in Federal Rule of Civil Procedure 26(b)(1) is broad, it is not unlimited and courts should be careful not to misapply it, "so as to allow fishing expeditions in discovery." *Id.*

Instead, the requesting party must make "[s]ome threshold showing of relevance . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* Thus, "[m]ere speculation that information might be useful will not suffice; litigants seeking to compel

discovery must describe with a reasonable degree of specificity the information they hope to obtain and its importance to their case." *E.E.O.C. v. Woodmen of the World Life Ins. Soc'y*, No. 8:03CV165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007). And, even where the requested information is relevant, the "extent of discovery may be limited by the trial court if it determines that a party's request is unduly burdensome or expensive." *McGowan v. Gen. Dynamics Corp.*, 794 F.2d 361, 363 (8th Cir. 1986).

**B.      Plaintiffs Have Provided the Information Requested by Interrogatory No. 11 and Defendants Cannot Establish that They Are Entitled to Additional Information Concerning When Certain Allegations Were First Discovered by Counsel**

Defendants contend that Plaintiffs have refused to provide information on when certain allegations were first discovered. Mot. at 4. Nothing could be further from the truth. Indeed, Plaintiffs provided the information Defendants requested in Interrogatory No. 11 stating that Plaintiffs were "independently made aware of the alleged false and misleading statements and omissions by Plaintiffs' counsel at or around the time of the signing of their Reform Act Certifications and/or retention agreement, whichever was executed earlier." Plaintiffs' ROG Objections at 12. Unhappy with this response, Defendants sought attorney work product concerning when counsel first discovered that the statements were allegedly false or misleading as it is "critical to Defendants' statute of limitations defense." Mot. at 9, 12. Not so.

The applicable statute of limitations provides that a "private right of action" that "involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of:

4894-7058-1764.v1

(1) 2 years after the discovery of the facts constituting the violation; or

(2) 5 years after such violation."

28 U.S.C. §1658(b); *see Merck & Co. v. Reynolds*, 559 U.S. 633, 638 (2010).

The Supreme Court's decision in *Merck* abrogated the prior standard commonly referred to as "'inquiry notice,'" under which the limitations period was triggered when "'a plaintiff possesses a quantum of information sufficiently suggestive of wrongdoing that he should conduct a further inquiry.'" *See id.* at 650, 652-53. In contrast, under the current discovery rule, a securities violation is not "discovered" until a "plaintiff actually discover[s], or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation.'" *Id.* at 633; *see also Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 887 (8th Cir. 2015) ("the statute of limitations is triggered when the reasonably diligent plaintiff would have discovered 'the facts constituting the violation' after an appropriate investigation").

In determining the time at which "'discovery'" of those "'facts'" occurred, the U.S. Supreme Court explained that terms such as "'inquiry notice'" and "'storm warnings'" may be useful to "identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating." *Merck*, 559 U.S. at 653. But the limitations period does not begin to run "until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' ***including scienter*** – irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Id.* at 653; *see also City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 174-75 (2d Cir.

- 11 -

2011) ("securities fraud statute of limitations cannot begin to run until the plaintiff discovers – or a reasonably diligent plaintiff would have discovered – the facts constituting scienter").

As the statute of limitations is an affirmative defense, defendants bear the burden of proof. *See Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir. 1991) (recognizing that, because the statute of limitations is an affirmative defense, and not a bar to jurisdiction, that the defendant bears the burden of proving the applicability of the statute of limitations). To prevail, defendants must "prove that a reasonable investor in [plaintiff's] shoes would have conducted a fulsome investigation and uncovered information sufficient to make out a plausible claim for relief" such that the statute of limitations had been triggered. *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 122 (2d Cir. 2017). To carry this burden, defendants are required to muster "'uncontroverted evidence irrefutably demonstrat[ing] [that the] plaintiff discovered or should have discovered facts sufficient to adequately plead a claim.'" *Fed. Deposit Ins. Corp. v. Credit Suisse First Bos. Mortg. Sec. Corp.*, 414 F. Supp. 3d 407, 412 (S.D.N.Y. 2019).

Here, Defendants do not argue that the untrue statements and omissions were ***actually discovered***. *See* Mot. at 1 ("Plaintiffs brought their claims ***over two years after a reasonable investor*** would have discovered the alleged omissions that are central to the Complaint . . . ."). Thus, the fact-intensive determination of when "discovery would have been made" by a reasonable investor is the only issue before this Court. Critically, this argument was not central to Defendants' attempt to dismiss Plaintiffs' Complaint, warranting a mere footnote mention in Defendants' Opening Brief in Support of their Motion to Dismiss. ECF No. 64 at 39. Nothing Defendants now argue in this Motion justifies

- 12 -

4894-7058-1764.v1

Plaintiffs "to open wide the doors of discovery" to "allow fishing expeditions in discovery" in this case for a defense that is clearly an after-thought. *Hofer*, 981 F.2d at 380.

