**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

|  |  |
|---|---|
| IN RE UNITI GROUP INC. SECURITIES LITIGATION | No. 4:19-cv-00756-BSM |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL PLAINTIFFS TO PRODUCE CERTAIN DISCOVERY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 2

I.     PLAINTIFFS SHOULD BE COMPELLED TO IDENTIFY WHEN THEIR
COUNSEL FIRST DISCOVERED CERTAIN ALLEGATIONS IN THE
COMPLAINT (INTERROGATORY NO. 11).................................................................... 2

II.    PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE THEIR
TESTIMONY IN PRIOR SECURITIES LAWSUITS (RFP NO. 39) .............................. 7

III.   PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE DOCUMENTS
RELATING TO PRIOR CIVIL OR CRIMINAL PROCEEDINGS OR
SECURITIES INVESTIGATIONS BROUGHT AGAINST THEM (RFP NO. 40) ....... 10

IV.   PLAINTIFFS SHOULD BE COMPELLED TO RUN RELEVANT FUND
NAMES AS SEARCH TERMS ...................................................................................... 12

CONCLUSION.......................................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Tomar Elecs.*,
2006 WL 2670038 (D. Minn. Sept. 18, 2006) ..........................................................................11

*Aloe Vera of Am., Inc. v. United States*,
2003 WL 22429082 (D. Ariz. Sept. 23, 2003) ...........................................................................6

*In re Ambac Fin, Grp., Inc. Sec. Litig.*,
693 F. Supp. 2d 241 (S.D.N.Y. 2010) ........................................................................................5

*Axler v. Sci. Ecology Grp., Inc.*,
196 F.R.D. 210 (D. Mass. 2000) ........................................................................................3, 4, 6

*In re Bieter Co.*,
16 F.3d 929 (8th Cir. 1994) .......................................................................................................6

*Brown v. Nationwide Affinity Ins. Co. of Am.*,
2018 WL 3222511 (D.S.D. June 29, 2018) ...............................................................................3

*Cave v. Thurston*,
2021 WL 4936185 (E.D. Ark. Oct. 22, 2021) ....................................................................11, 12

*Doe v. Elwood Pub. Sch. Dist.*,
2006 WL 3751315 (D. Neb. Dec. 18, 2006), *rev'd on other grounds*, 2007
WL 1290124 (D. Neb. Mar. 15, 2007) .......................................................................................6

*In re E.I. du Pont de Nemours*,
2015 U.S. Dist. LEXIS 178306 (S.D. Ohio May 20, 2015) ........................................................6

*Finkel v. Zizza & Assocs. Corp.*,
2021 WL 1375655 (E.D.N.Y. Apr. 12, 2021) ............................................................................6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ...............................................................................................................7, 8

*Hofer v. Mack Trucks, Inc.*,
981 F.2d 377 (8th Cir. 1992) .....................................................................................................9

*Kirschenman v. Auto-Owners Ins.*,
280 F.R.D. 474 (D.S.D. 2012) .................................................................................................11

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ...................................................................................................................3

ii

*Noller v. Grubs*,
    2006 WL 8448107 (S.D. Ind. Feb. 24, 2006) ...........................................................8

*Savino v. Comput. Credit, Inc.*,
    164 F.3d 81 (2d Cir. 1998)..................................................................................10

*In re Sci.-Atlanta, Inc., Sec. Litig.*,
    2006 WL 8429125 (N.D. Ga. Sept. 27, 2006) ......................................................8, 9

*Thomas v. Cate*,
    715 F. Supp. 2d 1012 (E.D. Cal. 2010).................................................................11

Wright & Miller, Fed. Practice & Procedure, Civ. § 2023 at 194 ...................................6

*Xianglin Shi v. Sina Corp.*,
    2005 WL 1561438 (S.D.N.Y. July 1, 2005) ..........................................................11

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)...........................................................................................1, 4

Fed. R. Civ. P. 33(b)(2), (4) ........................................................................................2

Local Rule 33.1(b) .....................................................................................................2

Charles Alan Wright et al., Fed. Practice & Procedure, Civ. § 2023 at 194....................6

Defendants respectfully submit this reply brief in further support of their motion to compel Plaintiffs to produce certain discovery (the "Motion" or "MTC").[1]

