UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| In re UNITI GROUP INC. SECURITIES LITIGATION | ) ) ) ) | Master File No. 4:19-cv-00756-BSM<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | ) ) ) ) ) ) | PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION...........................4

III.    SETTLEMENT NEGOTIATIONS ..........................................................................6

IV.     THE TERMS OF THE SETTLEMENT .....................................................................6

V.      THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................................8

        A.      Plaintiffs and Co-Lead Counsel Have Adequately Represented the
                Settlement Class.........................................................................................10

        B.      The Settlement Is the Product of Informed Arm's-Length Negotiations ..............10

        C.      The Relief Provided to the Settlement Class Is Substantial................................11

                1.      The Substantial Benefits for the Settlement Class, Weighed
                        Against the Costs, Risks, and Delay of Further Litigation Support
                        Preliminary Approval...................................................................11

                2.      Other Factors Under Rule 23(e)(2)(C) Support Preliminary
                        Approval ...................................................................................16

        D.      All Settlement Class Members Are Treated Equitably.........................................18

VI.     THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ................................18

VII.    THE PROPOSED NOTICE SHOULD BE APPROVED .................................................20

VIII.   PROPOSED SETTLEMENT SCHEDULE ....................................................................21

IX.     CONCLUSION....................................................................................................22

4892-9775-9269.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972) ................................................................. 19

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) .................................................. 14

*Goldman Sachs Group, Inc. v. Ark. Tchr. Ret. Sys.*,
   __ U.S. __, 141 S. Ct. 1951, 1959, 210 L.Ed.2d 347 (2021) ....................................... 13

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ........................................................... 12, 19

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979) ...................................................... 14

*Caligiuri v. Symantec Corp.*,
   855 F.3d 860 (8th Cir. 2017) ....................................................... 8

*Campbell v. Transgenomic, Inc.*,
   2019 WL 3003920 (D. Neb. July 10, 2019) ................................... 21

*Campbell v. Transgenomic, Inc.*,
   2020 WL 2946989 (D. Neb. June 3, 2020) ............................... 18, 19

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .............................. 17

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd sub nom.*, *Arbuthnot v. Pierson*, 607 F. App'x 73
   (2d Cir. 2015) ..................................................................... 11

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ..................................................... 20

*DeBruycker v. PM Beef Holdings, LLC*,
   2005 WL 681298 (D. Minn. Mar. 2, 2005) ................................. 14

**Page**

*Fosbre v. Las Vegas Sands Corp.*,
2017 WL 55878 (D. Nev. Jan. 3, 2017), *aff'd sub nom.*,
*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands
Corp.*, 732 F. App'x 543 (9th Cir. 2018) ..................................................................... 12

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..................................................................... 14

*Huyer v. Wells Fargo & Co.*,
314 F.R.D. 621 (S.D. Iowa 2016), *aff'd sub nom.*, *Huyer v. Njema*, 847
F.3d 934 (8th Cir. 2017), *aff'd sub nom.*, *Huyer v. Buckley*, 849 F. 3d
395 (8th Cir. 2017) ..................................................................... 15

*IBEW Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..................................................................... 15

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
2020 WL 7133805 (D. Minn. Dec. 4, 2020) ..................................................................... 8, 10, 11, 20

*In re: E.W. Blanch Holdings, Inc. Sec. Litig.*,
2003 WL 23335319 (D. Minn, June 16, 2003) ..................................................................... 21

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ..................................................................... 11, 13

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ..................................................................... 16

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ..................................................................... 12

*In re Pemstar, Inc. Sec. Litig.*,
2005 WL 1737867 (D. Minn. Mar. 17, 2005) ..................................................................... 20

*In re Retek Inc. Sec. Litig.*,
621 F. Supp. 2d 690 (D. Minn. 2009) ..................................................................... 12

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011),
*aff'd*, 838 F. 3d 223 (2016) ..................................................................... 14

- iii -

**Page**

*Khoday v. Symantec Corp.*,
  2016 WL 1637039 (D. Minn. Apr. 5, 2016) ...................................................... 8, 12, 16

*Mulderrig v. Amyris, Inc.*,
  340 F.R.D. 575 (N.D. Cal. 2021) ................................................................... 13

*Peace Officers Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
  2021 WL 1387110 (D. Colo. Apr. 13, 2021) ............................................... 18

*Phillips v. Caliber Home Loans, Inc.*,
  2021 WL 3030648 (D. Minn. July 19, 2021) ............................................ 3, 10, 11, 14

*Phillips v. Caliber Home Loans, Inc.*,
  2022 WL 832085 (D. Minn. Mar. 21, 2022) ............................................... 17

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .................................................................. 14

*Smith v. Questar Cap. Corp.*,
  2015 WL 9860201 (D. Minn. Sept. 11, 2015) ............................................ 10

*Yarrington v. Solvay Pharms., Inc.*,
  2010 WL 11453553 (D. Minn. Mar. 16, 2010) ......................................... 8, 10, 14, 16

*Yarrington v. Solvay Pharms., Inc.*,
  697 F. Supp. 2d 1057 (D. Minn. 2010) ...................................................... 17

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78j ................................................................................................................ 4
  §78t9a) ......................................................................................................... 4
  §78u-4(a)(4) ................................................................................................. 7
  §78u-4(a)(7) ................................................................................................. 21

