UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| In re UNITI GROUP INC. SECURITIES LITIGATION | ) ) ) | Master File No. 4:19-cv-00756-BSM |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION |
| ALL ACTIONS. | ) ) ) ) | FOR FINAL APPROVAL OF SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

III.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ............... 3

    A.   The Standards for Final Approval of Class Action Settlements .................. 3

    B.   The Proposed Settlement Satisfies Both the Rule 23(e)(2) and the
           Eighth Circuit Requirements .......................................................................... 5

        1.   Plaintiffs and Co-Lead Counsel Have Adequately
                Represented the Settlement Class ...................................................... 6

        2.   The Settlement Was Reached After Arm's-Length
                Negotiations with the Assistance of an Experienced Mediator ......... 7

        3.   The Settlement Is Fair, Reasonable, and Adequate ........................... 8

        4.   Defendants' Financial Condition Supports Final Approval of
                the Settlement .................................................................................. 12

        5.   The Reaction of the Settlement Class to Date Supports Final
                Approval of the Settlement ............................................................... 12

        6.   All Other Rule 23(e)(2)(C) Factors Are Met ................................... 13

        7.   The Settlement Treats Settlement Class Members Equitably
                Relative to Each Other ...................................................................... 16

IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
        ADEQUATE ...................................................................................................... 16

V.      THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT
        CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT ............. 18

VI.     THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23
        AND DUE PROCESS REQUIREMENTS AND IS REASONABLE ................. 19

VII.    CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

Page

## CASES

*Bredthauer v. Lundstrom*,
  2012 WL 4904422 (D. Neb. Oct. 12, 2012) ............................................................ 20

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio 2001) ...................................................................... 13

*Campbell v. Transgenomic, Inc.*,
  2020 WL 2946989 (D. Neb. June 3, 2020)................................................................. 18

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974),
  *abrogated sub nom. by Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)........................................................................................... 5

*DeBruycker v. PM Beef Holdings, LLC*,
  2005 WL 681298 (D. Minn. Mar. 2, 2005) .............................................................. 11

*Eisen v. Carlisle & Jaquelin*,
  417 U.S. 156 (1974)..................................................................................................... 19

*George v. Uponor Corp.*,
  2015 WL 5255280 (D. Minn. Sept. 9, 2015) .............................................................. 3

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ........................................................................................ 5

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) .................................................................................... 12

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).............................................................. 12

*In re Centurylink Sales Pracs. & Sec. Litig.*,
  2020 WL 7133805 (D. Minn. Dec. 4, 2020).................................................... 3, 7, 8, 11

*In re Centurylink Sales Pracs. & Sec. Litig.*,
  2021 WL 3080960 (D. Minn. July 21, 2021) ....................................................... 5, 15

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg.,*
  *Sales Pracs. & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019)............................................................... 5

Page

*In re: E.W. Blanch Holdings, Inc. Sec. Litig.*,
2003 WL 23335319 (D. Minn. June 16, 2003)..........................................................20

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ....................................................................9, 10

*In re Resideo Techs., Inc., Sec. Litig.*,
2022 WL 872909 (D. Minn. Mar. 24, 2022) ...............................................................3

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................................................15

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
716 F.3d 1057 (8th Cir. 2013) ...............................................................................3, 8

*In re Wireless Tele. Fed. Cost Recovery Fees Litig.*,
396 F.3d 922 (8th Cir. 2005) ..........................................................................5, 8, 12

*Klug v. Watts Regul. Co.*,
2016 WL 7156478 (D. Neb. Dec. 7, 2016)................................................................21

*Lechner v. Mut. of Omaha Ins. Co.*,
2021 WL 424421 (D. Neb. Feb. 8, 2021) ..................................................................17

*Paxton v. Union Nat'l Bank*,
688 F.2d 552 (8th Cir. 1982) ......................................................................................6

*Peace Officers Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
2021 WL 1387110 (D. Colo. Apr. 13, 2021)..............................................................18

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) .....................................................................................4

*Phillips v. Caliber Home Loans, Inc.*,
2021 WL 3030648 (D. Minn. July 19, 2021) .........................................................7, 11

*Phillips v. Caliber Home Loans, Inc.*,
2022 WL 832085 (D. Minn. Mar. 21, 2022) ..........................................................7, 11

*Ret. Fund v. Tile Shop Holdings, Inc.*,
2017 WL 2574005 (D. Minn. June 14, 2017)...............................................................3

*Reynolds v. Credit Bureau Servs., Inc.*,
2016 WL 389977 (D. Neb. Feb. 1, 2016) ..................................................................20

