UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| In re UNITI GROUP INC. SECURITIES LITIGATION | ) ) ) | Master File No. 4:19-cv-00756-BSM |
| | | CLASS ACTION |
| This Document Relates To: | ) ) ) | |
| ALL ACTIONS. | ) ) ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  HISTORY OF LITIGATION ............................................................................. 5

III.  THE LEGAL STANDARD GOVERNING THE AWARD OF
ATTORNEYS' FEES ......................................................................................... 5

    A.  The Percentage-of-the-Fund Recovered Is the Preferred Approach
for Awarding Attorneys' Fees in Common Fund Cases ............................... 5

    B.  Consideration of Relevant Factors Supports the Fee Requested ................. 7

        1.  The Benefit Conferred on the Settlement Class Supports a
30% Fee ................................................................................................. 7

        2.  The Risks to Which Co-Lead Counsel Were Exposed
Supports the Requested Fee ................................................................. 8

        3.  The Difficulty and Novelty of the Legal and Factual Issues of
the Case Support the Requested Fee ................................................. 11

        4.  The Skill of the Lawyers Involved Supports the Fee Request ........ 13

        5.  Time and Effort Required Support the Fee Award .......................... 15

        6.  The Positive Reaction of the Settlement Class to Date................... 16

        7.  The Fee Requested Reflects the Market Rate in Similar
Complex Contingent Litigation ......................................................... 17

IV.  COUNSEL'S EXPENSES ARE REASONABLE AND WERE
NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED
FOR THE SETTLEMENT CLASS ................................................................. 18

V.  PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF
REASONABLE COSTS AND EXPENSES..................................................... 19

VI.  CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) .................................................................. 2

*Blum v. Stenson*,
465 U.S. 886 (1984) ............................................................................. 18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......................................................................... 5, 6

*Cent. R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885) .............................................................................. 6

*City of Pontiac Gen. Emps.' Ret. Sys. v. Walmart Stores, Inc.*,
2019 WL 1529517 (W.D. Ark. Apr. 8, 2019) ............................................ 17

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................ 9

*Huyer v. Buckley*,
849 F.3d 395 (8th Cir. 2017) ................................................................ 16

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010) ....................................................... 10

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
2020 WL 7133805 (D. Minn. Dec. 4, 2020) ....................................... *passim*

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
2021 WL 3080960 (D. Minn. July 21, 2021) ............................................ 20

*In re Genworth Fin. Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) ...................................................... 11

*In re Ikon Office Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ......................................................... 11, 18

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) ........................................... 18

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ........................................... 10

*In re Oracle Corp. Sec. Litig.*
   2009 WL 1709050 (N.D. Cal. June 19, 2009),
   *aff'd*, 627 F.3d 376 (9th Cir. 2010) .............................................................. 10

*In re Resideo Techs., Inc. Sec. Litig.*,
   2022 WL 872909 (D. Minn. Mar. 24, 2022) ................................................ 20

*In re St. Jude Med., Inc. Sec. Litig.*,
   2015 WL 13647530 (D. Minn. June 12, 2015)............................................. 17

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) ................................................................. 6, 17

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)........................................................ 6, 9

*Johnson v. Ga. Highway Exp., Inc.*,
   488 F.2d 714 (5th Cir. 1974),
   *abrogated sub. nom. by Blanchard v. Bergeron*,
   489 U.S. 87 (1989).......................................................................................... 7

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) ........................................................................... 6

*Khoday v. Symantec Corp.*,
   2016 WL 1637039 (D. Minn. Apr. 5, 2016)......................................*passim*

*Klein v. Altria Grp. Inc.*,
   No. 3:20-cv-00075-DJN, slip op.
   (E.D. Va. Mar. 31, 2022) ............................................................................ 18

*Krueger v. Ameriprise Fin., Inc.*,
   2015 WL 4246879 (D. Minn. July 13, 2015) ............................................. 17

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)............................................... 9

*Matter of Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ................................................................... 6, 18

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010)...................................................................................... 10

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ....................................................................... 7

**Page**

*Phillips v. Caliber Home Loans, Inc.*,
    2022 WL 832085 (D. Minn. Mar. 21, 2022) ...................................... 6, 14, 17

*Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*,
    2022 WL 2093054 (D. Minn. June 10, 2022)....................................... 17, 20

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................... 13

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)..................................... 11, 14

*Trs. v. Greenough*,
    105 U.S. 527 (1881) ................................................................................ 6

*Yarrington v. Solvay Pharms., Inc.*,
    697 F. Supp. 2d 1057 (D. Minn. 2010).................................... 14, 16, 17, 18