Nevertheless, Plaintiffs' Exchange Act claims were timely filed on October 25, 2019. ECF No. 1. This was within two years from the earliest date that the statute of limitations could have been triggered under an inquiry notice standard – February 15, 2019, the date Judge Furman, who presided over the trial between Windstream and Aurelius concerning whether the Spin-Off violated Windstream's debt covenants, issued his ruling determining that the Spin-Off did violate Windstream's Indenture. ¶¶255-261. At the latest, Plaintiffs were on notice to investigate their claims on June 24, 2019, the date of the last partial disclosure alleged in this case, when Defendants announced a $300 million note offering that included an option to purchase an additional $45 million notes, thus implicitly acknowledging that Uniti's business was impacted by Windstream's bankruptcy and, as a result Uniti could not maintain its business operations without accessing the capital markets. ¶¶212-225, 262.

Defendants do not point to any particular date that the limitations period began to run, only vaguely stating that "Plaintiffs brought their claims over two years after a reasonable investor would have discovered the alleged omissions that are central to the Complaint . . . ." Mot. at 1. But as the "proponent of discovery," Defendants "must make a threshold showing of relevance before production of information." *Woodmen*, 2007 WL 1217919, at *1. Mere speculation that information might be useful will not suffice. *See Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972). Indeed, litigants seeking to compel discovery must

- 13 -

describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. *Id.* Defendants have failed to do so.

Plaintiffs assume that Defendants will claim that Plaintiffs – or any reasonable investor in Uniti securities – knew or should have known of a need to conduct an investigation into violations of the securities laws by Defendants on September 25, 2017, the date of Windstream's Form 8-K that disclosed that it had received a "purported notice of default" from Aurelius claiming that the Spin-Off violated Windstream's debt covenants. ¶251. But this partial disclosure is wholly insufficient to have put Plaintiffs on any notice. This is particularly true where, as here, Defendants repeatedly and affirmatively denied any improper conduct or that the Spin-Off was a prohibited sale-leaseback transaction that violated the Indenture. ¶¶169-200. *See Gargiulo v. Isolagen, Inc.*, 527 F. Supp. 2d 384, 394 (E.D. Pa. 2007) (no inquiry notice when storm warning was "accompanied by reassuring statements"). "Until such time they did or with diligence should have 'discovered' otherwise, the [investors are] entitled to rely on defendants' assertion[s] . . . ." *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 321 (S.D.N.Y. 2012), *aff'd*, 712 F.3d 136 (2d Cir. 2013).

Indeed, contemporaneous with the September 25, 2017 partial disclosure, Defendants' false statements became more obstinate and consistent. For example, on October 4, 2017, nine days after the announcement of Aurelius's Notice of Default, Defendant Wallace gave a presentation to investors, analysts, and market participants at the Deutsche Bank Leveraged Finance Conference on behalf of Uniti where he stated that "'[w]e do think the Windstream lease in and of itself is *well-structured*'" and that "'we think the master lease is *well-crafted*

and we think it's a ***priority payment*** from our standpoint and from Windstream's standpoint as well.'" ¶179.  On November 2, 2017, Defendants held a conference call with analysts and investors to discuss Uniti's 3Q17 financial results where Gunderman expressly disclaimed the possibility of a ruling in favor of Aurelius in the pending litigation – insisting that Windstream "had very competent counsel and advisers involved in the initial spin-off" and as a result "Windstream [would] ***ultimately have a favorable outcome***."  ¶184.

Just a few days later, on November 7, 2017, Defendants continued their game of deflection.  When questioned by analysts about the Notice of Default, Gunderman again emphasized that Uniti had meticulously reviewed the lease and insisted that Aurelius's claims were "manufactured":

> We find it extremely frustrating, especially on behalf of our shareholders that there's so much turmoil going on, and especially when we think the claim itself is just ***manufactured***.  We've been following it ***very, very closely***. . . . We've done a ***deeper dive on our lease*** and our different scenarios than we ever have before and continue to be ***highly confident in the leased, lease payment, the protections that we have in all scenarios***.  So none of that has changed. . . .  And we do think that the trends and the tide are moving in Windstream's favor in terms of the things that they're dealing with.

¶186.  On November 29, 2017, December 4, 2017, and until the end of 2018, Defendants continued to project the false picture that they would have a "favorable decision" in the Aurelius Litigation – insisting that "'we have a very high degree of confidence that Windstream is going to prevail in the litigation'" and "'we have tremendous confidence in the lease.'"  ¶¶188-198.