**PRELIMINARY STATEMENT**

The information Defendants seek on this Motion falls well within the broad definition of discoverable material under Rule 26. Plaintiffs have not shown otherwise and make little effort to address the relevant standard; instead, their Opposition contends principally that Defendants will not succeed on the ultimate merits of various positions, such as whether Plaintiffs' claims are timely, whether Defendants can rebut the presumption of reliance, and whether Plaintiffs are adequate class representatives. But even if Plaintiffs were correct on any of these points (which they are not), likelihood of success on the merits is not the standard for discoverability. Instead, the question is whether the discovery sought is "relevant to the parties' claims or defenses." Fed. R. Civ. P. 26(b)(1). And there is no real dispute that it is here. Nor have Plaintiffs carried their burden of showing that any of the material is otherwise protected from discovery.

*First*, Plaintiffs must provide the date on which their counsel first discovered the alleged falsity of the statements identified in the Complaint, which is of central relevance to Defendants' statute of limitations defense. Plaintiffs do not show otherwise, and it is well-established that the date alone that they discovered the information does not constitute work product.

*Second*, Plaintiffs must produce discovery relevant to their adequacy and typicality as Lead Plaintiffs—issues central to their motion for class certification. That includes Lead Plaintiffs' testimony in prior securities actions, which is relevant to issues such as their sophistication, their investment processes, and their history as "professional" securities plaintiffs. Plaintiffs again fail to show otherwise, and their objection that the testimony may be subject to hypothetical protective

---

[1] Capitalized terms not defined herein shall have the same meaning as in the Motion. "Opposition" or "Opp." refers to Plaintiffs' opposition brief. References to "Ex." are to the exhibits attached to the Motion.

1

orders is premature, at best.  Plaintiffs should likewise produce documents reflecting any prior civil or criminal proceedings or securities investigations brought against them, which are relevant to their honesty and trustworthiness—factors in assessing Plaintiffs' adequacy.  Defendants are not required to identify, *ex ante*, specific proceedings or investigations; nor could they, given that Plaintiffs have refused all discovery into the issue.  And Plaintiffs have failed to show any undue burden in producing the documents.

*Finally*, Plaintiffs must run as search terms the names of funds through which they invested in Uniti securities.  Plaintiffs concede that they did not invest directly in Uniti securities; accordingly, the only relevant investment decision they made is to invest in those funds, and documents concerning that decision are plainly relevant and discoverable.[2]

## ARGUMENT

### I. PLAINTIFFS SHOULD BE COMPELLED TO IDENTIFY WHEN THEIR COUNSEL FIRST DISCOVERED CERTAIN ALLEGATIONS IN THE COMPLAINT (INTERROGATORY NO. 11)

Plaintiffs object to providing the date on which their counsel first discovered the alleged falsity of the statements identified in the Complaint, contending that the date is irrelevant and that it constitutes work product.  (Opp. at 10-19.)  Neither objection has merit.

*Relevance.*   As a threshold matter, Plaintiffs have waived any relevance objection. Plaintiffs were required to respond to Defendants' interrogatories within 30 days and, at that time, "state[] with specificity" any objection to the interrogatory in their initial responses and objections. Fed. R. Civ. P. 33(b)(2), (4); *see also* Local Rule 33.1(b) (grounds for objection must be stated with particularity).  They failed to make a relevance objection at that time (Ex. C at 12) and cannot

---

[2] After Defendants filed their Motion, Plaintiffs informed us that they have substantially completed their production of documents, producing only a mere 272 documents.  By contrast, Defendants have now produced 86,000 documents—71,000 documents from two prior related litigations and 15,000 documents reviewed and produced in response to Plaintiffs' search terms.

do so now. *Brown v. Nationwide Affinity Ins. Co. of Am.*, 2018 WL 3222511, at *4 (D.S.D. June 29, 2018) ("Discovery objections are waived if they are not first asserted in the responses to the opposing party's discovery requests.").