4892-9775-9269.v1

**Page**

Federal Rules of Civil Procedure

    Rule 10b-5 .................................................................................................. 4
    Rule 23 ............................................................................................. *passim*
    Rule 23(a) ................................................................................................ 19
    Rule 23(b)(3) .......................................................................................... 19
    Rule 23(c)(2)(B) ..................................................................................... 20
    Rule 23(e)(2) ............................................................................................ 9
    Rule 23(e)(2)(C) ..................................................................................... 16
    Rule 23(e)(2)(C)(ii)-(iv) .................................................................. 16, 17
    Rule 23(e)(2)(D) ..................................................................................... 18
    Rule 23(e)(3) ....................................................................................... 9, 16

**SECONDARY AUTHORITIES**

Laarni T. Bulan & Laura E. Simmons, Securities Class Action
*Settlements: 2021 Review and Analysis*
(Cornerstone Research 2022) ........................................................................ 2, 15

Plaintiffs Steamfitters Local 449 Pension Plan ("Local 449"), Wayne County Employees' Retirement System ("Wayne County ERS"), and David McMurray, on behalf of himself and as sole beneficiary of the David McMurray R/O IRA ("Plaintiffs" or "Lead Plaintiffs"), together with Zhengxu He, Trustee for the He & Fang 2005 Revocable Living Trust, respectfully submit this memorandum of law in support of their unopposed motion for preliminary approval of the proposed settlement of the above-captioned class action (the "Action"), as embodied in the Stipulation and Agreement of Settlement, dated June 17, 2022 (the "Stipulation"), which is being filed concurrently herewith as Exhibit 1 to the Declaration of Debra J. Wyman ("Wyman Decl.").[1] Plaintiffs and Mr. He respectfully request that the Court grant preliminary approval of the Settlement, which provides for the payment of $38.875 million in cash for the benefit of the Settlement Class, as it readily satisfies the applicable standards for approval set forth in Rule 23 of the Federal Rules of Civil Procedure.

## I.   INTRODUCTION

The Settlement now before the Court is the result of Plaintiffs' and Co-Lead Counsel's vigorous prosecution of this Action for approximately 2 1/2 years and is based on their thorough understanding of the relative strengths and weaknesses of the Parties' respective positions. Indeed, at the time of settlement, fact discovery, including fact depositions, was virtually complete but for one non-party deposition, and Plaintiffs' experts were drafting their reports. Based upon their experience, their evaluation of the facts and the applicable law, and their recognition of the substantial Settlement Amount, Plaintiffs and Co-Lead Counsel respectfully submit that the Settlement merits preliminary approval by the Court because it is the result of extensive, good-faith

---

[1]      Unless otherwise noted herein, all capitalized terms have the meanings set forth in the Stipulation, all citations to "¶_" refer to paragraphs in the Stipulation, all exhibits are attached to the Wyman Declaration unless otherwise noted, and all internal case citations are omitted and all emphasis is added unless otherwise noted.

negotiations between the Parties with the assistance of a highly experienced mediator; represents an immediate, concrete benefit for the Settlement Class; and is well within the range of what courts have found to be fair, reasonable, and adequate.

By any measure, the $38.875 million recovery here represents an excellent result, as it exceeds both the average and median settlement amounts in securities class actions resolved during 2021, the last year for which data is available. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, at 18, Appendix 1 (Cornerstone Research 2022) ("Cornerstone Report"), Exhibit 1. Likewise, the recovery easily surpasses the median $14.7 million settlement amount for cases settled in the Eighth Circuit between 2012 and 2021. *Id.* at 19, Appendix 3.

Moreover, the Settlement is particularly noteworthy when considering the substantial risks of either a reduced recovery or no recovery at all had the litigation continued, as Plaintiffs faced strong defenses from Defendants regarding falsity, scienter, and loss causation. Throughout the case, Defendants vigorously argued, among other things, that this was a classic case of alleged fraud by hindsight and that certain of Uniti's current or former officers should not be required to have been able to predict the future – specifically, the outcome of litigation to which Uniti was not even a party and which was brought by a noteholder of Uniti's parent company, that was not initiated until two years into the Class Period, and not decided until February 2019, close to the end of the Class Period. Defendants also argued that another federal court dismissed with prejudice claims, based on similar allegations, brought in an individual action by a different Uniti shareholder, finding no actionable statements or omissions, and no scienter or loss causation had been sufficiently pled. Defendants also strenuously argued that the evidence would ultimately demonstrate that they did not know that the spinoff of Uniti from its parent, Windstream Holdings, Inc. ("Windstream" or "Windstream Holdings"), and the sale from, and concurrent leaseback to, Windstream Holdings of certain

- 2 -

telecommunications assets pursuant to a long-term master lease violated certain covenants in the debt indentures of Windstream.  Defendants also argued that certain claims were time barred (although Plaintiffs did not give much credit to this argument).  Significantly, had the Court or a jury accepted Defendants' arguments, either in whole or in part, damages in the case would have been dramatically reduced, or even eliminated. In the face of these obstacles, Plaintiffs secured an outstanding recovery of $38.875 million on behalf of the Settlement Class.