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   695 F. Supp. 2d 521 (E.D. Ky. 2010),
   *aff'd sub nom.*, *Poplar Creek Dev. Co.*
   *v. Chesapeake Appalachia, L.L.C.*,
   636 F.3d 235 (6th Cir. 2011) ............................................................................ 13

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ............................................................................. 4

*White v. Nat'l Football League*,
   822 F. Supp. 1389 (D. Minn. 1993),
   *aff'd*, 41 F.3d 402 (8th Cir. 1994) .................................................................. 17

*Yarrington v. Solvay Pharms., Inc.*,
   2010 WL 11453553 (D. Minn. Mar. 16, 2010) ................................................ 3, 8, 11

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78u-4(a)(4) ....................................................................................................... 1, 15
   §78u-4(a)(7) ....................................................................................................... 20

Federal Rules of Civil Procedure
   Rule 23 ............................................................................................................... 4, 17
   Rule 23(a) .......................................................................................................... 19
   Rule 23(b)(3) ..................................................................................................... 18, 19
   Rules 23(c)(2) .................................................................................................... 19, 20
   Rule 23(e) ........................................................................................................... 3, 4
   Rule 23(e)(1)(B) ................................................................................................ 19
   Rule 23(e)(2) ...................................................................................................... 4, 5
   Rule 23(e)(2)(A) ................................................................................................ 6
   Rule 23(e)(2)(C) ................................................................................................ 8, 13
   Rule 23 (e)(2)(C)(ii)-(iv) ................................................................................. 14
   Rule 23(e)(2)(C)(iv) .......................................................................................... 15
   Rule 23(e)(2)(D) ................................................................................................ 16
   Rule 23(e)(3) ...................................................................................................... 4, 14, 15

## SECONDARY AUTHORITIES

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements:*
   *2021 Review and Analysis* (Cornerstone Research 2022) .......................... 1, 2

## I.    INTRODUCTION

Pursuant to Rule ("Rule") 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Steamfitters Local 449 Pension Plan, Wayne County Employees' Retirement System, and David McMurray, on behalf of himself and as sole beneficiary of the David McMurray R/O IRA (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their motion for final approval of the $38.875 million Settlement reached in the above-caption securities class action (the "Action" or "Litigation"), and approval of the Plan of Allocation (the "Plan" or "Plan of Allocation").  The terms of the proposed Settlement are set forth in the Stipulation and Agreement of Settlement dated June 17, 2022, which was previously filed with the Court ("Stipulation" or "Settlement").  ECF 124.[1]  The Court granted preliminary approval of the Settlement on July 20, 2022 ("Preliminary Approval Order").  ECF 128.

The proposed Settlement provides for the payment of $38.875 million to investors who purchased or acquired Uniti Group Inc. ("Uniti" or the "Company") common stock, call options, or certain bonds, or sold Uniti put options between April 24, 2015 and June 24, 2019, inclusive (the "Class Period"), and were damaged thereby.  This an excellent result for the Settlement Class, as it far exceeds both the average ($20.5 million) and median ($8.3 million) settlement amounts in securities class actions resolved during 2021.  *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and*

---

[1]    Unless otherwise noted, all terms capitalized herein are defined in the Stipulation or the Joint Declaration of Christine M. Fox and Debra J. Wyman in Support of: (I) Final Approval of Settlement and Approval of Plan of Allocation, and (II) an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Joint Decl." or "Joint Declaration"), submitted herewith.  All exhibits referenced herein are attached to the Joint Declaration.

*Analysis*, at 1 (Cornerstone Research 2022) ("Cornerstone Report"), Ex. 11.  The Settlement Amount far exceeds the $14.7 million median settlement amount for cases settled in the Eighth Circuit between 2012 and 2021.  *Id.* at 19, Appendix 3.

Further confirming the fairness of the proposed Settlement is the fact that, to date, there have been no objections to the Settlement or the Plan of Allocation.  Over 356,400 copies of the Notice have been sent to potential Settlement Class Members and nominees and notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*.  *See* accompanying Declaration of Lance Cavallo Regarding (A) Mailing of Notice and Claim Form; (B) Publication of Summary Notice; (C) Establishment of the Telephone Hotline; (D) Establishment of the Settlement Website; and (E) Report on Requests for Exclusion Received to Date ("KCC Decl."), ¶¶3-9, submitted herewith.