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b) ................................................................................................ 10
    §78t(a) ................................................................................................ 10
    §78u-4(a)(4) ...................................................................................... 1, 19
    §78u-4(a)(6) ......................................................................................... 2

**SECONDARY AUTHORITIES**

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements:
    2021 Review and Analysis* (Cornerstone Research 2022) ........................... 8

Pursuant to Rule ("Rule") 23(h) of the Federal Rules of Civil Procedure, Court-appointed Co-Lead Counsel, Labaton Sucharow LLP ("Labaton Sucharow") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), respectfully submit this Memorandum of Law in Support of their Motion for: (i) an award of attorneys' fees to Plaintiffs' Counsel[1] of 30% of the Settlement Fund; (ii) payment of Plaintiffs' Counsel's expenses; and (iii) awards to Court-appointed Lead Plaintiffs Steamfitters Local 449 Pension Plan ("Local 449"), Wayne County Employees' Retirement System ("Wayne County ERS"), and David McMurray, on behalf of himself and as sole beneficiary of the David McMurray R/O IRA ("McMurray" or "Mr. McMurray") (collectively, "Plaintiffs") pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(4).

## I.   INTRODUCTION

After nearly three years of hard-fought litigation, all on a contingent basis and with no guarantee of ever being paid, counsel obtained a $38.875 million settlement on behalf of the Settlement Class.  The Settlement is a highly favorable result and was achieved through the skill, unabated hard work, and effective advocacy of Co-Lead Counsel.  As compensation for their efforts in achieving this result, Co-Lead Counsel seek, on behalf of Plaintiffs' Counsel, an award of attorneys' fees of 30% of the Settlement Amount, plus expenses incurred in

---

[1]     All capitalized terms used herein have the meanings assigned to them in the Stipulation and Agreement of Settlement, dated June 17, 2022 ("Stipulation" or "Settlement") (ECF 124) or in the Joint Declaration of Christine M. Fox and Debra J. Wyman in Support of: (I) Final Approval of Settlement and Approval Plan of Allocation, and (II) an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Joint Decl." or "Joint Declaration"), submitted herewith.

prosecuting the Action in the amount of $1,305,093.51, plus interest on these amounts at the same rate and for the same period as that earned by the Settlement Fund.[2]

The requested attorneys' fees are warranted in light of the highly favorable recovery obtained for the Settlement Class, the extensive efforts of counsel in obtaining this result, and the significant risks in bringing and prosecuting this Action. This case settled at an advanced stage, with fact discovery complete save for one non-party deposition. Defendants mounted a resilient opposition throughout the Action, raising numerous legal and factual obstacles at every stage. Co-Lead Counsel overcame almost every hurdle, including successfully opposing Defendants' motion to dismiss and for reconsideration of the Court's order denying the motion to dismiss.

The Action is subject to the provisions of the PSLRA and therefore litigation was extremely risky and difficult from the outset. The effect of the PSLRA is to make it more difficult for investors to bring and successfully resolve securities class actions. "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). Despite these risks, Co-Lead Counsel undertook representation of the Settlement Class on a contingent fee basis.

In addition to these risks, the investigation, prosecution, and settlement of this Action required great skill and an extensive effort by Co-Lead Counsel. Counsel marshalled considerable resources and committed substantial amounts of time and expenses to prosecute the Action. As set forth in more detail in the Joint Declaration, submitted herewith, Co-Lead

---

[2]     Under the PSLRA, fees and expenses awarded to counsel for the class include "prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6).

Counsel, among other things:  (i) conducted a thorough pre-trial investigation into the class's claims; (ii) drafted detailed complaints; (iii) successfully opposed Defendants' motion to dismiss and prevailed against their motion for reconsideration of that decision; (iv) engaged in and essentially completed extensive fact discovery, which included the request, negotiation for and review of over one million pages of documents, the taking and defending of a dozen depositions, and responding to written discovery; (v) fully briefed class certification; (vi) litigated numerous discovery disputes; and (vii) participated in settlement negotiations, including a formal mediation session with a well-known and experienced mediator.  In total, Plaintiffs' Counsel spent over 13,886 hours in prosecuting this Action with an aggregate lodestar of over $7.7 million.[3]

Further, the Court should consider the Settlement Class's reaction to the attorneys' fees and expenses which counsel seek.  Over 356,400 copies of the Notice in the form approved by the Court have been mailed to potential Members of the Settlement Class and their nominees.  In addition, the Summary Notice was published in *The Wall Street Journal* and over the *PR Newswire*.[4]  The Notice advises Settlement Class Members that Co-Lead

---

[3]     *See* Declaration of Debra J. Wyman Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Fee Decl."); Declaration of Christine M. Fox Filed on Behalf of Labaton Sucharow LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Labaton Sucharow Fee Decl."); Declaration of Geoffrey Culbertson Filed on Behalf of Patton Tidwell & Culbertson, LLP in Support of Application for Award of Attorneys' Fees and Expenses; Declaration of Ex Kano S. Sams II Filed on Behalf of Glancy Prongay & Murray LLP in Support of Application for Award of Attorneys' Fees and Expenses, submitted herewith.