Defendants' argument that a reasonable plaintiff was on notice that Defendants' statements were materially false and misleading, while Uniti's "own officers den[ied] knowing that anything was wrong, . . . exposes defendants' inquiry notice argument as trivial

- 15 -

at best." *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 276-77 (S.D.N.Y. 2010); *see In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, 543 F.3d 150, 171-72 (3d Cir. 2008) (finding court could not conclude as a matter of law that an FDA letter put plaintiffs on inquiry notice where defendant "continued to reassure the investing public"), *aff'd sub nom. Merck & Co., Inc. v. Reynolds,* 559 U.S. 633 (2010); *In re Mun. Mortg. & Equity LLC*, *Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 654 (D. Md. 2012) (refusing to dismiss on statute of limitations grounds and finding that despite a partial disclosure, "it is at least plausible that . . . a reasonably diligent plaintiff did not have sufficient information adequately to plead the Securities Act violations"), *aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2014); *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2021 WL 2659797, at *18 (S.D.N.Y. June 28, 2021) (denying motion to dismiss despite defendants' partial disclosures because "the effect of any such disclosures were at least partially diminished by [defendants'] repeated statements during the Class Period downplaying its knowledge of, and role in, the . . . scandal").

For discovery to arise here, Defendants must demonstrate that despite Defendants' repeated denials and assurances, reasonable investors in Uniti stock would have discovered: (1) the material risk that the Spin-Off was a prohibited sale-leaseback transaction that violated the Indenture, and (2) the true extent of the risk that the Master Lease was not a true lease, but rather a carefully disguised financing arrangement that: (a) violated various provisions of the Indenture (including debt and asset sale restrictions); (b) jeopardized Uniti's existence as a REIT; and (c) put Uniti and its investors at materially greater financial risk in the event Windstream filed for bankruptcy. ¶16. Defendants would also have to

prove that reasonable investors would have understood that they were damaged by the false and misleading statements.  Defendants have not and cannot make such a showing.

Furthermore, even if the Court were to find that a statute of limitations issue exists – which it does not – this is an issue for trial.  *See Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (recognizing that loss causation "'is a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss'"); *see also Garcia v. Hetong Guo*, No. CV-15-1862-MWF-MRWx, 2016 WL 102213, at *11 (C.D. Cal. Jan. 7, 2016) (court found that it could not "hold as a matter of law that the [second disclosure date] does not qualify as a corrective disclosure on the basis that it did not reveal any new information to the market"; "proof of loss causation is better addressed at trial and not on a Rule 12(b)(6) motion to dismiss"); *Sjunde AP-Fonden*, 2021 WL 2659797, at *18 ("loss causation is . . . 'a fact-based inquiry' that '[g]enerally . . . "is a matter of proof at trial and not to be decided on a . . . motion to dismiss"'").

Defendants' cited cases only support the conclusion that discovery into a statute of limitations defense is premature at this point.  For example, in *Axler v. Sci. Ecology Grp., Inc.*, 196 F.R.D. 210 (D. Mass 2000), the statute of limitations was directly at issue as the court had "ordered that the first phase of discovery focus on defendants' statute of limitations defense in anticipation of a possible motion for summary judgment on th[e] issue." *Id.* at 211.  No such circumstances exist here.  Indeed, Defendants raised a statute of limitations defense in a footnote in their motion to dismiss, but the Court did not address these arguments in its Order.  *See* ECF No. 74.  Defendants' reliance on *Aloe Vera of Am., Inc. v. United States*, No. CV 99-1794-PHX-JAT, 2003 WL 22429082 (D. Ariz. Sept. 23, 2003) is

similarly misplaced.  There, the court was analyzing the statute of limitations defense in an IRS case brought under 26 U.S.C.A. §7431 and the court had already granted defendants' initial motion to dismiss as it found that plaintiffs' claims were untimely.  *Id.* at *1. Defendants then filed a second motion to dismiss "challenging the timeliness of Plaintiffs' complaint." *Id.*

In short, Defendants have failed to demonstrate the relevancy of their request that counsel identify the dates on which they first discovered that the statements identified in the Complaint were allegedly false and misleading.  *See Haddley v. Next Chapter Tech., Inc.*, No. 16-cv-1960 (DWF/LIB), 2018 WL 2180253, at *3 (D. Minn. Mar. 23, 2018) ("[T]he scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation.").  What's more, Plaintiffs have answered Defendants' Interrogatory No. 11.