In any event, the information sought is of core relevance to Defendants' statute of limitations defense. The limitations period on a Section 10(b) claim begins to run "(1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation.'" *Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010). Here, Lead Plaintiffs concededly relied entirely on counsel to investigate the Complaint's allegations and only learned of those allegations from counsel shortly prior to filing the Complaint. (MTC at 4-5.) Thus, the knowledge of Plaintiffs' counsel is necessarily relevant to *both* prongs of that test: Counsel's knowledge can be imputed to Plaintiffs by virtue of their monitoring agreements with counsel (*Id.* at 10) and, at a minimum, is relevant to when a "reasonably diligent" investor would have discovered the facts constituting the violation. Indeed, it would be grossly inequitable to allow Plaintiffs to evade the statute of limitations merely because they are figureheads, completely ignorant of their own claims, who relied entirely on counsel to monitor their investments. (*Id.*) Accordingly, courts have ordered the production of similar information in the same context. For example, in *Axler v. Scientific Ecology Group, Inc.*, 196 F.R.D. 210 (D. Mass. 2000) (MTC at 10-11)—which, like here, involved lead plaintiffs in a securities class action relying entirely on counsel to investigate a complaint's allegations—the court found that discovery into counsel's investigation was "*critical*" to Defendants' statute of limitations defense. *Id.* at 212. The same result should apply here.[3]

---

[3] The fact that discovery in *Axler* was phased to focus first on the statute of limitations (Opp. at 17) is irrelevant; the court's finding that the information was relevant and discoverable in no way turned on that fact.

Plaintiffs' contrary arguments are without merit.  First, Plaintiffs claim that Defendants' statute of limitations argument was not "central" to Defendants' motion to dismiss, and was only raised in a footnote.  (Opp. at 12.)  This is both wrong and irrelevant.  Defendants devoted an *entire section* of their brief to arguing that Plaintiffs' sale-leaseback claim was untimely.  (ECF No. 64 at 38-39.)  And in any case, there is no requirement that a statute of limitations defense be raised in a motion to dismiss.  Defendants have raised the defense in their Answer (ECF No. 75 at 52) and therefore are entitled to discovery to prove it, *see* Fed. R. Civ. P. 26(b)(1) (allowing discovery of any "matter that is relevant to any party's claim *or defense*").

Second, Plaintiffs argue that "discovery into a statute of limitations defense is premature" because it "is an issue for trial."  (Opp. at 17.)  This contention misapprehends the purpose of discovery, which is to obtain facts with which to prove their defense at trial.  The deadline for fact discovery is only a few months away.  (ECF Nos. 89-1, 93.)  The time for discovery is now.[4]

Third, Plaintiffs assert that Defendants will be unable to *prove* their statute of limitations defense.  (Opp. at 13-18.)  Setting aside that Defendants obviously disagree, Plaintiffs' argument ignores the standard for discoverability, which does not turn on the likelihood of success on the merits, but rather whether the discovery is relevant to the parties' claims or defenses as it undoubtedly is here.

Although the Court need not address the merits of the statute of limitations defense on this motion, Plaintiffs' arguments are misplaced.  Contrary to Plaintiffs' suggestion, Defendants do not claim that *all* of Plaintiffs' claims are untimely, but rather, only challenge the timeliness of Plaintiffs' sale-leaseback claim—*i.e.*, that Defendants failed to disclose the risk that Uniti's 2015 spinoff from Windstream violated certain sale-leaseback covenants in Windstream's debt

---

[4] The cases Plaintiffs cite in support arise at the motion to dismiss stage (Opp. at 17) and have no bearing here.

indentures.[5]  As set forth in Defendants' motion to dismiss, a reasonable investor would have known of that precise risk more than two years before the original complaint was filed on October 25, 2019, because, on September 25, 2017, Windstream disclosed that an opportunistic hedge fund caused a Notice of Default to be served on Windstream, claiming explicitly that the spinoff violated the sale-leaseback provision.  And the hedge fund made the same assertion again a few weeks later, on October 12, 2017, when it filed a public complaint against Windstream laying out its theory. (Compl. ¶¶ 177-178, 181.)

Given that the Notice of Default and public complaint expressly identified *the very risk* that Defendants allegedly failed to disclose (*id.* ¶¶ 16, 177-178), a reasonable investor would have *known* of the allegedly omitted risk over two years before this lawsuit was filed.  And, given the zeal with which they have opposed this Motion, Defendants anticipate that discovery will show that Lead Plaintiffs, through their counsel, were themselves aware of that information.  The fact that Defendants subsequently expressed their *subjective belief* that Windstream would ultimately prevail in the lawsuit (Opp. at 14-15)—which discovery has confirmed was both sincerely held by Defendants and common amongst objective third-party observers—is irrelevant.  No reasonable investor would have concluded, based on Defendants' statements, that there was no risk that the hedge fund would prevail in its lawsuit.[6]  In any event, this is precisely the purpose of discovery— to find out who knew what and when.