As set forth below, approval of a proposed class action settlement is a two-step process.  *See Phillips v. Caliber Home Loans, Inc.*, 2021 WL 3030648, at *5-7 (D. Minn. July 19, 2021).  The first step – preliminary approval –involves the Court's determination of whether the proposed settlement is likely to be approved thus warranting notice to the class, endorsement of "the means of notice to class members," and scheduling the final fairness hearing.  *Id.* at 5.  The second step is final approval, following notice to the class.  As the Settlement here satisfies each of the factors relevant to this preliminary approval evaluation, Plaintiffs respectfully request that the Court take the first step in this process and enter the proposed Order Granting Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") submitted herewith, which will, among other things:

(a)      preliminarily approve the Settlement pursuant to the Stipulation;

(b)      approve the form and content of the Notice, Claim Form, and Summary Notice, attached as Exhibits A-1, A-2, and A-3 to the Stipulation and Preliminary Approval Order;

(c)      find that the proposed procedures for distribution of the Notice and publication of the Summary Notice constitute the best notice practicable under the circumstances, and comply with due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

(d)      set a schedule and procedures for: (1) disseminating the Notice/Claim Form and publishing the Summary Notice; (2) requesting exclusion from the Settlement Class; (3)

objecting to the Settlement, the Plan of Allocation, and/or Co-Lead Counsel's application for attorneys' fees and expenses; (4) submitting papers in support of final approval of the Settlement; and (5) the Settlement Hearing.

## II.   FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

The litigation was initially filed on October 25, 2019. ECF 1. On April 14, 2020, the Court entered an order giving effect to a proposed stipulation for appointment of Lead Plaintiffs and for approval of Lead Plaintiffs' selection of Labaton Sucharow LLP and Robbins Geller Rudman & Dowd LLP as Co-Lead Counsel for the class.  ECF 60.[2]  On May 11, 2020, Lead Plaintiffs filed a Consolidated Amended Class Action Complaint (the "Amended Complaint") asserting claims: (1) against all Defendants pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and (2) against the Individual Defendants pursuant to Section 20(a) of the Exchange Act. ECF 62.  Lead Plaintiffs asserted such claims on behalf of all persons who purchased or otherwise acquired the publicly traded securities of Uniti during a class period of April 24, 2015 to June 24, 2019, inclusive. *Id.*

Thereafter, the parties fully briefed Defendants' motion to dismiss (ECFs 63-64, 66, 68-70, 73), and on March 31, 2021, the Court denied Defendants' motion to dismiss in its entirety.  ECF 74. On April 15, 2021, Defendants filed a Motion for Reconsideration or, in the Alternative, Certification for Interlocutory Appeal.  ECF 76.   On April 29, 2021, Lead Plaintiffs opposed Defendants' motion for reconsideration.  ECF 78.  On August 2, 2021, Defendants filed a reply in further support of their motion for reconsideration.  ECF 86.  And on December 22, 2021, the Court denied Defendants' motion for reconsideration or certification of interlocutory appeal.  ECF 104. On April 15, 2021, Defendants filed an Answer to the Amended Complaint.  ECF 75.

---

[2]     While the Court appointed Mr. He as a Lead Plaintiff, and although Mr. He did not participate in discovery and did not seek to be appointed a class representative, he remains a Lead Plaintiff and supports the Settlement.

During the Action, the Parties engaged in extensive discovery.  In response to document requests and subpoenas, Plaintiffs received approximately 90,000 documents (more than 1,000,000 pages from Defendants, non-parties, and from related litigation).  Plaintiffs produced over 300 documents (approximately 12,000 pages) in connection with class certification discovery. In addition, the Parties exchanged many letters concerning their document productions and engaged in numerous meet and confer conferences to discuss significant and highly disputed discovery-related issues.  Lead Plaintiff McMurray, and representatives of Lead Plaintiffs Local 449 and Wayne County ERS, sat for depositions taken by Defendants.  Defendants also deposed Plaintiffs' market efficiency expert, Mr. Chad Coffman, the President of Global Economics Group, a firm that specializes in the application of economics, finance, statistics, and valuation principles to claims of economic damages, regarding issues of damages and market efficiency.  Plaintiffs deposed Defendants' market efficiency expert, Christopher M. James, Ph.D. concerning issues related to Mr. Coffman's market efficiency opinions.  Plaintiffs also took depositions of eight current or former employees of Uniti and non-party Windstream Holdings, Inc. before the case settled.

On October 25, 2021, Plaintiffs moved for class certification, seeking appointment of Plaintiffs as class representatives and seeking to certify a class of all persons and entities that purchased or otherwise acquired the publicly traded common stock or call options, or sold the put options, of Uniti during the period from April 24, 2015 to June 24, 2019, inclusive, and were damaged thereby.  ECF 90.  An expert report by Mr. Coffman was filed in support of the motion for class certification.  ECF 92-1.  On January 24, 2022, Plaintiffs submitted a correction to Mr. Coffman's Report.  ECF 111.  On December 23, 2021, Defendants filed an opposition to Plaintiffs' motion for class certification.  ECF 105.  An expert report by Dr. Christopher M. James was also submitted in opposition to Plaintiffs' motion for class certification.  ECF 105-9.  On February 22, 2022, Plaintiffs filed a reply in further support of their motion for class certification.  ECF 115.

Filed concurrently therewith was a rebuttal report from Mr. Coffman in further support of Plaintiffs' motion for class certification.  ECF 116-1.

## III.    SETTLEMENT NEGOTIATIONS

On March 24, 2022, the Parties participated in a full-day mediation session before David Murphy of Phillips ADR (the "Mediator").  In advance of that session, the Parties provided detailed mediation statements and exhibits to the Mediator, which addressed issues of liability, class certification, and damages.  The Parties also participated in individual sessions with the Mediator and answered questions from him about the Action.  No agreement was reached at the March 24, 2022 mediation session.