Finally, Co-Lead Counsel, with substantial experience successfully prosecuting securities class actions, and the Plaintiffs, who or which actively and faithfully oversaw this Litigation for almost three years in accordance with their duties to the class, have concluded that the proposed Settlement and proposed Plan are fair, reasonable, and adequate and in the best interests of the Settlement Class.  Accordingly, for the reasons set forth herein and in the accompanying Joint Declaration, the proposed Settlement and proposed Plan warrant the Court's approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Plaintiffs respectfully refer the Court to the accompanying Joint Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Plaintiffs and their counsel during the course

of the Litigation, and the factors bearing on the approval of the Settlement and Plan of Allocation.

## III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.   The Standards for Final Approval of Class Action Settlements

Voluntary resolution through settlement is favored. *Beaver Cnty. Emps.' Ret. Fund v. Tile Shop Holdings, Inc.*, 2017 WL 2574005, at *2 (D. Minn. June 14, 2017); *George v. Uponor Corp.*, 2015 WL 5255280, at *6 (D. Minn. Sept. 9, 2015) ("'The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context.'").[2]   In the Eighth Circuit, "'strong public policy favors [settlement] agreements, and courts should approach them with a presumption in [its] favor.'" *In re Centurylink Sales Pracs. & Sec. Litig.*, 2020 WL 7133805, at *6 (D. Minn. Dec. 4, 2020) ("*Centurylink I*"); *see also In re Resideo Techs., Inc., Sec. Litig.*, 2022 WL 872909, at *1 (D. Minn. Mar. 24, 2022) ("A class-action settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)).   Indeed, "[t]he presumption in favor of such settlements reflects courts' understandings that vigorous negotiations between experienced counsel protect against collusion and advance the fairness concerns underlying Rule 23(e)." *Yarrington v. Solvay Pharms., Inc.*, 2010 WL 11453553, at *7 (D. Minn. Mar. 16, 2010).

---

[2]      All citations are omitted and emphasis is added throughout unless otherwise noted.

Pursuant to Rule 23, a court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2) directs the court to consider whether:[3]

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Eighth Circuit has also established four factors which overlap with those in Rule 23(e)(2) for determining whether a proposed settlement is fair, reasonable, and adequate: "the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). An analysis of the relevant factors weighs unequivocally in favor of granting final approval of the Settlement.

In exercising its discretion, the court's examination is limited to determining that the settlement agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir.

---

[3] Amended Rule 23(e) identifies specific factors for district courts to assess in evaluating fairness, reasonableness, and adequacy. The "goal of this amendment is not to displace any [of the circuit's unique] factor[s]." Fed. R. Civ. P. 23(e)(2) (Advisory Committee Notes to 2018 Amendments, Subdivision (e)(2)).

1999) (judges should not substitute its judgment for that of the litigants); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) ("'neither the trial court in approving the settlement nor this Court in reviewing [the] approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute'") (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974), *abrogated sub nom. by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). "'The district court need not make a detailed investigation consonant with trying the case; it must, however, provide the appellate court with a basis for determining that its decision rests on well-reasoned conclusions and is not mere boilerplate.'" *In re Centurylink Sales Pracs. & Sec. Litig.*, 2021 WL 3080960, at *5 (D. Minn. July 21, 2021) ("*Centurylink II*") (citing *In re Wireless Tele. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-33 (8th Cir. 2005)).

**B.    The Proposed Settlement Satisfies Both the Rule 23(e)(2) and the Eighth Circuit Requirements**

As acknowledged by the Preliminary Approval Order, Plaintiffs have met all of the requirements imposed by Rule 23(e)(2).  ECF 128.  Courts analyzing the Rule 23(e)(2) factors have noted that satisfaction of these factors is virtually assured where, as here, little has changed between preliminary approval and final approval.  *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now").  Applying these criteria and the requirements under Eighth Circuit jurisprudence warrants this Court's final approval.

### 1. Plaintiffs and Co-Lead Counsel Have Adequately Represented the Settlement Class

To determine whether the "class representatives and class counsel have adequately represented the class" pursuant to Fed. R. Civ. P. 23(e)(2)(A), the Court must ascertain whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

At every stage of the Litigation, Plaintiffs and Co-Lead Counsel have adequately represented the class. Here, there is no conflict between Plaintiffs and the Settlement Class, and as this Court previously found, Plaintiffs' interests in this case are directly aligned with those of the other Settlement Class Members. ECF 128, ¶3.