[4]     *See* Declaration of Lance Cavallo Regarding (A) Mailing of Notice and Claim Form; (B) Publication of Summary Notice; (C) Establishment of the Telephone Hotline; (D) Establishment of the Settlement Website; and (E) Report on Requests for Exclusion Received to Date ("KCC Decl."), ¶¶8-9, submitted herewith.

Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund plus expenses not to exceed $1,600,000.  While the October 14, 2022 deadline for objecting to the requested attorneys' fees and expenses has not passed, to date, not a single objection to Co-Lead Counsel's fee and expense request has been received.

Co-Lead Counsel firmly believe that the Settlement is the result of their substantial efforts as well as their reputations as attorneys who are unwavering in their dedication to the interests of the Settlement Class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals.  In a case asserting claims based on complex legal and factual issues which was opposed by highly skilled and experienced defense counsel, Co-Lead Counsel succeeded in securing a highly favorable result for the Settlement Class.  As a result, the 30% fee requested is fair and reasonable when considered under the applicable standards, particularly in view of the substantial risks of bringing and pursuing this Action, the extensive litigation efforts, and the results achieved for the Settlement Class.  Co-Lead Counsel also submit that the expenses requested are reasonable in amount and were necessarily incurred for the successful prosecution of this Action.

Importantly, the fees and expenses requested by Co-Lead Counsel are supported by Plaintiffs.  *See* Declaration of Joseph M. Little on behalf of Local 449 ("Local 449 Decl."), Declaration of Gerard Grysko on behalf of Wayne County ERS ("Wayne County ERS Decl."), and the Declaration of David McMurray ("McMurray Decl."), submitted herewith. Plaintiffs were actively involved throughout the Litigation and believe that the Settlement represents a favorable recovery for the Settlement Class.  *Id.*  Because of this involvement,

Plaintiffs are in a unique position to evaluate the work of counsel, the results achieved, and the effort required to obtain this highly favorable result.

For all the reasons discussed herein, and in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), the Joint Declaration, and the accompanying declarations, Co-Lead Counsel respectfully request that the Court approve their request for an award of attorneys' fees and expenses, including reimbursement of the reasonable costs and expenses of Plaintiffs of $19,034.44 in the aggregate in connection with their representation, in accordance with the PSLRA.

## II.     HISTORY OF LITIGATION

The Court is respectfully referred to the Joint Declaration for a detailed description of the procedural history of the Action, the efforts of counsel in obtaining this result, the negotiation and substance of the Settlement, the substantial risks and uncertainties of the Action, and the reasonableness of the fee and expense request.

## III.    THE LEGAL STANDARD GOVERNING THE AWARD OF ATTORNEYS' FEES

### A.     The Percentage-of-the-Fund Recovered Is the Preferred Approach for Awarding Attorneys' Fees in Common Fund Cases

It has long been recognized in equity that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The purpose of this doctrine is to avoid unjust enrichment and to spread litigation costs proportionately among all the beneficiaries. *Id.* This rule, known as the

common fund doctrine, is firmly rooted in American case law.  *See, e.g.*, *Trs. v. Greenough*, 105 U.S. 527 (1881); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

For their efforts in creating a $38.875 million common fund, Co-Lead Counsel seek a reasonable percentage of the fund recovered as attorneys' fees.  In *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996), the Eighth Circuit approved the percentage method in awarding attorneys' fees from a common fund.  Indeed, "[i]n the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established.'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005).[5]  *See also Phillips v. Caliber Home Loans, Inc.*, 2022 WL 832085, at *6 (D. Minn. Mar. 21, 2022) (awarding one-third fee and noting that "[a] typical calculation of attorneys' fees in a class action involves the common fund doctrine, which is based on a percentage of the common fund recovered"); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (upholding 36% fee award).

Compensating counsel in common fund cases on a percentage basis makes good sense.  First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated on a percentage-of-the-recovery method.[6]  Second, it provides plaintiffs' counsel with a strong incentive to obtain the maximum possible recovery under the circumstances.