Aside from Defendants' baseless justification for additional discovery, such discovery is entirely focused on what counsel knew and the communications counsel had with Plaintiffs concerning this litigation and is thus, the quintessential type of attorney work product (*i.e.*, counsel's mental impressions and investigation of the factual matters leading up to the filing of the Complaint) that is protected.  Indeed, "'the risk that privilege and attorney work-product issues might arise' is 'not negligible,' especially because the statute of limitation defense touches on Plaintiff's litigation strategy as to which entity to sue." *Finkel v. Zizza & Assocs. Corp.*, No. 12-CV-4108(JS)(ARL), 2021 WL 1375655, at *4 (E.D.N.Y. Apr. 12, 2021); *see also In re E.I. du Pont de Nemours*, No. 2:13-md-2433, 2015 U.S. Dist. LEXIS 178306, at *1116, *1120 (S.D. Ohio May 20, 2015) (interrogatories that asked for when the plaintiff "first learned of" the falsity of each statement "appear[ed] to be directed at

- 18 -

uncovering the [plaintiff's] roadmap of the universe of discovery that ha[d] already been exchanged, *i.e.*, the [plaintiff's] work product").

### C.   Testimony from Unrelated Lawsuits Filed More than Five Years Ago Are Not Relevant

Defendants ask this Court to compel Plaintiffs to produce copies of transcripts and exhibits from depositions taken in unrelated securities lawsuits filed prior to November 1, 2016.

Plaintiffs Steamfitters Local 449 Pension Plan and Wayne County Employees' Retirement System[4] have already represented to Defendants that they have not been deposed in any federal securities class actions brought under the PSLRA filed between November 1, 2016 to August 31, 2021.  Crucially, the November 1, 2016 date was not chosen arbitrarily; instead, it reflects a date approximately three years prior to when Plaintiffs filed their certifications in connection with their motions for appointment as lead plaintiff (the "Certifications" (ECF No. 30-1)) – which is the time frame for disclosure which the PSLRA requires.  *See* 15 U.S.C. §78u-4(a)(2)(v) (certification must identify "any other action under this chapter, ***filed during the 3-year period preceding the date on which the certification is signed by the plaintiff***, in which the plaintiff has sought to serve as a representative party on behalf of a class").  Put another way, Plaintiffs agreed to identify the PSLRA cases filed on or after November 1, 2016 in which they participated as a representative party (as the statute requires) and represented that they were not deposed in these matters.

---

[4]   Plaintiffs also have explained to Defendants that this is the only federal securities class action brought under the PSLRA between November 1, 2016 to August 31, 2021 in which Mr. McMurray was, or sought to be, a lead plaintiff or class representative.  *See* ECF No. 95-5.

Unsatisfied, Defendants now seek deposition transcripts and exhibits from securities lawsuits filed in the five year period prior to November 1, 2016. But Defendants fail to meet their burden of demonstrating why this requested discovery is relevant.

As an initial matter, there is no dispute that the materials Defendants seek are from cases that are entirely unrelated to this case – they do not involve Uniti or the Individual Defendants, nor do they concern *any* of the facts at issue here. Defendants argue that these transcripts are nonetheless relevant to class certification issues such as "reliance, whether that plaintiff will be an adequate representative in a class action, and whether they will have typical claims of the class." Mot. at 13. But this argument does not withstand scrutiny.

***First***, Defendants fail to explain in any detail how Plaintiffs' testimony in securities class actions involving other public companies (and, thus, non-Uniti securities) has *any* relevance to whether reliance can be established on a class-wide basis. Indeed, Plaintiffs have invoked the presumption of reliance under the fraud-on-the-market theory established by *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), or the presumption of reliance for omissions under *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972) – and reliance applies equally under these theories to every member of the putative class. To the extent Defendants intend to seek to rebut the presumptions of reliance under either *Basic* or *Affiliated Ute*, they will do so by attempting to show a lack of price impact (presumably with an expert report) – but in any event there is nothing in Plaintiffs' testimony from unrelated cases involving different public companies, making different allegedly false or misleading statements, that has any bearing on the price impact question at issue here.

- 20 -

Defendants state vaguely that "plaintiff's testimony in other securities actions will likely concern subjects such as the plaintiff's reliance on market prices and the integrity of the market." Mot. at 14. Not only is this entirely speculative, but Plaintiffs do not need to establish actual reliance on any specific representation Uniti made to investors (let alone their reliance on "market prices" generally or statements made in connection with other securities) – and so the relevance of their testimony in other cases involving securities they invested in more than five years ago is particularly attenuated. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400(WCC), 2006 WL 8429110, at \*2 (S.D.N.Y. June 21, 2006) (denying defendants' motion to compel certain documents because "the [c]omplaint alleges only fraud-on-the-market theory, not direct reliance" and "[t]hese documents are therefore irrelevant for the purpose of determining whether plaintiffs are 'typical' investors").