---

[5] Whether anyone knew of *other* allegations in the Complaint—for example, "the true extent of the risk that the Master Lease was not a true lease, but rather a carefully disguised financing arrangement" (Opp. at 16)—is irrelevant, since Defendants are not claiming that Plaintiffs' "true lease" claims are untimely.  (ECF No. 64 at 38-39.)

[6] For that reason, Plaintiffs' cases (Opp. at 15-16) are irrelevant because they all involve statements made by defendants that *directly contradicted* the earlier disclosures or storm warnings.  For example, in *In re Ambac Financial Group, Inc. Securities Litigation*, 693 F. Supp. 2d 241 (S.D.N.Y. 2010), defendants argued that investors in mortgage-backed securities were on notice of their claims based on warnings of the company's mortgage-related exposures and industrywide losses; but the court found that defendants' statements touting their financial stability negated the effect of those storm warnings.  *Id.* at 270.  Plaintiffs' cases are further distinguishable as they all arise (….continued)

5

***Work Product.*** Plaintiffs have also failed to establish that the information sought is protected under the work product doctrine. (Opp. at 18-19.) To begin, that doctrine extends only to *documents and tangible things*—not factual information such as dates. *See Doe v. Elwood Pub. Sch. Dist.*, 2006 WL 3751315, at *10 (D. Neb. Dec. 18, 2006) (date on which an attorney became aware of the underlying allegation was not work product), *rev'd on other grounds*, 2007 WL 1290124 (D. Neb. Mar. 15, 2007); *see also* Wright & Miller, Fed. Practice & Procedure, Civ. § 2023 at 194 (work product immunity does not provide a "shield against discovery . . . of the facts that the adverse party's lawyer has learned"). In any event, Plaintiffs provide no basis to conclude that the information sought was prepared *in anticipation of litigation* (MTC at 11-12 (citing cases)), which it is *Plaintiffs'* burden to establish, *see In re Bieter Co.*, 16 F.3d 929, 940 n.10 (8th Cir. 1994). Indeed, Plaintiffs cannot make such a showing, as their counsel apparently discovered the allegations *before* discussing this lawsuit with Plaintiffs, and therefore before anyone anticipated litigation. (MTC at 12.)[7]

Moreover, even if the information sought were work product—which it is not—it would still be discoverable as "raw factual information" for which Defendants have a substantial need and cannot acquire from other sources. (MTC at 12 (citing *Axler v. Sci. Ecology Grp., Inc.*, 196 F.R.D. 210, 212 (D. Mass. 2000); *Aloe Vera of Am., Inc. v. United States*, 2003 WL 22429082, at *5 (D. Ariz. Sept. 23, 2003)).) Contrary to Plaintiffs' suggestion, Defendants do not seek Plaintiffs' "mental impressions" or "communications counsel had with Plaintiffs concerning this litigation."

---

at the motion to dismiss stage. Accordingly, at most, they stand for the proposition that a court will not dismiss a claim as untimely on a motion to dismiss where there are competing factual allegations, which has no bearing here.

[7] Plaintiffs' cases (Opp. at 18-19) are distinguishable. *Finkel v. Zizza & Assocs. Corp.*, 2021 WL 1375655, at *4 (E.D.N.Y. Apr. 12, 2021), involved calling plaintiffs' former outside counsel *to testify at trial* on a wide variety of issues, even though the plaintiff and his in-house counsel were already being called to testify on similar matters. And *In re E.I. du Pont de Nemours*, 2015 U.S. Dist. LEXIS 178306, at *1116, *1120 (S.D. Ohio May 20, 2015), involved interrogatories far broader than the interrogatory at issue here.

6

(Opp. at 18.)   Instead, this Motion only seeks *factual* information—the date counsel first discovered the alleged falsity of the statements in the Complaint.[8]

## II.   PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE THEIR TESTIMONY IN PRIOR SECURITIES LAWSUITS (RFP NO. 39)

Plaintiffs object to producing testimony from prior securities lawsuits, contending that it is irrelevant and might be subject to hypothetical protective orders.  (Opp. at 19-26.)  Both objections fail.