On March 25, 2022, the Mediator made a formal mediator's proposal that the case settle for $38.875 million.  The Parties accepted this proposal and subsequently began negotiating a term sheet (ultimately executed on April 26, 2022), and a stipulation of settlement and supporting exhibits.  The Parties spent the subsequent weeks negotiating the specific terms of the Settlement set forth in the Stipulation and accompanying exhibits.  The Stipulation and the Parties' confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement") were executed by the Parties on June 17, 2022.   The Stipulation, together with the exhibits and the Supplemental Agreement constitute the final and binding agreements between the Parties.

## IV.    THE TERMS OF THE SETTLEMENT

The proposed Settlement, which, if approved, will resolve this Action in its entirety, provides that Defendants will pay or cause to be paid $38,875,000 into an Escrow Account for the benefit of the Settlement Class.  The Settlement will release all claims in the Action, and related claims ("Released Claims"), brought by the Settlement Class against the Defendants and their related parties (the "Released Defendant Parties").  The full terms and conditions of the Settlement are set forth in the Stipulation.

Notice to the Settlement Class and the cost of settlement administration (collectively, "Notice and Administration Expenses") will be funded by the Settlement Fund.  ¶6.2.  Plaintiffs propose that a nationally recognized class action settlement administrator, KCC LLC, be appointed here to oversee notice and administration of the Settlement.  Co-Lead Counsel will move for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 30% of the Settlement Amount, and litigation expenses in an amount not to exceed $1.6 million, plus interest accrued on both amounts at the same rate as earned by the Settlement Fund.  In addition, Plaintiffs, who were all deposed, may seek reimbursement for their time and expenses directly related to their representation of the Settlement Class, as provided by 15 U.S.C. §78u-4(a)(4).  The Notice explains that such fees, expenses, and awards shall be paid from the Settlement Fund.

Once the Court approves the Settlement and the Effective Date of the Settlement has been reached, the Settlement Fund minus Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses (the Net Settlement Fund), shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00, given the costs of preparing and mailing payments.  Any amount remaining following the initial distribution as a result of uncashed or returned checks shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Settlement Class Members equitably based on the timing of their Uniti purchases, acquisitions, and sales.  The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions.

In exchange for the benefits provided under the Stipulation, Settlement Class Members and their related parties will release any and all claims against Defendants and the other Released Defendant Parties which arise out of or relate in any way to any claims of violations of federal or state securities laws, any federal, state, local, common, or foreign law, statute, rule or regulation, or

other legal or equitable claims of fraud, intentional misrepresentation, negligent misrepresentation, negligence, gross negligence, breach of duty of care and/or breach of duty of loyalty, breach of fiduciary duty or breach of contract, that Lead Plaintiffs or any other member of the Settlement Class: (a) asserted in the Action; or (b) could have asserted in the Action or any forum that arise out of, are based upon, or relate to, in whole or part, both (1) the allegations, transactions, facts, matters or occurrences, representations, statements, or omissions alleged in the Action, including, but not limited to, as alleged in the complaint filed in the Action and (2) the purchase, sale, or acquisition of Uniti Securities during the Class Period.  Released Claims shall not include claims to enforce the Settlement, ERISA claims (if any), and claims in the following litigation: (i) *Jozsef Mayer et al. v. Gunderman et al.*, No. 24-c-21-003488 (Md. Balt. City Cir. Ct. 2021); (ii) *Guzzo v. Gunderman et al.*, No. 1:22-cv-00366-GLR (D. Md. 2022); and (iii) *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc. et al.*, No. 1:19-cv-01813-LPS (D. Del. 2019).  *See* ¶1.26.  The proposed Settlement is an excellent recovery for the claims asserted in this Action, and is in all respects fair, reasonable, adequate, and in the best interests of the Settlement Class.

## V.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

In the Eighth Circuit, "'strong public policy favors agreements, and courts should approach them with a presumption in their favor.'"  *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2020 WL 7133805, at *6 (D. Minn. Dec. 4, 2020).  This policy "'is particularly strong in the class action context.'"  *Khoday v. Symantec Corp.*, 2016 WL 1637039, at *5 (D. Minn. Apr. 5, 2016), *report and recommendation adopted by* 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).[3]

---

[3]     *See also Yarrington v. Solvay Pharms., Inc.*, 2010 WL 11453553, at *7 (D. Minn. Mar. 16, 2010) ("The presumption in favor of such settlements reflects courts' understandings that vigorous negotiations between experienced counsel protect against collusion and advance the fairness concerns underlying Rule 23(e).").

Federal Rule of Civil Procedure ("Rule") 23(e) requires judicial approval for a settlement of claims brought as a class action. Pursuant to Rule 23(e)(1)(B), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Rule 23(e)(2) provides:[4]

(1)  ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

(i)  the costs, risks, and delay of trial and appeal;

(ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment;

(iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  As detailed below, the facts and circumstances concerning the Settlement reached here readily satisfy Rule 23(e)(2), as well as the Eighth Circuit's factors, and the Settlement warrants preliminary approval.[5]

---

[4]  Amended Rule 23(e) provided  factors for district courts to focus on  in evaluating the fairness, reasonableness, and adequacy of a class action settlement.  The "goal of this amendment is not to displace any [circuit's unique] factor[s]." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendment.