Plaintiffs also retained capable and experienced lawyers. The record reflects that Plaintiffs and Co-Lead Counsel have diligently prosecuted this Litigation by, among other things: conducting a thorough pre-trial investigation into the class's claims; drafting detailed amended complaints; opposing and defeating Defendants' motion to dismiss; defeating Defendants' Motion for Reconsideration; conducting extensive class certification and fact discovery, including obtaining and reviewing over one million pages of documents produced by Defendants and third parties and responding to interrogatories; conducting eight fact depositions and one expert deposition, defending four depositions in connection with class certification (one of which was Plaintiffs' market efficiency expert); responding to discovery propounded by Defendants; litigating discovery disputes; briefing Plaintiffs' class certification motion; and negotiating this proposed Settlement with the assistance of David

M. Murphy, Esq., a well-known and experienced mediator.  *See generally* Joint Decl.

Plaintiffs and Co-Lead Counsel stood ready to, and at all times did, advocate for the best

interests of the Settlement Class.

> ### 2.    The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator

When a "settlement was negotiated at arms' length between experienced and

sophisticated counsel, . . . [there is a] presumption that it is fair and reasonable." *Phillips v.*

*Caliber Home Loans, Inc.*, 2021 WL 3030648, at \*6 (D. Minn. July 19, 2021) ("*Phillips I*").

Here, the parties, together with client representatives, engaged in a full-day mediation

session with Mr. Murphy in March 2022.  In preparation for the mediation, both sides

submitted and exchanged substantial materials in support of their respective positions.

Throughout the day, both parties engaged in detailed, substantive discussions with Mr.

Murphy, each advancing its perceived strengths and weaknesses of the Litigation.  The

mediation concluded without a resolution of the case.  The following day, Mr. Murphy made

a mediator's proposal to resolve the case for $38.875 million, which was accepted by the

parties.  Joint Decl., ¶100.  At all times, the negotiations were hard fought and at arm's

length.  *See Centurylink I*, 2020 WL 7133805, at \*6 (the utilization of "an experienced

mediator" during settlement negotiations supports a finding that the settlement is reasonable

and should be approved); *Phillips v. Caliber Home Loans, Inc.*, 2022 WL 832085, at \*2 (D.

Minn. Mar. 21, 2022) (settlement approved where the parties "participated in a full-day

mediation session") ("*Phillips II*").

At this advanced stage of the litigation, at the completion of fact discovery, and

engaging in substantive, arm's-length mediation, the parties had a thorough understanding of

their claims' respective strengths and weaknesses. *See, e.g.*, *Yarrington*, 2010 WL 11453553, at *8 (settlement negotiated at arms' length as "settlement discussions in this case were protracted, with attempts to reach resolution spanning several years," and "[a]ttorneys on both sides are very experienced . . . well-versed in the legal and factual issues implicated in this action"); *CenturyLink I*, 2020 WL 7133805, at *6 (approving settlement reached "at a stage in the litigation in which the parties understood the strengths and weakness of [its] case").

### 3.      The Settlement Is Fair, Reasonable, and Adequate

Under Rule 23(e)(2)(C), in determining whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," courts take into consideration "'the merits of the plaintiff's case[] weighed against the terms of the settlement'" and "'the complexity and expense of further litigation.'" *Uponor*, 716 F.3d at 1063; *Centurylink I*, 2020 WL 7133805, at *6. As set forth below, the record demonstrates that these factors weigh in favor of approval.

#### a.      The Merits of the Settlement Class's Claims, Weighed Against the Terms of the Settlement, Support Final Approval of the Settlement

"The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Wireless*, 396 F.3d at 933. Courts have long recognized that securities fraud class actions such as this one present a myriad of risks that a plaintiff must overcome to ultimately secure a recovery. *See, e.g.*, *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) ("[S]ecurities fraud cases require significant

showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish.'").

This Action alleged that Defendants violated federal securities laws by making material misstatements and omissions regarding the April 24, 2015 Spin-Off transaction and the Master Lease entered into as a result of the Spin-Off transaction.   Joint Decl., ¶5. Plaintiffs allege that this complicated and impermissible way for Defendants to avoid certain restrictive covenants, which Windstream had entered into in connection with prior unsecured notes that Windstream had issued, caused the price of Uniti securities to trade at artificially inflated levels.  Plaintiffs allege the truth began to be revealed in August 2017; was further revealed in September 2017, in February 2019 and, finally, on June 24, 2019, Joint Decl., ¶29, when all the artificial inflation was completely removed from Uniti securities.

Despite Plaintiffs' belief that their claims were meritorious, there were significant risks to proceeding, especially with respect to establishing falsity, scienter, and loss causation.  Joint Decl., ¶¶105-127.