---

[5]     All emphasis is added and citations are omitted throughout unless otherwise noted.

[6]     Courts are encouraged to look to the private marketplace in setting a percentage fee. *See Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The judicial task might be simplified if the judge and the lawyers [spent] their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character.").

**B.     Consideration of Relevant Factors Supports the Fee Requested**

In examining the factors relevant to a fee award, the key issue is whether the requested fee is reasonable.  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). Courts in this Circuit have used the factors cited in *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated sub. nom. by Blanchard v. Bergeron*, 489 U.S. 87 (1989), in assessing the reasonableness of the fee request:

> (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee for similar work in the community; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The undesirability of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases.

*In re CenturyLink Sales Pracs. & Sec. Litig.*, 2020 WL 7133805, at *11 (D. Minn. Dec. 4, 2020).  However, "[b]ecause 'not all of the individual *Johnson* factors will apply in every case, [ ] the court has wide discretion as to which factors to apply and the relative weight to assign to each.'"  *Id.*  As discussed in detail below, consideration of these factors wholly confirms the reasonableness of the fee requested.

**1.     The Benefit Conferred on the Settlement Class Supports a 30% Fee**

Courts routinely recognize that the result achieved is an important factor considered in making a fee award, and here, the $38.875 million recovery is clearly impressive.  *See, e.g.*, *Khoday v. Symantec Corp.*, 2016 WL 1637039, at *9 (D. Minn. Apr. 5, 2016).

Through diligent pursuit of the Settlement Class's claims and skillful negotiation, Co-Lead Counsel created a Settlement Fund of $38.875 million, plus earned interest.  This

Settlement was achieved by Co-Lead Counsel's focused litigation efforts and hard-fought, arm's-length negotiations. Co-Lead Counsel put together an experienced team of lawyers, professionals, and experts who are responsible for this noteworthy result. Moreover, given the defenses to liability and damages raised by Defendants in their motion to dismiss and opposition to class certification, and during settlement negotiations, the Settlement is a highly favorable result.

This Settlement confers a substantial and certain benefit on the Settlement Class in contrast to the considerable delays, costs, and uncertainty inherent in further litigation. The $38.875 million recovery represents an excellent result for the Settlement Class, and exceeds both the average ($20.5 million) and median ($8.3 million) settlement amounts in securities class actions resolved during 2021. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2021 Review and Analysis*, at 1 (Cornerstone Research 2022), Ex. 11 to the Joint Declaration. The Settlement also far exceeds the $14.7 million median settlement amount for cases settled in the Eighth Circuit between 2012 and 2021. *Id*. at 19, Appendix 3. The Settlement is likewise noteworthy considering that Defendants believed that the Settlement Class suffered zero (or *de minimus*) damages.

### 2. The Risks to Which Co-Lead Counsel Were Exposed Supports the Requested Fee

Co-Lead Counsel undertook this Action on a contingent fee basis, assuming a significant risk that the Action would yield no recovery and leave them uncompensated. Unlike counsel for Defendants, who are paid an hourly rate and paid for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any time or expense since this case began in 2019, expending over 13,800 hours of attorney and professional time

equating to approximately $7.7 million in lodestar and incurring more than $1.3 million in expenses throughout the course of almost three years of litigation.  Co-Lead Counsel knew that if their efforts were not successful, they would not generate a fee and their expenses would not be paid.  *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *19 (S.D.N.Y. Dec. 18, 2019) ("Lead Counsel understood from the outset that they were embarking on a complex, and potentially expensive and lengthy litigation, which would require the investment of thousands of hours of attorney time, with no guarantee of ever being compensated for their investment of such time and money."); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) ("'Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.'").

While securities class action cases have always been complex and difficult to prosecute, the PSLRA has only increased the difficulty in achieving a successful outcome.  Indeed, the risk of no recovery in complex cases of this type is very real.  There are numerous cases where plaintiffs' counsel in contingent cases such as this, after expending thousands of hours, have received no compensation despite their diligence and expertise.  As the court in *Xcel* recognized: "The risk of no recovery in complex cases of this sort is not merely hypothetical.  Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."  364 F. Supp. 2d at 994.

For example, in *In re Oracle Corp. Sec. Litig.*, a case that Robbins Geller prosecuted, the court granted summary judgment to defendants after eight years of litigation, and after plaintiffs' counsel incurred over $6 million in expenses, and worked over 100,000 hours,

representing a lodestar of approximately $40 million. 2009 WL 1709050, at *1 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010). And, in a case against JDS Uniphase Corporation litigated by Labaton Sucharow, after a lengthy trial involving securities claims, the jury reached a verdict in defendants' favor. *See In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). Similarly, even the most promising case can be eviscerated by a sudden change in the law after years of litigation. In *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010), 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of some 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010), after plaintiffs had completed extensive foreign discovery.