**Second**, any analysis of Plaintiffs' typicality will turn on their investment in **Uniti securities**, not other investments they may have made in other securities (let alone investments made more than five years ago by Investment Managers which might not even be the same Managers that bought and sold Uniti stock here).[5] For this reason, the transcripts (and exhibits) sought are not relevant even if they concern "the plaintiff's processes for making investment decisions" (Mot. at 14) because this testimony will inevitably concern other securities, or other investment strategies not used in making the

---

[5]   The typicality requirement of Rule 23(a) is satisfied "'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory,'" and "[t]he burden is 'fairly easily met so long as other class members have claims similar to the named plaintiff.'" *In re Select Comfort Corp. Sec. Litig.*, 202 F.R.D. 598, 604 (D. Minn. 2001). Nothing that can be gleaned from testimony in prior cases has any bearing on this assessment.

4894-7058-1764.v1

Uniti investments at issue here. *See In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, No. 11 Civ. 9175 LAK JLC, 2013 WL 5769915, at *4 (S.D.N.Y. Oct. 24, 2013) ("As the Court understands the nature of the claims, Plaintiffs' case focuses entirely on BNYM's FX practices. Accordingly, documents pertaining to or involving Plaintiffs' understanding of other companies' FX practices are not relevant."); *In re New Century*, No. CV 07-0931 DDP (FMOx), 2009 WL 10691336, at *3 (C.D. Cal. Dec. 7, 2009) (denying motion to compel and noting that courts "routinely deny general discovery into a plaintiff's trading and investment strategy in other securities").

*Third*, in support of their argument that "a named plaintiff's involvement in prior securities litigation is relevant" to certain class certification issues, Defendants cite several cases from the mid-90s in which courts found that this information had a bearing on whether the named plaintiff was a "professional plaintiff" and therefore subject to unique defenses. Mot. at 13-14. But crucially, these cases all predate[6] (or otherwise rely on cases that predate[7]) the passage of the PSLRA, which now mandates certain procedures at the start of a securities class action that ensures professional plaintiffs are not appointed lead plaintiff. *See generally* 15 U.S.C. §78u-4. In fact, one purpose of the PSLRA was to address the professional-plaintiff concern, *see Endress v. Gentiva Health Servs., Inc.*, 278 F.R.D. 78, 83 (E.D.N.Y. 2011) ("[t]he overriding purpose of the PSLRA is 'to replace so-called figurehead

---

[6]    *See In re Gibson Greetings Sec. Litig.*, 159 F.R.D. 499, 501 (S.D. Ohio 1994); *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 114 (S.D.N.Y. 1993); *Hoexter v. Simmons*, 140 F.R.D. 416, 422-23 (D. Ariz. 1991).

[7]    *Noller v. Grubs*, No. 1:04-CV-1818-DFH-WTL, 2006 WL 8448107, at *4 (S.D. Ind. Feb. 24, 2006) (relying on cases from before 1995); *Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108, 111 (M.D. Fla. 1996) (same).

- 22 -

or professional plaintiffs, with real investors'") – *i.e.*, a concern that had not yet been addressed at the time of the decisions in the cases Defendants rely on.  Thus, whether Plaintiffs provided testimony in other securities class actions – let alone in cases filed prior to November 2016 – is not relevant at this stage of the case (*i.e.*, after plaintiffs have already been appointed lead plaintiff) to whether they are "professional plaintiffs."  This is especially true considering that Steamfitters Local 449 Pension Plan and Wayne County Employees' Retirement System identified in their lead plaintiff Certifications the cases in which they sought appointment as lead plaintiff filed during the prior three years (ECF No. 30-1) – and this Court appointed them lead plaintiffs after the Certifications were filed.  ECF No. 60.

Defendants nevertheless suggest that Steamfitters Local 449 Pension Plan and Wayne County Employees' Retirement System "are, in effect, 'professional' securities class action plaintiffs."  Mot. at 5.  Again, this Court suggested otherwise when it appointed them lead plaintiff while aware of the prior-case disclosures in the Certifications.  ECF No. 60.  But more fundamentally, courts are clear that the provision of the PSLRA that seeks to prohibit professional plaintiffs "was not intended to target institutional investors," *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 n.4 (S.D.N.Y. 2005), like Steamfitters Local 449 Pension Plan and Wayne County Employees' Retirement System,[8] and courts appoint such entities as lead plaintiff even if they have sought and served as lead plaintiff in numerous cases over the prior three years.  *See, e.g.*, *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 409, 410

---

[8]    And even if "named plaintiff's ***involvement*** in prior securities litigation is relevant to" the professional-plaintiff consideration (Mot. at 13), this does not mean that the confidential deposition ***transcripts*** from these more-than-five-years-old cases are relevant.  This is why the PSLRA merely requires that a prospective lead plaintiff ***identify*** the cases in which it sought to serve as a representative party, not produce their deposition testimony.  *See* 15 U.S.C. §78u-4(a)(2)(v).

4894-7058-1764.v1

(N.D. Cal. 2012) (appointing institutional investor who was appointed lead plaintiff in at least six securities class actions in the last three years and noting professional plaintiff provision of the PSLRA was not intended to apply to institutional investors); *Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, 278 F.R.D. 454, 464 (D. Minn. 2011) (upholding lead plaintiff appointment at class certification stage despite the fact that the institutional investor served as lead plaintiff in more than five securities class actions in the prior three years).