*Relevance.*  Plaintiffs' prior securities testimony is relevant to a number of issues, including reliance, whether Plaintiffs are adequate and typical class representatives, whether they relied on market prices or the integrity of the market, their processes for making investment decisions, their sophistication, and whether they are "professional" securities plaintiffs disfavored under the PSLRA.  (MTC at 13-14 (citing cases).)  Plaintiffs fail to show otherwise.

First, Plaintiffs assert that the prior testimony is irrelevant because they are seeking to invoke the fraud-on-the-market presumption, which they claim can be rebutted *only* "by attempting to show a lack of price impact," *i.e.*, that the alleged misrepresentation did not actually affect the stock price.  (Opp. at 20.)  But Plaintiffs ignore that Defendants can also rebut the presumption by showing that "a plaintiff would have bought or sold the stock even had he been aware that the stock's price was tainted by fraud." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 269 (2014).  The discovery Defendants seek is relevant to that issue (among others) because it is likely to provide insight into Lead Plaintiffs' process for investing in securities and what factors they typically considered.  That is true even if the testimony concerns Plaintiffs' investments in

---

[8] Nothing herein is intended as a waiver of Defendants' right to seek additional information relevant to their statute of limitations defense in the future.

securities other than Uniti securities (Opp. at 21-22) because it would shed light on Plaintiffs' *process* for investing in securities.

Courts frequently permit discovery of lead plaintiffs' testimony in prior securities cases, notwithstanding that such testimony involved different securities. (MTC at 14 (citing cases).)[9] Nor are those cases outdated, as Plaintiffs contend. (Opp. at 22-23.) Instead, they reflect the long-standing concern about the prevalence of "professional" securities plaintiffs—*i.e.*, repeat securities plaintiffs who serve as mere figureheads for lawyer-driven litigation. As Plaintiffs concede, courts have addressed this concern by allowing discovery of lead plaintiffs' prior testimony because it "ha[s] a bearing on whether the named plaintiff was a 'professional plaintiff' and therefore subject to unique defenses." (*Id.* at 22.) However, Plaintiffs' assertion that this is no longer a concern following the passage of the PSLRA is backwards. If, as Plaintiffs concede, "[t]he overriding purpose of the PSLRA is 'to replace so-called figurehead or professional plaintiffs, with real investors,'" (*id.* at 22-23), discovery into Lead Plaintiffs' securities litigation history should be even *more* relevant following the passage of the PSLRA. Accordingly, courts have continued to allow discovery into a lead plaintiff's prior securities litigation for this reason. *See, e.g.*, *Noller v. Grubs*, 2006 WL 8448107, at *4 (S.D. Ind. Feb. 24, 2006); *see also In re Sci.-Atlanta, Inc., Sec. Litig.*, 2006 WL 8429125, at *1 (N.D. Ga. Sept. 27, 2006).[10]

Those concerns are especially prevalent here: The two Pension Funds have acted as, or sought to be, lead plaintiff in over 20 federal securities actions in the past four years and in

---

[9] In contrast, none of the cases that Plaintiffs cite (Opp. at 21-22) involve discovery of prior testimony. Instead, they all involve broad requests for documents concerning lead plaintiffs' transactions in other types of securities, which would likely reveal little of the plaintiffs' process for investing in securities.

[10] That the PSLRA requires presumptive lead plaintiffs—when moving to serve as lead plaintiff—to disclose certain prior securities actions in which they acted, or sought to act, as lead plaintiffs (Opp. at 23) is of no moment, as nothing in the PSLRA's certification requirement purports to define the scope of discovery in a securities action.

approximately 40 in the past 10 years. (MTC at 5.) And discovery thus far suggests they have played little, if any, material role in this lawyer-driven litigation. (*Id.* at 4-5.)[11]

Plaintiffs also object to the discovery on the ground that Defendants do not know, *ex ante*, the contents of the testimony sought. (Opp. at 24.) But that is true of all discovery. Instead, as reflected in the very case on which Plaintiffs rely, Defendants need only make some "threshold showing of relevance," a standard that is to be construed "liberal in scope and interpretation." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). For the reasons above and in their opening brief, Defendants have amply satisfied that threshold showing here.[12]

***Protective Orders.*** Apart from relevance, Plaintiffs object that they cannot produce the prior testimony because it may be subject to protective orders in other cases. (Opp. at 25-26.) But that assertion is premature and speculative, at best, because Plaintiffs have not bothered to investigate (other than for an initial four-year period) whether any responsive testimony exists, much less whether it is governed by a protective order. (MTC at 14-15.) Moreover, even if there were testimony subject to a protective order, it would likely be *Plaintiffs*, as the party being deposed, that designated the material confidential, in which case there would be no obstacle to producing it here. (*Id.* at 15.)[13]