[5]  At final approval, the Court will also consider the Eighth Circuit's long-standing approval factors, which overlap with those in Rule 23(e)(2): "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and

4892-9775-9269.v1

A.    **Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class**

Plaintiffs have demonstrated their ability and willingness to pursue the litigation on the Settlement Class's behalf through their active involvement in the Action over the last two plus years and in approving the Settlement.  Plaintiffs' interests in this case are directly aligned with those of the other Settlement Class Members.  Plaintiffs also retained "capable and experienced lawyers." *See* Exs. 2 (Labaton Sucharow firm resumé), and 3 (Robbins Geller firm resumé).  Thus, the adequacy requirement is satisfied.

B.    **The Settlement Is the Product of Informed Arm's-Length Negotiations**

Courts in the Eighth Circuit have held that when a "[s]ettlement was negotiated at arms' length between experienced and sophisticated counsel," there is a "presumption that it is fair and reasonable." *Phillips*, 2021 WL 3030648, at *6.  In this context, "'the recommendation of experienced counsel is entitled to great weight.'" *Yarrington*, 2010 WL 11453553, at *7.  Moreover, the utilization of "an experienced mediator" during settlement negotiations supports a finding that the settlement is reasonable and should be approved. *CenturyLink*, 2020 WL 7133805, at *6; *see also Smith v. Questar Cap. Corp.*, 2015 WL 9860201, at *3 (D. Minn. Sept. 11, 2015) (mediation before a professional mediator demonstrated "no evidence of collusion").

Here, as noted above, the proposed Settlement follows extensive, hard-fought litigation, including discovery, briefing on class certification, and arm's-length negotiations.  The Settlement was achieved only after mediation with David Murphy of Phillips ADR – who has served in a neutral capacity in numerous shareholder actions – and additional negotiations between the Parties.  As part of the settlement discussions, Co-Lead Counsel and Defendants' Counsel prepared and

---

expense of further litigation; and (4) the amount of opposition to the settlement." *CenturyLink*, 2020 WL 7133805, at *6.

presented detailed submissions concerning, among other things, their respective views on the merits of the Action, including Defendants' defenses and issues relating to liability and damages, along with supporting evidence obtained through discovery.

After intensive back-and-forth negotiations, the Parties reached an agreement to settle the Action for $38.875 million.  The negotiations were at all times adversarial and produced a result that is certainly in the Settlement Class's best interests.  Under these circumstances, a presumption of fairness attaches to the proposed Settlement.  *See, e.g.*, *Phillips*, 2021 WL 3030648, at *6; *CenturyLink*, 2020 WL 7133805, at *6 (approving settlement reached "at a stage in the litigation in which the parties understood the strengths and weakness of their case").

### C.       The Relief Provided to the Settlement Class Is Substantial

#### 1.       The Substantial Benefits for the Settlement Class, Weighed Against the Costs, Risks, and Delay of Further Litigation Support Preliminary Approval

"'The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'"  *Id.*[6]  Here, "[t]he merits of Plaintiffs' case weighed against the terms of the Settlement and the complexity and expense of further litigation weigh in favor of approval."  *Id.* at *7.

Courts have "'long recognized'" that securities class actions, like the present one, are "'notably difficult and notoriously uncertain'" to litigate.  *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*, *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  Indeed, complex securities fraud class actions such as this one present a myriad of risks that a plaintiff must overcome to ultimately secure a recovery.  *See, e.g, In re*

---

[6]       Consistent with Rule 23's instruction to consider "the costs, risks, and delay of trial and appeal," courts in this Circuit evaluate "'the merits of the plaintiff's case, weighed against the terms of the settlement'" and "the complexity and expense of further litigation."  *Id.* at *5-6.

*Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) ("securities fraud cases require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish'").  While Plaintiffs remain confident in their ability to ultimately prove the alleged claims, further litigation – including a trial – is always a risky proposition.  *See Khoday*, 2016 WL 1637039, at *5 ("Although Plaintiffs survived motions to dismiss, a class certification motion, and motions for summary judgment, they would still have to prevail at trial and contend with any appeals.  There are several issues that remain contested . . . .").

In continued litigation, Plaintiffs would be required to prove all elements of their claims, while Defendants need only to succeed on one defense to potentially defeat the entire litigation.[7] Defendants continue to deny all of Plaintiffs' allegations, and have presented strong and credible arguments as to falsity, scienter, and loss causation.  With respect to falsity, Defendants have argued there was no evidence that Defendants intentionally made any false statements or actionable omissions, and that Plaintiffs could not survive summary judgment or prevail at trial.  Thus, Plaintiffs faced a risk that some, or all, of the alleged false statements would be dismissed from the case at summary judgment, or that they would be unable to prove the falsity of those statements at trial.

In attempting to rebut the *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) presumption of reliance by proving, by a preponderance of the evidence, that their alleged concealment of material

---

[7]    *See, e.g.*, *In re Retek Inc. Sec. Litig.*, 621 F. Supp. 2d 690, 709 (D. Minn. 2009) (granting summary judgment in a securities action where plaintiffs failed to present evidence of loss causation); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *Fosbre v. Las Vegas Sands Corp.*, 2017 WL 55878, at *28 (D. Nev. Jan. 3, 2017) (granting summary judgment in a securities action due to, among other things, lack of falsity and scienter), *aff'd sub nom.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018).

information did not impact the price of Uniti's Securities, as purportedly required by *Goldman Sachs Group, Inc. v. Ark. Tchr. Ret. Sys.*, Defendants have argued that the case should be artificially broken into what they have called three unrelated "theories of liability" they assert Plaintiffs are using in pursuit of their claims: (i) the "Sale-Leaseback Theory"; (ii) the "True Lease Theory"; and (iii) the "Navigating the Bankruptcy Theory." __ U.S. __, 141 S. Ct. 1951, 1959, 210 L.Ed.2d 347 (2021). Although this categorization of Plaintiffs' claims is found nowhere in the Amended Complaint, Defendants' arguments were well-presented and there was a risk to proving loss causation, and a risk that Plaintiffs would lose certain of the alleged disclosure dates at summary judgment or trial, negatively impacting the amount of recoverable damages.