**Materiality and Falsity and Scienter**: For example, Defendants would continue to argue that Plaintiffs could not to establish that Defendants made any materially misleading statements or omissions with the requisite scienter.  *See* ECF 64.  Defendants have repeatedly argued that they believed at the time they made the alleged misstatements and/or omitted information that they were acting legally and properly based on representations they received from well-respected legal counsel and financial advisors who worked on structuring the Spin-Off transaction and Master Lease.  Joint Decl., ¶106.

**Loss Causation and Damages**: Even if Plaintiffs ultimately prevailed in proving falsity and scienter, this Action would have involved significant risks with respect to establishing loss causation and damages. *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 841-42 ("[P]laintiffs at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony . . . . The high risk faced by taking the case to a jury verdict demonstrates the adequacy of this . . . settlement."). Defendants argued that Plaintiffs' showing of market efficiency, as to Uniti's options, suffered from numerous deficiencies. Joint Decl., ¶120. Defendants vigorously asserted that the price declines in Uniti's securities' prices on the relevant dates were not corrective of any material misstatement and that Plaintiffs could not establish their materialization of the risk theory of loss causation. Joint Decl., ¶¶120-121.

Defendants also framed Plaintiffs' damages theories as "three distinct theories of liability," which they claimed corresponded to a different time frame and warranted a different analysis of the *Basic* presumption of reliance. *Id.*, ¶123.

Finally, Defendants argued that the four disclosures identified in the Amended Complaint either had no connection to the alleged misrepresentations or omissions, or revealed no new factual information regarding the alleged omissions or hidden risks. *Id.*, ¶124. Defendants argued that Plaintiffs would be unable to prove loss causation with the alleged stock drops on the disclosure dates. *Id.* Defendants also argued that almost all of the alleged disclosures involved events that primarily impacted Windstream's financial condition (as opposed to Uniti's) and the fact that Uniti's stock price fell in response, was not the result of fraud. *Id.*

While Plaintiffs believe they had strong counterarguments on all of these points, at bottom, the fact remains that the Court at summary judgment or the jury at trial could have found such arguments persuasive, thereby significantly reducing or even completely eliminating recoverable damages. *See, e.g.*, *DeBruycker v. PM Beef Holdings, LLC*, 2005 WL 681298, at *1 (D. Minn. Mar. 2, 2005) (defendants' advancement of arguments that "if successful, would have reduced [Lead Plaintiff's] ultimate recovery" justified the settlement). Furthermore, "without settlement, the case would ""'likely drag on for years, [and] require the expenditure of millions of dollars, all the while class members would receive nothing.""'" *Yarrington*, 2010 WL 11453553, at *9; *see also Phillips I*, 2021 WL 3030648, at *6 ("continued litigation likely would take several years to resolve").

**b.    The Complexity and Expense of Further Litigation Supports Final Approval of the Settlement**

Courts have consistently recognized that the complexity, expense, and likely duration of the litigation are critical factors in evaluating the reasonableness of a settlement, especially when the settlement being evaluated is a securities class action. *See, e.g.*, *Phillips II*, 2022 WL 832085, at *3 ("'many of the immediate and tangible benefits' of settlement would be lost through continued litigation, making the proposed settlement 'an attractive resolution' of the case"); *Centurylink I*, 2020 WL 7133805, at *7 ("even if [Lead Plaintiff] were successful, the . . . costs and risks of continued litigation in such a large, complex case would be significant"). This case, with numerous intricate legal and factual issues – including those related to falsity, scienter, loss causation, and damages – was no exception.

Without a settlement, this case would require the expenditure of substantial additional time and money, "'all the while class members would receive nothing.'" *Wireless*, 396 F.3d

at 933.  Assuming Plaintiffs successfully defeated Defendants' likely motions for summary judgment and to exclude Plaintiffs' damages expert, a trial in this case could take weeks and would be a byzantine undertaking for the Court and jurors.  *See In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) (due to its "notorious complexity," securities class actions often settle to "circumvent[] the difficulty and uncertainty inherent in long, costly trials").  And even if Plaintiffs prevailed at trial, post-trial motions and appeals certainly would follow, during which time the Settlement Class would receive no distribution of any damages award.  In addition, a post-trial motion or an appeal of any favorable verdict would carry the risk of reversal, in which case the Settlement Class would receive no recovery at all – ever.  *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming a lower court ruling that granted defendants' motion for judgment as a matter of law based on plaintiff's failure to prove loss causation, thereby overturning a jury verdict in plaintiff's favor).  Accordingly, analysis of this factor supports final approval of the Settlement.