Here, the risks of undertaking the Litigation were present throughout. As detailed in the Settlement Memorandum and Joint Declaration, Defendants argued vigorously that Plaintiffs could not establish their claims, and would not recover any damages. To establish their claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934, Plaintiffs must prove falsity, materiality, scienter, and loss causation – all of which Defendants challenged in their motion to dismiss and in their opposition to Plaintiffs' class certification motion. Joint Decl., ¶¶31-34, 93.

While Plaintiffs believe they have strong counterarguments to Defendants' arguments, the fact remains that the Court at class certification or summary judgment, or the jury at trial, could have found any of Defendants' arguments persuasive, thereby significantly reducing or even completely eliminating recoverable damages. Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful

result and that such a successful result would be realized only after considerable and difficult effort. Co-Lead Counsel committed significant resources of both time and money to vigorously and successfully prosecute this Action for the Settlement Class's benefit.

### 3. The Difficulty and Novelty of the Legal and Factual Issues of the Case Support the Requested Fee

The difficulty and novelty of the issues involved in a case are significant factors to be considered in making a fee award. *See, e.g.*, *CenturyLink*, 2020 WL 7133805, at *12 (Fee award supported where Plaintiffs' Counsel faced challenging legal and factual issues in pursuing nationwide claims and relief. [The Company] mounted a strong defense . . . . [t]hese were complex issues that required intensive discovery and briefing."); *Khoday*, 2016 WL 1637039, at *10 ("[t]his factor weighs in favor of the fees requested by counsel" where "there is every indication that the legal and factual issues are complex").

Securities class actions present inherently complex and novel issues. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) ("securities fraud cases require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish'"); *see also Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) ("'[a] securities case, by its very nature, is a complex animal'"). Additionally, as discussed above, passage of the PSLRA has made the successful prosecution of securities cases more complex and uncertain. *See In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

From the outset, this PSLRA action was a difficult and highly uncertain securities case that involved highly complex issues of law and byzantine facts.  Indeed, "[t]he process and scope of discovery in this case is indicative of the issues' complexity." *Khoday*, 2016 WL 1637039, at *10.  The core of the allegations is that Defendants made material misrepresentations and omissions about the April 24, 2015 Spin-Off transaction, in which Windstream Services (a non-party to this Action): (i) created Windstream Holdings; (ii) which in turn created and spun-off newly formed public company Defendant Uniti Group Inc. f/k/a Communications Sales & Leasing, Inc., a Real Estate Investment Trust; (iii) to which Windstream sold its aging telecommunications assets; and (iv) which then leased back those telecommunication assets to Windstream Services' subsidiaries in exchange for cash, stock, and billions in debt (the "Master Lease").  Plaintiffs allege that this complicated and complex transaction was a wholly improper and impermissible way for Defendants to avoid certain restrictive covenants that Windstream had entered into in connection with prior unsecured notes that Windstream had issued.  As discussed in the Joint Declaration and as set forth above, substantial risks and uncertainties in this Action made it far from certain that Co-Lead Counsel would secure any recovery, let alone $38.875 million.

From the Litigation's inception, Defendants steadfastly maintained that they did nothing wrong, and that they properly relied on counsel and financial advisors throughout. Joint Decl., ¶¶106-107.  Although Defendants' motion to dismiss was denied, difficult issues of proof remained as to key elements of Plaintiffs' claims, including materiality, scienter, loss causation, and damages.  At the time the Parties entered into the Stipulation, summary

judgment motions and motions to exclude the testimony of the Parties' experts were around the corner, creating substantial obstacles for Plaintiffs to overcome.

Even if Co-Lead Counsel successfully proceeded to trial and obtained a significant judgment for the Settlement Class, Co-Lead Counsel's efforts to establish liability and damages in the Action, in all likelihood, would not end with a judgment in this Court, but would continue through one or more levels of appellate review.  In cases such as this, even a victory at trial does not guarantee ultimate success.  Both trial and judicial review are unpredictable and could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals . . . and would, in light of the time value of money, make future recoveries less valuable than the current recovery.").

In sum, this highly complex case has been extensively litigated and vigorously contested for multiple years, with no firm end in sight.  Despite the novelty and difficulty of the issues raised, counsel secured a highly favorable result for the Settlement Class.