**Fourth**, Defendants can only assume that the deposition transcripts they seek from unrelated cases will contain relevant information – in fact, they simply speculate about the topics of testimony and whether the questioning concerns anything relevant to this case. Mot. at 14 (testimony will "likely" concern). As Defendants' own case law recognizes, the broad scope of relevance under Rule 26 "should not be misapplied so as to allow fishing expeditions in discovery" and that "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery." *Hofer*, 981 F.2d at 380. Defendants cannot possibly make a threshold showing of relevance as to the requested transcripts when they can only guess about the topics of testimony.

**Fifth**, courts regularly refuse to compel the production of transcripts from depositions in unrelated litigation. *See, e.g.*, *Hegarty v. Transamerica Life Ins. Co.*, No. 19-cv-06006-MMC (RMI), 2021 WL 4899482, at *4 (N.D. Cal. Oct. 21, 2021) (denying motion to compel production of deposition transcripts in unrelated litigation); *PerkinElmer Health Scis., Inc. v. Agilent Techs., Inc.*, No. 12-10562-NMG, 2014 WL 12791251, at *6 (D. Mass. Aug. 22, 2014) (denying motion to compel deposition transcripts from cases involving different facts);

- 24 -

4894-7058-1764.v1

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168(MLC), 2012 WL 628320, at *4 (D.N.J. Feb. 27, 2012) (same).  Defendants cite two patent cases in which courts compelled the production of transcripts from other cases, but in those instances the other cases involved issues that overlapped with the facts at issue.  *See Abstrax, Inc. v. Hewlett-Packard Co.*, No. 2:14-cv-158-JRG, 2015 WL 11197823, at *4 (E.D. Tex. Jan. 29, 2015) (production of materials from a separate litigation involving the patents at issue); *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK (PSG), 2012 WL 1232267, at *1, *5 (N.D. Cal. Apr. 12, 2012) (compelling production of transcripts from litigation having a "technological nexus" and relating to similar facts to the patent lawsuit).[9]  Here, it is undisputed that there is ***no*** factual overlap between this action and the more than five-year-old cases from which Defendants seek deposition testimony.

For these reasons, Defendants have utterly failed to demonstrate relevancy as to their request for transcripts and exhibits in other securities lawsuits filed more than five years ago. The Motion should be denied as to this request for this reason alone.  But, aside from relevancy, Plaintiffs cannot produce these materials, to the extent any exist, because they are subject to protective orders in other cases.  Defendants counter with the baseless claim that it is "likely" it was the plaintiffs who designated the testimony confidential.  Mot. at 15.  But this is entirely speculative, and it also fails to account for Defendants' request for accompanying exhibits to the deposition transcripts, which conceivably include materials that other parties (and non-parties) to these litigations designated confidential.

---

[9]   The other cases Defendants cite on this point – *Harcourt*, 838 F. Supp. at 111, 114 and *Barry B. Roseman*, 165 F.R.D. at 110–11 – are distinguishable for reasons already addressed herein.

- 25 -

Thus, even if these materials are deemed relevant (which they are not), the appropriate mechanism to obtain them is for Defendants to intervene in these other litigations to modify the applicable protective orders – this is not the appropriate forum for that determination. *See Guisasola v. Crossmark, Inc.*, No. C13-1337-MJP, 2014 WL 4187127, at \*1 (W.D. Wash. Aug. 25, 2014) (denying motion to compel transcripts from other litigation "[g]iven that these documents are subject to other courts' protective orders" and that those courts must modify those protective orders); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003) ("The court that issued the [protective] order is in the best position to make the relevance assessment for it presumably is the only court familiar with the contents of the protected discovery.").

**D.      Plaintiffs Should Not Be Compelled to Produce Documents Relating to Prior Civil or Criminal Proceedings or Securities Investigations Brought Against Them**

Defendants seek a wealth of irrelevant information dating back ten years in hopes of digging up any allegations of possible malfeasance by the Lead Plaintiffs, including "any (1) civil or criminal charges, sanctions, complaints, proceedings, fines, disciplinary actions, decisions, or judgments filed, issued, or entered against Plaintiffs, or (2) any investigations of Plaintiffs by any governmental agency, stock exchange, self-regulatory organization, or securities industry association, in both cases for a period of ten years from the present." Mot. at 15-16; Defendants' RFP No. 40.  But as Plaintiffs articulated in their responses and objections, meet-and-confer sessions, and follow up correspondence, this request is irrelevant, over broad, and unduly burdensome.  In addition, the Lead Plaintiffs will soon be deposed, during which Defendants can ask questions relating to this issue.