---

[11] Whether the Pension Funds were appointed by this Court as Lead Plaintiffs or are institutional entities (Opp. at 23-24) is irrelevant. Defendants' motion seeks to compel the production of information that is relevant to the Pension Funds' adequacy; Defendants do not, for purposes of this motion, need to *prove* that the Pension Funds are inadequate representatives. Moreover, the standard for appointment of Lead Plaintiff is different than for class certification. If, as Plaintiffs suggest, the mere fact they were appointed Lead Plaintiffs is dispositive, then defendants could *never* challenge the adequacy or typicality of a lead plaintiff at the class certification stage.

[12] While Plaintiffs cite to several cases in which courts refused to compel the production of testimony from other lawsuits (Opp. at 24-25), none are securities class actions, and therefore they do not involve the same circumstances that render the prior testimony relevant here. By contrast, courts routinely compel the production of lead plaintiffs' prior deposition testimony in securities actions. (MTC at 14 (citing cases).)

[13] Plaintiffs' speculation that the deposition exhibits "*conceivably*" include material designated by other parties (Opp. at 25), just reinforces that the objection is premature.

9

Plaintiffs' assertion that "the appropriate mechanism to obtain [the testimony] is for Defendants to intervene in these other litigations to modify the applicable protective orders," along with the cases Plaintiffs cite in support (Opp. at 26), fares no better.  To begin, Plaintiffs do not even know whether there are any protective orders or whether they pose any obstacle to production here.  Nor do Plaintiffs explain how Defendants would intervene, given that Plaintiffs have refused to provide a complete list of prior securities actions in which Lead Plaintiffs acted, or sought to act, as lead plaintiffs.  (Ex. F at 46-47; Ex. G at 5; Ex. H at 4.)  Finally, Plaintiffs' position is squarely at odds with the position the parties took earlier in discovery:  When Plaintiffs asked Defendants to produce transcripts and exhibits from a prior action that were subject to a protective order, Defendants obtained consent from the other parties to that litigation to produce the requested material.  There is no reason Plaintiffs cannot do the same here.

## III.    PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE DOCUMENTS RELATING TO PRIOR CIVIL OR CRIMINAL PROCEEDINGS OR SECURITIES INVESTIGATIONS BROUGHT AGAINST THEM (RFP NO. 40)

Plaintiffs object to producing documents regarding prior civil or criminal proceedings or securities investigations brought against Lead Plaintiffs, asserting that the discovery is irrelevant and would be unduly burdensome to produce.  (Opp. at 26-28.)  Both objections fail.

The documents sought are highly relevant to Lead Plaintiffs' adequacy as class representatives because that inquiry must examine their "honesty and trustworthiness."  *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).  "[C]onvictions of fraud or other forms of dishonesty undermine the qualifications of a potential class representative."  *Xianglin Shi v. Sina Corp.*, 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005).[14]

---

[14] The fact that some courts have appointed lead plaintiffs who had prior investigations or complaints against them (Opp. at 27 n.10) merely goes to the merits of the issue, not whether the information sought is relevant.

Plaintiffs do not dispute this, but instead assert that Defendants have not "identif[ied] the existence of any relevant information that would be yielded by their request," such as a "single complaint or judgment against Plaintiffs, let alone an investigation into Plaintiffs indicating any misconduct." (Opp. at 27.) But that is circular: Defendants do not know whether any such information or documents exist because Plaintiffs have refused discovery. It is also not the law. *See Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474, 481 (D.S.D. 2012) ("threshold showing of relevance" is met by identifying "any matter that could bear on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case").

Apart from relevance, Plaintiffs object that the discovery sought is overbroad and that producing it would be unduly burdensome. (Opp. at 28.) But Plaintiffs have made no attempt to substantiate those objections. *Cave v. Thurston*, 2021 WL 4936185, at *8 (E.D. Ark. Oct. 22, 2021) ("A party claiming requests are unduly burdensome cannot make conclusory allegations," but "must provide some evidence regarding the time or expense required."); *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010) ("[A]n objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence."). Indeed, it is difficult to understand what burden Plaintiffs could claim given they do not purport to know whether any prior investigations or proceedings exist.