Additionally, Defendants have contested scienter, arguing that Plaintiffs could not establish that Defendants acted with severe recklessness. They have argued that Windstream and the Uniti Defendants believe, to this day, that the Spin-off structure did not violate Windstream's debt indentures and that they (and their teams of lawyers and bankers) had succeeded in structuring the Spin-off and Master Lease to avoid a covenant violation.

Even if Plaintiffs ultimately prevailed in proving falsity, scienter, and loss causation, this Action would have involved significant risks to establishing damages. *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 841-42 ("[P]laintiffs at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony. . . . The high risk faced by taking the case to a jury verdict demonstrates the adequacy of this . . . settlement."). Defendants have vigorously challenged Plaintiffs' damages theories and calculations, and likely would have moved to exclude Plaintiffs' damages expert from testifying at trial, arguing that his methods for calculating damages were unreliable. Citing *Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575, 590 (N.D. Cal. 2021), Defendants have repeatedly argued that Plaintiffs could not

- 13 -

demonstrate, or even explain to a jury, how they would calculate artificial inflation pursuant to the "materialization of the risk" theory of loss causation they are proceeding under.

While Plaintiffs believe they had strong counterarguments on all these points, the fact remains that the Court at summary judgment or the jury at trial could have found such arguments persuasive, thereby significantly reducing or eliminating recoverable damages.   *See, e.g.*, *DeBruycker v. PM Beef Holdings, LLC*, 2005 WL 681298, at *1 (D. Minn. Mar. 2, 2005) (defendants' advancement of arguments that "if successful, would have reduced Plaintiffs' ultimate recovery" justified the settlement).[8]  Furthermore, "without settlement, the case would "'likely drag on for years, [and] require the expenditure of millions of dollars, all the while class members would receive nothing.""   *Yarrington*, 2010 WL 11453553, at *9; *see also Phillips*, 2021 WL 3030648, at *6 ("continued litigation likely would take several years to resolve").

Moreover, even if successful at trial, Plaintiffs may have recovered an amount less than this Settlement. The Settlement recovers approximately 3% of Plaintiffs' expert's estimation of maximum recoverable damages, depending on the types of alleged misstatements and omissions that were ultimately presented to the jury and the length of the class period presented at trial.  For example, if liability were established with respect to all of the false statements and omissions alleged in the Amended Complaint, then estimated "disaggregated" damages, excluding any losses attributable to the disclosure of confounding or non-fraud related information, would be at least $1.3 billion based on statistically significant abnormal stock-price declines on the following dates: (i)

---

[8]        *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (major portion of plaintiffs' verdict reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd*, 838 F. 3d 223 (2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

August 3, 2017, (ii) September 26, 2017, (iii) February 19, 2019, and (iv) June 25, 2019, all of which are attributable to Defendants' allegedly fraudulent conduct. In this scenario, a settlement of $38.875 million represents approximately 3% of the maximum recoverable damages.

However, Plaintiffs faced significant risks in proving all of the alleged misstatements and omissions across the more than four year Class Period.  Further, Defendants have argued that Uniti's stock price decline after several of the alleged disclosures was unrelated to the risks concerning the Spin-Off and Master Lease, which Plaintiffs allege Defendants concealed, resulting in little to no recoverable damages.  While Plaintiffs were confident that a jury would likely agree that each of the four disclosures was a partial materialization of the risks Defendants allegedly concealed, there was a real risk that Plaintiffs would lose one or more of the disclosures dates, which would have significant reduced recoverable damages.  Moreover, Uniti's insurance policy was a wasting asset and defending the case through summary judgment, or even a jury trial, would have used much of the available policy, leaving little available insurance proceeds to contribute toward any settlement or to satisfy a judgment.

Here, the recovery – which exceeds both the median overall recovery for cases of this nature in 2021 ($8.3 million) *and* the average recovery in 2021 ($20.5 million) – is an outstanding result.[9] *See, e.g., Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 627 (S.D. Iowa 2016) ("[t]he settlement fund ensures that class members will receive an adequate percentage of their damages and mitigates the risk inherent in taking these legal claims to trial"), *aff'd sub nom.*, *Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017) , *aff'd sub nom.*, *Huyer v. Buckley*, 849 F. 3d 395 (8th Cir. 2017); *see also IBEW Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered at trial" and finding it "within the median recovery in

---

[9]      *See* Exhibit 1, Cornerstone Report at 1, Fig. 1.

securities class actions settled in the last few years"); *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (recovery of approximately 3% of plaintiffs' total estimated damages within range of reasonableness).

Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. There can be no question that the recovery here warrants approval. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through trial and likely appeals, the $38.875 million Settlement at this juncture is a strong recovery that is in the Settlement Class's best interests.[10]

## 2. Other Factors Under Rule 23(e)(2)(C) Support Preliminary Approval

Under Rule 23(e)(2)(C), courts consider whether the settlement relief is adequate considering "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval.