### 4.       Defendants' Financial Condition Supports Final Approval of the Settlement

Defendants have mounted a vigorous defense for years, and the funds available to satisfy a settlement or judgment were being depleted by defense and litigation costs. Accordingly, this factor weighs in support of final approval of the Settlement.

### 5.       The Reaction of the Settlement Class to Date Supports Final Approval of the Settlement

Pursuant to this Court's Preliminary Approval Order, the Court-approved Notice and Proof of Claim and Release Form ("Claim Form") were mailed to potential Settlement Class Members who could be identified with reasonable effort and the Summary Notice was

published in *The Wall Street Journal*, and over the *PR Newswire*.  KCC Decl., ¶¶3-9.  The Notice advises the Settlement Class of the terms of the Settlement and the Plan of Allocation as well as the procedure and deadline for filing objections.  As of September 28, 2022, over 356,400 Notices and Claim Forms have been mailed to potential Settlement Class Members and nominees.  *Id.*, ¶8.

The objection deadline is October 14, 2022, and to date, no objections have been received to the Settlement, the Plan of Allocation, or Co-Lead Counsel's request for an award of attorneys' fees and expenses.  There have been only six requests for exclusion from the Settlement Class.  *See id.*, ¶13.[4]

### 6.     All Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of: (a) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" (b) "the terms of any proposed award of attorney's fees, including timing of payment;" and (c) "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  These factors support approval of the Settlement or are neutral and do not suggest any basis for inadequacy of the Settlement.

First, the procedures for processing Settlement Class Members' claims and distributing the proceeds of the Settlement to eligible claimants in this case are well-

---

[4]     Even if there are objection(s), "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).  "'A certain number of . . . objections are to be expected in a class action . . . .'" *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom.*, *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

established, effective methods that have been widely used in securities class-action litigation. The proceeds of the Settlement will be distributed on a *pro rata* basis to Settlement Class Members who submit eligible Claim Forms with required documentation to the Court-appointed Claims Administrator, Kurtzman Carson Consultants LLC ("KCC"). KCC will provide claimants with an opportunity to cure any deficiencies in their claims or request review by the Court of a claim denial and will mail or wire eligible claimants their *pro rata* share upon completion of the claims process.

After the Effective Date of the Settlement, in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund will be distributed to Authorized Claimants. If there is any balance remaining in the Net Settlement Fund after the initial distribution, and it would be feasible and economical to conduct a further distribution, KCC will conduct a further distribution of remaining funds among Authorized Claimants who have cashed its initial checks. Any *de minimis* balance that still remains after re-distributions and after payment of outstanding expenses and Taxes, if any, shall be contributed to one of more non-profit and non-sectarian organizations unaffiliated with Defendants' Counsel, Plaintiffs' Counsel, or the Parties. *See* Stipulation (ECF 124 at ¶7.5).

The relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees are taken into account. As discussed in the accompanying Memorandum of Law in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4), the

proposed attorneys' fees of 30% of the Settlement Fund, to be paid upon approval by the Court, are reasonable in light of the efforts of Co-Lead Counsel and the risks in the Litigation.  Moreover, approval of attorneys' fees is entirely separate from approval of the Settlement in this case, and neither Plaintiffs nor Co-Lead Counsel may terminate the Settlement based on any ruling with respect to attorneys' fees.  *See* Stipulation, ¶5.7.

The court must also consider the fairness of the proposed settlement in light of any agreements required to be identified under Rule 23(e)(3).   *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).  Here, the only agreements between the parties concerning the Settlement are the Term Sheet memorializing the agreement in principle, the Stipulation, and the parties' confidential Supplemental Agreement, which sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain specified threshold.  *See* Stipulation, ¶12.2.  This does not weigh against approval.  *Centurylink II*, 2021 WL 3080960, at *7 ("The Court routinely approves class action settlements when there is a confidential agreement allowing the defendant to terminate the settlement if a particular threshold of class members opt out.  The existence of such an agreement does not weigh against approval."); *see also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) ("This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement.").  As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class.

7.      **The Settlement Treats Settlement Class Members Equitably Relative to Each Other**

The proposed Settlement treats Members of the Settlement Class equitably relative to one another.  *See* Fed. R. Civ. P. 23(e)(2)(D).  As discussed below, pursuant to the Plan of Allocation, eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery based on their purchases or acquisitions of Uniti securities during the Class Period.  Plaintiffs will receive the same type of *pro rata* recovery as all other Settlement Class Members.[5]

Each of the above factors fully supports a finding that the Settlement is fair, reasonable, and adequate, and therefore deserves this Court's final approval.