### 4. The Skill of the Lawyers Involved Supports the Fee Request

The quality of the representation by Co-Lead Counsel and the standing of Co-Lead Counsel are important factors that support the reasonableness of the requested fee.  *See Khoday*, 2016 WL 1637039, at *10 ("The skill and extensive experience of counsel in complex litigation is relevant in determining fair compensation.").  This Settlement was achieved by Co-Lead Counsel, two of the preeminent class action securities litigation firms

in the country, with decades of experience in prosecuting and trying complex class actions.[7]
Co-Lead Counsel's experience and skill were demonstrated by the efficient and effective
prosecution of this Action, culminating in the highly favorable settlement before the Court.
*Phillips*, 2022 WL 832085, at *6 ("the record reflects that Plaintiffs' counsel are experienced
and sophisticated, with years of experience in complex class-action litigation").  Indeed, Co-
Lead Counsel achieved a highly favorable result for the Settlement Class, due in large part to
their experience and expertise in litigating complex class actions.  *See CenturyLink*, 2020
WL 7133805, at *12 ("Plaintiffs' Counsel has significant complex and class action litigation
experience.  They expended extensive time and money pursuing discovery and briefing
several dispositive and non-dispositive motions.  Despite significant pending motions, they
managed to negotiate substantial classwide relief.").

The quality of opposing counsel is also important in evaluating the quality of Co-Lead
Counsel's work.[8]  Defendants were represented by Davis Polk & Wardwell LLP,
accomplished lawyers with significant expertise in defending complex actions.  Joint Decl.,
¶154.  Notwithstanding this formidable opposition, Co-Lead Counsel's ability to present a
strong case and to demonstrate their willingness and ability to continue to vigorously

---

[7]     *See* the firm resumes of Co-Lead Counsel which are attached as Ex. E to the Robbins
Geller Fee Decl. and Ex. F to the Labaton Sucharow Fee Decl.

[8]     *See, e.g.*, *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn.
2010) (finding the fact that defendant's attorneys "consist[ing] of multiple well-respected
and capable defense firms" which "consistently challenged Plaintiffs throughout the
litigation" supported class counsel's fee request); *Thorpe*, 2016 WL 10518902, at *9 (finding
fact that "Defense counsel have reputations for vigorous advocacy in the defense of complex
civil cases such as this" favored approval of one-third fee award).

prosecute the Action through trial and the inevitable appeals enabled Co-Lead Counsel to achieve a favorable settlement for the Settlement Class.

### 5.    Time and Effort Required Support the Fee Award

The time and labor expended by Co-Lead Counsel in prosecuting this Action firmly support the requested fee. *See Khoday*, 2016 WL 1637039, at *10 ("Since this litigation began, Plaintiffs' counsel has expended nearly 20,000 hours to litigate and resolve this dispute, exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the class.").

Co-Lead Counsel dedicated considerable resources and time to the research, investigation, prosecution, and settlement of the Action.  As described in the Joint Declaration, these efforts included an extensive and comprehensive investigation, which included drafting highly-detailed complaints.  Co-Lead Counsel opposed Defendants' motion to dismiss and Defendants' motion for reconsideration, engaged in extensive fact and class certification discovery, briefed Plaintiffs' motion for class certification, reviewed more than a million pages of documents, responded to written discovery, litigated discovery disputes, and conducted and defended nearly a dozen depositions.  *See generally* Joint Decl. Likewise, settlement negotiations required the preparation of compelling mediation statements and engaging in robust arm's-length negotiations.  In total, Plaintiffs' Counsel spent more than 13,800 hours, representing over $7.7 million in attorney and professional support staff time.[9]  In light of this effort, Co-Lead Counsel moved the case along

---

[9]      Co-Lead Counsel's work on this case will not end at final approval.  Additional time will be spent working with KCC and the Settlement Class during the administration and distribution phases of the Litigation.

expeditiously and made every effort to limit duplicative efforts. *See Yarrington*, 697 F. Supp. 2d at 1063.

"When the Court uses the percentage-of-the-benefit method [to award attorneys' fees], it is not required to cross-check it against the lodestar method." *CenturyLink*, 2020 WL 7133805, at *13. However, the requested fee of 30% of the Settlement Fund, or $11,662,500, represents a slight 1.5 multiplier to counsel's lodestar, confirming the reasonableness of the requested fee.[10]

Accordingly, counsel's extensive litigation efforts were reasonable and necessary to secure a significant monetary recovery on behalf of the Settlement Class, and fully support the requested fee award.