- 26 -

4894-7058-1764.v1

***First***, Defendants must make "[s]ome threshold showing of relevance . . . before [Plaintiff is] required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer*, 981 F.2d at 380. Defendants fall short here, failing to identify the existence of ***any*** relevant information that would be yielded by their request. Instead, Defendants rely solely on the possibility that their request ***could*** yield documents purportedly relevant to the adequacy of Plaintiffs as proposed class representatives. But even assuming any allegations of prior wrongdoing is relevant to issues of class certification, which it is not,[10] Defendants request a far more expansive and irrelevant set of documents – seeking, for example, any civil proceedings against Plaintiffs, dating back ten years.

In addition – and a crucial difference from the case Defendants rely upon, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, MDL No. 1744, 2008 WL 2941215, at *5 (S.D.N.Y. July 30, 2008) – Defendants have not identified a single complaint or judgment against Plaintiffs, let alone an investigation into Plaintiffs indicating any misconduct. In *Marsh*, one plaintiff was under investigation by the SEC and U.S. Attorney's Office and the other plaintiff had a criminal ethics proceeding brought against it. *Id.* at *5-*8. Both incidences had been identified in newspaper articles. *Id.* at *1. Further, that defendant's motion to compel was limited to "***publicly reported*** criminal charges and investigations" involving plaintiffs. Order on Marsh Inc.'s and Marsh & McLennan Companies, Inc.'s Motion to Compel Production

---

[10] In any event, courts often appoint lead plaintiffs notwithstanding prior investigations or complaints against them. *See also In re Leapfrog Enters., Inc. Sec. Litig.*, No. C-03-05421 RMW, 2005 WL 3801587, at *4 (N.D. Cal. Nov. 23, 2005) ("The court does not believe that the proceeding against [plaintiff] suggests that it is unfit to be lead plaintiff."); *In re Waste Mgmt., Sec. Litig.*, 128 F. Supp. 2d 401, 419, 432 (S.D. Tex. 2000) (appointing lead plaintiff despite attacks of inadequacy based on criminal investigation of pension-asset disposition).

from Lead Plaintiffs, *Marsh*, No. 1:04-cv-08923-CM (S.D.N.Y. May, 28, 2008), ECF No. 29 at 8. Here, Defendants fall far short of this, and can only speculate as to whether there are any fish (*i.e.*, wrongdoing) to catch as part of this fishing expedition.

**Second**, Defendants' request is facially over broad and unduly burdensome. Burden is "'undue'" where "'the hardship is unreasonable in the light of the benefits to be secured from the discovery.'" *Wiley v. Equifax Info. Servs., LLC*, No. 19-cv-1075 (NEB/LIB), 2020 WL 7626599, at *7 (D. Minn. Oct. 23, 2020). As discussed, the documents Defendants seek are nothing more than "hypothetically relevant information," *id.* at *8, and the request, which could capture far more documents than merely any purported misconduct, would be a hardship and unduly burdensome because (1) Plaintiffs have no practical way of searching for the proposed documents (because Defendants have identified no actual investigation or proceeding), and (2) there are more appropriate means of obtaining the information that Defendants seek, such as asking relevant questions at upcoming scheduled depositions or through interrogatories, or conducting searches of publicly available information concerning any prior civil, criminal or investigatory proceedings.

### E. Plaintiffs Should Not Be Compelled to Run Relevant Fund Names as Search Terms

Plaintiffs have agreed to run extremely broad search terms covering an expansive universe of documents, including different permutations of Uniti, Windstream, and a host of other terms such as the investment manager names and email domains. ECF No. 95-10 at 3-4. But Defendants wish to cast a wider net. While Defendants are correct that the Pension Funds hired investment managers to invest in certain segments of the market through funds designated such as Small Cap or Large Cap funds (Mot. at 17), Defendants are incorrect that

- 28 -

"[r]unning searches for the names of the funds" is necessary or key to "capture the relevant documents related to the decision to invest in the funds holding Uniti securities." *Id.* Indeed, Defendants' premise misunderstands the Pension Funds' investments. The Investment Managers at issue bought and sold equity securities for the Pension Funds, they did not purchase units in manager-run funds. Thus, the agreed-upon search terms (including the names of the investment managers and the name, stock symbol, CUSIP and SEDOL identifiers for Uniti) will capture what Defendants seek. It is unimaginable that the Pension Funds' discussions concerning the decision to invest in a particular fund (managed by a particular investment manager) would be captured by the name of the fund(s) and not by the investment manager(s) itself.