Plaintiffs' remaining objections are also meritless. They object that they "have no practical way of searching for the proposed documents" "because *Defendants* have identified no actual investigation or proceeding." (Opp. at 28.) But the information at issue is in *Plaintiffs'* possession—not Defendants'—and Plaintiffs "are under a duty to complete a reasonable investigation" in response to Defendants' requests. *3M Innovative Props. Co. v. Tomar Elecs.*, 2006 WL 2670038, at *6 (D. Minn. Sept. 18, 2006). Nor can Plaintiffs avoid that burden by making *Defendants* search for prior *public* investigations and proceedings. *Cave*, 2021 WL

11

4936185, at *14 ("District courts in the Eighth Circuit have explicitly rejected the position that the production of publicly available documents cannot or should not be compelled through discovery." (collecting cases)).   In any event, Defendants would have no way of identifying *nonpublic* information and documents, such as those they seek here.

Finally, Plaintiffs assert that Defendants can seek the discovery by serving interrogatories or during depositions.  (Opp. at 28.)  But neither are a substitute for the production of *documents*. Indeed, parties routinely seek document discovery *before* depositions so that they can use those documents in the deposition, as Plaintiffs have done here.  Moreover, Plaintiffs' suggestion gives lie to their argument that they have no "practical way" of identifying prior proceedings:  They could simply ask Lead Plaintiffs, precisely as they suggest Defendants should do here.

## IV.    PLAINTIFFS SHOULD BE COMPELLED TO RUN RELEVANT FUND NAMES AS SEARCH TERMS

Plaintiffs should be compelled to run the names (including appropriate abbreviations) of relevant funds through which they invested in Uniti securities as search terms because those terms would likely lead to the discovery of relevant documents.  (MTC at 17-19.)

Although Plaintiffs do not dispute that the Pension Funds invested in Uniti securities indirectly through funds managed by their investment managers, they assert that documents regarding the decision to invest in those funds would be captured by the names of the investment managers, which were search terms.  (Opp. at 29.)  But Plaintiffs provide no support for that speculative assertion, even though they could have easily tested it by running the names of the funds as search terms, but they summarily and improperly refused to do so. (MTC at 8.). Equally unavailing is Plaintiffs' assertion that the Pension Funds' decision to invest in the funds is irrelevant.  (Opp. at 29.)  Plaintiffs concede that their decision to invest in *Uniti securities* is relevant.  (*Id.* at 29-30.)  And given that the Pension Funds invested in Uniti stock *indirectly* through the funds, it follows that their decision to invest in those funds is relevant.  For example,

if the Pension Funds invested in those funds for reasons unrelated to the price of the underlying securities, that would be relevant to whether they could establish the fraud-on-the-market presumption.  Their reasons for investing in the funds is also relevant to their sophistication, which is relevant to class certification issues, as Plaintiffs concede.  (MTC at 18 (citing cases); Opp. at 30 n.11.)[15]

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion to Compel.


Dated: December 6, 2021

OF COUNSEL:

Edmund Polubinski III*                          Jess Askew III, Ark. Bar No. 86005
Brian M. Burnovski*                             Andrew King, Ark. Bar No. 2007176
Nikolaus J. Williams*                           Frederick H. Davis, Ark. Bar No. 2012271
Daniel S. Magy*                                 KUTAK ROCK LLP
DAVIS POLK & WARDWELL LLP                        124 West Capitol Avenue, Suite 2000
450 Lexington Avenue                            Little Rock, Arkansas 72201-3706
New York, New York 10017                        Telephone: (501) 975-3000
Telephone: (212) 450-4000                       jess.askew@kutakrock.com
edmund.polubinski@davispolk.com                 andrew.king@kutakrock.com
brian.burnovski@davispolk.com                   frederick.davis@kutakrock.com
nikolaus.williams@davispolk.com


                                                *Counsel for Defendants Uniti Group Inc.,*
*\* admitted pro hac vice*                      *Kenneth A. Gunderman, and Mark A. Wallace*

---

[15] Plaintiffs' cases (Opp. at 29-30) are inapposite.  None involve plaintiffs investing in securities through funds such as those here.  At most, the cases hold that employing specific investment strategies does not *necessarily* defeat typicality, but none support Plaintiffs' position that the information sought here is wholly irrelevant.