First, Plaintiffs propose well-established, effective procedures for processing claims and distributing the Net Settlement Fund. KCC LLC, the proposed Claims Administrator, will process claims under Co-Lead Counsel's guidance, allow Claimants an opportunity to cure any deficiencies in their Claims or request the Court to review a denial of their Claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation)

---

[10]    Uniti's financial position also supports preliminary approval of the Settlement as there is no risk that its financial condition would prevent Defendants from fulfilling their settlement obligations. *Khoday*, 2016 WL 1637039, at *6 ("[T]here is no indication that Defendants' financial condition is not secure. Their financial condition has afforded them a spirited defense in litigation, spanning five years. . . . As such, this factor weighs in favor of approval."). Additionally, the fact that a defendant may be able to pay more than it offers in settlement, does not, standing alone, indicate that the settlement is unreasonable or inadequate. *See, e.g.*, *Yarrington*, 2010 WL 11453553, at *9.

after Court approval. This method of claims processing is standard in securities class settlements and has long been found to be effective.

Second, as disclosed in the Notice, in connection with the final Settlement Hearing, Co-Lead Counsel will be applying for an award of fees in an amount not to exceed 30% of the common fund to compensate Plaintiffs' Counsel for the services they rendered on behalf of the Settlement Class. A proposed attorneys' fee of 30% is reasonable considering the work performed and the outstanding results obtained and is well within the range of percentage fees that are regularly awarded in securities class actions and other class actions in this Circuit. *See, e.g.*, *Caligiuri*, 855 F.3d at 866 (affirming a District of Minnesota fee award of one-third of $60 million settlement); *Buckley*, 849 F. 3d at 397  (affirming award of one-third of $25.75 million settlement); *Phillips v. Caliber Home Loans, Inc*., 2022 WL 832085, at *6 (D. Minn. Mar. 21, 2022) (33.33% fee award consistent with the customary fee for similar work); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (33% fee was "in line with the range of fees approved by the Eighth Circuit").  The Settlement does not contemplate any particular award to Plaintiffs' Counsel and any such award is within the discretion of the Court.

Third, with respect to Rule 23(e)(2)(C)(iv), in addition to the Stipulation, the Parties have entered into the Supplemental Agreement, pursuant to which Defendants may terminate the Settlement if requests for exclusion from the Settlement Class reach a certain threshold – generally called a "blow provision."  *See* ¶12.2.  Such an agreement is standard in securities class action settlements; is maintained as confidential in order to prevent opt-outs from threatening to trigger the blow provision to obtain self-interested payments at the expense of the class; and has no negative impact on fairness. *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019).

D.     **All Settlement Class Members Are Treated Equitably**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially.

As set forth in the Stipulation and the Notice, under the proposed Plan of Allocation, which was developed in consultation with Plaintiffs' damages expert, Authorized Claimants shall receive their *pro rata* share of the Net Settlement Fund based upon the amount of their "Recognized Claim" compared to the total Recognized Claims of all Authorized Claimants (as calculated in the Plan of Allocation contained in the Notice, which is attached to the Stipulation as Exhibit A-1 and Exhibit 1 to the Preliminary Approval Order).  The Plan of Allocation is substantially similar to other plans approved in securities class actions across the country.  *See, e.g.*, *Peace Officers Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110, at *5 (D. Colo. Apr. 13, 2021) (approving plan of allocation based on these considerations); *Campbell v. Transgenomic, Inc.*, 2020 WL 2946989, at *5 (D. Neb. June 3, 2020) (finding "[t]he formula for the calculation of the claims of the authorized claimants" was "a fair and reasonable basis upon which to allocate the proceeds of the settlement fund").

**VI.     THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23**

In determining whether to grant preliminary approval, the Court should also determine whether it "will likely be able to" certify the proposed Settlement Class for purposes of the Settlement at final approval.  Fed. R. Civ. P. 23(e)(1)(B).  The proposed Settlement Class, *see* ¶ 1.33, which has been stipulated to by the Parties, consists of:

> all persons and entities who or which, during the period from April 24, 2015 to June 24, 2019, inclusive: (1) purchased or otherwise acquired: (a) the common stock of Uniti Group Inc. f/k/a Communications Sales & Leasing, Inc.; (b) call options of Uniti; or (c) the following bonds issued by Uniti and/or its subsidiaries: (i) 6.00% Senior Secured Notes due April 15, 2023 (CUSIP No. 20341WAA3); (ii) 8.25% Senior Notes due October 15, 2023 (CUSIP No. 20341WAD7); or (iii) 7.125%

Senior Unsecured Notes due December 15, 2024 (CUSIP No. 20341WAE5); or (2) sold put options of Uniti; and, in each of the foregoing cases, were allegedly damaged thereby.[11]

In the interest of brevity, the Court is respectfully referred to Plaintiffs' previously filed motion for class certification for a complete recitation of the arguments supporting class certification. *See* ECFs 90-92, 115-116. Pursuant to Rule 23(a): (i) the Settlement Class is so numerous that joinder of all members would be impracticable (ECF 91 at 12-13); (ii) there are questions of law or fact common to the Settlement Class (*id*. at 13-14); (iii) the claims or defenses of Plaintiffs are typical of the claims or defenses of the Settlement Class (*id*. at 14-15); and (iv) Plaintiffs and Co-Lead Counsel will fairly and adequately protect the interests of the Settlement Class (*id*. at 15-17).