## IV.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

Co-Lead Counsel also seek approval of the Plan of Allocation.  The Plan of Allocation is set forth in the Notice mailed to Settlement Class Members and provides an equitable basis to allocate the Net Settlement Fund among all Settlement Class Members who submit an acceptable Claim Form.

Assessment of a plan of allocation in a class action under Rule 23 is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair and reasonable.  *See Lechner v. Mut. of Omaha Ins. Co.*, 2021 WL 424421, at *4 (D. Neb. Feb. 8, 2021) ("The Plan of Allocation for the Settlement Fund is approved as fair, reasonable, and adequate.").

---

[5]     Plaintiffs have separately moved for an award to compensate them for their time expended and expenses incurred on this Action, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").  The Settlement is in no way contingent upon whether any such awards are granted.

The objective of a plan of allocation is to provide an equitable basis upon which to distribute the settlement fund among eligible class members. An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1420 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994).

Here, the Plan of Allocation, which was developed by Co-Lead Counsel in consultation with their damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. In developing the Plan, Plaintiffs' damages expert calculated the amount of estimated artificial inflation in the prices of Uniti's securities during the Class Period that allegedly was caused by Defendants' alleged false and misleading statements. Plaintiffs' expert did so by considering the price changes in Uniti's securities in reaction to certain public announcements regarding Uniti in which such misrepresentations were alleged to have been revealed to the market, adjusting for any price changes that were attributable to market forces, the allegations in the Amended Complaint, and the evidence developed in support thereof. Joint Decl., ¶137.

Co-Lead Counsel believe that the Plan of Allocation will result in a fair and equitable distribution of the proceeds among Settlement Class Members who submit valid Claim Forms and, thus, it should be approved. Significantly, no one has objected to the Plan of Allocation. Courts routinely approve substantially similar methods of distributing recoveries in securities class actions such as this one, and Plaintiffs respectfully submit that this Court should approve the Plan of Allocation submitted here. *See, e.g.*, *Peace Officers Annuity &*

*Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110, at *5 (D. Colo. Apr. 13, 2021) (approving as fair and reasonable a similar plan); *Campbell v. Transgenomic, Inc.*, 2020 WL 2946989, at *5 (D. Neb. June 3, 2020) (finding "formula for the calculation of the claims of the authorized claimants" was "a fair and reasonable basis upon which to allocate the proceeds of the settlement fund").

## V.   THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In their motion for preliminary approval of the Settlement, Plaintiffs requested that the Court certify the Settlement Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Settlement Class Members to object to the Settlement, request exclusion from the Settlement Class, or submit Claim Forms, could be issued.  ECF 123 at §VI.  In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The Court found that Plaintiffs had met the requirements for certification of the Settlement Class for purposes of the Settlement.  ECF 128 at ¶¶2-3.  Specifically, in the Preliminary Approval Order, the Court preliminarily certified a class of "all persons and entities who or which, during the period from April 24, 2015 to June 24, 2019, inclusive (the "Class Period"):  (1) purchased or otherwise acquired; (a) the common stock of Uniti Group Inc. f/k/a Communications Sales & Leasing, Inc.; (b) call options of Uniti; or (c) [certain] bonds issued by Uniti and/or its subsidiaries . . .; or (2) sold put options of Uniti; and in each of the foregoing cases, were allegedly damaged thereby."  ECF 128, ¶2.  In addition, the Court preliminarily certified Plaintiffs as Class Representatives and Co-Lead Counsel as Class Counsel.  *Id.*, at ¶4.

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes.  Thus, for all the reasons stated in Plaintiffs' motion for preliminary approval (incorporated herein by reference), Plaintiffs respectfully request that the Court affirm its preliminary certification and finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), and appoint Plaintiffs as Class Representatives and Co-Lead Counsel as Class Counsel.

## VI.    THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS AND IS REASONABLE

Rule 23(c)(2) requires the "'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'"  *Eisen v. Carlisle & Jaquelin*, 417 U.S. 156, 173 n.11 (1974) (class notice designed to fulfill due process requirements).  "The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]."  Fed. R. Civ. P. 23(e)(1)(B).  The standard for measuring the adequacy of a class action settlement notice is reasonableness.  *Bredthauer v. Lundstrom*, 2012 WL 4904422, at *3 (D. Neb. Oct. 12, 2012); *Reynolds v. Credit Bureau Servs., Inc.*, 2016 WL 389977, at *5 (D. Neb. Feb. 1, 2016) (stating notice is adequate if "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present [its] objections'").