### 6. The Positive Reaction of the Settlement Class to Date

In addition to Plaintiffs' approval of the requested attorneys' fees, the reaction of the Settlement Class to date also supports the requested fee. *See Khoday*, 2016 WL 1637039, at *11 ("This Court concludes that the settlement class supports Plaintiffs' counsel's request for attorney[s'] fees of 33-1/3 percent of the settlement fund."). As discussed above, through September 28, 2022, the Court-appointed Claims Administrator, Kurtzman Carson Consultants LLC, has disseminated more than 356,400 copies of the Notice and Claim Form to potential Settlement Class Members and nominees informing them, among other things,

---

[10]     In complex contingent litigation such as this Action, lodestar multipliers between 2 and 5 are commonly awarded. *See, e.g.*, *Khoday*, 2016 WL 1637039, at *11 (finding a multiplier of "less than two" to be "below the range of multipliers commonly accepted in other cases"); *Yarrington*, 697 F. Supp. 2d at 1065, 1067 (awarding fee representing a 2.26 multiplier, describing it as "modest" and "reasonable, given the risks of continued litigation, the high-quality work performed, and the substantial benefit to the Class"); *Huyer v. Buckley*, 849 F.3d 395, 400 (8th Cir. 2017) (approving multiplier of 2.4 and citing cases within the Eighth Circuit approving multipliers up to 5.6).

that Co-Lead Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund.  While the deadline for objecting to Co-Lead Counsel's fee request is October 14, 2022, to date, not a single objection to the maximum fee (and expenses) set forth in the Notice has been received.  Should any objections be received, Co-Lead Counsel will address them in their reply.

### 7.     The Fee Requested Reflects the Market Rate in Similar Complex Contingent Litigation

The requested fee of 30% of the Settlement Fund is in line with attorneys' fees repeatedly awarded by district courts in other complex class actions cases.  In this Circuit, "courts 'have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions.'"  *Yarrington*, 697 F. Supp. 2d at 1064 (quoting *U.S. Bancorp*, 291 F.3d at 1038) (affirming a fee award representing 36% of the settlement fund as reasonable).  *See also Plymouth Cnty. Ret. Sys. v. Patterson Cos., Inc.*, 2022 WL 2093054, at *1 (D. Minn. June 10, 2022) (awarding 33-1/3% of $63 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Walmart Stores, Inc.*, 2019 WL 1529517, at *1 (W.D. Ark. Apr. 8, 2019) (awarding 30% of $160 million settlement); *In re St. Jude Med., Inc. Sec. Litig.*, 2015 WL 13647530, at *1 (D. Minn. June 12, 2015) (awarded 29% of $50 million settlement); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (awarding one-third fee, finding that "courts have consistently awarded one-third contingent fees"); *Phillips*, 2022 WL 832085, at *7 ("Accordingly, the requested 33.33 percent award requested in this case is consistent with the customary fee for similar work.").

Other courts are in accord.  *See, e.g.*, *Klein v. Altria Grp. Inc.*, No. 3:20-cv-00075-DJN, slip op. at 10-11 (E.D. Va. Mar. 31, 2022) (awarding 30% of $90 million settlement)

(attached as Ex. 1 hereto); *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) (one third fee awarded on $75 million settlement, yielding a lodestar multiplier of 1.4 "compare[d] very favorably" to similar cases).[11]

## IV.   COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED FOR THE SETTLEMENT CLASS

Co-Lead Counsel also request payment of the costs and expenses that they incurred to successfully prosecute and resolve this Action, plus interest on such amounts at the same rate as earned by the Settlement Fund.  "The requested costs must be relevant to the litigation and reasonable in amount."  *Yarrington*, 697 F. Supp. 2d at 1067.  As set forth in the individual firm fee declarations submitted herewith, Plaintiffs' Counsel incurred litigation expenses in the amount of $1,305,093.51 in connection with the prosecution of the Action on behalf of the Settlement Class.  Here, "because counsel had no guarantee that these expenses would ever be reimbursed, Plaintiffs' Counsel had the incentive to keep the amounts reasonable." *CenturyLink*, 2020 WL 7133805, at *13.  All of counsel's expenses are reasonable in amount given the scope and stage of the litigation, and were necessary for the successful prosecution of the Action.  *See id.* ("'It is well established that counsel who create a common fund like the one at issue are entitled to the reimbursement of litigation costs and expenses, which

---

[11]     The requested fee is also reasonable when compared to the private marketplace, a comparison encouraged by the courts.  *See Cont'l Ill.*, 962 F.2d at 572.  Supreme Court Justices Brennan and Marshall observed in their concurring opinion in *Blum*: "In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 903 (1984).  Similarly, in the securities class action context, Judge Marvin Katz of the Eastern District of Pennsylvania noted that in private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery. *Ikon*, 194 F.R.D. at 194. These percentages are the prevailing market rates throughout the United States for contingent representation.

include such things as expert witness costs, mediation costs, computerized research, court reports, travel expenses, and copy, telephone, and facsimile expenses.'").