Even if running the fund names as separate search terms yielded additional non-duplicative and relevant documents (which is highly unlikely), the Pension Funds' decision to invest its assets with a particular Investment Manager's Small or Large Cap fund is irrelevant to *any* issue of this case including the decision to buy and sell Uniti stock. For example, even if the investment "strategies use different methodologies for selecting shares to purchase, the differing trading strategies all rely on the integrity of the market price to reflect all publicly available information." *In re Comput. Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 122 (E.D. Va. 2012); *see also In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 72 (S.D.N.Y. 2009) ("The fact that [plaintiff] relies on a particular benchmark to evaluate trades does not lead to the conclusion that [plaintiff] has less of an interest than other class members in demonstrating that the [defendants] violated their obligations."); *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 578 (N.D. Cal. 2009) ("[T]here is no evidence suggesting

- 29 -

that lead plaintiff's use of an index was unusual or that the index did not in turn rely on the integrity of the market."); *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D. Pa. 1989) (finding Rule 23(a) typicality satisfied, despite its "strategy of employing options, together with simultaneous buy-sell orders, to make profits by focusing not on whatever underlying value may have been reflected in [the] stock price, but on short-term price movements").[11]

Defendants' citation to *Villella v. Chem. & Mining Co. of Chile Inc.* further confirms the irrelevance of Defendants' inquiry. No. 15 Civ. 2106 (ER), 2018 WL 2958361, at *5 (S.D.N.Y. June 13, 2018); Mot. at 18. Like *Chile*, the Pension Funds have outsourced their investment decision making to investment advisors, whose identities have been disclosed to Defendants. Consistent with *Chile*, Plaintiffs recognize that the investment manager's "decision-making calculus is relevant to the reliance inquiry." 2018 WL 2958361, at *5. Thus, Defendants are free to seek documents and depose the third-party investment managers for ***their*** decision-making calculus and have indeed served subpoenas on Plaintiffs' investment managers seeking this information. Even assuming that documents showing the Pension Funds' decision to invest in the funds exist, it is all but impossible that these documents will show that Plaintiffs had knowledge of the falsity of Defendants' misstatements. A reason for investing in a particular fund that invests in Uniti does not transform into knowledge of a fraud – and at minimum, shows that Defendants'

---

[11] Defendants' cases are not to the contrary and did not even decide the issue of discovery concerning a plaintiff's "decision to invest" in a particular security. The court in *Allergan* only permitted discovery into plaintiff's trading of non-Allergan securities for a period of less than a year. *In re Allergan, Inc. Sec. Litig.*, No. 14-cv-02004-DOC (KES), 2016 WL 5929250, at *5 (C.D. Cal. Oct. 5, 2016). *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560 RMB HBP, 2006 WL 1520227, at *3 (S.D.N.Y. June 1, 2006) similarly stated that "investment sophistication" and "investment history" are relevant and may be explored through discovery.

- 30 -

4894-7058-1764.v1

misstatements encouraged Plaintiffs' investment. *See In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003) (finding that the use of index fund strategies is "representative of methods used by many other investors" and "reflect[] an evaluation of the publicly available information"). Any argument to the contrary and any reliance on *N.J. Carpenters Health Fund v. Residential Cap., LLC*, 272 F.R.D. 160, 168 (S.D.N.Y. 2011) *aff'd*, *N.J. Carpenters Health Fund v. Rali Series 2006-QO1*, 477 F. App'x 809 (2d Cir. 2012), is purely misdirection.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' Motion should be denied in its entirety.

DATED:  November 24, 2021              Respectfully submitted,

DEBRA J. WYMAN
California Bar No. 190812
Attorney for Lead Plaintiff
ROBBINS GELLER RUDMAN
  & DOWD LLP
TING H. LIU
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  debraw@rgrdlaw.com
        tliu@rgrdlaw.com

- 31 -

4894-7058-1764.v1

LABATON SUCHAROW LLP
CAROL C. VILLEGAS
CHRISTINE M. FOX
ROSS M. KAMHI
CHARLES FARRELL
140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
E-mail:  cvillegas@labaton.com
              cfox@labaton.com
              rkamhi@labaton.com
              cfarrell@labaton.com

Lead Counsel for Lead Plaintiffs

GEOFFREY P. CULBERTSON
Arkansas Bar No. 2014011
PATTON TIDWELL & CULBERTSON,
LLP
2800 Texas Boulevard
Texarkana,  TX  75503
Telephone:  903/792-7080
903/792-8233 (fax)
E-mail:  gpc@texarkanalaw.com

Liaison Counsel for the Class

SCHALL LAW FIRM
BRIAN SCHALL
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  424/303-1964
877/590-0483 (fax)
Email:  brian@schallfirm.com

THORNTON LAW FIRM LLP
GUILLAUME BUELL
1 Lincoln Street, 25th Floor
Boston, MA  02111
Telephone:  617/720-1333
617/720-2445 (fax)
Email:  gbuell@tenlaw.com

- 32 -

- 33 -

Additional Plaintiffs' Counsel

4894-7058-1764.v1