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets this standard: (i) common questions of both fact and law predominate, given the presumptions of reliance under *Basic*, 485 U.S. at 241-42 or *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) (ECF 91 at 17-29); and (ii) a class action would be superior to other methods for the fair and efficient adjudication of the claims (*id*. at 30).

---

[11]    Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Family of any Defendant who is an individual; (iii) any person who was an officer or director of Uniti during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest; (v) Uniti's employee retirement and benefit plan(s) (as well as any such plan's participants or beneficiaries as to any purchases made by such participants or beneficiaries through such plan(s)); (vi) Windstream Holdings, Inc. ("Windstream"); (vii) any person who was an officer or director of Windstream during the Class Period; and (viii) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person. Any person or entity who or which timely and validly requests exclusion from the Settlement Class will also be excluded. *See* ¶1.33.

- 19 -

Courts within the Eighth Circuit have long acknowledged the propriety of certifying settlement classes. *See, e.g.*, *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995) (upholding district court's preliminary certification of class for settlement purposes and affirming the settlement); *In re Pemstar, Inc. Sec. Litig.*, 2005 WL 1737867, at *1 (D. Minn. Mar. 17, 2005) (court conditionally certifying settlement class). For the foregoing reasons, Plaintiffs respectfully request that the Court preliminarily certify the Settlement Class for purposes of implementing the proposed Settlement.

*       *       *

Accordingly, consideration of all the foregoing factors supports preliminary approval of the Settlement.[12]

## VII.   THE PROPOSED NOTICE SHOULD BE APPROVED

Under Rule 23, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23 requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

As outlined in the agreed-upon proposed Preliminary Approval Order, if the Court grants preliminary approval, Co-Lead Counsel will cause the Claims Administrator to notify Settlement Class Members of the Settlement by mailing the Notice and Claim Form to all persons and entities who can be identified with reasonable effort. The Notice will advise Settlement Class Members of:

---

[12]   The fourth factor that courts in the Eighth Circuit examine, "the reaction of the class [to] the Settlement," is inapplicable at the preliminary approval stage as the class has not yet had the opportunity to comment on the Settlement. *CenturyLink*, 2020 WL 7133805, at *12. This factor will be analyzed in connection with final approval, after notice of the Settlement has been disseminated to the Settlement Class and Settlement Class Members have had an opportunity to assess the Settlement and comment on it.

- 20 -

(i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Co-Lead Counsel's motion for attorneys' fees and expenses. The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for submitting a Claim Form, for requesting exclusion from the Settlement Class, and for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and expenses. The proposed Preliminary Approval Order also requires Co-Lead Counsel to cause the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over a national newswire service, and to post a copy of the Notice and Claim Form and other relevant settlement documents on a website to be created for this Settlement.

Thus, the form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7). *See In re: E.W. Blanch Holdings, Inc. Sec. Litig.*, 2003 WL 23335319, at *1 (D. Minn, June 16, 2003) (approving similar notice program). The Notice and Summary Notice are "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Campbell v. Transgenomic, Inc.*, 2019 WL 3003920, at *2 (D. Neb. July 10, 2019).

## VIII.   PROPOSED SETTLEMENT SCHEDULE

The Parties respectfully propose the following schedule for the Court's consideration, which is set forth in the proposed Preliminary Approval Order. The only date the Court needs to schedule is the date for the final Settlement Hearing:

| | |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") (*see* Order, ¶8) | No later than 10 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice (*see* Order, ¶11) | No later than 14 calendar days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses (*see* Order, ¶24) | 35 calendar days prior to the Settlement Hearing |

| Deadline for receipt of exclusion requests or objections (*see* Order, ¶¶15, 18) | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (*see* Order, ¶24) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting proof of the mailing of the Notice to Settlement Class Members and publication of the Summary Notice (*see* Order, ¶¶10, 11) | At or before the Settlement Hearing |
| Settlement Hearing (*see* Order, ¶5) | At least 100 calendar days after the filing of this Motion |
| Deadline for submitting Claim Forms (*see* Order, ¶13) | Postmarked no later than 120 calendar days after the Notice Date |

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs and Mr. He respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

DATED:  June 17, 2022                     Respectfully submitted,

DEBRA J. WYMAN
California Bar No. 190812
Attorney for Lead Plaintiff
ROBBINS GELLER RUDMAN
  & DOWD LLP
TING H. LIU
JOSEPH J. TULL
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  debraw@rgrdlaw.com
          tliu@rgrdlaw.com
          jtull@rgrdlaw.com

LABATON SUCHAROW LLP
CAROL C. VILLEGAS
CHRISTINE M. FOX
CHARLES FARRELL
DAVID SALDAMANDO
140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
E-mail:  cvillegas@labaton.com
          cfox@labaton.com
          cfarrell@labaton.com
          dsaldamando@labaton.com

Lead Counsel for Lead Plaintiffs

GEOFFREY P. CULBERTSON
Arkansas Bar No. 2014011
PATTON TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana,  TX  75503
Telephone:  903/792-7080
903/792-8233 (fax)
E-mail:  gpc@texarkanalaw.com

Liaison Counsel for the Class

SCHALL LAW FIRM
BRIAN SCHALL
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  424/303-1964
877/590-0483 (fax)
Email:  brian@schallfirm.com

Additional Plaintiffs' Counsel

4892-9775-9269.v1