Here, in accordance with the Preliminary Approval Order, beginning on August 3, 2022, the Claims Administrator caused the Notice and Claim Form to be mailed to potential Settlement Class Members and their nominees.  KCC Decl., ¶¶3-8.  In addition, the Summary Notice was published in *The Wall Street Journal* and over the *PR Newswire*.  *Id.*,

¶9.  As of September 28, 2022, over 356,400 copies of the Notice have been mailed to potential Settlement Class Members and nominees.  *Id.*, ¶8.  The Notice contains a description of the claims asserted, the Settlement, the Plan of Allocation, and Settlement Class Members' rights to participate in and object to the Settlement or the fees and expenses that Co-Lead Counsel intend to request, or to exclude themselves from the Settlement Class. Information regarding the Settlement, including downloadable copies of the Notice and Claim Form, was also posted on a website devoted solely to the administration of the Settlement: www.UnitiGroupSecuritiesLitigation.com.  *Id.*, ¶11.

The notice program, approved by the Court, which combined an individual, mailed Notice and Claim Form to all potential Settlement Class Members and nominees who could be identified with reasonable effort, and a Summary Notice published in a preeminent business publication and once over the internet, contained all of the information required by §21D(a)(7) of the PSLRA, and is adequate to meet the due process and Rules 23(c)(2) and (e) requirements for providing notice to the Settlement Class.  *In re: E.W. Blanch Holdings, Inc. Sec. Litig.*, 2003 WL 23335319, at *1 (D. Minn. June 16, 2003) (approving similar notice program); *Klug v. Watts Regul. Co.*, 2016 WL 7156478, at *24 (D. Neb. Dec. 7, 2016) (finding that "the combination of the summary postcard notice delivered by mail and the reference to a website that contains the complete notice, the claim form, the proposed settlement agreement, and other case information, is the best notice practicable under the circumstances").

## VII.   CONCLUSION

Plaintiffs were prepared to bring this case to trial and believe that they would have won, but trial was certainly fraught with risk.  As detailed herein, this $38,875,000

Settlement is an excellent result for the Settlement Class, and the product of extensive

litigation efforts and settlement negotiations, and it avoids the considerable risk, expense,

and delay if the Litigation were to continue.  In addition, the Plan of Allocation will result in

a fair and reasonable distribution of the proceeds.  Therefore, Plaintiffs respectfully request

that this Court approve the Settlement of this Litigation and the Plan of Allocation as fair,

reasonable, and adequate.

DATED:  September 30, 2022          Respectfully submitted,

                                   ELLEN GUSIKOFF STEWART
                                   California Bar No. 144892
                                   DEBRA J. WYMAN
                                   California Bar No. 190812
                                   ROBBINS GELLER RUDMAN
                                     & DOWD LLP
                                   TING H. LIU
                                   JOSEPH J. TULL

                                   655 West Broadway, Suite 1900
                                   San Diego, CA  92101-8498
                                   Telephone:  619/231-1058
                                   619/231-7423 (fax)
                                   E-mail:  elleng@rgrdlaw.com
                                            debraw@rgrdlaw.com
                                            tliu@rgrdlaw.com
                                            jtull@rgrdlaw.com

                                   LABATON SUCHAROW LLP
                                   CAROL C. VILLEGAS
                                   CHRISTINE M. FOX
                                   GUILLAUME BUELL
                                   140 Broadway, 34th Floor
                                   New York, NY  10005
                                   Telephone:  212/907-0700
                                   212/818-0477 (fax)
                                   E-mail:  cvillegas@labaton.com
                                            cfox@labaton.com
                                            gbuell@labaton.com

                                   Co-Lead Counsel for Lead Plaintiffs

- 21 -

GEOFFREY P. CULBERTSON
Arkansas Bar No. 2014011
PATTON TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana,  TX  75503
Telephone:  903/792-7080
903/792-8233 (fax)
E-mail:  gpc@texarkanalaw.com

Liaison Counsel for the Class

SCHALL LAW FIRM
BRIAN SCHALL
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  424/303-1964
877/590-0483 (fax)
Email:  brian@schallfirm.com

THORNTON LAW FIRM LLP
1 Lincoln Street, 25th Floor
Boston, MA  02111
Telephone:  617/720-1333
617/720-2445 (fax)

Additional Plaintiffs' Counsel