The Notice informed potential Settlement Class Members that Co-Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $1,600,000.  *See* KCC Decl., Ex. A, Notice at 2.  The amount of expenses for which payment is sought is $1,305,093.51 and to date, no Settlement Class Member has objected.

## V.   PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES

Pursuant to the PSLRA, the Court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."   15 U.S.C. §78u-4(a)(4).   Plaintiffs request reimbursement of $19,034.44 in the aggregate.  As set forth in their individual declarations, Plaintiffs devoted substantial time to the oversight of, and participation in, the Litigation, including reviewing pleadings, communicating regularly with counsel, preparing for and providing deposition testimony, complying with Defendants' discovery requests, and consulting with and directing Co-Lead Counsel regarding all of the foregoing and in connection with settling the Litigation.  *See* Local 449 Decl., ¶¶3-9; Wayne County ERS Decl., ¶¶3-9; McMurray Decl., ¶¶3-8.  The time each dedicated to the Litigation was time taken away from their regular duties, representing a cost to each.

These are precisely the types of activities that courts have found to support awards to representative plaintiffs in PSLRA cases.  *See, e.g.*, *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2021 WL 3080960, at *11-*12 (D. Minn. July 21, 2021) (awarding $40,000 to institutional lead plaintiff and $21,000 to individual lead plaintiff for having "communicated

with Lead Counsel regarding case strategy and developments, reviewed pleadings and briefs filed in the Action, responded to discovery requests, consulted with Lead Counsel regarding settlement negotiations, and evaluated and approved the proposed Settlement"); *In re Resideo Techs., Inc. Sec. Litig.*, 2022 WL 872909, at *8 (D. Minn. Mar. 24, 2022) (awarding aggregate amount of $22,500 to two lead plaintiffs, noting that "'[c]ourts often grant service awards to named plaintiffs in class action suits to promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits'" and "'courts in this circuit regularly grant service awards of $10,000 or greater'"); *Patterson*, 2022 WL 2093054, at *2 (awarding $31,045 in the aggregate to four lead plaintiffs "for their representation of the Class during the Litigation").

The awards sought by Plaintiffs here are reasonable and fully justified under the PSLRA based on their extensive involvement throughout the Litigation and the amount of time they devoted for the benefit of the Settlement Class and, therefore, should be granted.

## VI.  CONCLUSION

Based on the foregoing and upon the entire record herein, Co-Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 30% of the Settlement Fund, plus litigation costs and expenses in the amount of $1,305,093.51, in addition to the interest earned thereon at the same rate and for the same period as that earned on those portions of the Settlement Fund until paid.  Co-Lead Counsel also request that the Court award Plaintiff Local 449 $3,010, Plaintiff Wayne County ERS $6,024.44, and Plaintiff McMurray $10,000, time and expenses in representing the Settlement Class.

DATED:  September 30, 2022          Respectfully submitted,

ELLEN GUSIKOFF STEWART
California Bar No. 144892
DEBRA J. WYMAN
California Bar No. 190812
ROBBINS GELLER RUDMAN
  & DOWD LLP
TING H. LIU
JOSEPH J. TULL
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  elleng@rgrdlaw.com
            debraw@rgrdlaw.com
            tliu@rgrdlaw.com
            jtull@rgrdlaw.com

LABATON SUCHAROW LLP
CAROL C. VILLEGAS
CHRISTINE M. FOX
GUILLAUME BUELL
140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
E-mail:  cvillegas@labaton.com
            cfox@labaton.com
            gbuell@labaton.com

Co-Lead Counsel for Lead Plaintiffs

GEOFFREY P. CULBERTSON
Arkansas Bar No. 2014011
PATTON TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard
Texarkana,  TX  75503
Telephone:  903/792-7080
903/792-8233 (fax)
E-mail:  gpc@texarkanalaw.com

Liaison Counsel for the Class

SCHALL LAW FIRM
BRIAN SCHALL
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  424/303-1964
877/590-0483 (fax)
Email:  brian@schallfirm.com

THORNTON LAW FIRM LLP
1 Lincoln Street, 25th Floor
Boston, MA  02111
Telephone:  617/720-1333
617/720-2445 (fax)

Additional Plaintiffs' Counsel